UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

Gloria L. Franklin
Clerk of Court

San Francisco Bankruptcy Court           (415) 268-2300
235 Pine St.
P.O. Box 7341
San Francisco, CA 94120-7341

FILED

*FILED*

JAN – 8 2008

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Richard W. Wieking, Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

Adversary Proceeding                     Re:   Yugen Kaisha Y.K.F.  vs Dodson
07-3104 TC    Thomas E. Carlson

# CV 08        0225 SC

Dear Mr. Wieking:

[X ] Enclosed please find a copy of the Order Certification For Withdrawal of Reference and
Assignment To District Judge (Bankruptcy Local Rule 9015(2)(b). Included is a certified copy of
the docket sheet and documents regarding subject matter counterclaim.

Please acknowledge receipt of this appeal by stamping the district court case number on a copy
of this letter and return it to *United States Bankruptcy Court, San Francisco Division.*

Gloria L. Franklin, Clerk
United States Bankruptcy Court

Dated: January 8, 2008          By:   ANNA CHO-WONG
                                      _____
                                      Deputy Clerk  Anna Cho-Wong

# U.S. Bankruptcy Court
## Northern District of California (San Francisco)
### Adversary Proceeding #: 07-03104
#### Internal Use Only

*Assigned to:* Judge Thomas E. Carlson
*Related BK Case:* 05-32929
*Related BK Title:* Alexander N. Popov
*Related BK Chapter:* 7
*Demand:*

*Nature[s] of Suit:*   13 Recovery of money/property - 548 fraudulent transfer
14 Recovery of money/property - other
72 Injunctive relief - other

*Date Filed:* 09/05/07

CV 08 0225 SC

## Plaintiff
----------------------

**Yugen Kaisha Y.K.F.**
c/o Brian Baymiller
Fiji Silysia Chermical Ltd.
P.O. Box 14434
Research Triangle Park, NC 27709-4434

represented by **James S. Monroe**
Law Offices of Nixon Peabody
1 Embarcadero Center #1800
San Francisco, CA 94111-3996
(415) 984-8200
Email: jmonroe@nixonpeabody.com
*LEAD ATTORNEY*

V.

## Defendant
----------------------

**Stephanie Dodson**
2032 Donald Drive
Moraga, CA 94556

represented by **Joel K. Belway**
Law Offices of Joel K. Belway
235 Montgomery St. #668
San Francisco, CA 94104
(415) 788-1702
Email: belwaypc@pacbell.net

## Intervenor-Plaintiff
----------------------

**Martin Triano**
Law Offices of Martin F. Triano
25 Jessie Street
San Francisco, CA 94105
415-371-8000

represented by **Mark D. Byrne**
Law Offices of Martin F. Triano
25 Jessie St. 16th Fl.
San Francisco, CA 94105
(415)371-8000
Email: mailbox@martinftriano.com

## Counter-Claimant
----------------------

**Stephanie Dodson**
2032 Donald Drive
Moraga, CA 94556

represented by **Joel K. Belway**
(See above for address)

V.

## Counter-Defendant
----------------------

UNITED STATES BANKRUPTCY COURT
Northern District of California
I certify that this is a true, correct and full copy
of the original document on file in my custody.
Dated ___1-8-08___
by _____
Deputy Clerk

**Yugen Kaisha Y.K.F.**
c/o Brian Baymiller
Fiji Silysia Chermical Ltd.
P.O. Box 14434
Research Triangle Park, NC 27709-4434

| Filing Date | # | Docket Text |
|---|---|---|
| 09/05/2007 | ◯1 | Adversary case 07-03104. 13 (Recovery of money/property - 548 fraudulent transfer), 14 (Recovery of money/property - other), 72 (Injunctive relief - other) Complaint by Yugen Kaisha Y.K.F., c/o Brian Baymille r, Fiji Silysia Chermical Ltd. against Stephanie Dodson. Fee Amount $250. (Attachments: # 1 AP Cover Sheet # 2 Summons to be Issued) (Monroe, James) (Entered: 09/05/2007) |
| 09/05/2007 | | Receipt of filing fee for Complaint(07-03104) [cmp,cmp] ( 250.00). Receipt number 4594977, amount $ 250.00 (U.S. Treasury) (Entered: 09/05/2007) |
| 09/06/2007 | ◯2 | Order Regarding Initial Disclosures and Discovery Conference . (ac, ) (Entered: 09/06/2007) |
| 09/06/2007 | ◯ | **CORRECTIVE ENTRY** Court corrected plaintiff's name. (RE: related document(s)1 Complaint filed by Plaintiff Yugen Kaisha Y.K.F.). (ac, ) (Entered: 09/06/2007) |
| 09/06/2007 | ◯3 | Summons Issued on Stephanie Dodson Answer Due 10/9/2007. Status Conference to be held on 11/15/2007 at 10:00 AM at San Francisco Courtroom 23 - Carlson. (ac, ) (Entered: 09/06/2007) |
| 09/11/2007 | ◯4 | Summons Service Executed on Stephanie Dodson 9/7/2007 . (Monroe, James) (Entered: 09/11/2007) |
| 10/09/2007 | ◯5 | Stipulation, To Extend Time for Defendant Stephanie Dodson to Answer the Complaint Filed by Plaintiff Yugen Kaisha Y.K.F.. (Monroe, James) (Entered: 10/09/2007) |
| 10/23/2007 | ◯6 | Answer to Complaint , Counterclaim by Stephanie Dodson against all plaintiffs *and Demand for Jury Trial* Filed by Stephanie Dodson. (Belway, Joel) (Entered: 10/23/2007) |
| 11/14/2007 | ◯7 | Document: *Joint Discovery Plan [FRBP 7026(A) and FRCP 26(A)] [PROPOSED]*.. Filed by Plaintiff Yugen Kaisha Y.K.F. (Monroe, James) (Entered: 11/14/2007) |
| 11/14/2007 | ◯8 | Motion *of Yugen Kaisha, Y.K.F. to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction* Filed by Plaintiff Yugen Kaisha Y.K.F.. (Monroe, James) (Entered: 11/14/2007) |
| 11/14/2007 | ◯9 | Notice of Hearing *on Motion of Yugen Kaisha, Y.K.F. to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction* (RE: related document(s)8 Motion Miscellaneous Relief filed by Counter-Defendant Yugen Kaisha Y.K.F., Plaintiff Yugen Kaisha Y.K.F.). Hearing scheduled for 12/21/2007 at 09:30 AM at San Francisco Courtroom 23 - Carlson. Filed by Plaintiff Yugen Kaisha Y.K.F.. (Monroe, James) (Entered: 11/14/2007) |
| 11/14/2007 | ◯10 | Declaration of James S. Monroe in in Support of Motion of Yugen Kaisha, Y.K.F. to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction of (RE: related document(s)8 Motion Miscellaneous Relief). Filed by Plaintiff Yugen Kaisha Y.K.F. (Monroe, James) (Entered: 11/14/2007) |
| 11/14/2007 | ◯11 | Certificate of Service (RE: related document(s)8 Motion Miscellaneous Relief). Filed by Plaintiff Yugen Kaisha Y.K.F. (Monroe, James) (Entered: 11/14/2007) |
| 11/15/2007 | ◯ | Courtroom Hearing Continued (RE: Summons Issued - related document(s) 3 ) (Continued to 12/21/2007 09:30 AM at San Francisco Courtroom 23 - Carlson) (Hearing Held. All matters are Stayed pending 12/21/07 hearing on Motion to Dismiss for Lack of Jurisdiction and continued |

Status Conference.)(ba, ) (Entered: 11/15/2007)

| | | |
|---|---|---|
| 11/15/2007 | 12 | Motion to Intervene Filed by Intervenor-Plaintiff Martin Triano. (Attachments: # 1 Notice of Hearing# 2 Memorandum of Points and Authorities # 3 Declaration of Mark D. Byrne in Support of Motion# 4 Exhibit A-B In Support of Motion# 5 Exhibit C-J in Support of Motion# 6 Exhibit K-Q in Support of Motion# 7 Certificate of Service) (Byrne, Mark) (Entered: 11/15/2007) |
| 11/16/2007 | | Hearing Set On (RE: related document(s)12 Motion to Intervene Filed by Intervenor-Plaintiff Martin Triano. (Attachments: # (1) Notice of Hearing# (2) Memorandum of Points and Authorities # (3) Declaration of Mark D. Byrne in Support of Motion# (4) Exhibit A-B In Support of Motion# (5) Exhibit C-J in Support of Motion# (6) Exhibit K-Q in Support of Motion# (7) Certificate of Service) (Byrne, Mark)). Hearing scheduled for 12/14/2007 at 09:30 AM at San Francisco Courtroom 23 - Carlson. (ac, ) (Entered: 11/16/2007) |
| 11/16/2007 | | **CORRECTIVE ENTRY** Hearing not set for motion, court set hearing. (RE: related document(s)12 Motion to Intervene filed by Intervenor-Plaintiff Martin Triano). (ac, ) (Entered: 11/16/2007) |
| 11/27/2007 | 13 | Motion to Amend *Answer and to Compel Plaintiff to Furnish Security for Costs* Filed by Defendant Stephanie Dodson. (Belway, Joel) (Entered: 11/27/2007) |
| 11/27/2007 | 14 | Declaration of Joel K. Belway in support of (RE: related document(s)13 Motion to Amend). Filed by Defendant Stephanie Dodson (Belway, Joel) (Entered: 11/27/2007) |
| 11/29/2007 | | Hearing Set On (RE: related document(s)13 Motion to Amend *Answer and to Compel Plaintiff to Furnish Security for Costs* Filed by Defendant Stephanie Dodson. (Belway, Joel)). Hearing scheduled for 12/21/2007 at 09:30 AM at San Francisco Courtroom 23 - Carlson. (ac, ) (Entered: 11/29/2007) |
| 11/29/2007 | | **CORRECTIVE ENTRY** Court set hearing for motion. (RE: related document(s)13 Motion to Amend filed by Counter-Claimant Stephanie Dodson, Defendant Stephanie Dodson). (ac, ) (Entered: 11/29/2007) |
| 11/30/2007 | 15 | Brief/Memorandum in Opposition to *Opposition of Yugen Kaisha, Y.K.F. to Motion for Intervention by Martin F. Triano* (RE: related document(s)12 Motion to Intervene, ). Filed by Plaintiff Yugen Kaisha Y.K.F. (Monroe, James) (Entered: 11/30/2007) |
| 12/02/2007 | 16 | Statement of Non-Opposition to Motion to Intervene (RE: related document(s)12 Motion to Intervene, ). Filed by Defendant Stephanie Dodson (Belway, Joel) (Entered: 12/02/2007) |
| 12/07/2007 | 17 | Reply to *YKF's Opposition to Motion to Intervene* (RE: related document(s)12 Motion to Intervene, ). Filed by Intervenor-Plaintiff Martin Triano (Attachments: # 1 Certificate of Service) (Byrne, Mark) (Entered: 12/07/2007) |
| 12/07/2007 | 18 | Brief/Memorandum in Opposition to *Motion to Dismiss Counterclaim* (RE: related document(s)8 Motion Miscellaneous Relief). Filed by Counter-Claimant Stephanie Dodson (Belway, Joel) (Entered: 12/07/2007) |
| 12/11/2007 | 19 | Brief/Memorandum in Opposition to *Yugen Kaisha, Y.K.F.'s Opposition to Defendant's Motion to Compel Plaintiff to Furnish Security For Costs, and Response to Motion to Amend Answer* (RE: related document(s)13 Motion to Amend). Filed by Plaintiff Yugen Kaisha Y.K.F. (Monroe, James) (Entered: 12/11/2007) |
| 12/14/2007 | 20 | Reply to *Defendant's Opposition to Plaintiff's Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction* (RE: related document(s)8 Motion Miscellaneous Relief). Filed by Plaintiff Yugen Kaisha Y.K.F. (Monroe, James) (Entered: 12/14/2007) |

| 12/17/2007 | ◑21 | Reply to *Opposition to Motion to Amend Answer and to Compel Plaintiff to Furnish Security for Costs* (RE: related document(s)13 Motion to Amend). Filed by Defendant Stephanie Dodson (Attachments: # 1 Exhibit Transcript of Findings of Fact and Conclusions of Law in A.P. 05-3485) (Belway, Joel) (Entered: 12/17/2007) |
|---|---|---|
| 12/20/2007 | ◑22 | Intervenor's Notice of Continued Hearing (RE: related document(s)8 Motion Miscellaneous Relief filed by Counter-Defendant Yugen Kaisha Y.K.F., Plaintiff Yugen Kaisha Y.K.F., 3 Summons Issued, 13 Motion to Amend filed by Counter-Claimant Stephanie Dodson, Defendant Stephanie Dodson). Status Conference to be held on 1/7/2008 at 9:30 AM San Francisco Courtroom 23 - Carlson for 3, Hearing to be held on 1/7/2008 at 9:30 AM San Francisco Courtroom 23 - Carlson for 8, Hearing to be held on 1/7/2008 at 9:30 AM San Francisco Courtroom 23 - Carlson for 13, Filed by Intervenor-Plaintiff Martin Triano. (Attachments: # 1 Certificate of Service) (Byrne, Mark) (Entered: 12/20/2007) |
| 01/04/2008 | ◑23 | Tentative Ruling regarding (1) Yugen Kaisha, Y.K.F.'s motion to dismiss counterclaim and (2) Martin Triano's motion to intervene (RE: related document(s)8 Motion Miscellaneous Relief filed by Counter-Defendant Yugen Kaisha Y.K.F., Plaintiff Yugen Kaisha Y.K.F., 12 Motion to Intervene filed by Intervenor-Plaintiff Martin Triano). (ac, ) (Entered: 01/04/2008) |
| 01/07/2008 | ◑ | Courtroom Hearing Continued (RE: Motion to Amend - related document(s) 13 ) (Continued to 1/14/2008 09:30 AM at San Francisco Courtroom 23 - Carlson) (gh, ) (Entered: 01/07/2008) |
| 01/07/2008 | ◑ | Courtroom Hearing Continued (RE: Motion Miscellaneous Relief - related document(s) 8 ) (Continued to 1/14/2008 09:30 AM at San Francisco Courtroom 23 - Carlson) (gh, ) (Entered: 01/07/2008) |
| 01/07/2008 | ◑24 | Certification for withdrawal of reference and assignment to District Judge(Bankruptcy Local Rule 9015(2)(b)(RE: related document(s)8 Motion Miscellaneous Relief filed by Counter-Defendant Yugen Kaisha Y.K.F., Plaintiff Yugen Kaisha Y.K.F., 23 Order). (ac, ) (Entered: 01/08/2008) |
| 01/08/2008 | ◑25 | Transmittal to District Court re Order Certification For Withdrawal of Reference and Assignment To District Judge (Bankruptcy Local Rule 9015(2)(b). (RE: related document(s)24 Order). (ac, ) (Entered: 01/08/2008) |



**Entered on Docket
January 08, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: January 07, 2008

UNITED STATES BANKRUPTCY COURT
Northern District of California
I certify that this is a true, correct and full copy
of the original document on file in my custody.
Dated _____
by _____
Deputy Clerk

**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

CV 08 0225 SC

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re                                    )  Case No. 05-32929 TEC
                                         )
ALEXANDER N. POPOV,                      )
                                         )  Chapter 7
                                         )
                    Debtor.              )
_____)
YUGEN KAISHA Y.K.F.,                     )
                                         )
                    Plaintiff,           )
                                         )
        vs.                              )  Adv. Proc. No. 07-3104 TC
                                         )
STEPHANIE DODSON,                        )
                                         )
                    Defendant.           )
_____)
STEPHANIE DODSON,                        )
                                         )
                    Counter-Claimant,    )
        vs.                              )
                                         )
YUGEN KAISHA Y.K.F.,                     )
                                         )
                    Counter-Defendant.   )
_____)

**CERTIFICATION FOR WITHDRAWAL OF REFERENCE AND ASSIGNMENT TO
DISTRICT JUDGE (BANKRUPTCY LOCAL RULE 9015(2)(b))**

    Plaintiff filed an action to set aside a fraudulent conveyance
under 11 U.S.C. §§ 544(b) and 548.  Defendant filed a counterclaim
asserting a breach of contract on which she properly demanded trial

**CERTIFICATION FOR WITHDRAWAL
OF REFERENCE**
                            -1-

1  by jury.  Defendant does not consent to trial by jury before the
2  bankruptcy court.  It appears that this court has subject-matter
3  jurisdiction over the counterclaim, and that the counterclaim
4  should not be dismissed.  It appears further that the claim and
5  counterclaim will involve consideration and proof regarding many of
6  the same facts, and that judicial economy would be furthered by
7  trying them in a single action.

8       The court therefore certifies that the reference should be
9  withdrawn and the action assigned to a District Judge pursuant to
10 Bankruptcy Local Rule 9015-2(b).

11      The court does not address whether the motion to intervene by
12 Martin Triano should be granted.

13                        **END OF CERTIFICATION**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION FOR WITHDRAWAL
OF REFERENCE
                              -2-

1      **Court Service List**

2

3    James S. Monroe, Esq.
     Law Offices of Nixon Peabody
4    1 Embarcadero Center #1800
     San Francisco, CA 94111-3996
5
     Joel K. Belway, Esq.
6    Law Offices of Joel K. Belway
     235 Montgomery St. #668
7    San Francisco, CA 94104

8    Mark D. Byrne, Esq.
     Law Offices of Martin F. Triano
9    25 Jessie St. 16th Fl.
     San Francisco, CA 94105
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOEL K. BELWAY [60556]
THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation
235 Montgomery Street, Suite 668
San Francisco, California 94104
Telephone:   415-788-1702
Facsimile:   415-788-1517

**CV 08**                **0225**<sup>SC</sup>

Attorney for Defendant
and Counterclaimant
STEPHANIE DODSON

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | ) Case No. 05-32929 |
| | ) |
| ALEXANDER N. POPOV, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| ——————————————— | ) A.P. No. 07-03104 |
| | ) |
| YUGEN KAISAH, Y.K.F. | ) |
| | ) **ANSWER TO COMPLAINT TO AVOID** |
| Plaintiff, | ) **AND RECOVER FRAUDULENT** |
| vs. | ) **TRANSFER AND FOR INJUNCTIVE** |
| | ) **RELIEF, COUNTERCLAIM AND** |
| STEPHANIE DODSON, | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| Defendant. | ) |
| ——————————————— | ) |
| | ) |
| STEPHANIE DODSON, | ) |
| Counterclaimant, | ) |
| vs. | ) |
| | ) |
| YUGEN KAISAH, Y.K.F. | ) |
| | ) |
| Claimant. | ) |
| ——————————————— | ) |

COMES NOW defendant, STEPHANIE DODSON ("Defendant"), and in

answer to the Complaint to Avoid and Recover Fraudulent Transfer

and for Injunctive Relief ("Complaint") of plaintiff, YUGEN
KAISHA, Y.K.F. ("Plaintiff"), admits, denies and alleges as
follows:

## JURISDICTION AND VENUE

1.   Defendant denies the allegations of paragraph 1 of the
Complaint.

2.   Defendant denies the allegations of paragraph 2 of the
Complaint.

3.   Defendant denies the allegations of paragraph 3 of the
Complaint.

4.   Defendant denies the allegations of paragraph 4 of the
Complaint.

## PARTIES AND BACKGROUND FACTS

5.   Defendant admits the allegations of paragraph 5.

6.   Defendant admits the allegations of paragraph 6.

7.   Answering paragraph 7, Defendant admits and alleges that
Alexander Popov ("Debtor") once owned 3,744,000 shares of common
stock ("Shares") of Smart Alec's Intelligent Food, Inc. ("Smart
Alec's") but transferred his residual interest in the Shares to
Defendant on April 18, 2004 pursuant to that certain Share
Purchase Agreement between Debtor and Defendant (the "Agreement")
dated April 18, 2004.  Except as expressly admitted, Defendant
denies the allegations of paragraph 7.

8.   Defendant admits the allegations of paragraph 8.

2

9.   Defendant denies the allegations of paragraph 9, and alleges that this Court found at trial in Triano v. Popov, A.P. No. 05-3485 (the "Triano Adversary Proceeding") that Debtor transferred his residual interest in the Shares to Defendant on April 18, 2004. The Court's findings in the Triano Adversary Proceeding are incorporated herein by reference.

10.   Defendant admits the allegations of paragraph 10.

11.   Defendant lacks sufficient information or belief to answer the allegations of paragraph 11 of the Complaint, and upon such grounds denies such allegations.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### (Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §584(a)(1)(A))

12.   Answering paragraph 12 of the Complaint, Defendant repeats and incorporates by reference each admission, denial, and allegation contained in paragraphs 1 through 11 of this Answer as though set forth at length herein.

13.   Answering paragraph 13 of the Complaint, Defendant admits and alleges that Debtor transferred his residual interest in the Shares to Defendant for $12,500 on April 18, 2004, as found by the Court at trial in the Triano Adversary Proceeding. Except as expressly admitted, Defendant denies the allegations of paragraph 13.

14.   Defendant denies the allegations of paragraph 14.

15.   Defendant denies the allegations of paragraph 15.

3

ANSWER AND COUNTERCLAIM

16.    Answering paragraph 16 of the Complaint, Defendant admits and alleges that she and Debtor executed the Agreement on April 18, 2004 and that a true and correct copy of the Agreement is attached as Exhibit 3 to the Complaint.  Except as expressly admitted, Defendant denies the allegations of paragraph 16.

17.    Defendant denies the allegations of paragraph 17.

18.    Defendant admits the allegations of paragraph 18.

19.    Defendant denies the allegations of paragraph 19.

20.    Defendant denies the allegations of paragraph 20.

## SECOND CAUSE OF ACTION

**(Avoidance and Recovery of Fraudulent Transfer Under Bankruptcy Code §544(b)(1) and California Civil Code §3439.04(a)(1))**

21.    Answering paragraph 21 of the Complaint, Defendant repeats and incorporates by reference each admission, denial, and allegation contained in paragraphs 1 through 20 of this Answer as though set forth at length herein.

22.    Defendant denies the allegations of paragraph 22.

## THIRD CAUSE OF ACTION

**(Avoidance and Recovery of Fraudulent Transfer Under Bankruptcy Code §548(a)(1)(B))**

23.    Answering paragraph 23, Defendant repeats and incorporates by reference each admission, denial and allegation set forth in paragraphs 1-13, 17, 18, and 20 of this Answer as though fully set forth herein.

24.    Answering paragraph 24, Defendant admits and alleges that the transfer of Debtor's residual interest in the Shares to Defendant under the Agreement was to or for the benefit

4

of Defendant and Debtor.  Except as expressly admitted, Defendant

1  denies the allegations of paragraph 24.

2      25.   Defendant denies the allegations of paragraph 25.

3      26.   Defendant denies the allegations of paragraph 26.

4                    **FOURTH CAUSE OF ACTION**

5  **(Avoidance and Recovery of Fraudulent Transfer Under Bankruptcy**

6      **Code §544(b)(1) and California Civil Code §3439.05)**

7      27.   Answering paragraph 23, Defendant repeats and

8  incorporates by reference each admission, denial and allegation

9  set forth in paragraphs 1-13, 17, 18, 20, and 24-26 of this

10 Answer as though fully set forth herein.

11     28.   Defendant denies the allegations of paragraph 28.

12     29.   Defendant denies the allegations of paragraph 29.

13                    **FIFTH CAUSE OF ACTION**

14   **(Injunctive Relief under Rule 7065 of the Federal Rules of**

15    **Bankruptcy Procedure and California Civil Code §3439.07)**

16     30.   Answering paragraph 30, Defendant repeats and

17 incorporates by reference each admission, denial and allegation

18 set forth in paragraphs 1-29 of this Answer.

19     31.   Answering paragraph 31, Defendant admits and alleges

20 that there is no legal ground to prevent her from transferring

21 the Shares.  Except as expressly admitted, Defendant denies the

22 allegations of paragraph 31.

23     32.   Defendant denies the allegations of paragraph 32.

24                   **FIRST AFFIRMATIVE DEFENSE**

25     The Complaint and each claim therein fail to state a claim

26 against Defendant upon which relief can be granted.

27

28

5

## SECOND AFFIRMATIVE DEFENSE

1  The Court lacks jurisdiction over the claims asserted in the
2  Complaint.
3
## THIRD AFFIRMATIVE DEFENSE
4
   The Complaint and each claim therein are barred by the
5
   unclean hands of the Plaintiff.
6
## FOURTH AFFIRMATIVE DEFENSE
7
8  The claims by Plaintiff are subject to offset and
9  recoupment.
10
## FIFTH AFFIRMATIVE DEFENSE
11  The Plaintiff lacks standing in this Court to assert the
12  claims of the Complaint.
13  WHEREFORE, Defendant prays for judgment as follows:
14  1.  That Plaintiff take nothing and for judgment in favor of
15  Defendant;
16  2.  For costs of suit;
17  3.  For reasonable attorneys fees to the extent allowed by
18  law; and
19
20  4.  Such other and further relief as the Court may deem meet
21  in the premises.
22
23  Dated: October 23, 2007          THE LAW OFFICE OF JOEL K. BELWAY
                                     Professional Corporation
24
                                     /s/ Joel K. Belway
25                                   JOEL K. BELWAY
                                     Attorney for Defendant
26                                   Stephanie Dodson
27
28

6

## DEMAND FOR JURY

Defendant Stephanie Dodson hereby demands trial by jury.

Dated: October 23, 2007          THE LAW OFFICE OF JOEL K. BELWAY
                                 Professional Corporation

                                 /s/ Joel K. Belway
                                 JOEL K. BELWAY
                                 Attorney for Defendant
                                 Stephanie Dodson

## COUNTERCLAIM

1.   Counterclaimant, Stephanie Dodson ("Counterclaimant"),
and counterdefendant, Yugen Kaisha, Y.K.F. ("Counterdefendant"),
were parties to that certain Closing Agreement re Payoff of
Secured Redemption Promissory Note dated March 12, 2007 ("Closing
Agreement") under which Counterclaimant paid off the balance of
certain obligations of Smart Alec's and Debtor to
Counterdefendant under agreements referred to in the Closing
Agreement, and herein, as the Settlement Documents.

2.   The transaction between Counterclaimant and
Counterdefendant that closed under the Closing Agreement
involved, *inter alia*, a redemption of the Shares in consideration
for the payment of certain obligations of Smart Alec's and Debtor
to the Counterdefendant.

3.   In or about the summer of 2006 Counterclaimant sought
to pay any sums owed to Counterdefendant under the Settlement
Documents.  Counterclaimant is informed and believes and thereon
alleges that Counterdefendant, in bad faith, delayed and stalled

7

a closing of the transaction that closed under the Closing

1 Agreement, causing Counterclaimant to pay approximately $90,000,

2 according to proof, more than she would have had to pay had

3 Counterdefendant acted in good faith and closed the transaction

4 when Counterclaimant originally sought to close.

5
    4.    Counterclainant is informed and believes and thereon
6
alleges that Counterdefendant's actions constituted a bad faith
7
breach of contract, entitling Counterclaimant to general, special
8
and punitive damages, according to proof.
9
10    WHEREFORE, Counterclaimant prays for judgment as follows:

11    1.    For judgment in favor of Counterclaimant and against

12 Counterdefendant for general, special and punitive damages,

13 according to proof at trial;

14    2.    Costs of suit incurred herein;

15    3.    Attorneys fees to the extent allowed by law;

16    4.    Such other and further relief as the Court may deem meet

17 in the premises.

18

19 Dated: October 23, 2007          THE LAW OFFICE OF JOEL K. BELWAY
20                                  Professional Corporation

21                                  /s/ Joel K. Belway
                                    JOEL K. BELWAY
22                                  Attorney for Counterclaimant
                                    Stephanie Dodson
23

24                        **DEMAND FOR JURY**

25    Counterclaimant Stephanie Dodson hereby demands trial by

26 jury.

27

28

8

Dated: October 23, 2007        THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation

/s/ Joel K. Belway
JOEL K. BELWAY
Attorney for Counterclaimant
Stephanie Dodson

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9

ANSWER AND COUNTERCLAIM

## DECLARATION OF SERVICE

I am over the age of eighteen years and not a party to the within action.  On October 23, 2007, I served the attached **Answer to Complaint to Avoid and Recover Fraudulent Transfer and for Injunctive Relief, Counterclaim and Demand for Jury Trial** on the interested parties in this action by placing true copies thereof in sealed envelopes and transmitting said envelopes to the following addresses by the means indicated:

           Via First-Class U.S. Mail

           James S. Monroe, Esq.
           Gregory E. Schopf, Esq.
           NIXON PEABODY LLP
           One Embarcadero Center, Suite 1800
           San Francisco, CA 94111-3996

           U.S. Trustee
           235 Pine Street, Suite 850
           San Francisco, CA 94104

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 23, 2007, at San Francisco, California.


                    \s\ Joel K. Belway

1 | James S. Monroe, Esq. (State Bar Number: 102328)
2 | Gregory E. Schopf (State Bar Number: 122862)
  | NIXON PEABODY LLP
3 | One Embarcadero Center, Suite 1800
  | San Francisco, CA 94111-3996
4 | Telephone: (415) 984-8200
  | Facsimile: (415) 984-8300
5 | E-mail: jmonroe@nixonpeabody.com
  |
6 | Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

**SC**

# CV 08 · 0225

7

8 UNITED STATES BANKRUPTCY COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10 SAN FRANCISCO DIVISION

11

| | |
|---|---|
| In re: | Case No. 05-32929 |
| ALEXANDER N. POPOV, | Chapter 7 |
| Debtor. | |
| | |
| YUGEN KAISHA, Y.K.F., | Adv. Pro. No.: 07-03104 |
| Plaintiff, | **MOTION OF YUGEN KAISHA, Y.K.F. TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| STEPHANIE DODSON, | **Hearing** |
| Defendant. | Date:  December 21, 2007 |
| | Time:  9:30 a.m. |
| | Place:  Courtroom 23 |
| | Judge:  Hon. Thomas E. Carlson |

23 **Introduction and Summary of Relief Requested**

24 Yugen Kaisha, Y.K.F. ("YKF"), plaintiff in the above-captioned action, hereby submits this

25 motion pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(1) of the

26 Federal Rules of Civil Procedure for dismissal of the counterclaim filed herein by defendant

27 Stephanie Dodson ("Dodson") for lack of subject matter jurisdiction on the grounds that there is no

28

MOTION TO DISMISS COUNTERCLAIM
ADV. CASE NO. 07-03104

10805018.1

1  independent jurisdictional basis for the counterclaim under 28 U.S.C. §1334(b) and it falls outside the
2  court's supplemental jurisdiction under 28 U.S.C. §1367(a).

3       YKF's complaint seeks to avoid and recover the debtor's prepetition transfer of 3,774,000
4  shares of common stock (the "Debtor's Shares") of Smart Alec's Intelligent Food, Inc., a California
5  corporation ("Smart Alec's") to Dodson as a fraudulent conveyance. YKF has the right to pursue this
6  avoidance action pursuant to an assignment agreement entered into with the Chapter 7 Trustee of the
7  debtor's bankruptcy estate which was authorized and approved by order entered herein on July 31,
8  2007. YKF maintains that the Debtor's Shares were transferred to Dodson shortly before the
9  September 6, 2005 petition date with the actual intent to hinder, delay or defraud the debtor's
10  creditors by removing said shares from the bankruptcy estate and thereby retaining control of Smart
11  Alec's to the exclusion of the debtor's creditors.

12       Dodson's counterclaim alleges a state law based contract claim regarding a Stock Redemption
13  Agreement, dated February 6, 2004, between Smart Alec's and YKF, whereby Smart Alec's agreed
14  to repurchase YKF's 1,440,000 shares of common stock of Smart Alec's (the "YKF Shares"). This
15  Stock Redemption Agreement was entered into as part of a Settlement Agreement entered into
16  between YKF, the debtor, Smart Alec's and Dodson, to settle a lawsuit filed by YKF regarding a
17  dispute concerning the accounting and management of Smart Alec's and the use of the funds YKF
18  invested in Smart Alec's to purchase the YKF Shares. Pursuant to the Settlement Agreement and
19  Stock Redemption Agreement, Smart Alec's agreed to repurchase the YKF Shares for $775,000 as
20  provided therein. On March 12, 2007, the balance due under the Stock Redemption Agreement was
21  paid to YKF and the YKF Shares were transferred to Smart Alec's. Monroe Dec., ¶¶ 2-3.

22       By her counterclaim herein, Dodson alleges that YKF in some unexplained way delayed the
23  payoff of the amount due under the Stock Redemption Agreement, causing additional amounts to
24  have to be paid at the closing, and based thereon, seeks money damages from YKF. YKF denies this
25  allegation, but the truth or falsity thereof is immaterial to this motion.

26
27
28
   MOTION TO DISMISS COUNTERCLAIM                    -2-
   ADV.CASE NO. 07-03104

| | |
|---|---|
| 1 | **Argument** |
| 2 | A bankruptcy court has subject matter jurisdiction to adjudicate a counterclaim in an |
| 3 | adversary proceeding only if there is an independent jurisdictional basis for the counterclaim as |
| 4 | provided by 28 U.S.C. §1334(b) or it falls within the court's supplemental jurisdiction under 28 |
| 5 | U.S.C. §1367(a). |

Pursuant to 28 U.S.C. §1334(b), the bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Dodson's counterclaim does not fall within any of these categories since it is based solely upon state law, exists apart from the bankruptcy case, and does not involve the debtor or the debtor's estate or have any conceivable potential impact on the bankruptcy estate. The counterclaim seeks money damages on behalf of Dodson only against YKF only. Accordingly, this dispute is not within the statutory grant of bankruptcy jurisdiction.

Likewise, Dodson's counterclaim is not within the bankruptcy court's supplemental jurisdiction under 28 U.S.C. §1367(a) (*See In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005). Supplemental jurisdiction extends only to those claims that are "so related to the (plaintiff's) claims...that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. §1367(a) (emphasis and parentheses added). This embodies a requirement that all claims arise from a "common nucleus of operative facts." *In re Pegasus Gold Corp., supra,* at 1195; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966). Applying this requirement here, it is clear that the aggregate of operative facts giving rise to Dodson's counterclaim (for breach of contract regarding YKF's post-petition sale of its shares of Smart Alec's to Smart Alec's) is entirely different from the facts supporting YKF's complaint (for avoidance of the debtor's prepetition transfer of his shares of Smart Alec's to Dodson). The complaint and counterclaim bear no logical relation to each other and rest upon different documentary, testimonial and other evidence. Accordingly, the counterclaim is not within the bankruptcy court's supplemental jurisdiction.

1

## Conclusion

2    Based upon the foregoing authorities and argument, YKF respectfully requests that its motion

3    to dismiss Dodson's counterclaim be granted and for such other relief as the court deems appropriate.

4

5    Dated:  November 14, 2007                    NIXON PEABODY LLP

6

7
                                                  By: */s/ James S. Monroe*
8                                                     James S. Monroe
                                                     Attorneys for Yugen Kaisha, Y.K.F.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     MOTION TO DISMISS COUNTERCLAIM                    -4-
     ADV.CASE NO. 07-03104

1 │ JOEL K. BELWAY [60556]
    THE LAW OFFICE OF JOEL K. BELWAY
2 │ Professional Corporation
    235 Montgomery Street, Suite 668
3 │ San Francisco, California 94104
    Telephone:  415-788-1702                                    **SC**
4 │ Facsimile:  415-788-1517      **CV  08**        **·02 2 5**

5 │ Attorney for Defendant
    and Counterclaimant
6 │ STEPHANIE DODSON

7 │

8 │                    **UNITED STATES BANKRUPTCY COURT**

9 │                    **NORTHERN DISTRICT OF CALIFORNIA**

10 │                       **SAN FRANCISCO DIVISION**

11 │

12 │ In re:                          )Case No. 05-32929
                                     )
13 │                                 )
    ALEXANDER N. POPOV,              )Chapter 7
14 │                                 )
                 Debtor.             )
15 │                                 )
    _____ )
16 │                                 )A.P. No. 07-03104
    YUGEN KAISAH, Y.K.F.             )
17 │                                 )**MOTION (1) TO AMEND ANSWER AND**
                                     )**(2) TO COMPEL PLAINTIFF TO**
18 │ STEPHANIE DODSON,               )**FURNISH SECURITY FOR COSTS**
                                     )
19 │              Defendant.         )
                                     )Date: Dec. 21, 2007
20 │ _____ )Time: 9:30 a.m.
    STEPHANIE DODSON,                )Court: Judge Carlson
21 │             Counterclaimant,    )
          vs.                        )
22 │                                 )
                                     )
23 │ YUGEN KAISAH, Y.K.F.            )
                                     )
24 │              Claimant.          )
                                     )
    _____ )
25 │
        COMES NOW defendant, STEPHANIE DODSON ("Defendant"), and
26 │
    upon motion (1) to amend her Answer to add the affirmative
27 │
    defenses of lack of capacity and collateral estoppel, and (2) to
28 │

                                     1

1 | April 20, 2006. Therefore the date of the contract in question,
2 | for the transfer to Defendant of Debtor's residual interest of
3 | the Debtor in the shares of stock of Smart Alec's Intelligent
4 | Foods, Inc. ("Smart Alec's"), is an essential part of Plaintiff's
5 | Section 548 claim and Defendant's defenses thereto.

6
7
   **B. Lack of Capacity.**

8 |     4.   As to capacity, Defendant seeks to assert the incapacity
9 | of Plaintiff to bring this proceeding because it is not qualified
10 | to do business in California, and, potentially, it may not have
11 | capacity to sue under Japanese law. As set forth in the
12 | Declaration of Joel K. Belway ("Belway Declaration"), the
13 | California Secretary of State's online record of corporations
14 | does not show Plaintiff's name.

15 |     5.   Plaintiff has sued under Section 548, but also asserts
16 | state law claims for fraudulent conveyance. Even if the Section
17 | 548 claim could stand by itself, and even if Plaintiff's lack of
18 | qualification to do business in California did not affect
19 | Plaintiff's capacity to sue thereunder, Plaintiff would have to
20 | demonstrate capacity to bring its state law claims. Under
21 | California law, a foreign corporation not qualified to do
22 | business in California may not sue in California courts,
23 | Corporations Code Section 2203(c). Defendant submits that rule
24 | would also preclude Plaintiff's suing in this Court on state law
25 | claims.
26

27 |     6.   Defendant seeks leave to amend her Answer to add the
28 | lack of capacity and collateral estoppel defenses under Rule

1  15(a), FRCP, which is incorporated into Bankruptcy Rule 7015.
2  Rule 15 states that leave to amend a pleading "shall be freely
3  given when justice requires." In this case, no prejudice would
4  result from allowing Defendant to amend to add the two additional
5  defendants. There has been one status conference, and the case is
6  not at issue, with Plaintiff having moved to dismiss the
7  Counterclaim. Moreover, Martin Triano ("Triano"), the plaintiff
8  in the Triano Adversary Proceeding, has moved to intervene in
9  this proceeding, and the Court has not yet heard that motion.
10

11 **SECURITY FOR COSTS**

12      7.   Defendant also seeks an order that Plaintiff, which
13 alleges that it is a Japanese corporation, furnish security for
14 costs. Specifically, Plaintiff should be required to furnish
15 $25,000 in security, or such other sum as the Court deems
16 reasonable.

17      8.   This Court has the power to require Plaintiff to post
18 security under the federal courts' power to tax costs. *Anderson*
19 *v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir.
20 1993). Federal courts follow the forum state's practice with
21 regard to security for costs. *Simulnet East Assocs. v. Ramada*
22 *Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994).
23

24      9.   California law provides in CCP Section 1030 that a
25 defendant may file a motion for an order requiring a nonresident
26 or foreign corporation plaintiff to furnish an undertaking for
27 costs and attorney's fees.
28

4

1

**DECLARATION OF SERVICE**

2      I am over the age of eighteen years and not a party to the

3  within action.  On November 27, 2007, I served the attached

4  **sMotion (1) to Amend Answer and (2) to Compel Plaintiff to**

5  **Furnish Security for Costs** on the interested parties in this

6  action by placing true copies thereof in sealed envelopes and

7  transmitting said envelopes to the following addresses by the

8  means indicated:

9

                    Via First-Class U.S. Mail
10

                James S. Monroe, Esq.
11              Gregory E. Schopf, Esq.
                NIXON PEABODY LLP
12              One Embarcadero Center, Suite 1800
13              San Francisco, CA 94111-3996

14              U.S. Trustee
                235 Pine Street, Suite 850
15              San Francisco, CA 94104

16              Mark D. Byrne, Esq.
                Triano & Byrne
17              25 Jessie Street
                16th Floor
18              San Francisco, CA 94105-2749

19

20      I declare under penalty of perjury that the foregoing is

21  true and correct.  Executed on November 27, 2007, at San

22  Francisco, California.

23

24                              \s\ Joel K. Belway

25

26

27

28

                                6
MOTION TO AMEND ANSWER AND FOR SECURITY FOR COSTS

JOEL K. BELWAY [60556]
THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation
235 Montgomery Street, Suite 668
San Francisco, California 94104
Telephone:   415-788-1702
Facsimile:   415-788-1517

**SC**

Attorney for Defendant
and Counterclaimant
STEPHANIE DODSON

# CV 08    0225

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | )Case No. 05-32929 |
| | ) |
| ALEXANDER N. POPOV, | )Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| | )A.P. No. 07-03104 |
| YUGEN KAISAH, Y.K.F. | ) |
| | ) **DECLARTION OF JOEL K. BELWAY RE** |
| | ) **MOTION (1) TO AMEND ANSWER AND** |
| STEPHANIE DODSON, | ) **(2) TO COMPEL PLAINTIFF TO** |
| | ) **FURNISH SECURITY FOR COSTS** |
| Defendant. | ) |
| | )Date: Dec. 21, 2007 |
| | )Time: 9:30 a.m. |
| STEPHANIE DODSON, | )Court: Judge Carlson |
| Counterclaimant, | ) |
| vs. | ) |
| | ) |
| YUGEN KAISAH, Y.K.F. | ) |
| | ) |
| Claimant. | ) |
| | ) |

     I, Joel K. Belway, declare and state as follows:

     1. I have personal knowledge of the facts set forth in this

Declaration and if required I could and would testify competently

1

**DECLARATION OF SERVICE**

2

3     I am over the age of eighteen years and not a party to the

4    within action.  On November 27, 2007, I served the attached

5    **Declaration of Joel K. Belway re Motion (1) to Amend Answer and**

6    **(2) to Compel Plaintiff to Furnish Security for Costs** on the

7    interested parties in this action by placing true copies thereof

8    in sealed envelopes and transmitting said envelopes to the

9    following addresses by the means indicated:

10                   Via First-Class U.S. Mail

11                James S. Monroe, Esq.
                  Gregory E. Schopf, Esq.
12                NIXON PEABODY LLP
                  One Embarcadero Center, Suite 1800
13                San Francisco, CA 94111-3996

14                U.S. Trustee
15                235 Pine Street, Suite 850
                  San Francisco, CA 94104
16
                  Mark D. Byrne, Esq.
17                Triano & Byrne
                  25 Jessie Street
18                16th Floor
                  San Francisco, CA 94105-2749
19

20     I declare under penalty of perjury that the foregoing is

21    true and correct.  Executed on November 27, 2007, at San

22    Francisco, California.
23

24
                              \s\ Joel K. Belway
25

26

27

28

                                   4

1    James S. Monroe, Esq. (State Bar Number: 102328)
     Gregory E. Schopf (State Bar Number: 122862)
2    NIXON PEABODY LLP
     One Embarcadero Center, Suite 1800
3    San Francisco, CA 94111-3996
     Telephone: (415) 984-8200
4    Facsimile: (415) 984-8300
     E-mail: jmonroe@nixonpeabody.com
5
     Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.
6

**SC**

**CV 08    0225**

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12    In re:                          Case No. 05-32929

13    ALEXANDER N. POPOV,        Chapter 7

14               Debtor.

15

16    YUGEN KAISHA, Y.K.F.,        Adv. Pro. No.: 07-03104

17               Plaintiff,      **OPPOSITION OF YUGEN KAISHA, Y.K.F.
TO MOTION FOR INTERVENTION BY**
18    v.                            **MARTIN F. TRIANO**

19    STEPHANIE DODSON,             **Hearing**

20               Defendant.      Date:      December 14, 2007
                                      Time:      9:30 a.m.
21                                         Place:     Courtroom 23
                                        Judge:    Hon. Thomas E. Carlson
22

23                    **INTRODUCTION AND STATEMENT OF FACTS**

24         Yugen Kaisha, Y.K.F. ("YKF"), plaintiff in the above-captioned action, hereby submits this

25    opposition to the motion of Martin F. Triano dba Law Offices of Martin F. Triano ("Triano") to file a

26    complaint in intervention in this action pursuant to Rule 7024 of the Federal Rules of Bankruptcy

27    Procedure and Rule 24 of the Federal Rules of Civil Procedure on the grounds that: (1) the

28    bankruptcy court does not have subject matter jurisdiction with respect to Triano's proposed

OPPOSITION TO MOTION FOR INTERVENTION
ADV CASE NO. 07-03104                                                      10821839.1

1   complaint since there is no independent jurisdictional basis for the complaint under §§28 U.S.C.

2   §1334(b) 157(b) and it falls outside the court's supplemental jurisdiction under 28 U.S.C. §1367(a);

3   and, alternatively, (2) even if the court were to have subject matter jurisdiction of Triano's proposed

4   complaint, the requirements for intervention are not met and, accordingly, the motion should be

5   denied.

6        YKF's complaint herein seeks to avoid and recover the debtor's prepetition transfer of

7   3,774,000 shares of common stock (the "Smart Alec's Shares") of Smart Alec's Intelligent Food,

8   Inc., a California corporation ("Smart Alec's") to Dodson as a fraudulent conveyance. YKF has the

9   right to pursue this avoidance action pursuant to an assignment agreement entered into with the

10   Chapter 7 Trustee of the debtor's bankruptcy estate which was authorized and approved by order

11   entered herein on July 31, 2007. YKF maintains that the Smart Alec's Shares were transferred to

12   Dodson shortly before the September 6, 2005 petition date with the actual intent to hinder, delay or

13   defraud the debtor's creditors by removing said shares from the bankruptcy estate and thereby

14   retaining control of Smart Alec's to the exclusion of the debtor's creditors.

15        Triano's proposed complaint in intervention alleges a state law based contract claim related to

16   a prepetition agreement allegedly entered into with the debtor regarding Triano's provision of various

17   legal services to the debtor. As part of the contract, Triano contends that the debtor granted him a

18   security interest for payment of sums due Triano under the fee agreement against certain assets,

19   including the Smart Alec's Shares. Pursuant to his proposed complaint in intervention for declaratory

20   relief against YKF and Dodson (which is in addition to his complaint against Dodson and Smart

21   Alec's concerning this dispute which is presently pending in Alameda County Superior Court),

22   Triano is essentially seeking to liquidate his attorney's fees claim for services allegedly provided to

23   the debtor and establish the validity of his alleged security interest in the Smart Alec's Shares as

24   collateral for the payment thereof. Since the debtor has received a discharge of any personal

25   obligation to pay any amounts owing to Triano under the alleged fee agreement, the relief sought

26   concerns the alleged collateral, not the debtor.

27

28
OPPOSITION TO MOTION FOR INTERVENTION     -2-
ADV.CASE NO. 07-03104

1

## ARGUMENT

2

**A.    The Court Does Not Have Subject Matter Jurisdiction With Respect to Triano's Proposed Complaint in Intervention.**

3

4    Rule 24 of the Federal Rules of Civil Procedure does not alter or displace subject matter

5   jurisdiction requirements. A bankruptcy court has subject matter jurisdiction to adjudicate a

6   complaint in intervention only if there is an independent jurisdictional basis for the counterclaim as

7   provided by 28 U.S.C. §§1334(b) and 157(b) or it falls within the court's supplemental jurisdiction

8   under 28 U.S.C. §1367(a).

9    Pursuant to 28 U.S.C. §§1334(b) and 157(b), the bankruptcy court has jurisdiction over "all

10   civil proceedings arising under title 11, or arising in or related to cases under title 11." Unlike YKF's

11   complaint which asserts avoidance claims arising under the Bankruptcy Code (11 U.S.C. §§548, 550

12   & 544(b)), Triano's complaint does not fall within any of these categories since it is based solely

13   upon state law, exists apart from the bankruptcy case, and does not involve or have any conceivable

14   potential impact on the bankruptcy estate. By his complaint, Triano seeks to liquidate his discharged

15   claim for prepetition attorney's fees allegedly owing by the debtor, establish a junior security interest

16   for this claim in the Smart Alec's Shares, and obtain certain relief against Dodson and YKF only.

17   Accordingly, his complaint is not within the statutory grant of bankruptcy jurisdiction.

18    Since the court does not have an independent basis for federal bankruptcy court jurisdiction

19   with respect to Triano's complaint, permissive intervention under Rule 24(b) is precluded without

20   further analysis. Recent Ninth Circuit cases have reaffirmed that an applicant for permissive

21   intervention must establish an independent basis for jurisdiction. *Northwest Forest Products Council*

22   *v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996); *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.

23   1993), *aff'd*, 64 F.3d 1266 (9th Cir. 1995).

24    Likewise, Triano's proposed complaint in intervention is not within the bankruptcy court's

25   supplemental jurisdiction under 28 U.S.C. §1367(a) (*See In re Pegasus Gold Corp.*, 394 F.3d 1189

26   (9th Cir. 2005), which precludes intervention as of right under Rule 24(a)(2). Supplemental

27   jurisdiction extends only to those claims that are "so related to the (plaintiff's) claims…that they <u>form</u>

28
OPPOSITION TO MOTION FOR INTERVENTION                    -3-
ADV CASE NO. 07-03104

1    part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C.

2    §1367(a) (emphasis and parentheses added). This embodies a requirement that all claims arise from a

3    "common nucleus of operative facts." *In re Pegasus Gold Corp., supra,* at 1195; *United Mine*

4    *Workers v. Gibbs,* 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966). Applying this

5    requirement here, it is clear that the aggregate of operative facts giving rise to Triano's complaint

6    (which seeks to liquidate and enforce certain contract rights under a prepetition contract for

7    attorney's fees) is entirely different from the facts supporting YKF's complaint (for avoidance of the

8    debtor's prepetition transfer of his shares of Smart Alec's to Dodson). YKF's complaint and Triano's

9    complaint bear no logical relation to each other and rest upon different documentary, testimonial and

10   other evidence. Under these circumstances, Triano's complaint is not within the bankruptcy court's

11   supplemental jurisdiction.

12

      **B.    Even If The Court Were to Have Subject Matter Jurisdiction of The Proposed Complaint In Intervention, The Requirements For Intervention Under Rule 24 Are Not Met In**

13   **This Case.**

14

      **(1) Triano is Not Entitled to Intervene As of Right Pursuant to Rule 24(a)(2)**

15        Intervention of right under Rule 24(a)(2) involves a four-part test, each of which must be

16   satisfied. (*See, Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Triano's proposed

17   Complaint in Intervention fails to satisfy two of these requirements – that he have a significantly

18   protectable interest in the lawsuit to merit intervention and that the resolution of YKF's claims will

19   actually affect Triano. *Id.*

20        As discussed above, YKF's complaint seeks to avoid and recover the Smart Alec's shares

21   transferred by the debtor to Dodson as a fraudulent conveyance. By this action, YKF does not seek

22   any relief regarding Triano's claimed security interest in the shares and any such interest will be

23   unaffected by the fraudulent conveyance action; meaning that whatever enforceable security rights

24   that Triano has with respect to the Smart Alec's Shares will continue regardless of whether the

25   transfer to Dodson is avoided as a fraudulent conveyance.

26        Triano posits that he may be inconvenienced if YKF prevails on its complaint and Triano it

27   subsequently becomes necessary for Triano to enforce it alleged security interest directly against

28

OPPOSITION TO MOTION FOR INTERVENTION        -4-
ADV.CASE NO. 07-03104

1   YKF. However, this result is highly speculative and does not support intervention. The mere fact that
2   intervention may be convenient for Triano does not establish a right to intervene in YKF's lawsuit.

3       Triano also argues that he may have an interest in any funds that YKF may receive in
4   settlement of the fraudulent conveyance action as proceeds of his alleged collateral. This is clearly
5   incorrect as any such settlement would be attributable to the avoidance action, not to a sale or
6   exchange of the Smart Alec's shares.

7       Since Triano has not and cannot establish any real impairment of a significant right that he
8   will suffer as a result of the fraudulent conveyance action, intervention as of right under Rule 24(a)(2)
9   is unavailable to him.

10  **(2)    Permissive Intervention By Triano Under Rule 24(b)(2) Inappropriate**

11      Under Rule 24(b)(2), permissive intervention may be appropriate where the original
12  complaint and the complaint in intervention share common questions of fact and law and where
13  permitting such intervention would not unduly delay or prejudice the original parties. The purpose of
14  the rule is to prevent a multiplicity of suits where common questions of law or fact are involved.
15  *Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922
16  F.2d 92, 97 (2nd Cir. 1990).

17      Here, as discussed above, there are no significant common questions of law or fact shared by
18  YKF's complaint and Triano's proposed complaint in intervention. In fact, the operative facts giving
19  rise to the respective complaints are entirely different. Under these circumstances alone, the court
20  should deny permissive intervention.

21      However, the Court should also deny intervention by Triano due to the numerous collateral
22  and complex issues that Triano proposes to inject into this litigation which will make the litigation
23  much more expensive and protracted for YFK. The nature of the action would be transformed from a
24  relatively straightforward avoidance action, to one involving what appears to be highly complex and
25  contentious contract and related disputes regarding the nature and amount of attorney's fees that
26  Triano may be entitled to recover. Intervention cannot be used to so radically alter the scope of
27  YKF's suit, causing it delay and prejudice. *Id.*

28  OPPOSITION TO MOTION FOR INTERVENTION          -5-
    ADV.CASE NO. 07-03104

tran

1

**CERTIFICATE OF SERVICE**

**CASE NAME:**      **IN RE ALEXANDER N., POPOV, Debtor;**

2    **ADV. PROCEEDING:** **YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON**

     **COURT:**           **U.S. Bankruptcy Court, Northern District of California**

3                         **(San Francisco)**

     **CASE NO.:**        **05-32929-TC; Adv. Pro. No.: 07-03104-TC**

4    **FILE:**            **031405.000006**

5          I, the undersigned, certify that I am employed in the City and County of San Francisco,

     California; that I am over the age of eighteen years and not a party to the within action; and that my

6    business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this

     date, I served the following document(s):

7

     **OPPOSITION OF YUGEN KAISHA, Y.K.F. TO MOTION FOR INTERVENTION BY**

8    **MARTIN F. TRIANO**

9    on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below

     by the following means of service:

10

       X  : B y First-Class Mail — I am readily familiar with the firm's practice for collection and

11   processing of correspondence for mailing. Under that practice, the correspondence is deposited with

     the United States Postal Service on the same day as collected, with first-class postage thereon fully

12   prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary

     business practices.

13

         : By Certified Mail Service — I am readily familiar with the firm's practice for collection and

14   processing of correspondence for Certified Mailing. Under that practice, the correspondence is

     deposited with the United States Postal Service on the same day as collected, with Certified Mail

15   postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee

     following ordinary business practices.

16

     Addressee

17

     Joel K. Belway                                United States Trustee

18   THE LAW OFFICE OF JOEL K. BELWAY             San Francisco Division

     Professional Corporation                      235 Pine Street, Suite 700

19   235 Montgomery Street, Suite 668              San Francisco, CA 94104

     San Francisco, California 94104

20

     Mark D. Byrne

21   Law Offices of Triano and Byrne

     25 Jessie Street, 16th Floor

22   San Francisco, CA 94105

23          I declare under penalty of perjury that the foregoing is true and correct. Executed on

     November 30, 2007, at San Francisco, California.

24

25                                               Carol S. Hardy

26

27

28   OPPOSITION TO MOTION FOR INTERVENTION              -7-

     ADV.CASE NO  07-03104

1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery Street, Suite 668
3  San Francisco, California 94104
   Telephone:  415-788-1702
4  Facsimile:  415-788-1517

5  Attorney for Defendant
   and Counterclaimant                *CV 08*                SC
6  STEPHANIE DODSON                                        0225

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12
   In re:                       ) Case No. 05-32929
13                              )
   ALEXANDER N. POPOV,          ) Chapter 7
14                              )
              Debtor.           )
15                              )
   _____  )
16                              ) A.P. No. 07-03104
   YUGEN KAISHA, Y.K.F., Plaintiff )
17                              ) **MEMORANDUM IN OPPOSITION TO**
              v.                ) **MOTION TO DISMISS COUNTERCLAIM**
18 STEPHANIE DODSON,            )
                                )
19            Defendant.        )
   _____  )
                                ) Date: Dec. 21, 2007
20                              ) Time: 9:30 a.m.
   STEPHANIE DODSON,            ) Court: Judge Carlson
21            Counterclaimant,  )
                                )
22       vs.                    )
                                )
23 YUGEN KAISHA, Y.K.F.         )
                                )
24            Counterdefendant.)
   _____  )
25
        Defendant and counterclaimant, STEPHANIE DODSON ("Dodson"),
26
   submits this Memorandum in opposition to the motion of
27
   counterdefendant, YUGEN KAISHA, Y.K.F. ("YKF"), to dismiss
28

                            1

1  Dodson's counterclaim (the "Counterclaim") against YKF (the "YKF
2  Motion").

3  ## I.   Introduction.

4     YKF has sued Dodson in its complaint herein (the
5  "Complaint") for an alleged fraudulent transfer to Dodson by
6  debtor, Alexander Popov ("Debtor"), of Debtor's interest in
7  certain shares of corporate stock of Smart Alec's Intelligent
8  Foods, Inc., a California corporation ("Smart Alec's"). As she
9  testified at the trial in this Court in an objection to discharge
10 proceeding, *Triano v. Popov*, A.P. No. 05-3485 (the "Triano AP"),
11 Dodson purchased, under a share purchase agreement dated April
12 18, 2004 (the "Share Purchase Agreement"), for a price of
13 $12,500, Debtor's residual interest in 3,744,000 Smart Alec's
14 shares (the "Shares"), which were, as of April 2004, pledged to
15 YKF as security for hundreds of thousands of dollars of
16 indebtedness.
17

18     The Share Purchase Agreement is attached as Exhibit 3 to the
19 Complaint. Exhibit 1 to the YKF Motion is a copy of the
20 confidential settlement agreement and release among YKF, Smart
21 Alec's, Debtor and Dodson dated February 6, 2004 (the "Settlement
22 Agreement"); at page 2, paragraph 2.b, of that agreement, Debtor
23 agreed to pledge the Shares to YKF. Thus, at the time of the
24 transfer that is the subject of its Complaint, which YKF alleges
25 was intended to hinder, delay or defraud creditors, YKF had
26 physical possession of the Shares.
27

28

2
MEMO P&A IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM

1    Martin F. Triano ("Triano"), the plaintiff in the Triano AP,
2  has now sued Dodson (and Smart Alec's) in the Alameda County
3  Superior Court, in *Triano v. Dodson, et al.*, No. RG-07-322877
4  (the "Alameda SCT Action"), alleging that he, Triano, has a first
5  lien on the Shares. Triano has also filed a motion to intervene
6  in this proceeding (the "Intervention Motion"), contending that
7  because ownership of the Shares is being litigated herein, he has
8  an interest, as a lien claimaint, in protecting himself.
9

10    While Dodson disputes all claims against her (and against
11  Smart Alec's and the Chapter 7 estate) by Triano, she agrees that
12  intervention herein by Triano is appropriate and necessary, so
13  that her interests, too, can be determined in a single forum at a
14  single time. As she testified at the Triano AP trial, Dodson
15  caused the Shares to be redeemed from the pledge to YKF, which
16  also had a UCC-1 lien on the assets of Smart Alec's, borrowing
17  thousands of dollars from Summit Bank to redeem the Shares and to
18  acquire YKF's own shares in Smart Alec's. Whoever has a claim to
19  the Shares or a lien thereon should once and for all be decided.
20
21    **II.   Argument.**
22    **A. The Complaint.**
23    The Complaint alleges that the transfer to Dodson by Debtor
24  under the Share Purchase Agreement was intended to hinder, delay
25  or defraud creditors or, alternatively, was constructively
26  fraudulent (the "Transfer"). The Transfer was of Debtor's
27  residual interest in the Shares, and the Share Purchase Agreement
28  explicitly refers to the pledge of the Shares to YKF and recites

1  the $775,000 of indebtedness that had to be repaid to YKF to free
2  the Shares from YKF's possessory lien.

3  **B. The Counterclaim.**

4  The Counterclaim alleges that, in delaying Dodson's final
5  payoff of the balance of indebtedness to YKF (the same $775,000
6
7  indebtedness, secured by the Shares and assets of Smart Alec's,
8  that is the subject of the Settlement Agreement), YKF extracted
9  from Dodson the sum of approximately $90,000 in increased fees
10 and charges by delaying, in bad faith, the payoff.

11  Demonstrating, through the legal and business maneuver that
12 led to this proceeding, that avarice made it into the 21st
13 Century, YKF, after its final extraction from Dodson under the
14 Settlement Agreement, came to the Trustee herein and acquired,
15 for $30,000, the estate's avoidance rights. YKF then sued Dodson,
16 saying, in effect, that, after receiving $775,000 plus interest
17 and attorney's fees plus the approximately $90,000 that is the
18 subject of the Counterclaim, "We want more."

19  **C. The nexus between the Complaint and Counterclaim.**

20
21  Ownership and transfer of the corporate shares of Smart
22 Alec's provide the factual and legal nexus among the Claim, the
23 Counterclaim and the Intervention Motion. The Transfer,
24 challenged by YKF in the Complaint, followed the pledge of the
25 shares to YKF by Debtor, and preceded the redemption of the
26 Shares and YKF's owns shares in Smart Alec's, in the course of
27 which YKF's bad faith foot-dragging took place, giving rise to
28

1   the Counterclaim. By denying the YKF Motion and granting the
2   Intervention Motion, at the end of the day, the judge and jury in
3   this proceeding will be presented and can decide all issues
4   regarding the Transfer, ownership of the Shares, what was the
5   correct amount that should have been paid to redeem the Shares
6   and YKF's shares in Smart Alec's, whether Triano has a lien on
7   the Shares, and whether Triano has allowable claims for
8   attorney's fees, secured or otherwise.
9

10   **C. This Court has jurisdiction over the Counterclaim.**

11   While Dodson would concede for purposes of the YKF Motion,
12   that she could not have, as a plaintiff jurisdictionally opened
13   the door to this Court, walked in and sued YKF for the $90,000
14   that is the subject of the Counterclaim, the fact is that she did
15   not open that door. YKF opened the door when it sued Dodson.

16   In addressing the Complaint and her response thereto, Dodson
17   first had to consider the compulsory counterclaim rule under FRCP
18   13, incorporated by Bankruptcy Rule 7013. (Because Dodson has not
19   been sued by a bankruptcy trustee or debtor in possession, the
20   relief from compulsory counterclaims of Rule 7013 does not
21   apply.) Rule 13(a)(1), FRCP, requires a defendant to bring a
22   counterclaim against the plaintiff if the counterclaim arises out
23   of the same transaction or occurrence of the complaint. Here, the
24   transaction or occurrence of the Counterclaim is part of the same
25   factual chain starting with the Settlement Agreement and the
26   pledge of the Shares, leading to the Transfer, to the redemption
27
28

1  from YKF and to Dodson's forced overpayment to YKF. Thus, Dodson
2  could only withhold filing the Counterclaim at her peril.

3      Second, YKF, having started this litigation, which does not
4  impact the bankruptcy estate regardless of its outcome, should
5  not be heard to protest exercise of the supplemental jurisdiction
6  of this Court under 28 U.S.C. §1367(a). Such jurisdiction,
7  formerly known as pendent jurisdiction, allows this Court to
8  adjudicate a state law claim, as that raised by Dodson's
9  Counterclaim, if it is sufficiently related to a federal claim
10 properly before it.

11
12     The history of Smart Alec's shares of corporate stock
13 contains the names of the Debtor, YKF, Dodson and Triano. While
14 the Debtor has received a discharge, over Triano's unsuccessful
15 objection, his name is still being taken in vain by YKF and
16 Triano. What Dodson paid to Debtor on the front-end of this
17 history and whether that was too little, and what Dodson paid to
18 YKF on the back-end and whether that was too much, and whether
19 Triano's lien claim affects either YKF or Dodson or neither, are
20 the parts of the history Smart Alec's shares that should be
21 decided by this Court. Keeping all parts of the dispute and all
22 three of the disputants together lies within this Court's
23 discretionary exercise of supplemental jurisdiction.
24
25     YKF cites a Ninth Circuit case, *In re Pegasus Gold Corp.*,
26 394 F.3d 1189, 1195 (9th Cir. 2005), for the unremarkable
27 proposition that supplemental jurisdiction extends to claims that
28

1  are part of the same "common nucleus of operative facts." Dodson
2  and YKF agree on the law, but disagree on its application to the
3  facts. Dodson submits that the part of the history of the Smart
4  Alec's shares presented by the Counterclaims fits into, if on one
5  side, of the common nucleus of facts presented by the Complaint,
6  Counterclaim and Intervention Motion. And even if the Court were
7  to deny the latter, it would have, and should exercise,
8  supplemental jurisdiction over the Counterclaim.
9
10   **III. Conclusion.**
11     Based upon the foregoing, the Court should deny the YKF
12   Motion.
13
14                              Respectfully submitted,
15   Dated: December 7, 2007      THE LAW OFFICE OF JOEL K. BELWAY
16                                Professional Corporation
17                                /s/ Joel K. Belway
                                  JOEL K. BELWAY
18                                Attorney for Stephanie Dodson
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF SERVICE**

I am over the age of eighteen years and not a party to the within action.  On December 7, 2007, I served the attached **Memorandum in Opposition to Motion to Dismiss Counterclaim** on the interested parties in this action by placing true copies thereof in sealed envelopes and transmitting said envelopes to the following addresses by the means indicated:

Via First-Class U.S. Mail

James S. Monroe, Esq.
Gregory E. Schopf, Esq.
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996

U.S. Trustee
235 Pine Street, Suite 850
San Francisco, CA 94104

Mark D. Byrne, Esq.
Triano & Byrne
25 Jessie Street
16th Floor
San Francisco, CA 94105-2749

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 7, 2007, at San Francisco, California.

\s\ Joel K. Belway

1    James S. Monroe, Esq. (State Bar Number: 102328)
2    Gregory E. Schopf (State Bar Number: 122862)
     NIXON PEABODY LLP
     One Embarcadero Center, Suite 1800
3    San Francisco, CA 94111-3996    **CV 08**    **0225**
     Telephone: (415) 984-8200
4    Facsimile: (415) 984-8300
     E-mail: jmonroe@nixonpeabody.com
5
     Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.
6

7

8                 UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

| | |
|---|---|
| In re: | Case No. 05-32929 |
| ALEXANDER N. POPOV, | Chapter 7 |
|           Debtor. | |
| | |
| YUGEN KAISHA, Y.K.F., | Adv. Pro. No.: 07-03104 |
|           Plaintiff, | **YUGEN KAISHA, Y.K.F.'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO FURNISH SECURITY FOR COSTS, AND RESPONSE TO MOTION TO AMEND ANSWER** |
|      v. | |
| STEPHANIE DODSON, | |
|           Defendant. | **Hearing** |
| | Date:       December 21, 2007 |
| | Time:      9:30 a.m. |
| | Place:     Courtroom 23 |
| | Judge:    Hon. Thomas E. Carlson |

24        Yugen Kaisha, Y.K.F. ("YKF"), plaintiff in the above-captioned action, hereby submits this

25   (i) opposition to the motion of Stephanie Dodson ("Dodson") to compel YKF to furnish security for

26   costs on the grounds that the requirements for imposition of a bond under California Code of Civil

27   procedure §1030 are not established, and (ii) response to Dodson's motion to amend her answer to

28   the complaint.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## RESPONSE TO MOTION TO AMEND ANSWER

Dodson requests leave of court to amend her answer to the complaint to allege two new affirmative defenses – collateral estoppel and lack of capacity. As discussed below, neither of these proposed defenses has any conceivable applicability to this case.

**Collateral Estoppel.** YKF alleges in its complaint against Dodson that Alexander Popov ("Popov") transferred his shares of stock in Smart Alec's Intelligent Food, Inc. ("Smart Alec's") to Dodson shortly before the September 6, 2005 filing date of Popov's bankruptcy petition with the actual intent to hinder, delay or defraud his creditors. Dodson seeks to allege as an affirmative defense that YKF is precluded from establishing that the shares were transferred shortly before Popov's bankruptcy based upon an alleged determination by this court that the share transfer occurred on April 18, 2004 (the stated date of the share transfer agreement) in connection with the trial of Martin F. Triano's ("Triano") complaint objecting to Popov's discharge based upon fraudulent concealment of assets. Collateral estoppel is clearly inapplicable to YKF on these facts since neither YKF nor the Chapter 7 Trustee was a party or in privity with a party to the Triano action. Moreover, the share transfer date was not even litigated in the Triano action and was instead stipulated to by Triano and Popov. Collateral estoppel is inapplicable in any event to issues that were not actually and necessarily litigated in the prior action.

**Lack of Capacity.** Dodson also seeks to add as an affirmative defense that YKF lacks the capacity to sue herein based on California Corporations Code §2203(c) which precludes a foreign corporation from maintaining an action in California state court in connection with intrastate business unless it qualifies to do business in California. However, even if §2203(c) were applicable to this action in principle, it clearly has no applicability to the transaction in this case since the mere purchase of an avoidance action from the bankruptcy trustee by YKF, a foreign corporation with no California presence, does not amount to the conduct of intrastate business within the meaning of §2203. A foreign corporation's mere purchase of an asset from a resident of California is business done in interstate commerce, not intrastate commerce. *Charlton Silk Company v. Jones* (1923) 190 Cal. 341.

1    Notwithstanding the foregoing, YKF does not oppose Dodson's motion to amend her answer.

2    However, YKF does request that the court require Dodson to file an amended pleading which is

3    complete in itself as required by Bankruptcy Local Rule 1001-2(a)(26) and District Court Local Rule

4    10-1.

5    **OPPOSITION TO MOTION TO REQUIRE SECURITY FOR COSTS**

6    Dodson's motion for an order requiring YKF to furnish a $25,000 undertaking for costs

7    should be denied. Even assuming, *arguendo*, that California Code of Civil Procedure §1030 is

8    applicable as Dodson contends, the requirements for imposition of a bond under this statute are not

9    established.

10    It is undisputed that YKF is a foreign corporation with no U.S. presence. Thus, the first

11    requirement of §1030(b) is satisfied.

12    The second element of §1030(b) requires Dodson to present evidence to establish a

13    "reasonable possibility" that she will obtain judgment on YKF's complaint. Here, Dodson's burden

14    to prove a reasonable possibility that she will obtain judgment has not been satisfied and, in fact,

15    Dodson has offered absolutely no evidence whatsoever to refute YKF's claims. Accordingly and on

16    this basis alone, the motion should be denied. *A. Farber & Ptnrs., Inc. v. Garber,* 417 F.Supp.2d

17    1143 (C.D. Cal., 2006).

18    Section 1030(b) also requires that the defendant submit an affidavit which sets forth the

19    nature and amount of the costs defendant has incurred and expects to incur. Here, the declaration of

20    Dodson's counsel merely states in very general terms that defendant may incur costs for expert

21    witnesses, possible travel expenses for depositions in Japan and North Carolina, and court reporter

22    fees, and then provides a guess that these expenses could be as much as $25,000. This is an

23    insufficient showing of the nature and amount of costs actually expected to be incurred as required by

24    §1030(b). Moreover, Dodson's counsel provides no explanation regarding how the taking of

25    depositions of unspecified persons in North Carolina and/or Japan would have any conceivable

26    relevance to YKF's fraudulent transfer complaint.

27

28
OPPOSITION TO MOTION TO COMPEL PLAINTIFF TO        -3-
FURNISH SECURITY FOR COSTS; ADV. CASE NO. 07-03104

1    Based upon the foregoing, YKF respectfully requests that Dodson's motion to compel YKF to

2    furnish security for costs be denied and for such other relief as the court deems appropriate.

3                                    Respectfully submitted,

4

5    Dated:  December 11, 2007                        NIXON PEABODY LLP

6

7

                                                     By: /s/ James S. Monroe
8                                                        James S. Monroe
                                                        Attorneys for Yugen Kaisha, Y.K.F.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     OPPOSITION TO MOTION TO COMPEL PLAINTIFF TO              -4-
     FURNISH SECURITY FOR COSTS; ADV. CASE NO  07-03104

1
2
3
4

**CERTIFICATE OF SERVICE**
**CASE NAME:** IN RE ALEXANDER N., POPOV, Debtor;
**ADV. PROCEEDING:** YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON
**COURT:** U.S. Bankruptcy Court, Northern District of California (San Francisco)
**CASE NO.:** 05-32929-TC; Adv. Pro. No.: 07-03104-TC
**FILE:** 031405.000006

5
6
7

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this date, I served the following document(s):

8
9

**YUGEN KAISHA, Y.K.F.'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO FURNISH SECURITY FOR COSTS, AND RESPONSE TO MOTION TO AMEND ANSWER**

10

on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

11
12
13

__X__ : By First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

14
15
16

____ : By Certified Mail Service — I am readily familiar with the firm's practice for collection and processing of correspondence for Certified Mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with Certified Mail postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

17

Addressee

18
19
20

Joel K. Belway
THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation
235 Montgomery Street, Suite 668
San Francisco, California 94104

United States Trustee
San Francisco Division
235 Pine Street, Suite 700
San Francisco, CA 94104

21
22

Mark D. Byrne
Law Offices of Triano and Byrne
25 Jessie Street, 16th Floor
San Francisco, CA 94105

23
24
25
26
27

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 11, 2007, at San Francisco, California.

Carol S. Hardy

28

OPPOSITION TO MOTION TO COMPEL PLAINTIFF TO
FURNISH SECURITY FOR COSTS; ADV. CASE NO. 07-03104

-5-

James S. Monroe, Esq. (State Bar Number: 102328)
Gregory E. Schopf (State Bar Number: 122862)
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996
Telephone: (415) 984-8200
Facsimile: (415) 984-8300
E-mail: jmonroe@nixonpeabody.com

**CV 08    0225**

**SC**

Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 05-32929 |
| ALEXANDER N. POPOV, | Chapter 7 |
| Debtor. | |
| | |
| YUGEN KAISHA, Y.K.F., | Adv. Pro. No.: 07-03104 |
| Plaintiff, | **REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| STEPHANIE DODSON, | |
| Defendant. | **Hearing** |
| | Date:    December 18, 2007 |
| | Time:    9:30 a.m. |
| | Place:    Courtroom 23 |
| | Judge:    Hon. Thomas E. Carlson |

Yugen Kaisha, Y.K.F. ("YKF"), hereby submits this reply to defendant Stephanie Dodson's ("Dodson") opposition to YKF's motion to dismiss her counterclaim filed herein for lack of subject matter jurisdiction on the grounds that there is no independent jurisdictional basis for the counterclaim under 28 U.S.C. §1334(b) and it falls outside the court's supplemental jurisdiction under 28 U.S.C. §1367(a).

REPLY TO OPPOSITION TO MOTION TO DISMISS
COUNTERCLAIM; ADV. CASE NO. 07-03104

10841389.1

1    In her opposition, Dodson tries mightily to obscure the issues in a vain effort to argue that the

2    complaint and counterclaim involve a common core of operative facts. However, a simple review of

3    the respective claims establishes that they involve neither the same facts nor the same applicable law.

4    YKF's complaint seeks to avoid and recover the debtor's prepetition transfer of 3,774,000

5    shares of common stock (the "Debtor's Shares") of Smart Alec's Intelligent Food, Inc., a California

6    corporation ("Smart Alec's") to Dodson as a fraudulent conveyance. YKF maintains that the

7    Debtor's Shares were transferred to Dodson shortly before the September 6, 2005 petition date with

8    the actual intent to hinder, delay or defraud the debtor's creditors by removing said shares from the

9    bankruptcy estate and thereby retaining control of Smart Alec's to the exclusion of the debtor's

10   creditors.

11   Dodson's counterclaim alleges a state law based contract claim regarding a Stock Redemption

12   Agreement, dated February 6, 2004, between Smart Alec's and YKF, whereby Smart Alec's agreed

13   to repurchase YKF's 1,440,000 shares of common stock of Smart Alec's (the "YKF Shares") for

14   $775,000 as provided therein. On March 12, 2007, the balance due under the Stock Redemption

15   Agreement was paid to YKF and the YKF Shares were transferred to Smart Alec's. By her

16   counterclaim herein, Dodson alleges that YKF in some unexplained way delayed the payoff of the

17   amount due from Smart Alec's under the Stock Redemption Agreement, causing additional amounts

18   to have to be paid at the closing, and based thereon, seeks money damages from YKF.

19   Even if the counterclaim were properly maintainable by Dodson (which it is not since Dodson

20   is not even a party to the Stock Redemption Agreement upon which the counterclaim is based), the

21   counterclaim is clearly outside the bankruptcy court's supplemental jurisdiction under 28 U.S.C.

22   §1367(a) since the respective claims asserted in the complaint and counterclaim do not arise from a

23   "common nucleus of operative facts." *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1195 (9th Cir.

24   2005); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966).

25   The facts giving rise to Dodson's counterclaim (for breach of contract regarding YKF's post-petition

26   sale of its shares of Smart Alec's to Smart Alec's) are entirely different from the facts supporting

27   YKF's complaint (for avoidance of the debtor's prepetition transfer of his shares of Smart Alec's to

28   REPLY TO OPPOSITION TO MOTION TO DISMISS              -2-
     COUNTERCLAIM; ADV. CASE NO. 07-03104

1  Dodson).  The complaint and counterclaim bear no logical relation to each other and rest upon
2  different evidence and legal rights.  Under these circumstances, the counterclaim is not within the
3  bankruptcy court's supplemental jurisdiction.

4       In her opposition, Dodson further attempts to obscure the issues by arguing that YKF's
5  purchase of the bankruptcy avoidance action which is the subject of the complaint is somehow
6  improper.  However, Ninth Circuit decisions and case law clearly validate the bankruptcy trustee's
7  sale of avoidance actions and recognize that such a sale may often, as here, provide the greatest
8  benefit to the creditors of the bankruptcy estate.  *Ducker Spradling & Metzger v. Baum Trust (In re*
9  *P.R.T.C., Inc.)*, 177 F.3d 774, 781 (9th Cir. 1999); *Briggs v. Kent (In re Prof'l Inv. Props. Of Am.)*,
10  955 F.2d 623, 625-626 (9th Cir. 1992); *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325
11  B.R. 282, 288 (9th Cir. BAP 2005).

12       Based upon the foregoing, YKF respectfully requests that its motion to dismiss Dodson's
13  counterclaim be granted and for such other relief as the court deems appropriate.

14                                                    Respectfully submitted,

15  Dated: December 14, 2007                          NIXON PEABODY LLP

16

17
                                                      By: */s/ James S. Monroe*
18                                                        James S. Monroe
                                                          Attorneys for Yugen Kaisha, Y.K.F.
19

20

21

22

23

24

25

26

27

28
    REPLY TO OPPOSITION TO MOTION TO DISMISS          -3-
    COUNTERCLAIM; ADV. CASE NO. 07-03104

1

2

3

4

**CERTIFICATE OF SERVICE**

**CASE NAME:**          IN RE ALEXANDER N., POPOV, Debtor;
**ADV. PROCEEDING:** YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON
**COURT:**              U.S. Bankruptcy Court, Northern District of California
                        (San Francisco)
**CASE NO.:**           05-32929-TC; Adv. Pro. No.: 07-03104-TC
**FILE:**               031405.000006

5

6

7

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this date, I served the following document(s):

8

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**

9

10

on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

11

12

13

 X  : B y First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

14

15

16

____: By Certified Mail Service — I am readily familiar with the firm's practice for collection and processing of correspondence for Certified Mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with Certified Mail postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

Addressee

17

18

19

Joel K. Belway                              United States Trustee
THE LAW OFFICE OF JOEL K. BELWAY            San Francisco Division
Professional Corporation                    235 Pine Street, Suite 700
235 Montgomery Street, Suite 668            San Francisco, CA 94104
San Francisco, California 94104

20

21

22

Mark D. Byrne
Law Offices of Triano and Byrne
25 Jessie Street, 16th Floor
San Francisco, CA 94105

23

24

25

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 14, 2007, at San Francisco, California.

_Carol S. Hardy_
Carol S. Hardy

26

27

28

REPLY TO OPPOSITION TO MOTION TO DISMISS                 -4-
COUNTERCLAIM; ADV. CASE NO. 07-03104

1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery Street, Suite 668
3  San Francisco, California 94104
   Telephone:   415-788-1702
4  Facsimile:   415-788-1517

5  Attorney for Defendant
   and Counterclaimant
6  STEPHANIE DODSON

**SC**

**CV 08     0225**

7

8                UNITED STATES BANKRUPTCY COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12
   In re:                    ) Case No. 05-32929
13                           )
   ALEXANDER N. POPOV,       ) Chapter 7
14                           )
           Debtor.           )
15                           )
                             ) A.P. No. 07-03104
16 YUGEN KAISHA, Y.K.F., Plaintiff,)
17                           ) **REPLY TO OPPOSITION TO MOTION**
            vs.              ) **TO AMEND ANSWER AND TO COMPEL**
18                           ) **PLAINTIFF TO FURNISH SECURITY**
   STEPHANIE DODSON,         ) **FOR COSTS**
19            Defendant.     )
                             ) Date: Dec. 18, 2007
20                           ) Time: 9:30 a.m.
   STEPHANIE DODSON,         ) Court: Judge Carlson
21            Counterclaimant, )
22      vs.                  )
                             )
23 YUGEN KAISHA, Y.K.F.      )
                             )
24            Counterdefendant.)
                             )
25
26     Defendant and counterclaimant, STEPHANIE DODSON ("Dodson"),
27 submits this reply to the opposition of plaintiff and
28 counterdefendant, YUGEN KAISHA, Y.K.F. ("YKF"), to Dodson's

1  motion (1) to amend her Answer to add the affirmative defenses of
2  lack of capacity and collateral estoppel, and (2) to compel YKF
3  to furnish security for costs (the "Motion").

4      **A. Motion to amend Answer.**

5      YKF's opposition first contends that, as to the defense of a
6  lack of capacity for failure to qualify to do business in
7  California, it is not doing business in California, but
8  ultimately states its non-opposition to the proposed amendment of
9  Dodson's answer (also to allege collateral estoppel), so long as
10 Dodson files an amended answer that is complete in itself. Dodson
11 
12 will do so promptly.

13     Along the way to its non-opposition to the additional
14 affirmative defenses, YKF describes itself as a foreign
15 corporation with no California presence. Lest such an assertion,
16 important to the capacity issue, go unchallenged, let it be said
17 that if the following action's by YKF, disclosed upon the record
18 of this case already, do not constitute a California presence
19 (aside from anything else YKF may be doing or may have done in
20 California, subject to discovery), then perhaps YKF's position
21 will ultimately be upheld:
22

23     (1) investing $720,000 in California in shares of Smart
24 Alec's Intelligent Foods, Inc. ("Smart Alec's"), a California
25 corporation that operates a single restaurant in on Telegraph
26 Avenue in Berkeley, California; then

27
28

1    (2) suing in the Alameda County Superior Court over that
2    investment through the same attorney's who represent it in
3    opposing the Motion; then

4    (3) settling that suit in February 2004 by a written
5    settlement agreement (Exhibit 1 to YKF's motion to dismiss the
6    counterclaim herein) (a) entered into in California, secured  (b)
7    by a pledge in California of Smart Alec's shares and (c) by a
8    UCC-1 filing in Sacramento, California for Smart Alec's assets
9    and specifying California as the source of law for any disputes;
10   and then
11

12   (4) entering into a closing agreement with Dodson in March
13   2007 in California (Exhibit 2 to YKF's motion to dismiss the
14   counterclaim), specifying California law and calling for payment
15   by Dodson to YKF to the trust account of YKF's attorneys in San
16   Francisco (who represent YKF herein); then

17   (5) purchasing the avoidance rights sued upon herein from a
18   bankruptcy trustee in San Francisco, under an agreement entered
19   into in San Francisco and approved by this Court, sitting in San
20   Francisco; and then
21

22   (6) suing on the avoidance rights in a federal court in San
23   Francisco.
24
25
26
27
28

**B. Security for costs.**

**(1) Reasonable possibility of Dodson's prevailing.**

1
2      YKF opposes Dodson's request for security for costs on two
3  grounds. First, it argues that Dodson has not presented evidence
4  to establish a "reasonable possibility" that she will
5  obtain judgment on YKF's complaint. Dodson requests that the
6  Court, in making its assessment of whether she can show a
7  reasonable possibility, which notably is less than either the
8  "reasonable probability" required for injunctive relief or the
9  "probable validity" for an attachment, take judicial notice of
10  its own findings of fact and conclusions of law announced on the
11  record at the end of the trial on March 27, 2007, in Triano v.
12  Popov, A.P. No. 05-3485 (the "Findings"), which are attached
13  hereto for the convenience of the Court.
14

15      The Findings, which are also incorporated into Dodson's
16  Answer herein at paragraph 9 thereof, turn on the testimony of
17  Debtor, Alexander Popov, and Dodson. That testimony, referred to
18  in the Findings, dealt with the motives and background for the
19  transfer of Debtor's residual interest in Smart Alec's shares
20  that had been pledged to YKF. It is the same transfer that YKF in
21  the complaint in this proceeding challenges as actually or
22  constructively fraudulent. Dodson submits that the Findings
23  reflect an existing judicial determination that she has a
24  "reasonable possibility" of prevailing on YKF's complaint.
25
26
27
28

### (2) **Nature and amount of costs.**

YKF next argues that the Motion has not sufficiently demonstrated the nature and amount of costs defendant has incurred and expects to incur. To date no costs have been incurred, but if this matter goes forward, substantial costs may be incurred.

First are expert witness fees, for either a court-appointed expert or as part of discovery, see *Trepel v. Roadway Express, Inc.*, 266 F.3d 418, 427 (6th Cir. 2001), for the valuation of the Smart Alec's shares transferred and for the insolvency issue. Such fees can, in the Court's own experience, be thousands of dollars. Second, deposition transcripts and travel expenses will run to thousands of more dollars if YKF refuses to make witnesses available in San Francisco and Dodson is forced to fly counsel to Japan or North Carolina or both. (YKF can solve that problem simply: stipulate as part of a resolution of the Motion that witnesses from Japan and North Carolina will be made available deposition in San Francisco.)

YKF asks what conceivable relevance could the taking of depositions of YKF's agents from Japan or North Carolina have to a fraudulent conveyance complaint. If there were no other relevance, the defense of YKF's lack of capacity, under California Corporation's Code Section 2203, which is one of the affirmative defenses the addition of which YKF has stated its non-opposition, will require testimony and documentary evidence from YKF, to show that it is and was doing business in California

and has not qualified in the State. Again, YKF can avoid the

1  travel expenses for those depositions costs by agreeing to

2  produce witnesses and documents in San Francisco, where its

3  attorneys work and where the court in which it chose to sue

4  Dodson is located.

5                              Respectfully submitted,

6
   Dated: December 16, 2007      THE LAW OFFICE OF JOEL K. BELWAY
7                                Professional Corporation

8                                /s/ Joel K. Belway
                                 JOEL K. BELWAY
9                                Attorney for Stephanie Dodson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF SERVICE**

I am over the age of eighteen years and not a party to the within action. On December 16, 2007, I served the attached **Reply to Opposition to Amend Answer and to Compel Plaintiff to Furnish Security for Costs** on the interested parties in this action by placing true copies thereof in sealed envelopes and transmitting said envelopes to the following addresses by the means indicated:

Via First-Class U.S. Mail

James S. Monroe, Esq.
Gregory E. Schopf, Esq.
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996
(also via email to jmonroe@nixonpeabody.com
and by fax to (415)984-8300)

U.S. Trustee
235 Pine Street, Suite 850
San Francisco, CA 94104

Mark D. Byrne, Esq.
Triano & Byrne
25 Jessie Street
16th Floor
San Francisco, CA 94105-2749
(also by email to mailbox@martinftriano.com
And fax to (415)371-8001)

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 16, 2007, at San Francisco, California.

\s\ Joel K. Belway

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS E. CARLSON, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 05-32929-TEC-7 |
| | ) |
| ALEXANDER POPOV, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| TRIANO, | ) Adv. 05-3485 |
| | ) |
| Defendant, | ) (Portion of proceedings:) |
| | ) TRIAL:  FINDINGS of FACT |
| v. | ) and CONCLUSIONS of LAW |
| | ) |
| POPOV, | ) |
| | ) |
| Plaintiff. | ) Tuesday, March 27, 2007 |
| | ) San Francisco, California |

Appearances:

For the Plaintiff:      Mark D. Byrne, Esq.
                        Law Offices of Martin F. Triano
                        25 Jessie Street, 16th Floor
                        San Francisco, California  94105
                        (415) 371-8000

For the Defendant:      Joel K. Belway, Esq.
                        Law Offices of Joel K. Belway
                        235 Montgomery Street, Suite 668
                        San Francisco, California  94104
                        (415) 788-1702

Digital Court           United States Bankruptcy Court
Recorder:               Clerk of the Court
                        Jane L. Galvani
                        235 Pine Street, 23rd Floor (94104)
                        Post Office Box 7341
                        San Francisco, California  94120-7341
                        (415) 268-2366

Certified Electronic    Palmer Reporting Services
Transcriber:            P. O. Box 30727
                        Stockton, California  95213-0727

        Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

|   | Trial: Findings of Fact and Conclusions of Law | 2 |
|---|---|---|

1   <u>Tuesday, March 27, 2007</u>                         <u>3:16 o'clock p.m.</u>

2                    P R O C E E D I N G S

3             THE COURT:   Okay.  I'm going to make a finding on one

4    issue here.  I find on the basis of the evidence presented and

5    the plaintiff's offer of proof, taking that into account as it

6    established regarding the appraised value, which I think you

7    said in your brief, was 168,000 —

8             MR. [SPEAKER]:  Correct.

9             THE COURT:  — of the original interest?

10            On the basis of the facts that I've heard, the

11   plaintiff having stated that there's no further evidence to be

12   offered regarding the question of concealment or retention of an

13   interest, that the debtor did not retain an interest in this

14   property after the transfer.

15            First of all, I find that the transfer was effective

16   in April of 2004, April 18th, 2004.  Although the purchase price

17   needed to be paid, the defendant, if there was, you know, a

18   fraudulent conveyance for too little money, et cetera, it was —

19   the die was cast then, because all that — all Ms. Dodson had to

20   do was pay that, the remainder of that limited sum of money.

21   And she had beneficial interest at that point or at least the

22   ability to get it at that price.

23            Second, and this is the most important, I find that

24   the debtor did not act as if he owned the property in any manner

25   after that date.

Trial: Findings of Fact and Conclusions of Law                          3

1    First of all, there's this — been some evidence that
2  he did — had some activities at the restaurant. I find that he
3  had no real role in the restaurant. He did not manage the
4  restaurant. He do not decide what the menu was. He didn't say
5  what the hour was. He was hired; he was fired, et cetera.  He
6  had been relieved of that — all those duties. And there was a
7  replacement in that role, namely Ms. Dodson.

8           He helped on a couple occasions in very limited
9  circumstances. He did so in part because of his friendship with
10 Ms. Dodson, which was quite evidently very real throughout this
11 whole time.

12          He also, although he didn't retain an interest in
13 ownership in the property, he did have an interest in its
14 success, because the restaurant's successful operation would —
15 was a means that he could — use to retire his guaranty
16 liability, his personal liability.

17          He never got any payment of money from the restaurant
18 either as a distribution as an owner, as an employee, anything
19 else like that. He did borrow against its value. There's just
20 no evidence that he acted as if he was the owner of the
21 restaurant.

22          That the debtor and Ms. Dodson were married some two
23 and a half years later doesn't change anything. They were quite
24 clearly friends during this period, but the fact that they had
25 dated before and were friends throughout and got married two and

1  a half years later is not by itself or even in conjunction with
2  everything else here enough evidence that there was a plan.

3          Most important here, I believe that the debtor's
4  explanation of why he transferred the property and that he
5  really did transfer the property is, is more credible, more
6  believable than the inference that he retained secretly an
7  interest in the property.

8          Why did he part with — why would he really part with
9  the property for this price to this person at this time?

10         First of all, because of his pledge which happened
11 shortly before, the restaurant, even if it had some real value,
12 didn't have any easily realizable value to him at that time,
13 because of the pledge and the need, the fact that all the cash
14 proceeds were going to be sucked out of this property for quite
15 some time.  He couldn't use that value soon.

16         The shares- — these shares of — subject to this kind
17 of pledge in that kind of restaurant wouldn't be readily
18 salable.  He needed money.  He — he had lost his job a couple
19 months earlier by virtue of this settlement.  He brought money
20 later from the — from Ms. Dodson.  He needed some money.

21         Helping her was — was not — helping her succeed in the
22 restaurant was helpful to him.  Giving her an incentive to work
23 hard was helpful to him.  And — and doing something good for her
24 was not — didn't — he was very close friends with her.  He had a
25 good relationship with her.  And he would naturally want to help

1   her, even if he couldn't get something back later.

2            Now I am troubled to some extent by the fact that they

3   didn't disclose this transfer. I don't think that the failure

4   to disclose the transfer is a concealment of an interest, but it

5   is evidence that could be part of a plan to retain an interest

6   in the sense that if they never disclosed the transfer and

7   nobody ever caught them on anything, they could more easily

8   disavow it later.

9            But I think that that's not an overwhelming factor,

10  and I think is undercut by the fact that the evidence shows here

11  that they didn't disclose the transfer to YKF before the

12  bankruptcy was filed. And I think that that kind of behavior

13  would be inexplicable if they were trying to keep this transfer

14  a secret to just sort of ignore later.

15           The other thing that is at issue here is I don't think

16  this transfer makes sense as a secret transfer intended to stop

17  these creditors. It didn't stop the debtor's creditors in the

18  sense that his — as I understand from what I've heard in this —

19  in this trial here, the two major creditors who are Mr. Triano

20  and YKF.

21           YKF already had a superior interest in the shares.

22  Mr. Triano was again going after Ms. Dodson as well as Mr.

23  Triano. And she wasn't the most likely target to transfer any —

24  any interest in to get it away from Mr. Triano.

25           So it's not — it just doesn't look like a likely

Case 3:08-cv-00225-SC   Document 1-3   Filed 01/14/2008   Page 37 of 41

Trial: Findings of Fact and Conclusions of Law

6

1  scheme to keep this as a — as a method to keep this away from
2  creditors.  But the key thing here is that this really doesn't
3  look like a retained interest.  There was an activity that was —
4  that happened later that showed that the debtor really not only
5  nominally got rid of the interest, inexplicably got rid of the
6  interest, and then acted like he was an owner later.

7       I think, though, the last point to know that is, is
8  that to the extent they are married now is, is possibly relevant
9  only in one way.  And that is it shows that, you know, that
10  their relationship turn into something that was very, very
11  close, indeed, over time.  That may or may not have been in the
12  cards in 2004.  Nothing certain in matters like that.

13       And the fact that they were married down the road is,
14  you know, in — in the context of all these other facts doesn't
15  show that that there was secret intent here.  And the fact that
16  the debtor may, over time get some sort of a community-property
17  interest in this property by virtue of her efforts doesn't prove
18  anything, because those aren't conditions that existed during
19  the — the year prior to the filing.  And, of course, she's
20  getting a community property interest in anything he earns, too.
21  That's the way marriage is.

22       Now without — without a finding that there's a secret
23  interest here, there can't be a concealment of an interest.  He
24  doesn't have an interest.  He didn't have an interest.  The only
25  interest he has is what he may be earning as a result of, you

1   know, these completely new events of marriage in which he's also
2   contributing his own labors to the community.

3            And if there is no retained interest, there isn't any
4   failure to — there isn't any concealment of it.  And I have to
5   find for the — for the debtor.

6            I'm not so sure, going to the other question, that
7   there's a concealment anyway, because — I mean this whole
8   concept is very hard to apply where there's no disclosure and
9   nothing is done to sort of throw creditors off the trail.  But I
10  don't want to rely on it, because I think if there was — I think
11  if there really was a secret transfer of property to somebody, a
12  legal transfer of property — let's take the case of — what was
13  the name of your case again, *Hughes*?

14            MR. BYRNE:   *Hughes* and *Lawson*.

15            THE COURT:  Yeah.  If — if the debtor there had been
16  able, without recording, to give the mother a security interest
17  that would be superior to the judgment lien — of course, she had
18  to record there to — to get priority.

19            But if there had been some sort of transfer and then
20  she hadn't really meant it, I think it would still be a
21  concealment of an interest that was intended to throw the
22  creditors off, because even if they found it then they'd have to
23  sue the third party.

24            So I'm really not going to rely on the — on whether
25  there's a concealment here are not.  I think that's kind of a

Trial: Findings of Fact and Conclusions of Law                    8

1    difficult concept to apply.  This case isn't exactly like
2    Hughes, but I think that that isn't the difference.  The real
3    problem here is, unlike Hughes, there was no activity that
4    evinced a retained interest in the property.  That was present
5    in *Hughes*, and it's just not present here.  I think he really
6    did get rid of it.  Okay?
7              Mr. Belway, I'll do the — I'll do the form of
8    judgment.  It's pretty simple to do.  Okay?
9              MR. BYRNE:  Thank you, Your Honor.
10             MR. BELWAY:  Your Honor, thank you.
11             MR. BYRNE:  Your Honor?  For purposes of — I'll not
12   say we're going to do anything, but just for purposes of the
13   record, can we say that all the exhibits were entered in the
14   record or into the evidence?
15             THE COURT:  Well, I certainly — I overruled the
16   objection on — the part of 16.  I don't recall that there was
17   any — anything else that was objected to besides the one I dealt
18   with.  I think they're all in.
19             Mr. Belway, am I missing something?
20             MR. BELWAY:  16 was the only one, I think, that didn't
21   get —
22             THE COURT:  It was the first page of — the second
23   page —
24             MR. BELWAY:  — the second page was 16.
25             THE COURT:  — was 16.  And I overruled your objection

Trial: Findings of Fact and Conclusions of Law                    9

1   on that.   I think I overruled your objection on another thing.

2   The foundation for everything else was pretty obvious except the

3   second page of 16.  And I'm letting that in because of the way

4   in which you've represented that you got it from the corporation

5   and their failure to bring the witness here.  Okay?

6           [COUNSEL]:   Thank you, Your Honor.

7           THE COURT:   All right.

8           THE CLERK:   All rise.

9       (Proceedings were concluded at 3:28 p.m.)

10                              —oOo—

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

State of California        )
                           )    SS.
County of San Joaquin      )


        I, Susan Palmer, certify that the foregoing is a true
and correct transcript, to the best of my ability, of the above
pages, of the digital recording provided to me by the United
States Bankruptcy Court, Northern District of California, of the
proceedings taken on the date and time previously stated in the
above matter.

        I further certify that I am not a party to nor in any
way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber
by the American Association of Electronic Reporters and
Transcribers, Certificate No. 00124.  Palmer Reporting Services
is approved by the Administrative Office of the United States
Courts to officially prepare transcripts for the U.S. District
and Bankruptcy Courts.


                              Susan Palmer
                              Palmer Reporting Services

                              Dated April 14, 2007

James S. Monroe, Esq. (State Bar Number: 102328)
Gregory E. Schopf (State Bar Number: 122862)
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996
Telephone: (415) 984-8200
Facsimile: (415) 984-8300
E-mail: jmonroe@nixonpeabody.com

Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ALEXANDER N. POPOV,<br><br>               Debtor.<br>_____<br><br>YUGEN KAISHA, Y.K.F.,<br><br>               Plaintiff,<br><br>     v.<br><br>STEPHANIE DODSON,<br><br>               Defendant.<br>_____ | Case No. 05-32929<br><br>Chapter 7<br><br><br><br><br>Adv. Pro. No.:<br><br><br>**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFER AND FOR INJUNCTIVE RELIEF** |

YUGEN KAISHA, Y.K.F., a Japanese corporation (the "Plaintiff"), alleges that:

### **JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.     This adversary proceeding is brought pursuant to Rule 7001, *et seq.* of the Federal

Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544(b)(1), 548 and 550.

COMPLAINT TO AVOID AND RECOVER FRAUDULENT
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

10714326.1

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with the above-captioned case under 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), which is pending in this District.

4.      This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(H).

## PARTIES AND BACKGROUND FACTS

5.      On September 6, 2005 (the "Petition Date") Alexander N. Popov (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

6.      Thereafter, E. Lynn Schoenmann (the "Trustee") became the duly appointed Chapter 7 Trustee to administer the Debtor's bankruptcy estate (the "Estate").

7.      Prior to the filing of the Bankruptcy Case, the Debtor was the owner of record of 3,744,000 shares of common stock (the "Shares") of Smart Alec's Intelligent Food, Inc., a California corporation ("Smart Alec's").

8.      Plaintiff is informed and believes and thereon alleges that defendant Stephanie Dodson, an individual (the "Defendant"), is the spouse of the Debtor and resides at 2032 Donald Drive, Moraga, California 94556.

9.      Plaintiff is informed and believes and thereon alleges that in or about August 2005, the Debtor transferred all right, title and interest in the Shares to the Defendant.

10.      On or about August 1, 2007, Plaintiff and the Trustee entered into an Assignment Agreement, pursuant to an Order Authorizing and Approving Assignment of Personal Property to Yugen Kaisha, Y.K.F. (the "Approval Order"), entered in the Bankruptcy Case on or about July 31, 2007, whereby the Trustee sold, transferred, assigned, granted and conveyed to Plaintiff, in exchange for Plaintiff's payment of $30,000 to the Trustee and the Estate, all rights, claims, causes of action and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's purported transfer of the Shares to Defendant and/or any subsequent transferee thereof as a fraudulent transfer under any applicable law, including without limitation, Bankruptcy Code §§ 544(b), 548 and 550, and California Civil Code §§ 3439-3439.12, inclusive, and any and all right, title and interest of

COMPLAINT TO AVOID AND RECOVER FRAUDULENT      -2-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

the Estate in and to the Shares (the "Assigned Claims and Causes of Action"). True and correct

copies of the Assignment Agreement and the Approval Order are attached hereto, respectively, as

Exhibits 1 and 2 and incorporated herein.

11.     Pursuant to the Assignment Agreement and Approval Order, Plaintiff has the right,

*inter alia*, to enforce, sue on, settle and compromise the Assigned Claims and Causes of Action,

including claims under §§ 544(b)(1), 548 and 550 of the Bankruptcy Code.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code § 548(a)(1)(A))

12.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in

paragraphs 1 through 11 of this Complaint as though fully set forth herein.

13.     Plaintiff is informed and believes and thereon alleges that in or about August 2005 the

Debtor transferred all of his right, title and interest in and to the Shares to the Defendant for no

consideration or nominal consideration of no more than $12,500 (the "Transfer").

14.     Plaintiff is informed and believes and thereon alleges that the Debtor made the

Transfer with the actual intent to hinder, delay, or defraud all of the Debtor's then and future creditors

by wrongfully removing the Shares as an asset of the Debtor's Estate shortly before the Petition Date

to enable the Debtor and the Defendant to retain control of Smart Alec's, a valuable and profitable

restaurant, to the exclusion of the Debtor's unsecured creditors.

15.     Plaintiff is informed and believes and thereon alleges that the Defendant received the

Transfer with knowledge that the Debtor intended to hinder, delay, or defraud all of his then and

future creditors and actively participated and colluded with the Debtor in structuring and effecting the

Transfer with the purpose of removing the Shares from the Estate and to thereby retain control of

Smart Alec's to the exclusion of the Debtor's unsecured creditors.

16.     Plaintiff is informed and believes and thereon alleges that in furtherance of the

foregoing, the Debtor and the Defendant executed a Share Purchase Agreement for the Shares in or

about August 2005 which they backdated to April 18, 2004 to make the Transfer appear less

COMPLAINT TO AVOID AND RECOVER FRAUDULENT          -3-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

fraudulent and to establish consideration for the Transfer based upon certain prior cash transfers from Defendant to the Debtor totaling $12,500 which were originally made for an unrelated purpose. A true and correct copy of the Share Purchase Agreement is attached hereto as Exhibit 3 and incorporated herein by this reference.

17.    Defendant did not receive the Transfer in good faith and did not pay reasonably equivalent value for the Transfer.

18.    As reflected in the Debtor's bankruptcy schedules filed in the Bankruptcy Case, there are numerous general unsecured creditors of the Debtor who have allowable claims against him which claims were in existence at the time of the Transfer (the "Unsecured Creditors") .

19.    As a proximate result of the wrongful acts of the Debtor and the Defendant, the Transfer was fraudulent and must be declared null and void and set aside.

20.    The Transfer, to the extent it is avoided pursuant to § 548 of the Bankruptcy Code, may be recovered by Plaintiff pursuant to § 550(a)(1) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
**(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §544(b)(1) and California Civil Code §3439.04(a)(1))**

21.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 20 of this Complaint as though fully set forth herein.

22.    Based upon the foregoing, the Transfer is voidable by the Unsecured Creditors under California Civil Code §3439.04(a)(1) and is voidable by Plaintiff as assignee of the Trustee pursuant to Bankruptcy Code §544(b)(1).

## THIRD CAUSE OF ACTION
**(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §548(a)(1)(B))**

23.    Pleading in the alternative, Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 13, 17, 18 and 20 of this Complaint as though fully set forth herein.

24.    The Transfer was to or for the benefit of the Defendant.

COMPLAINT TO AVOID AND RECOVER FRAUDULENT                    -4-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

25.     Plaintiff is informed and believes and thereon alleges that the Debtor received less than reasonably equivalent value in exchange for the Transfer.

26.     Plaintiff is informed and believes and thereon alleges that Debtor was: (1) insolvent on the date of the Transfer, or became insolvent as a result of the Transfer; and/or (ii) engaged in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital at the time of, or as a result of the Transfer.

### FOURTH CAUSE OF ACTION
**(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code § 544(b)(1) and California Civil Code § 3439.05)**

27.     Pleading in the alternative, Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 13, 17, 18, 20 and 24 through 26 of this Complaint as though fully set forth herein.

28.     Plaintiff is informed and believes and thereon alleges that at the time of the Transfer, the Debtor was insolvent or in the alternative such Transfer rendered the Debtor insolvent.

29.     Based upon the foregoing, the Transfer is voidable by the Unsecured Creditors under California Civil Code § 3439.05 and is voidable by Plaintiff as assignee of the Trustee pursuant to Bankruptcy Code § 544(b)(1).

### FIFTH CAUSE OF ACTION
**(Injunctive Relief under Rule 7065 of the Federal Rules of Bankruptcy Procedure and California Civil Code § 3439.07)**

30.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31.     At present there is nothing to prevent the Defendant from transferring some or all of the Shares and/or interests therein to third parties and/or from secreting or dissipating any proceeds from a sale or other disposition of the Shares.

32.     Such acts, unless enjoined, will cause Plaintiff great or irreparable injury for which it has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     That the Transfer of the Shares to Defendant be set aside and declared null and void;

COMPLAINT TO AVOID AND RECOVER FRAUDULENT     -5-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

2.    That the Defendant be required to transfer and deliver up the Shares to Plaintiff;

3.    That Defendant and her representatives, attorneys, and agents be enjoined and restrained from selling, transferring, conveying, or otherwise disposing of any of the Shares or of any interest therein until Plaintiff's rights to the Shares have been fully adjudicated and that a temporary restraining order and preliminary injunction be granted to Plaintiff herein;

4.    That the judgment herein be declared a lien on the Shares;

5.    That an order be made declaring that the Defendant holds the Shares in trust for the Plaintiff;

6.    That Defendant be required to account to Plaintiff for all profits and proceeds earned from or taken in exchange for the Shares and/or attributable to her equity interest in Smart Alec's based upon the Shares;

7.    That if the Defendant has disposed of any of the Shares or any interest therein, that she be required to account to Plaintiff for the proceeds;

8.    For compensatory damages according to proof;

9.    For costs of suit incurred herein; and

10.   For such other and further relief as the Court may deem proper.

Dated: September 5, 2007                    NIXON PEABODY LLP


By: /s/ James S. Monroe
James S. Monroe
Attorneys for Yugen Kaisha, Y.K.F.

COMPLAINT TO AVOID AND RECOVER FRAUDULENT          -6-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

# EXHIBIT 1

7516402.1

# ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (this "Agreement") is made by and between E. Lynn Schoenmann, trustee (the "Trustee") of the Chapter 7 bankruptcy estate of Alexander N. Popov, bankruptcy case number 05-32929, and Yugen Kaisha, Y.K.F., a Japanese corporation ("YKF").

## W I T N E S S E T H

WHEREAS, on September 6, 2005, Alexander N. Popov (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Bankruptcy Court") and the Trustee was thereafter duly appointed to administer the Debtor's Chapter 7 bankruptcy estate (the "Estate");

WHEREAS, prior to the filing of the Bankruptcy Case, (a) the Debtor was the owner of record of 3,744,000 shares of common stock of Smart Alec's Intelligent Food, Inc., a California corporation, (the "Shares"), and (b) the Debtor purportedly sold all of his right, title, and interest in the Shares to Stephanie Dodson ("Dodson") for $12,500; and

WHEREAS, the Trustee desires to sell to YKF, and YKF desires to purchase from the Trustee, the Assigned Property (as defined herein);

NOW, THEREFORE, in consideration of the recitals, mutual covenants and conditions contained herein, the parties agree as follows:

1.    _Definitions._  The following capitalized terms shall have the meanings as set forth below:

"Assigned Property" means any and all rights, claims, causes of action and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's purported transfer of the Shares to Dodson and/or any subsequent transferee thereof as a fraudulent transfer under any applicable law, including, without limitation, Bankruptcy Code §§ 544(b), 548 and 550, and California Civil Code §§ 3439-3439.12, inclusive; and any and all right, title and interest of the Estate in and to the Shares.

"Proceeds" means whatever is recovered, collected, acquired, received, distributed or otherwise obtained on account of or with respect to the Assigned Property.

"Purchase Price" means $30,000.00.

2.    _Effective Date._  This Agreement shall become effective when (a) each of the parties hereto and their counsel shall have duly executed and delivered this Agreement, and (b) the Bankruptcy Court shall have entered an order approving this Agreement  The first business day on which all of the foregoing conditions have been satisfied shall be referred to herein as the "Effective Date."

3.    _Bankruptcy Court Approval._  The Trustee shall have the obligation to file and serve an appropriate motion requesting Bankruptcy Court approval of this Agreement (the "Approval Order").  The parties shall cooperate as reasonably required in seeking the Approval Order.  This Agreement is contingent upon entry of the Approval Order and, in the absence thereof, this Agreement is null and void.  In the event an appeal is taken from the Approval Order, (a) YKF shall have the sole and complete responsibility to assume any defense of the appeal and shall bear any and all attorneys' fees, costs, expenses, losses, obligations, liabilities and damages that may be incurred in connection therewith, (b) the Trustee shall have no

1

obligation to defend such appeal, and (c) this Agreement shall nonetheless become effective and bind the parties as provided in paragraph 2 hereof.

4.    <u>Assignment and Purchase.</u> Subject to the terms and conditions of this Agreement, the Trustee hereby agrees to sell, transfer, assign, grant and convey the Assigned Property to YKF, its successors and assigns, YKF agrees to purchase the Assigned Property from the Trustee, and YKF shall be solely entitled to exercise and enforce all rights with respect to the Assigned Property and to collect and receive any and all Proceeds.

5.    <u>Payment.</u> In consideration of the sale and assignment of the Assigned Property, YKF shall pay the Purchase Price to the Trustee within 2 business days after the Effective Date in immediately available funds by wire transfer to an account specified in writing by the Trustee.

6.    <u>Representations and Warranties of Trustee</u>. The Trustee represents and warrants that it has made no prior assignment of the Assigned Property or of any interest therein and that the Trustee is the sole owner thereof and has good title thereto, free and clear of all liens, claims and encumbrances of any kind and will transfer to YKF such title, free and clear of any liens or encumbrances of any kind.

7.    <u>YKF's Acknowledgements</u>. YKF acknowledges to the Trustee that except as expressly set forth in this Agreement, the Trustee does not make, and hereby disclaims any and all, representation or warranties regarding the Assigned Property. YKF acknowledges and agrees that the Assigned Property is acquired by YKF for its own account and risk and that the sale of the Assigned Property to YKF is a sale without recourse against the Trustee and/or the Estate and without obligation of the Trustee and/or the Estate to repurchase the Assigned Property under any circumstances.

8.    <u>No Reliance; Independent Investigation</u>. The undersigned agree that each party hereto in entering into this Agreement relies upon its own investigation and judgment in regard to all matters herein contained and that they have not relied on any representations made by the other parties, that this Agreement is made and entered into by each of the parties of its own volition, and each of the parties hereto warrants that this Agreement was made and entered into free of any duress, coercion, or undue influence from any source whatsoever.

9.    <u>Merger</u>. It is expressly understood and agreed that this Agreement constitutes the complete and final agreement among the parties regarding the matters herein addressed. Any and all prior negotiations, representations, understandings or agreements, whether written or oral, among the parties, relating to the subject matter of this Agreement and the facts as set forth in the recitals hereto are terminated and shall be of no further force or effect.

10.    <u>Amendments.</u> No amendment, modification, termination, or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by all parties hereto.

11.    <u>Authority.</u> Each of the parties to this Agreement has full authority and power to enter into this Agreement and this Agreement is the legal, valid and binding obligation thereof.

12.    <u>Drafting of Agreement</u>. The undersigned agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to any interpretation of this Agreement.

13.    <u>Successors and Assigns.</u> This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

2

14.   <u>Governing Law.</u>  This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California, as well as any applicable United States bankruptcy law.  The Bankruptcy Court shall retain jurisdiction over any disputes regarding this Agreement or enforcement of this Agreement.

15.   <u>Attorneys' Fees.</u>  In the event that any legal proceeding, of any kind or nature, is brought by any party concerning the enforcement or interpretation of this Agreement, or any rights and duties hereunder, the prevailing party shall be entitled to recover its attorneys' fees and costs incurred in said proceedings.

16.   <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.  Any of the parties hereto may execute this Agreement by signing any such counterparts.  Photocopies or facsimiles of executed copies of this Agreement may be treated as originals.

17.   <u>Further Assurances.</u>  The parties and their counsel shall execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the provisions of this Agreement.

18.   <u>Captions.</u>  The captions appearing at the commencement of the paragraphs hereof are descriptive only and for convenience of reference.  Should there be any conflict, or apparent conflict, between any such caption and any paragraph at the head of which it appears, the content of the paragraph shall govern the construction of this Agreement.

19.   <u>Partial Invalidity.</u>  If any provision of this Agreement is found to be invalid by any court, the invalidity of such provision shall not affect the validity of the remaining provisions hereof.

20.   <u>Survival of Representations and Warranties.</u>  The representations and warranties made by the parties herein shall survive the performance of this Agreement.

21.   <u>Notice.</u>  Any notice, request, demand, or other communication required or permitted hereunder will be given in writing by first-class mail, postage prepaid, to the party(ies) to be notified.  All communications will be deemed given when received.  The addresses of the parties for the purposes of such communication are:

Trustee:              E. Lynn Schoenmann
                      c/o Dennis D. Davis, Esq.
                      Goldberg, Stinnett, Meyers & Davis
                      44 Montgomery Street, Suite 2900
                      San Francisco, CA 94104

YKF:                  Yugen Kaisha, Y.K.F.
                      c/o James S. Monroe, Esq.
                      Nixon Peabody LLP
                      One Embarcadero Center
                      San Francisco, CA 94111

A party may change his or her address for purposes of notice hereunder only upon written notice to the other party as provided hereinabove.

*[Signature Page Follows]*

3

02/20/2003  18:49   9096590320                     SCHOENMANN                        PAGE  01/01

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be duly executed on the date appearing opposite their names hereinbelow.

Dated: _Aug 1, 2007_ _____

E. Lynn Schoenmann, Trustee of the Chapter 7 Bankruptcy Estate of Alexander N. Popov

By: _____
E. Lynn Schoenmann

Dated: _June 8, 2007_ _____

YUGEN KAISHA, Y.K.F.

By: _____

Its: ___President___

APPROVED AS TO FORM AND CONTENT:

Nixon Peabody LLP

By: _____
James S. Monroe, Esq.
Attorneys for Yugen Kaisha, Y.K.F.

Goldberg, Stinnett, Meyers & Davis

By: _____
Dennis D. Davis, Esq.
Attorneys for E. Lynn Schoenmann, Trustee

4

10333089.1

# EXHIBIT 2

7516402.1

Entered on Docket
**July 31, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1   GOLDBERG, STINNETT, DAVIS & LINCHEY
    A Professional Corporation
2   DENNIS D. DAVIS, ESQ. CA Bar #070591
    44 Montgomery Street, Suite 2900
3   San Francisco, CA 94104
    Telephone: (415) 362-5045
4   Facsimile: (415) 362-2392
    Email: ddavis@gsmdllaw.com
5
    Attorneys for E. Lynn Schoenmann, Trustee
6

**Signed and Filed: July 30, 2007**

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

7

8                  IN THE UNITED STATES BANKRUPTCY COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

11

12  In re:                              Case No. 05-32929

13  ALEXANDER POPOV,                    Chapter 7

14

15                      Debtor.

16

17

18              **ORDER AUTHORIZING AND APPROVING ASSIGNMENT**
                **OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.**

19          Upon the Application for Entry of Order by Default Authorizing Sale of Personal Property to

20  Yugen Kaisha, Y.K.F. for an order authorizing and approving the Trustee's assignment of personal

21  property to Yugen Kaisha, Y.K.F., as more fully set forth in the Notice of Trustee's Assignment of

22  Personal Property to Yugen Kaisha, Y.K.F. filed herein June 26, 2007, and the Declaration of Dennis D.

23  Davis filed in support of said application, submitted, no objections or requests having been filed or

24  served, following date and adequate notice on appropriate parties, and

25          GOOD CAUSE APPEARING THEREFOR,

26          IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

27          1.      The Trustee's application is granted in its entirety.

28          2.      On the terms set forth in the notice, this Court hereby authorizes and approves the

                                        -1-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

1
2    Trustee's assignment of personal property to Yugen Kaisha, Y.K.F., pursuant to the terms of the

3    Assignment Agreement, a copy of which is attached as Exhibit "B" to the Declaration of Dennis Davis

4    filed in support of the application.

5        3.    The Trustee is authorized to take any and all reasonably necessary steps to effectuate the

6    terms of this order.

7
8
9                                **END OF ORDER**
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                        -2-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

1

2

**COURT SERVICE LIST**

3

4  Dennis D. Davis, Esq.
5  Goldberg, Stinnett, Meyers & Davis
   44 Montgomery Street, Suite 2900
   San Francisco, CA  94104

6

7  Office of the U.S. Trustee
   235 Pine Street, Suite 700
8  San Francisco, CA  94104-3401

9  E. Lynn Schoenmann
   800 Powell Street
10 San Francisco, CA  94108

11

12 James S. Monroe, Esq.
   Nixon Peabody LLP
13 Two Embarcadero Center, Suite 2700
   San Francisco, CA  94111-3996

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10206/113282.DOC

# EXHIBIT 3

7516402.1

# Share Purchase Agreement

**THIS SHARE PURCHASE AGREEMENT** (the "Agreement") made and entered into this 18th day of April, 2004 (the "Execution Date"),

**BETWEEN**

Alex Popov of 2015 Laguna Street #8, San Francisco, CA 94115
(the "Seller")

and

Stephanie Dodson of 5728 Owens Dr. 206 Pleasanton, CA 94588
(the "Purchaser")

**BACKGROUND**

A. The Seller is the owner of record of an aggregate of 3,744,000 common shares (the "Shares") of Smart Alec's Intelligent Food, Inc. (the "Corporation").

B. The Seller desires to sell the Shares to the Purchaser and the Purchaser desires to purchase the Shares from the Seller.

**IN CONSIDERATION OF** and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Agreement agree as follows:

Purchase and Sale

1. The Seller agrees to sell and the Purchaser agrees to purchase all the residual rights, title, interest, and property of the Seller in the Shares for an aggregate purchase price of *Twelve Thousand Five Hundred Dollars ($12,500)* (the "Purchase Price").

2. Payments by the Purchaser shall be as follows:

   a. $5,000 payable at the signing of this Agreement.

   b. $5,000 payable before December 31st, 2004.

   c. $2,500 payable before March 31st, 2005.

*Share Purchase Agreement*

*Page 1/3*



Representations and Warranties of the Seller

3.  The Seller warrants and represents to the Purchaser as follows:
    a.  The Shares are currently pledged as collateral for repayment of $775,000 to the YKF Corporation.
    b.  The Purchaser is purchasing the residual value of the rights, title, and interest in the Shares after YKF is repaid a total of $775,000 by December 31st, 2008.
    c.  The repayment of $775,000 must occur before December 31st, 2008 or YKF may foreclose on the Shares.
    d.  Upon repayment to YKF, Purchaser shall become the rightful owner of the Shares and take immediate possession of the Shares.
    e.  Upon repayment to YKF, Purchaser shall be sole shareholder of the Corporation.
    f.  Except as provided in the incorporating documents of the Corporation or as indicated on the face of the certificates for the Shares, the Purchaser would not be prevented or restricted in any way from re-selling the Shares in the future.

Miscellaneous.

(a)  The parties agree to cooperate with each other in executing and delivering all further documents necessary to effect the purchase and sale of the Shares, and both parties agree to cooperate with the other for purposes of effecting the other terms of this Agreement.

(b)  All representations, warranties, covenants, and obligations in this Agreement will survive the Closing.

(c)  The parties agree that the terms of this Agreement, and the discussion relating to this Agreement, are and shall remain privileged and confidential as between the parties.

(d)  This Agreement contains the entire agreement of the parties hereto with respect to the purchase of the Shares and the other transactions contemplated herein, and supersedes all prior understandings and agreements of the parties with respect to the subject matters hereof.

(e)  All notices, requests, consents and other communications required or permitted hereunder shall be in writing and shall be hand delivered or mailed postage prepaid by registered or certified mail or transmitted by facsimile transmission (with immediate telephonic confirmation thereafter).

*Share Purchase Agreement*                                    *Page 2/3*

IN WITNESS WHEREOF, each of the undersigned has duly executed, or caused its authorized officer to duly execute, this Agreement as of the date first set forth above.

_____     4-18-04
Alex Popov                    Date:
2015 Laguna Street #8
San Francisco, CA 94115


_____     4·18·04
Stephanie Dodson              Date:
5728 Owens Dr. 206
Pleasanton, CA 94588

*Share Purchase Agreement*                    *Page 3/3*



B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Yugen Kaisha, Y.K.F. | DEFENDANTS<br>Stephanie Dodson |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>James S. Monroe (State Bar No. 102328)<br>Nixon Peabody LLP, One Embarcadero Center, 18th Floor<br>San Francisco, CA 94111; Telephone: (415) 984-8200 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☒ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☒ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**Complaint to avoid and recover fraudulent transfer of corporate stock by debtor to defendant and injunctive relief. 11 U.S.C. §§ 544(b)(1), 548 & 550.**

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ **According to proof** |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR  **Alexander N. Popov** | | BANKRUPTCY CASE NO.  **05-32929** | |
| DISTRICT IN WHICH CASE IS PENDING  **Northern District of California** | | DIVISION OFFICE  **San Francisco** | NAME OF JUDGE  **Thomas E. Carlson** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)   **Nixon Peabody LLP**  **By:  /s/ James S. Monroe** | | | |
| DATE   **September 5, 2007** | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)  **James S. Monroe** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

· B 250B (CANB)

# UNITED STATES BANKRUPTCY COURT

<u>    NORTHERN    </u>  **DISTRICT OF** <u>CALIFORNIA    </u>

| | | |
|---|---|---|
| **In re** ALEXANDER N. POPOV | | Bankruptcy Case No. |
| | **Debtor** | 05-32929 |
| YUGEN KAISHA, Y.K.F. | | |
| | | Adversary Proceeding No. |
| | **Plaintiff** | |
| STEPHANIE DODSON | | |
| | **Defendant** | |

## SUMMONS AND NOTICE OF STATUS CONFERENCE

### IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

```
Address of Clerk
United States Bankruptcy Court
235 Pine Street
San Francisco, CA 94104-2701
```

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

```
Name and Address of Plaintiff's Attorney
James S. Monroe Esq. (SBN 102328)
Nixon Peabody LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94120
```

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a status conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| Address | Room |
|---|---|
| United States Bankruptcy Court | 23 |
| Honorable Judge Thomas E. Carlson | Date and Time |
| 235 Pine Street | |
| San Francisco, CA 94120 | |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT. PLAINTIFF SHALL PROMPTLY SERVE A COPY OF THE BANKRUPTCY DISPUTE RESOLUTION PROGRAM INFORMATION SHEET ON ALL PARTIES. A COPY OF THE INFORMATION SHEET IS AVAILABLE ON THE COURT'S WEB SITE AT <u>WWW.CANB.USCOURTS.GOV,</u> AND THE CLERK'S OFFICE.**

_____
*Clerk of the Bankruptcy Court*

_____        By: _____
*Date*                              *Deputy Clerk*

B250B

## CERTIFICATE OF SERVICE

I, _____ , certify that I am, and at all times during the service
                          (name)

of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made.  I further certify that the service of this summons and a copy of the complaint was made
_____ by:
            (date)

☐ Mail Service:  Regular, first-class United States mail, postage fully pre-paid, addressed to:

☐ Personal Service:  By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service:  By leaving the process with the following adult at:

☐ Publication:  The defendant was served as follows: [Describe briefly]:

☐ State Law:  The defendant was served pursuant to the laws of the State of _____ ,
as follows: [Describe briefly]
                                                (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____         _____
             *Date*                                             *Signature*

| Print Name | | |
|---|---|---|
| Business Address | | |
| City | State | Zip |

Entered on Docket
September 06, 2007

GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Form ODIS

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

| | |
|---|---|
| In Re:<br>Alexander N. Popov<br>Debtor(s) | Case No.: 05–32929 Chapter: 7 |
| Yugen Kaisha Y.K.F.<br>Plaintiff(s)<br>vs.<br>Stephanie Dodson<br>Defendant(s) | Adversary Proceeding No. 07–03104 |

## ORDER RE INITIAL DISCLOSURES AND DISCOVERY CONFERENCE

The purpose of this order is: (1) to notify the parties of their obligation under Fed. R. Civ. P. 26, as incorporated by Fed. R. Bankr. P. 7026, to make Initial Disclosures and meet for a Discovery Conference; and (2) to modify those Rule 26 requirements in certain respects. As such, this order has no effect in any proceeding exempted under Rule 26(a)(1)(E) and (f) from the Initial Disclosure and Discovery Conference requirements.

**1. The Discovery Conference.** At least 21 calendar days before the status conference scheduled in the summons, the parties shall confer (in person or by telephone) at a "Discovery Conference." Plaintiff shall initiate contact regarding arrangement of the Discovery Conference. Defendant shall cooperate in fixing the time and place of the Discovery Conference. Except to the extent the parties stipulate otherwise, no party shall initiate or conduct any formal discovery prior to the Discovery Conference. The parties may conduct informal discovery.

**2. Settlement.** At the Discovery Conference, the parties shall consider the nature and basis of their claims and defenses and the possibility of an early settlement. The parties shall also discuss ADR options, as required by B.L.R. 9040–3.

**3. Initial Disclosures.** At the Discovery Conference, the parties shall arrange to make the "Initial Disclosures" required by Rule 26(a), without necessity of a formal discovery request. The Disclosures shall be made at or within 14 calendar days after the Discovery Conference. All disclosures shall be in writing, signed by the party or his or her attorney, and served on all other parties.

**4. Discovery Plan.** Unless:

(a) the proceeding is exempt under Rule 26(f);

(b) the proceeding seeks to recover money or property, or except a debt from discharge pursuant to 11 U.S.C. §523(a), of no more than $15,000, excluding interest, attorneys, fees, and costs; or

(c) the parties stipulate to the contrary in a writing filed with the court; the parties shall, at the Discovery Conference, also develop a written Discovery Plan signed by all parties or their counsel, that reflects the parties' views and proposals concerning: (i) what changes, if any, should be made in the timing, form, or requirements of the Initial Disclosures; (ii) the timing, subject matter, and limitations, if any, of discovery to be conducted after the initial disclosures; and (iii) the subject of any orders that the court should enter under Fed.R.Bankr.P. 7016(b) and (c) and 7026(a)(1). The Discovery Plan shall be filed within 14 calendar days after the Discovery Conference.

**5. Pretrial Disclosures.** Notwithstanding Rule 26(a)(3), pretrial disclosures shall be made in accordance with further order of the court.

**6. Service hereof.** The summons, complaint, and this order shall be served by the plaintiff within 10 days of the date of this order. A return or proof of service shall be filed within 5 days after service.

SO ORDERED.

Dated: 9/6/07

For the Court:

Gloria L. Franklin
Clerk of Court
United States Bankruptcy Court

I certify that a copy of this Order was returned to the plaintiff at the time the original summons was issued.

Dated: 9/6/07

Anna Cho–Wong
Deputy Clerk

B 250B (CANB)

# UNITED STATES BANKRUPTCY COURT

_____ NORTHERN _____ **DISTRICT OF** CALIFORNIA _____

| | | |
|---|---|---|
| **In re** ALEXANDER N. POPOV | | Bankruptcy Case No. |
| | | 05-32929    **TC** |
| YUGEN KAISHA, Y.K.F. | **Debtor** | |
| | | Adversary Proceeding No. |
| STEPHANIE DODSON | **Plaintiff** | |
| | | **07  3104** TC |
| | **Defendant** | |

## SUMMONS AND NOTICE OF STATUS CONFERENCE

### IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

> Address of Clerk
> United States Bankruptcy Court
> 235 Pine Street
> San Francisco, CA 94104-2701

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> Name and Address of Plaintiff's Attorney
> James S. Monroe Esq. (SBN 102328)
> Nixon Peabody LLP
> One Embarcadero Center, Suite 1800
> San Francisco, CA 94120

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a status conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| Address | Room |
|---|---|
| United States Bankruptcy Court | 23 |
| Honorable Judge Thomas E. Carlson | Date and Time |
| 235 Pine Street | **NOV 1 5 2007** *at  10:00 Am* |
| San Francisco, CA 94120 | |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT. PLAINTIFF SHALL PROMPTLY SERVE A COPY OF THE BANKRUPTCY DISPUTE RESOLUTION PROGRAM INFORMATION SHEET ON ALL PARTIES. A COPY OF THE INFORMATION SHEET IS AVAILABLE ON THE COURT'S WEB SITE AT WWW.CANB.USCOURTS.GOV, AND THE CLERK'S OFFICE.**

**GLORIA L. FRANKLIN**

*Clerk of the Bankruptcy Court*

SEP - 6 2007

**ANNA CHO-WONG**

*Date*                                              *Deputy Clerk*

B250B

· B 250B (CANB)

# UNITED STATES BANKRUPTCY COURT

NORTHERN    **DISTRICT OF** CALIFORNIA

In re  ALEXANDER N. POPOV

YUGEN KAISHA, Y.K.F.

**Debtor**

STEPHANIE DODSON

**Plaintiff**

**Defendant**

Bankruptcy Case No.
05-32929    **TC**

Adversary Proceeding No.

**07  3104** TC

## SUMMONS AND NOTICE OF STATUS CONFERENCE
## IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

> Address of Clerk
> United States Bankruptcy Court
> 235 Pine Street
> San Francisco, CA 94104-2701

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> Name and Address of Plaintiff's Attorney
> James S. Monroe Esq. (SBN 102328)
> Nixon Peabody LLP
> One Embarcadero Center, Suite 1800
> San Francisco, CA 94120

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a status conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

> Address
> United States Bankruptcy Court
> Honorable Judge Thomas E. Carlson
> 235 Pine Street
> San Francisco, CA 94120
>
> Room
> 23
>
> Date and Time
> NOV 1 5 2007 *at* 10:00 am

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT. PLAINTIFF SHALL PROMPTLY SERVE A COPY OF THE BANKRUPTCY DISPUTE RESOLUTION PROGRAM INFORMATION SHEET ON ALL PARTIES. A COPY OF THE INFORMATION SHEET IS AVAILABLE ON THE COURT'S WEB SITE AT WWW.CANB.USCOURTS.GOV, AND THE CLERK'S OFFICE.**

**GLORIA L. FRANKLIN**

*Clerk of the Bankruptcy Court*

SEP - 6 2007



*Date*

**ANNA CHO-WONG**

*Deputy Clerk*

B250B

**PROOF OF SERVICE**

| | |
|---|---|
| **CASE NAME:** | **IN RE ALEXANDER N., POPOV, Debtor;** |
| **ADV. PROCEEDING:** | **YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON** |
| **COURT:** | **U.S. Bankruptcy Court, Northern District of California (San Francisco)** |
| **CASE NO.:** | **05-32929-TC; Adv. Proc. No.: 07-3104-TC** |
| **FILE:** | **031405.000006** |

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this date, I served the following document(s):

(1)    **Summons and Notice of Status Conference in An Adversary Proceeding;**

(2)    **Complaint To Avoid and Recover Fraudulent Transfer and For Injunctive Relief;**

(3)    **Order Re Initial Disclosures and Discovery Conference;**

(4)    **Bankruptcy Dispute Resolution Program Information Sheet and Instructions For Parties;**

(4)    **ADR Certification; and**

(6)    **Certificate of Service of the Above Documents**

on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

  X  : <u>B y First-Class Mail</u> — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

  X  :        <u>By Certified Mail Service</u> — I am readily familiar with the firm's practice for collection and processing of correspondence for Certified Mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with Certified Mail postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

<u>Addressee</u>

Stephanie Dodson
2032 Donald Drive
Moraga, California 94556
(Via U.S. Mail)

Stephanie Dodson
c/o Smart Alec's Intelligent Food, Inc.
2355 Telegraph Avenue
Berkeley, CA 94704
(Via Certified, Return Receipt Requested Mail)

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 7, 2007, at San Francisco, California.

Carol S. Hardy

1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery Street, Suite 668
3  San Francisco, California 94104
   Telephone:  415-788-1702
4  Facsimile:  415-788-1517

5  Attorney for Defendant
   STEPHANIE DODSON

6

7

8

9                  UNITED STATES BANKRUPTCY COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  In re:                         )  Case No. 05-32929
                                   )
13      ALEXANDER N. POPOV,        )  Chapter 7
                                   )
14          Debtor                 )
                                   )
15  _____ )
                                   )
    YUGEN KAISHA, Y.K.F.,          )  A.P. No. 07-03104
16                                 )
            Plaintiff,             )  **STIPULATION TO EXTEND TIME**
17                                 )  **FOR ANSWER**
        vs.                        )
18                                 )
    STEPHANIE DODSON,              )
19                                 )
            Defendant.             )
20  _____ )

21

22      IT IS HEREBY STIPULATED by and between plaintiff, YUGEN

23  KAISHA, Y.K.F., and defendant, STEPHANIE DODSON ("Dodson"),

24  through their attorneys of record, that the time for Dodson to

25  answer the complaint herein shall be extended, pursuant to Rule

26  9006-1(b) of the Bankruptcy Local Rules, to and including October

27  23, 2007.

28

STIPULATION TO EXTEND TIME FOR ANSWER

1  Dated: October 8, 2007

2

3

4  Attorney for Defendant

5

6  Dated: October 8, 2007

7

8  Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation

JOEL K. BELWAY

Attorney for Defendant

NIXON PEABODY LLP

JAMES S. MONROE

Attorney for Plaintiff

STIPULATION TO EXTEND TIME FOR ANSWER

JOEL K. BELWAY [60556]
THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation
235 Montgomery Street, Suite 668
San Francisco, California 94104
Telephone:  415-788-1702
Facsimile:  415-788-1517

Attorney for Defendant
and Counterclaimant
STEPHANIE DODSON

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | )Case No. 05-32929 |
| | ) |
| ALEXANDER N. POPOV, | )Chapter 7 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | )A.P. No. 07-03104 |
| YUGEN KAISAH, Y.K.F. | ) |
| | )**ANSWER TO COMPLAINT TO AVOID** |
| Plaintiff, | )**AND RECOVER FRAUDULENT** |
| vs. | )**TRANSFER AND FOR INJUNCTIVE** |
| | )**RELIEF, COUNTERCLAIM AND** |
| STEPHANIE DODSON, | )**DEMAND FOR JURY TRIAL** |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| STEPHANIE DODSON, | ) |
| Counterclaimant, | ) |
| vs. | ) |
| | ) |
| YUGEN KAISAH, Y.K.F. | ) |
| | ) |
| Claimant. | ) |
| _____ | ) |

COMES NOW defendant, STEPHANIE DODSON ("Defendant"), and in
answer to the Complaint to Avoid and Recover Fraudulent Transfer

and for Injunctive Relief ("Complaint") of plaintiff, YUGEN KAISHA, Y.K.F. ("Plaintiff"), admits, denies and alleges as follows:

## JURISDICTION AND VENUE

1.  Defendant denies the allegations of paragraph 1 of the Complaint.

2.  Defendant denies the allegations of paragraph 2 of the Complaint.

3.  Defendant denies the allegations of paragraph 3 of the Complaint.

4.  Defendant denies the allegations of paragraph 4 of the Complaint.

## PARTIES AND BACKGROUND FACTS

5.  Defendant admits the allegations of paragraph 5.

6.  Defendant admits the allegations of paragraph 6.

7.  Answering paragraph 7, Defendant admits and alleges that Alexander Popov ("Debtor") once owned 3,744,000 shares of common stock ("Shares") of Smart Alec's Intelligent Food, Inc. ("Smart Alec's") but transferred his residual interest in the Shares to Defendant on April 18, 2004 pursuant to that certain Share Purchase Agreement between Debtor and Defendant (the "Agreement") dated April 18, 2004.  Except as expressly admitted, Defendant denies the allegations of paragraph 7.

8.  Defendant admits the allegations of paragraph 8.

2

ANSWER AND COUNTERCLAIM

9.   Defendant denies the allegations of paragraph 9, and alleges that this Court found at trial in Triano v. Popov, A.P. No. 05-3485 (the "Triano Adversary Proceeding") that Debtor transferred his residual interest in the Shares to Defendant on April 18, 2004. The Court's findings in the Triano Adversary Proceeding are incorporated herein by reference.

10.   Defendant admits the allegations of paragraph 10.

11.   Defendant lacks sufficient information or belief to answer the allegations of paragraph 11 of the Complaint, and upon such grounds denies such allegations.

### CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
### (Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §584(a)(1)(A))

12.   Answering paragraph 12 of the Complaint, Defendant repeats and incorporates by reference each admission, denial, and allegation contained in paragraphs 1 through 11 of this Answer as though set forth at length herein.

13.   Answering paragraph 13 of the Complaint, Defendant admits and alleges that Debtor transferred his residual interest in the Shares to Defendant for $12,500 on April 18, 2004, as found by the Court at trial in the Triano Adversary Proceeding. Except as expressly admitted, Defendant denies the allegations of paragraph 13.

14.   Defendant denies the allegations of paragraph 14.

15.   Defendant denies the allegations of paragraph 15.

3

ANSWER AND COUNTERCLAIM

16.   Answering paragraph 16 of the Complaint, Defendant admits and alleges that she and Debtor executed the Agreement on April 18, 2004 and that a true and correct copy of the Agreement is attached as Exhibit 3 to the Complaint.  Except as expressly admitted, Defendant denies the allegations of paragraph 16.

17.   Defendant denies the allegations of paragraph 17.

18.   Defendant admits the allegations of paragraph 18.

19.   Defendant denies the allegations of paragraph 19.

20.   Defendant denies the allegations of paragraph 20.

## SECOND CAUSE OF ACTION

**(Avoidance and Recovery of Fraudulent Transfer Under Bankruptcy Code §544(b)(1) and California Civil Code §3439.04(a)(1))**

21.   Answering paragraph 21 of the Complaint, Defendant repeats and incorporates by reference each admission, denial, and allegation contained in paragraphs 1 through 20 of this Answer as though set forth at length herein.

22.   Defendant denies the allegations of paragraph 22.

## THIRD CAUSE OF ACTION

**(Avoidance and Recovery of Fraudulent Transfer Under Bankruptcy Code §548(a)(1)(B))**

23.   Answering paragraph 23, Defendant repeats and incorporates by reference each admission, denial and allegation set forth in paragraphs 1-13, 17, 18, and 20 of this Answer as though fully set forth herein.

24.   Answering paragraph 24, Defendant admits and alleges that the transfer of Debtor's residual interest in the Shares to Defendant under the Agreement was to or for the benefit

4

ANSWER AND COUNTERCLAIM

of Defendant and Debtor.  Except as expressly admitted, Defendant

denies the allegations of paragraph 24.

25.  Defendant denies the allegations of paragraph 25.

26.  Defendant denies the allegations of paragraph 26.

## FOURTH CAUSE OF ACTION

**(Avoidance and Recovery of Fraudulent Transfer Under Bankruptcy
Code §544(b)(1) and California Civil Code §3439.05)**

27.  Answering paragraph 23, Defendant repeats and
incorporates by reference each admission, denial and allegation
set forth in paragraphs 1-13, 17, 18, 20, and 24-26 of this
Answer as though fully set forth herein.

28.  Defendant denies the allegations of paragraph 28.

29.  Defendant denies the allegations of paragraph 29.

## FIFTH CAUSE OF ACTION

**(Injunctive Relief under Rule 7065 of the Federal Rules of
Bankruptcy Procedure and California Civil Code §3439.07)**

30.  Answering paragraph 30, Defendant repeats and
incorporates by reference each admission, denial and allegation
set forth in paragraphs 1-29 of this Answer.

31.  Answering paragraph 31, Defendant admits and alleges
that there is no legal ground to prevent her from transferring
the Shares.  Except as expressly admitted, Defendant denies the
allegations of paragraph 31.

32.  Defendant denies the allegations of paragraph 32.

## FIRST AFFIRMATIVE DEFENSE

The Complaint and each claim therein fail to state a claim
against Defendant upon which relief can be granted.

5

ANSWER AND COUNTERCLAIM

### SECOND AFFIRMATIVE DEFENSE

The Court lacks jurisdiction over the claims asserted in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

The Complaint and each claim therein are barred by the unclean hands of the Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

The claims by Plaintiff are subject to offset and recoupment.

### FIFTH AFFIRMATIVE DEFENSE

The Plaintiff lacks standing in this Court to assert the claims of the Complaint.

WHEREFORE, Defendant prays for judgment as follows:

1.  That Plaintiff take nothing and for judgment in favor of Defendant;

2.  For costs of suit;

3.  For reasonable attorneys fees to the extent allowed by law; and

4.  Such other and further relief as the Court may deem meet in the premises.


Dated: October 23, 2007          THE LAW OFFICE OF JOEL K. BELWAY
                                 Professional Corporation

                                 /s/ Joel K. Belway
                                 JOEL K. BELWAY
                                 Attorney for Defendant
                                 Stephanie Dodson

6

ANSWER AND COUNTERCLAIM

## DEMAND FOR JURY

Defendant Stephanie Dodson hereby demands trial by jury.


Dated: October 23, 2007          THE LAW OFFICE OF JOEL K. BELWAY
                                 Professional Corporation

                                 /s/ Joel K. Belway
                                 JOEL K. BELWAY
                                 Attorney for Defendant
                                 Stephanie Dodson


## COUNTERCLAIM

1.    Counterclaimant, Stephanie Dodson ("Counterclaimant"),
and counterdefendant, Yugen Kaisha, Y.K.F. ("Counterdefendant"),
were parties to that certain Closing Agreement re Payoff of
Secured Redemption Promissory Note dated March 12, 2007 ("Closing
Agreement") under which Counterclaimant paid off the balance of
certain obligations of Smart Alec's and Debtor to
Counterdefendant under agreements referred to in the Closing
Agreement, and herein, as the Settlement Documents.

2.    The transaction between Counterclaimant and
Counterdefendant that closed under the Closing Agreement
involved, *inter alia*, a redemption of the Shares in consideration
for the payment of certain obligations of Smart Alec's and Debtor
to the Counterdefendant.

3.    In or about the summer of 2006 Counterclaimant sought
to pay any sums owed to Counterdefendant under the Settlement
Documents.  Counterclaimant is informed and believes and thereon
alleges that Counterdefendant, in bad faith, delayed and stalled

7

ANSWER AND COUNTERCLAIM

a closing of the transaction that closed under the Closing

1   Agreement, causing Counterclaimant to pay approximately $90,000,

2   according to proof, more than she would have had to pay had

3   Counterdefendant acted in good faith and closed the transaction

4   when Counterclaimant originally sought to close.

5       4.    Counterclainant is informed and believes and thereon

6   alleges that Counterdefendant's actions constituted a bad faith

7   breach of contract, entitling Counterclaimant to general, special

8   and punitive damages, according to proof.

9       WHEREFORE, Counterclaimant prays for judgment as follows:

10      1.    For judgment in favor of Counterclaimant and against

11  Counterdefendant for general, special and punitive damages,

12  according to proof at trial;

13      2.    Costs of suit incurred herein;

14      3.    Attorneys fees to the extent allowed by law;

15      4.    Such other and further relief as the Court may deem meet

16  in the premises.

17

18

19  Dated: October 23, 2007        THE LAW OFFICE OF JOEL K. BELWAY
                                   Professional Corporation
20

21                                 /s/ Joel K. Belway
                                   JOEL K. BELWAY
22                                 Attorney for Counterclaimant
                                   Stephanie Dodson
23

24                        **DEMAND FOR JURY**

25      Counterclaimant Stephanie Dodson hereby demands trial by

26  jury.

27

28

8

ANSWER AND COUNTERCLAIM

Dated: October 23, 2007          THE LAW OFFICE OF JOEL K. BELWAY
                                 Professional Corporation

1
                                 /s/ Joel K. Belway
2                                JOEL K. BELWAY
                                 Attorney for Counterclaimant
3                                Stephanie Dodson

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

ANSWER AND COUNTERCLAIM

## DECLARATION OF SERVICE

I am over the age of eighteen years and not a party to the within action.  On October 23, 2007, I served the attached **Answer to Complaint to Avoid and Recover Fraudulent Transfer and for Injunctive Relief, Counterclaim and Demand for Jury Trial** on the interested parties in this action by placing true copies thereof in sealed envelopes and transmitting said envelopes to the following addresses by the means indicated:

Via First-Class U.S. Mail

James S. Monroe, Esq.
Gregory E. Schopf, Esq.
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996

U.S. Trustee
235 Pine Street, Suite 850
San Francisco, CA 94104

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 23, 2007, at San Francisco, California.

\s\ Joel K. Belway

ANSWER AND COUNTERCLAIM

James S. Monroe, Esq.
(State Bar Number: 102328)
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996
Telephone: (415) 984-8200
Facsimile: (415) 984-8300
E-mail: jmonroe@nixonpeabody.com

Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

Joel K. Belway
(State Bar Number 60556)
THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation
235 Montgomery Street, Suite 668
San Francisco, California 94104
Telephone: 415-788-1702
Facsimile: 415-788-1517
E-mail: belwaypc@pacbell.net

Attorneys for Defendant, Stephanie Dodson

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ALEXANDER N. POPOV,<br><br>                Debtor. | Case No. 05-32929<br><br>Chapter 7 |
| YUGEN KAISHA, Y.K.F.,<br><br>                Plaintiff,<br><br>    v.<br><br>STEPHANIE DODSON,<br><br>                Defendant. | Adv. Pro. No.: 07-03104<br><br>**JOINT DISCOVERY PLAN**<br>**[FRBP 7026(A) and FRCP 26(A)]**<br>**[PROPOSED]**<br>           Initial Status Conference<br><br>Date:    November 15, 2007<br>Time:   10:00 a.m.<br>Place:  Courtroom 23<br>          235 Pine Street<br>          San Francisco, CA 94104<br>Judge:  Hon. Thomas E. Carlson |

The parties by and through their counsel of record, hereby agree to the following discovery plan.

[PROPOSED] JOINT DISCOVERY PLAN;
CASE NO. 07-03104

10804124.1

# PROPOSED JOINT DISCOVERY PLAN

1.    <u>Changes to the Timing Form or Requirement For Initial Disclosures</u>:  The parties have agreed to exchange initial disclosures on or before November 20, 2007.

2.    <u>Timing, Subject Matter and Limitations of Discovery Subsequent to Initial Disclosures</u>:    Any discovery permitted pursuant to the Federal Rules of Bankruptcy Procedure shall be permissible after the initial disclosures are made except that depositions shall not be scheduled for a date prior to January 3, 2008.

3.    <u>Orders To Be Entered Pursuant to FRBP 7016 (b) and (c) and FRBP 7026(a)(1)(E)</u>:  A scheduling order is requested as follows: all discovery to be completed within six months after the initial status conference (meaning that all responses to written discovery requests are due on or before this date and all deposition testimony must be completed on or before this date), except for discovery with respect to expert witnesses.  A trial setting conference shall be set for shortly after the expiration of the discovery period, which shall deal with the disclosure of any expert witnesses, the discovery period for such expert witnesses, any BDRP referral, and a briefing and trial schedule.  All potentiall dispositive motions shall be filed within 30 days of the expiration of the discovery period.

Dated:  November 14, 2007                     NIXON PEABODY LLP


By: */s/ James S. Monroe*
    James S. Monroe
    Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.
Dated:  November 14, 2007                     THE LAW OFFICE OF JOEL K. BELWAY


By: */s/ Joel K. Belway*
    Joel K. Belway
    Attorneys for Defendant, Stephanie Dodson

[PROPOSED] JOINT DISCOVERY PLAN;                     -2-
CASE NO. 07-03104

1  James S. Monroe, Esq. (State Bar Number: 102328)
2  Gregory E. Schopf (State Bar Number: 122862)
   NIXON PEABODY LLP
3  One Embarcadero Center, Suite 1800
   San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300
   E-mail: jmonroe@nixonpeabody.com
5
6  Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

7

8              UNITED STATES BANKRUPTCY COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12 | In re: | Case No. 05-32929 |
   | | |
13 | ALEXANDER N. POPOV, | Chapter 7 |
   | | |
14 |          Debtor. | |
15 | | |
16 | YUGEN KAISHA, Y.K.F., | Adv. Pro. No.: 07-03104 |
17 |          Plaintiff, | **MOTION OF YUGEN KAISHA, Y.K.F. TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION** |
18 |    v. | |
19 | STEPHANIE DODSON, | **Hearing** |
20 |          Defendant. | Date:     December 21, 2007 |
21 | | Time:    9:30 a.m. |
   | | Place:   Courtroom 23 |
22 | | Judge:  Hon. Thomas E. Carlson |

23            __Introduction and Summary of Relief Requested__

24       Yugen Kaisha, Y.K.F. ("YKF"), plaintiff in the above-captioned action, hereby submits this

25  motion pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(1) of the

26  Federal Rules of Civil Procedure for dismissal of the counterclaim filed herein by defendant

27  Stephanie Dodson ("Dodson") for lack of subject matter jurisdiction on the grounds that there is no

28

MOTION TO DISMISS COUNTERCLAIM
ADV. CASE NO. 07-03104

10805018.1

1    independent jurisdictional basis for the counterclaim under 28 U.S.C. §1334(b) and it falls outside the

2    court's supplemental jurisdiction under 28 U.S.C. §1367(a).

3        YKF's complaint seeks to avoid and recover the debtor's prepetition transfer of 3,774,000

4    shares of common stock (the "Debtor's Shares") of Smart Alec's Intelligent Food, Inc., a California

5    corporation ("Smart Alec's") to Dodson as a fraudulent conveyance.  YKF has the right to pursue this

6    avoidance action pursuant to an assignment agreement entered into with the Chapter 7 Trustee of the

7    debtor's bankruptcy estate which was authorized and approved by order entered herein on July 31,

8    2007.  YKF maintains that the Debtor's Shares were transferred to Dodson shortly before the

9    September 6, 2005 petition date with the actual intent to hinder, delay or defraud the debtor's

10   creditors by removing said shares from the bankruptcy estate and thereby retaining control of Smart

11   Alec's to the exclusion of the debtor's creditors.

12       Dodson's counterclaim alleges a state law based contract claim regarding a Stock Redemption

13   Agreement, dated February 6, 2004, between Smart Alec's and YKF, whereby Smart Alec's agreed

14   to repurchase YKF's 1,440,000 shares of common stock of Smart Alec's (the "YKF Shares").  This

15   Stock Redemption Agreement was entered into as part of a Settlement Agreement entered into

16   between YKF, the debtor, Smart Alec's and Dodson, to settle a lawsuit filed by YKF regarding a

17   dispute concerning the accounting and management of Smart Alec's and the use of the funds YKF

18   invested in Smart Alec's to purchase the YKF Shares.  Pursuant to the Settlement Agreement and

19   Stock Redemption Agreement, Smart Alec's agreed to repurchase the YKF Shares for $775,000 as

20   provided therein.  On March 12, 2007, the balance due under the Stock Redemption Agreement was

21   paid to YKF and the YKF Shares were transferred to Smart Alec's.  Monroe Dec., ¶¶ 2-3.

22       By her counterclaim herein, Dodson alleges that YKF in some unexplained way delayed the

23   payoff of the amount due under the Stock Redemption Agreement, causing additional amounts to

24   have to be paid at the closing, and based thereon, seeks money damages from YKF.  YKF denies this

25   allegation, but the truth or falsity thereof is immaterial to this motion.

26

27

28

MOTION TO DISMISS COUNTERCLAIM
ADV.CASE NO. 07-03104                        -2-

1

**<u>Argument</u>**

2      A bankruptcy court has subject matter jurisdiction to adjudicate a counterclaim in an

3   adversary proceeding only if there is an independent jurisdictional basis for the counterclaim as

4   provided by 28 U.S.C. §1334(b) or it falls within the court's supplemental jurisdiction under 28

5   U.S.C. §1367(a).

6      Pursuant to 28 U.S.C. §1334(b), the bankruptcy court has jurisdiction over "all civil

7   proceedings arising under title 11, or arising in or related to cases under title 11." Dodson's

8   counterclaim does not fall within any of these categories since it is based solely upon state law, exists

9   apart from the bankruptcy case, and does not involve the debtor or the debtor's estate or have any

10  conceivable potential impact on the bankruptcy estate. The counterclaim seeks money damages on

11  behalf of Dodson only against YKF only. Accordingly, this dispute is not within the statutory grant

12  of bankruptcy jurisdiction.

13      Likewise, Dodson's counterclaim is not within the bankruptcy court's supplemental

14  jurisdiction under 28 U.S.C. §1367(a) (*See In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005).

15  Supplemental jurisdiction extends only to those claims that are "so related to the (plaintiff's)

16  claims…that they <u>form part of the same case or controversy</u> under Article III of the United States

17  Constitution. 28 U.S.C. §1367(a) (emphasis and parentheses added). This embodies a requirement

18  that all claims arise from a "common nucleus of operative facts." *In re Pegasus Gold Corp., supra,*

19  at 1195; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966).

20  Applying this requirement here, it is clear that the aggregate of operative facts giving rise to

21  Dodson's counterclaim (for breach of contract regarding YKF's post-petition sale of its shares of

22  Smart Alec's to Smart Alec's) is entirely different from the facts supporting YKF's complaint (for

23  avoidance of the debtor's prepetition transfer of his shares of Smart Alec's to Dodson). The

24  complaint and counterclaim bear no logical relation to each other and rest upon different

25  documentary, testimonial and other evidence. Accordingly, the counterclaim is not within the

26  bankruptcy court's supplemental jurisdiction.

27

28

MOTION TO DISMISS COUNTERCLAIM
ADV.CASE NO. 07-03104                           -3-

1

<u>**Conclusion**</u>

2

Based upon the foregoing authorities and argument, YKF respectfully requests that its motion

3

to dismiss Dodson's counterclaim be granted and for such other relief as the court deems appropriate.

4

5

Dated:  November 14, 2007                    NIXON PEABODY LLP

6

7

8

By: <u>*/s/ James S. Monroe*</u>
        James S. Monroe

9

        Attorneys for Yugen Kaisha, Y.K.F.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS COUNTERCLAIM
ADV. CASE NO.  07-03104                              -4-

1  James S. Monroe, Esq. (State Bar Number: 102328)
2  Gregory E. Schopf (State Bar Number: 122862)
   NIXON PEABODY LLP
3  One Embarcadero Center, Suite 1800
   San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300
   E-mail:  jmonroe@nixonpeabody.com
5
   Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.
6

7

8                 UNITED STATES BANKRUPTCY COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  In re:                          | Case No. 05-32929

13  ALEXANDER N. POPOV,             | Chapter 7

14            Debtor.

15

16  YUGEN KAISHA, Y.K.F.,

17            Plaintiff,            | Adv. Pro. No.: 07-03104

                                    | **NOTICE OF HEARING ON MOTION OF**
18      v.                          | **YUGEN KAISHA, Y.K.F. TO DISMISS**
                                    | **COUNTERCLAIM FOR LACK OF**
19  STEPHANIE DODSON,               | **SUBJECT MATTER JURISDICTION**

20            Defendant.            | **Hearing**

21                                  | Date:     December 21, 2007
                                    | Time:     9:30a.m.
22                                  | Place:    Courtroom 23
                                    | Judge:    Hon. Thomas E. Carlson
23

24      TO THE DEFENDANT, HER COUNSEL AND OTHER INTERESTED PARTIES:

25      NOTICE IS HEREBY GIVEN that on December 21, 2007, at 9:30 a.m., or as soon thereafter

26  as this matter may be heard, in the Courtroom of the Honorable Thomas E. Carlson, United States

27  Bankruptcy Judge, United States Bankruptcy Court, Courtroom 23, 235 Pine Street, San Francisco,

28  California 94104, Yugen Kaisha, Y.K.F. will, and hereby does, move the Court for an Order for

MOTION TO DISMISS COUNTERCLAIM
ADV. CASE NO. 07-03104                                            10803755.1

1  dismissal of the counterclaim filed herein by defendant Stephanie Dodson for lack of subject matter

2  jurisdiction.  This motion is made pursuant to Rule 7012 of the Federal Rules of Bankruptcy

3  Procedure and Rule 12(b)(1) of the Federal Rules of Civil Procedure and is made on the grounds that

4  there is no independent jurisdictional basis for the counterclaim under 28 U.S.C. §1334(b) and it falls

5  outside the court's supplemental jurisdiction under 28 U.S.C. §1367(a).

6       This motion is based upon this Notice, the Motion, and the Declaration of James S. Monroe

7  filed in support of this motion, and upon such further evidence and argument as may be presented

8  prior to or at the time of the hearing.

9

10  Dated:  November 14, 2007          NIXON PEABODY LLP

11

12

13            By: */s/ James S. Monroe*

14            James S. Monroe
          Attorneys for Yugen Kaisha, Y.K.F.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS COUNTERCLAIM     -2-
ADV. CASE NO.  07-03104

1 James S. Monroe, Esq. (State Bar Number: 102328)
Gregory E. Schopf (State Bar Number: 122862)
2 NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
3 San Francisco, CA 94111-3996
Telephone: (415) 984-8200
4 Facsimile: (415) 984-8300
E-mail: jmonroe@nixonpeabody.com
5
6 Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12 In re:                                    Case No. 05-32929

13 ALEXANDER N. POPOV,                       Chapter 7

14                      Debtor.

15

16 YUGEN KAISHA, Y.K.F.,                     Adv. Pro. No.: 07-03104

17                      Plaintiff,           **DECLARATION OF JAMES S. MONROE
                                             IN SUPPORT OF MOTION OF YUGEN
18       v.                                  KAISHA, Y.K.F. TO DISMISS
                                             COUNTERCLAIM FOR LACK OF
19 STEPHANIE DODSON,                         SUBJECT MATTER JURISDICTION**

20                      Defendant.           **Hearing**

21                                           Date:    December 21, 2007
                                             Time:    9:30 a.m.
22                                           Place:   Courtroom 23
                                             Judge:   Hon. Thomas E. Carlson
23

24

25       I, James S. Monroe, declare as follows:

26       1.      I am an attorney at law duly licensed and authorized to practice in the State of

27 California and the above-entitled court and I am a partner of Nixon Peabody LLP, attorneys herein

28 for Yugen Kaisha, Y.K.F. ("YKF").  The facts set forth in this declaration are within my personal

DECLARATION OF JAMES S. MONROE;
ADV. CASE NO. 07-03104

10803736.1

1    knowledge as a result of my personal handling of the matters which are set forth herein.  If called

2    upon to do so, I could and would competently testify thereto.

3        2.    Attached hereto as Exhibit 1 and incorporated herein by this reference is a true and

4    correct copy of the February 6, 2004 Settlement Agreement and Release (excluding exhibits other

5    than the Stock Redemption Agreement) entered into between YKF, the debtor, Stephanie Dodson

6    ("Dodson"), and Smart Alec's Intelligent Food, Inc. ("Smart Alec's"), to settle a lawsuit filed by

7    YKF regarding a dispute concerning the accounting and management of Smart Alec's and the use of

8    the funds YKF invested in Smart Alec's to purchase 1,440,000 shares of common stock of Smart

9    Alec's (the "YKF Shares").  Pursuant to the Settlement Agreement and Stock Redemption

10   Agreement, Smart Alec's agreed to repurchase the YKF Shares for $775,000 as provided therein.

11       3.    Attached hereto as Exhibit 2 is a true and correct copy of the Closing Agreement re

12   Payoff of Secured Redemption Promissory Note which was executed by the undersigned and Dodson

13   in connection with the March 12, 2007 payment to YKF of the balance due under the Stock

14   Redemption Agreement and transfer of the YKF Shares to Smart Alec's.

15       I declare under penalty of perjury under the laws of the United States of America that the

16   foregoing is true and correct to the best of my knowledge, information and belief.  Executed this 14th

17   day of November, 2007, at San Francisco, California.

18

19                                          /s/ James S. Monroe
20                                          James S. Monroe

21

22

23

24

25

26

27

28

DECLARATION OF JAMES S. MONROE;                    -2-
ADV. CASE NO. 07-03104

# EXHIBIT 1

7516402.1

# SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into by YUGEN KAISHA, Y.K.F. ("YKF"), and SMART ALEC'S INTELLIGENT FOOD, INC. ("Smart Alec's"), ALEXANDER POPOV ("Popov") and STEPHANIE DODSON ("Dodson") (SMART ALEC'S, POPOV AND DODSON shall be referred to collectively herein as the "Defendants").

**A.**     YKF is a Japanese corporation duly organized and existing under the laws of Japan. Smart Alec's is a corporation duly organized and existing under the laws of the state of California, located at 2355 Telegraph Avenue, Berkeley, California. Smart Alec's is engaged in the food service business. For the purposes of this Agreement, Smart Alec's refers to any franchise, subsidiary, or additional location of Smart Alec's, which is existing or may exist during the term of this Agreement. Alexander Popov and Stephanie Dodson are residents of the state of California and are or have been at one time, employees and/or officers of Smart Alec's.

**B.**     YKF invested $720,000 in Smart Alec's in exchange for 1,440,000 shares of common stock in Smart Alec's (the "YKF Shares") and full development rights ("Franchise Rights") of Alex Specialty Foods in the Japanese marketplace. Popov acted as the President and Chief Executive Officer of Smart Alec's and oversaw the day-to-day management of Smart Alec's. Popov enlisted the help of Dodson and, from time to time, Michael Popov, in the management of Smart Alec's affairs.

**C.**     A dispute has arisen between YKF, the Defendants and Michael Popov regarding the accounting and management of Smart Alec's and the use of YKF's investment funds. Such dispute has become the subject of the lawsuit entitled, *Yugen Kaisha, Y.K.F., a Japanese Corporation v. Smart Alec's Intelligent Foods, Inc., Alex Popov, Stephanie Dodson, and Michael Popov*, Case. No. 2002-061123 (Alameda County, California) (the "Action").

**D.**     YKF and Defendants have agreed to settle their dispute in accordance with the terms and conditions of this Agreement. YKF and Michael Popov have also agreed to settle their dispute in a separate settlement agreement.

**E.**     As used herein, the term "Settlement Documents" shall mean and refer to each of the agreements and other documents referenced and/or attached hereto as exhibits and executed and delivered in connection with the transactions contemplated by this Agreement. The term "Agreement" as used herein shall include "Settlement Documents."

NOW, THEREFORE, incorporating the recitals set out above as part of this Agreement and in consideration of the mutual covenants contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties acknowledge and agree to the following:

1.     **Stock Redemptions**.

a.     To settle the Action, in consideration for YKF's original investment in the Corporation and a portion of its expenditure of reasonable attorneys' fees in pursuing the Action, Smart Alec's agrees to repurchase the YKF Shares from YKF and YKF agrees to sell and

S423681.1

1

transfer to Smart Alec's all of the YKF Shares ("The Transfer") for the amount of Seven Hundred Seventy Five Thousand Dollars (the "Purchase Price") pursuant to the terms of that certain stock redemption agreement ("Stock Redemption Agreement") and related secured promissory note (the "Redemption Promissory Note") in the form attached hereto as <u>Exhibit A</u>. Smart Alec's and YKF shall execute and deliver the Stock Redemption Agreement and Smart Alec's shall execute and deliver the Redemption Promissory Note at the Closing (as defined in Section 16 below). Also at the Closing, Smart Alec's shall execute and deliver an affidavit of non-USRPHC status in the form attached hereto as <u>Exhibit B</u> (the "Affidavit").

2.    <u>Security for The Transfer</u>.

    **a.**  <u>Proceeds from the Sale of the Baseball</u>.  Popov shall use his best efforts to fully cooperate with Smart Alec's and YKF to stake claim to, recover, and obtain the return of the proceeds from the sale of the baseball (the "Proceeds") to which Popov is entitled pursuant to the court order dated Wednesday, December 18, 2002 in the case *Popov v. Hayashi*, Case No. 4005435 (San Francisco). If and when the July 17, 2003 Preliminary Injunction restricting the use of such proceeds signed by Judge Garcia of the San Francisco Superior Court (the "Court") in the case *Triano v. Popov, et al.*, Case No. CPF 03503194 is lifted, and to the extent the Court allows Popov to retain all or any portion of the Proceeds, Popov hereby agrees that eighty five thousand dollars ($85,000) of such Proceeds, shall be returned to Smart Alec's and deposited into the corporate account, and shall reflect a repayment of debt owed by Popov to Smart Alec's.

    **b.**  <u>Popov's Shares in Smart Alec's</u>.  At the Closing, Popov shall execute and deliver a pledge agreement in the form attached hereto as <u>Exhibit C</u> (the "Pledge Agreement"), pursuant to which Popov will grant to YKF, and YKF will take, a possessory security interest in Popov's shares of Smart Alec's stock (the "Popov Shares"). Also at the Closing, Popov shall deliver to YKF the original stock certificate evidencing his ownership of 3,744,000 shares of common stock in Smart Alec's and shall deliver the stock power required under the Pledge Agreement.

    **c.**  <u>Guarantee by Popov</u>.  At the Closing, Popov shall execute and deliver a personal guarantee (the "Guarantee"), in the form attached hereto as <u>Exhibit D</u>, pursuant to which Popov personally guarantees up to the amount of $285,000 the obligations of Smart Alec's under the Redemption Promissory Note and this Agreement. The Guarantee will expire in the event that: (i) Smart Alec's pays a total of $285,000 to YKF; or (ii) if the Board of Directors of Smart Alec's decides to liquidate Smart Alec's before The Transfer is completed and full payment of the Purchase Price is made.

    **d.**  <u>Assets of Smart Alec's</u>.  At the Closing, Smart Alec's shall execute and deliver a security agreement (the "Security Agreement"), in the form attached hereto as <u>Exhibit E</u>, pursuant to which Smart Alec's grants YKF a security interest in all of its assets, including but not limited to deposit accounts, intellectual property, Smart Alec's leasehold interest in the property located at 2355 Telegraph Avenue, Berkeley, California, inventory and equipment. Smart Alec's agrees to execute additional documents as reasonably necessary to effect YKF's security interest in Smart Alec's assets, including but not limited to a deposit account control agreement.

S423681.1

2

    e.  **Promissory Note by Smart Alec's**.  At the Closing, Smart Alec's shall execute and deliver the Redemption Promissory Note in the form attached as <u>Exhibit A</u> in YKF's favor in the principal amount of Seven Hundred and ~~Seventy~~ Thousand Dollars ($7~~7~~2,000).

*(handwritten: Seventy → TWO)*

3.    **Representations by Smart Alec's and Popov**.  Smart Alec's and Popov, as an officer of Smart Alec's, represent and warrant to YKF that, as of the date of this Agreement, (a) all of the outstanding shares of Smart Alec's are owned as follows:  3,744,000 shares of common stock owned by Popov, 1,440,000 shares of common stock owned by YKF, and 576,000 shares of common stock owned by Michael Popov; and (b) there are no other classes of stock authorized by Smart Alec's for issuance.  At the Closing, Smart Alec's and Popov shall execute and deliver to YKF a certificate in the form attached hereto as <u>Exhibit F</u> (the "Closing Certificate") dated as of the Closing and signed by Smart Alec's and Popov pursuant to which Smart Alec's and Popov represent and warrant that there shall have been no material breaches by Smart Alec's or Popov in the performance of any of their respective covenants and agreements in this Agreement, and each of the representations and warranties of Smart Alec's and Popov contained in this Agreement shall be true and correct as of the Closing as though made as of the Closing.

4.    **Resignation From the Board of Directors and Election of New Board**.  At the Closing, Popov and Dodson shall tender their written resignations (the "Director Resignations") from the Board of Directors of Smart Alec's and a new Board of Directors shall be elected in accordance with the bylaws of Smart Alec's.  Popov and Dodson shall also tender their written resignations as officers of Smart Alec's (the "Officer Resignations").  Popov's resignation is attached hereto as <u>Exhibit G</u> and Dodson's resignation is attached hereto as <u>Exhibit H</u>.

5.    **Consolidation of Popov's Promissory Notes**.  At the Closing, Popov shall execute and deliver a new promissory note to Smart Alec's for $85,000 consolidating certain debt owed by Popov to Smart Alec's (the "Consolidated Promissory Note") in the form attached hereto as <u>Exhibit I</u>.

6.    **Legal Fees**.  With respect to the $21,123 of legal fees currently claimed by Triano against Smart Alec's, Popov and Dodson, YKF acknowledges that to the extent these are fees and costs adjudicated to be for services rendered to Smart Alec's or arising out of the Action, said fees and costs will remain a corporate obligation of Smart Alec's to the extent that they are owed at all.

7.    **Stipulated Judgment**.  At the Closing, YKF and Smart Alec's shall execute a Stipulation for Entry of Judgment (the "Stipulation") in the form attached hereto as Exhibit J.  Execution on the judgment (the "Judgment") entered against Smart Alec's pursuant to the Stipulation shall be stayed until an Event of Default (as defined below) occurs.  Any and all amounts received or recovered by YKF under the Settlement Documents shall be applied in partial satisfaction of the Judgment.  After Smart Alec's fully performs its obligations under the terms of the Settlement Documents, YKF shall promptly execute and file an Acknowledgment of Full Satisfaction of the Judgment.

8.    **Franchise Rights**.  After Smart Alec's and Popov have fully performed all of their respective obligations under this Agreement and the Settlement Documents, The Transfer has

S423681.1

3

been completed and full payment of the Purchase Price has been made, YKF shall release the Franchise Rights to Smart Alec's.

9.     **Ownership of Proprietary Rights; Restrictions**.

a.     Popov and Dodson acknowledge that Smart Alec's name, the business reputation associated therewith, the methods and techniques employed by Smart Alec's, the knowledge of the services and methods of Smart Alec's, the menu and all items on the menu of Smart Alec's, the trade secrets, including without limitation, confidential information regarding the operational, sales, promotional and marketing methods and techniques of Smart Alec's, the opportunities, associations and experience established and acquired by Popov through Smart Alec's and other proprietary know-how (collectively, the "Proprietary Information"), are of considerable value. Popov and/or Dodson, while an employee of Smart Alec's, shall be permitted to use the Proprietary Information for the sole purpose of operating the business of Smart Alec's. If Popov or Dodson's employment with Smart Alec's is terminated for any reason, Popov and Dodson shall be permanently prohibited from using or disclosing, directly or indirectly, the Proprietary Information.

b.     While Popov and/or Dodson is an employee or shareholder of Smart Alec's, Popov and/or Dodson shall not, directly or indirectly, (whether as principal, agent, independent contractor, partner or otherwise) own, manage, operate, control, finance, participate in, perform services for, consult with or otherwise carry on, a business similar to or competitive with Smart Alec's business anywhere within a sixty (60) mile radius of any Smart Alec's location; provided, however, that nothing set forth in this Section 12(b) shall prohibit Popov and/or Dodson from owning not in excess of 5% in the aggregate of any class of capital stock of any corporation if such stock is publicly traded and listed on any national or regional stock exchange or reported on the Nasdaq Stock Market.

c.     The foregoing covenants shall be deemed severable and, if part shall be legally enforceable and part legally unenforceable, only the enforceable parts shall apply. In the event of breach hereof, Popov and Dodson consent to the issuance of an injunction enjoining Popov and/or Dodson from continuing any association with a competitive business or disclosing or using any Proprietary Information in violation of the terms hereof. In addition to said injunctive remedy, Smart Alec's shall be entitled, as liquidated damages, to all amounts earned or received by Popov or Dodson for a period of one year following the breach or violation of this Section 12.

d.     The Parties agree to negotiate an employment contract for Dodson.

e.     The Parties acknowledge that Popov has been an at will employee of Smart Alec's. The Parties agree that Popov can continue his employment until April 30, 2004 on an at will basis and will be paid his current salary of $7,000 per month.

10.     **Dismissal of Dodson and Popov**.

At Closing, YKF shall deliver fully executed Dismissals of Dodson, Popov and Does 1-25 in substantially the same form as Exhibit K attached hereto. Dodson and Popov shall promptly cause such dismissals to be filed with the Alameda County Court.

S423681.1                                              4

**11.    Further Assurances.** Popov and Smart Alec's agree to execute additional documents as are reasonably necessary to effectuate the transactions and agreements contemplated in this Agreement.

**12.    Default.** Upon the happening of any one of the following conditions or events ("Events of Default") and upon written notice by YKF at anytime after the occurrence of an Event of Default, Popov and Smart Alec's shall be declared in default of this Agreement ("Default"):

    **a.    Failure to Pay.** Failure to pay any Future Periodic Transfer (as that term is defined in the Stock Redemption Agreement attached hereto as <u>Exhibit A</u>) on or before the fifteenth day of the month when due. If the fifteenth day of any month falls on a weekend or holiday, the payment for that month is then due on the first business day thereafter.

    **b.    False Statement.** Any warranty, representation or statement made or furnished to YKF by or on behalf of Popov and/or Smart Alec's in connection with this Agreement or any of the Settlement Documents proving to have been false in any material respect when made or furnished.

    **c.    Insolvency and Bankruptcy.** Insolvency, or the commencement of any proceeding under bankruptcy or insolvency laws by Smart Alec's.

    **d.    Other Breach.** Any material breach by Popov and/or Smart Alec's of any of their respective covenants, agreements, representations or warranties contained in this Agreement; any material breach by Popov and/or Smart Alec's of any of their respective covenants, agreements, representations or warranties contained in any of the Settlement Documents; and failure to comply with the Further Assurances as provided in Section 11.

    **e.    Maintenance of Business.** If Smart Alec's and/or Popov take any actions outside the ordinary course of business of Smart Alec's without the prior written consent of YKF.

**13.    Remedies Upon Default.** Upon the occurrence of an Event of Default, and written notice by YKF to Popov and Smart Alec's as provided in Section 12, YKF may declare all or any part of the obligations of Popov and Smart Alec's to YKF immediately due and payable in full, may foreclose on the Popov Shares and any other personal or real property in which YKF holds a security interest pursuant to the Settlement Documents, may execute upon and otherwise enforce the Judgment and may exercise any and all rights and remedies available to YKF under applicable law and /or any of the Settlement Documents. Notwithstanding the foregoing, upon the occurrence of an Event of Default by Smart Alec's, Popov may purchase the remaining YKF Shares that have not yet been redeemed by Smart Alec's under the Stock Redemption Agreement in exchange for Popov's cash payment to YKF of the remaining balance of the Purchase Price for the YKF Shares no later than fourteen (14) days after the occurrence of the Event of Default.

**14.    Releases of Claims.**

    **a.    Release of Parties on Satisfaction of Obligations and Conditions in this Agreement.** Effective upon the satisfaction of all obligations and conditions contained in this Agreement, the Parties hereby fully releases and forever discharge each other and their respective successors, assigns, transferees, affiliates, subsidiaries, parents, partners, and their

S423681.1

attorneys, representatives, agents, officers, directors, accountants, auditors, shareholders and employees, of, from and on account of any and all claims, demands, actions, charges, causes of action, suits, liabilities, obligations, promises, contracts, agreements, damages, losses, expenses, costs (including but not limited to attorneys' fees and costs actually incurred) of whatever nature and kind, wherever filed or prosecuted, and whether or not yet asserted, including without limitation, any claim, known or unknown, suspected or unsuspected, and any liability alleged as a result of actions undertaken, done, or omitted to be done up to and including the date of this Agreement, which are related to or in any manner incidental to any claims, matters or allegations which were asserted or might have been asserted in the Action. Notwithstanding the release set forth in this Section 14(a), such release shall not apply to any claims arising from or with respect to any alleged breach of any representation or warranty or nonperformance of this Agreement.

b. **Waiver of Provisions of California Civil Code Section 1542.** The parties hereto, and each of them , hereby warrant, represent, and agree that each of them is fully aware of the provisions of California Civil Code Section 1542, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in is favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

The parties hereto, and each of them, voluntarily waive the provisions of California Civil Code Section 1542, and any other similar law, as to any and all claims, demands, causes of action, or charges of whatever nature, known and unknown, and further agree that this waiver is a material aspect of the consideration for entering this Agreement.

15.    **Preservation of Nondischargeability Actions.** If, prior to the satisfaction of Popov's obligations under the Guarantee pursuant to which Popov personally guarantees up to the amount of $285,000, and the obligations of Smart Alec's under the Redemption Promissory Note and this Agreement, a bankruptcy case is filed by or against Popov under the United States Bankruptcy Code, neither this Agreement nor the releases and dismissals provided for herein shall be construed to alter, waive, release, limit, bar or prejudice in any way the rights, if any, of (a) YKF to assert a nondischargeability action against Popov, up to $285,000, pursuant to 11 U.S.C. § 523 with respect to the subject matter of the Action or any other matter, or (b) Popov to oppose any such action on any and all available grounds.

16.    **Closing.**

a. **Place and Time.** Upon the terms and subject to the satisfaction of the conditions set forth in this Agreement, the consummation of the transactions contemplated by this Agreement (the "Closing") shall take place at the law offices of Nixon Peabody LLP, Two Embarcadero Center, San Francisco, California 94111, by the execution (if applicable) and upon delivery, on a mutually agreeable date and time not later than ~~December ___, 2003,~~ February 6, 2004 of the documents and funds described in this Section 16.

b. **Defendants' Closing Deliveries.** At the Closing, the Defendants shall deliver or cause to be delivered to YKF each of the following:

S423681.1

6

i.    The sum of _three_ thousand dollars (\$ _3_,000) in the form of a certified cashier's check made payable to Yugen Kaisha, Y.K.F. in accordance with Section 1(a);

ii.    The Stock Redemption Agreement and Redemption Promissory Note as referenced in Section 1(a) and attached hereto as <u>Exhibit A</u>, executed by Smart Alec's;

iii.    The Affidavit as referenced in Section 1(a) and attached hereto as <u>Exhibit B</u>, executed by Smart Alec's;

iv.    The Pledge Agreement as referenced in Section 2(b) and attached hereto as <u>Exhibit C</u>, executed by Popov;

v.    The stock power required in Section 2(b) above and accompanying original stock certificate;

vi.    The Guarantee as referenced in Section 2(c) and attached hereto as <u>Exhibit D</u>, executed by Popov;

vii.    The Security Agreement as referenced in Section 2(d) and attached hereto as <u>Exhibit E</u>, executed by Smart Alec's;

viii.    The Closing Certificate as referenced in Section 3 and attached hereto as <u>Exhibit F</u>, executed by Smart Alec's and Popov;

ix.    As referenced in Section 4, the Director Resignations attached hereto as <u>Exhibit G</u> and Officer Resignations attached hereto as <u>Exhibit H</u>, executed by Popov and Dodson;

x.    The Consolidated Promissory Note as referenced in Section 5 and attached hereto as <u>Exhibit I</u>, executed by Popov;

xi.    The Legal Fees for Consideration to be prepared by Popov; and

xii.    The Stipulation for Entry of Judgment as referenced in Section 7 and attached hereto as <u>Exhibit J</u>, executed by Smart Alec's;

xiii.    This Agreement, executed by Smart Alec's, Popov and Dodson; and

xiv.    The leasehold deed of trust and deposit account control agreement as referenced in Section 2(d), executed by Smart Alec's.

    c.   <u>YKF's Deliveries</u>.

i.    The Stock Redemption Agreement, executed by YKF;

ii.    The Dismissals of Dodson, Popov and Does 1-25 as referenced in Section 10 and attached hereto as <u>Exhibit K</u>, executed by YKF; and

S423681.1

7

      **iii.**    This Agreement, executed by YKF.

**17.**   <u>Notice</u>. Any and all notices, demands, requests or other communications required or permitted by this Agreement or by law to be served on, given to or delivered to any party to this Agreement by an other party to this Agreement shall be in writing, unless specified otherwise, and shall be deemed duly served, given, received or delivered when transmitted to the person indicated below:

        If to YKF:               Yugen Kaisha Y.K.F.
                                    c/o Brian Baymiller
                                      Fuji Silysia Chemical LTD
                                      1000 Park Forty Plaza, Suite 290
                                      Durham, NC 27713

                                      With a copy to:

                                      George H. Pretty, II
                                      PARKER, POE, ADAMS, & BERNSTEIN, L.L.P.
                                      401 South Tryon Street, Suite 3000
                                      Charlotte, North Carolina 28202

        If to DEFENDANTS:          Smart Alec's Intelligent Food, Inc.
                                      2355 Telegraph Avenue
                                      Berkeley, CA 94704

**18.**   <u>Confidentiality</u>.

      **a.** It is a material inducement for the parties to enter into this compromise and settlement of their disputes and differences that such disputes and differences, and the terms and provisions of this Agreement, shall be, and remain, strictly confidential. Accordingly, neither this Agreement, nor any of its terms, shall be disclosed to any person, except that this Agreement and its terms may be disclosed: (a) as required by law or court order; (b) to counsel, accountants, and auditors of any of the parties hereto; (c) in any action or proceeding where the existence or terms of the Agreement are at issue; or (d) by written agreement of the parties. If this Agreement or its terms are disclosed, the party disclosing such information shall give prior written notice thereof to each of the other parties hereto. Furthermore, the party disclosing such information shall advise the recipient of the provisions of this section.

      **b.** Notwithstanding any prohibition on disclosure in Section 19(a) above, nothing in this Agreement shall preclude YKF or Popov from disclosing to Martin F. Triano and his counsel the substance of the provision in Section 1(e) of the Stock Redemption Agreement (attached hereto as <u>Exhibit A</u>) regarding the use of baseball sale proceeds to make payments hereunder.

**20.**   <u>General Provisions</u>.

      **a.** <u>Assignment</u>. Neither this Agreement nor any of the rights or obligations of any of the Defendants hereunder may be assigned or pledged by any of them without the written

S423681.1

                                      8

consent of YKF, and no such assignment by any of them shall relieve it or him of its or their obligations hereunder.

    **b.  No Admission of Liability**.  The parties acknowledge that this Agreement is a settlement of disputed claims, and that this Agreement is not an admission of liability by either party to the other, which liability is denied by all parties.

    **c.  Enforceability**.  Each of the parties acknowledges that they have been represented by competent counsel in reviewing and deciding to enter into this Agreement.  Further, each party acknowledges reading this entire document, understanding its terms and effects, and that this Agreement is being signed freely by each party.

    **d.  Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, excluding its conflict of laws principles.

    **e.  Entire Agreement**.  This Agreement represents the entire understanding between the parties with respect to the settlement of the dispute between them, and it supersedes all prior discussions, representations, and/or negotiations.  This Agreement may not be amended except in writing and signed by an authorized representative of both parties.

    **f.  Binding Agreement**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, successors, and permitted assigns.

    **g.  Attorneys' Fees**.  In any action brought by YKF or the Defendants to enforce the terms of this Agreement, or any agreement, document or instrument related to this Agreement or incorporated into this Agreement by exhibit or otherwise, the party who prevails in such action to enforce this Agreement shall be entitled to recover its costs and attorney's fees from the other party.

    **h.  Force Majeure.**  No party shall be responsible for any delay or failure in performance of any part of this Agreement to the extent such delay or failure is caused by fire, flood, explosion, war, acts of terrorism, organized union or third party labor dispute, embargo, governmental action or failure to act, the act of any civil or military authority, act of God or by any other similar causes beyond its reasonable control.

    **i.  Severability**.  Should any of the provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, it is agreed that this shall not in any way or manner affect the enforceability of the other provisions of this Agreement which shall remain in full force and effect.

    **j.  Execution in Counterparts**.  YKF and the Defendants agree that this Agreement may be executed in counterparts and that it is the intent of YKF and the Defendants that a copy of this Agreement signed by either YKF, Popov, Smart Alec's and/or Dodson shall be fully enforceable against that party.

*[Signature Page Follows]*

This Agreement is entered into, executed, and becomes effective on the date of the last signature by the parties' authorized representatives as set out below.

**YUGEN KAISHA, Y.K.F.**

By: _____
Printed Name: Seiji Takahashi
Title: President + CEO
Date: _____


**SMART ALEC'S INTELLIGENT FOOD, INC.**

By: _____
Printed Name: Alex Popa
Title: CEO
Date: 2/6/04

_____
**ALEXANDER POPOV**
Date: 2/6/04

_____
**STEPHANIE DODSON**
Date: 2.6.04

S423681.1

10

# A.

# STOCK REDEMPTION AGREEMENT

S528180.1

## STOCK REDEMPTION AGREEMENT

THIS STOCK REDEMPTION AGREEMENT, made as of February _6_, 2004 (the "Agreement"), by and between **SMART ALEC'S INTELLIGENT FOOD, INC.**, a California corporation (the "**Company**"), and **YUGEN KAISHA, Y.K.F.**, a shareholder of the Company (the "**Seller**").

WHEREAS, the Seller owns 1,440,000 shares of the issued and outstanding voting common stock of the Company (the "**Shares**");

WHEREAS, each of the Seller and the Company desires the Company to purchase and redeem the Shares pursuant to this Agreement;

WHEREAS, capitalized terms used in this Agreement but not otherwise defined shall have the meanings set forth in that certain settlement agreement of even date herewith (the "**Settlement Agreement**") by and among the Seller, the Company, Alexander Popov, and Stephanie Dodson.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements hereinafter contained, the parties agree:

1.    <u>Redemption of Shares</u>.  The Company hereby agrees to redeem and purchase from the Seller and the Seller hereby agrees to transfer and sell to the Company the Shares ("**The Transfer**").  In consideration for The Transfer, the Company will remit to the Seller the purchase price of Seven Hundred and Seventy Five Thousand Dollars ($775,000) (the "**Purchase Price**").  The Purchase Price shall be due and payable as follows:

(a)    Concurrent with the Closing under the Settlement Agreement, the Company shall transfer by wire to the account below the amount of _Three_ Thousand Dollars ($_3_,000) (the "**Initial Transfer**"): _by check # 5520 from Bank of America_

Bank:                    _____
Location:              _____
Account No.:         _____
ABA No.:             _____
Attn.:                   _____

(b)    Concurrent with the Closing under the Settlement Agreement, the Company shall execute and deliver a secured promissory note for the benefit of the Seller in the amount of Seven Hundred_Seventy Two_ Thousand Dollars ($7_72_,000) (the "**Redemption Promissory Note**") in the form attached hereto as <u>Exhibit A</u>.

As provided below, the Company shall make monthly transfers (the "**Transfers**") no later than the fifteenth (15th) of each month to the bank account set forth in Section 1(a) above (the "**Transfer Account**").  The Transfers will accumulate in the Transfer Account until such time as

S417256.4

the amount of funds in the Transfer Account is sufficient for the Company to redeem more than 20% of the Company's common stock then owned by the Seller (the "**First Redemption**"). After the First Redemption, the Seller shall continue to accumulate the Transfers in the Transfer Account until such time as the amount of funds in the Transfer Account is sufficient for the Company to redeem more than 20% of the Company's common stock then owned by the Seller (each, a "**Subsequent Redemption**"). The Seller shall repeat this process for Subsequent Redemptions until all of the Seller's common stock in the Company has been redeemed.

Upon receipt of the Initial Transfer and all payments due under the Redemption Promissory Note, the Seller shall deliver to the Company Share Certificate No. *l* of the Company evidencing the Seller's ownership of the Shares together with a stock power duly executed by the Seller.

(c)     The remaining amount of transfers totaling seven hundred fifty thousand dollars ($750,000) shall be made payable in monthly transfers to the Transfer Account no later than the 15th of every month, beginning the month after the execution of this Agreement ("**Future Periodic Transfer**"), and shall consist of 100% of Smart Alec's "Available Cash Flow", and shall be referred to at all times as "**Cash Flow Payable to YKF**". The Future Periodic Transfer shall be completed by no later than December 31, 2008. For the purpose of this Agreement, Available Cash Flow shall mean the gross receipts of Smart Alec's (including but not limited to: sales of food and beverages, repayment of interest and principal on loans receivable, the net proceeds of any lawsuit settlement, judgment or award, and the conversion to cash of any real personal, or intangible property owned or acquired by Smart Alec's during anytime in the term of this Agreement) reduced by payments made in the ordinary course of business (including but not limited to: rent, utilities, liability, hazard and workers' compensation insurances, salary and benefit expenses, income, property, sales and payroll taxes, costs of goods sold, and other costs incurred as a necessity in running the day-to-day operations of the business) and further reduced by any capital expenditures or operating reserves or accruals approved by the Board of Directors of Smart Alec's. Specifically excluded from the foregoing definition are legal fees in conjunction with the defense of Alex Popov, Michael Popov and/or Dodson in any shareholder action.

(d)     The transfer terms described above in Subsections 1(a)-(c) do not in anyway prohibit the payment in full of the Purchase Price (or the remaining portion of the Purchase Price) to the Seller on behalf of the Company by any of the Defendants or any other third party.

(e)     YKF and Defendants agree, and Popov warrants, that no payments under this Agreement will be made from those baseball sale proceeds that are the subject of the July 17, 2003 Preliminary Injunction restricting the use of such proceeds signed by Judge Garcia of the San Francisco Superior Court in the case *Triano v. Popov, et al.*, Case No. CPF 03503194, during the time that such Preliminary Injunction is in effect. YKF will not authorize Smart Alec's to incur unnecessary or extraordinary fees for forensic accounting, litigation or consulting services.

2

S417256.4

2.     <u>Representations and Warranties of the Seller</u>.  The Seller hereby represents and warrants to the Company that:

(a)     At the time of the execution of this Agreement, the Seller is, and at the time of the delivery of the Shares to the Company, the Seller will be, the record and beneficial owner of the Shares, free of any and all liens, options, pledges, security interests, or restrictions of any kind;

(b)     The Shares represent all of the ownership interest of the Seller in the Company; and

(c)     This Agreement constitutes the valid and legally binding obligation of the Seller.

3.     <u>Representations and Warranties of the Company</u>.     The Company hereby represents and warrants to the Seller that:

(a)     The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of California and has full corporate and other power and authority to conduct its business and own its properties as now conducted and owned;

(b)     This Agreement constitutes the valid and legally binding obligation of the Company.

4.     <u>Survival of Representation, Warranties, Covenants and Agreements</u>.     The representations, warranties, covenants and agreements of the parties hereto shall survive the closing of the transactions contemplated in this Agreement.

5.     <u>Entire Agreement</u>.  This Agreement and the other instruments to be executed and delivered pursuant hereto contain the entire agreement by and between the parties with respect to the transactions contemplated herein and may not be changed, modified or amended, except in writing signed by the parties.

6.     <u>Waiver</u>.  Unless otherwise expressly provided herein, no delay or omission by the parties hereto in exercising any right or remedy provided for herein shall constitute a waiver of such right or remedy and shall not be construed as a bar to or a waiver of any such right or remedy on any future occasion.

7.     <u>Assignment</u>.  The Company may not assign any of its respective rights or delegate any of its respective obligations under this Agreement without the prior written consent of the Seller.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

8.     <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of California, excluding its conflict of laws principles.  Any action or proceeding relating to this Agreement or its enforcement shall be commenced and heard exclusively in the appropriate court

3

S417256.4

for Alameda, California, and the parties hereby consent and submit to the sole and exclusive jurisdiction of the state and federal courts of California.

9.    Attorneys' Fees.  In any action brought by the Seller or the Company to enforce the terms of this Agreement, the Prevailing Party shall be entitled to a reasonable sum of attorneys' fees, costs, and litigation expenses, whether or not such action is prosecuted to judgment.  As used herein, "Prevailing Party" shall mean, without limitation, a party who agrees to dismiss an action upon payment by the other party of sums allegedly due or performance of covenants allegedly breached, or who obtains substantially the relief sought by that party.

10.    Notices.    All notices and other communications provided for under this Agreement shall be in writing and shall be personally delivered or sent by first class United States mail, by nationally recognized overnight courier such as Federal Express or DHL, or by facsimile or by other means of telecommunication, to the following addresses:

> If to the Company:   Smart Alec's Intelligent Fast Food, Inc.
> 2355 Telegraph Avenue
> Berkeley, CA  94704
> Telephone No.: (510) 704-4000
> Facsimile No.:  (510) 644-2998

> and if to the Seller:   Yugen Kaisha, Y.F.K
> c/o George H. Pretty, II
> PARKER, POE, ADAMS, & BERNSTEIN, L.L.P.
> 401 South Tryon Street, Suite 3000
> Charlotte, North Carolina 28202
> Telephone No.: (704) 372-9000
> Facsimile No.:  (704) 334-4706

or, as to each party, at such other address as shall be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section.  All such notices and communications shall be deemed received (i) if personally delivered, upon delivery; (ii) if sent by first class United States mail, following deposit in the mail with first class postage prepaid, upon receipt; (iii) if sent by courier service with next business day delivery charges prepaid, upon receipt; and (iv) if sent by facsimile or similar form of telecommunications, upon receipt.

11.    Counterparts.  The Company and the Seller agree that this Agreement may be executed (by original or telecopied signature) in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

4

S417256.4

**IN WITNESS WHEREOF**, this Agreement has been executed and delivered on the date first set forth above.

**SMART ALEC'S INTELLIGENT FOOD, INC.**

By: _____
Name: _Alex Popov_____
Title: _CEO_____

**YUGEN KAISHA, Y.K.F.**

By: _Seiji Takahashi_____
Name: _Seiji Takahashi_____
Title: _President + CEO_____

5

S417256.4

EXHIBIT A
TO STOCK REDEMPTION AGREEMENT

SECURED REDEMPTION PROMISSORY NOTE

$7~~72~~,000

February 6, 2004
San Francisco, CA

FOR VALUE RECEIVED, Smart Alec's Intelligent Fast Food, Inc., a California corporation (the "**Maker**") hereby promises to pay to Yugen Kaisha, Y.K.F., a company organized under the laws of Japan (the "**Payee**"), the principal sum of Seven Hundred Seventy-Two Thousand Dollars ($772,000).

This Secured Redemption Promissory Note (this "**Note**") is issued pursuant to the terms of that certain Settlement Agreement of even date herewith by and among the Maker, the Payee, Alexander Popov, and Stephanie Dodson (the "**Settlement Agreement**") and that certain redemption agreement of even date herewith by and between the Maker and the Payee (the "**Stock Redemption Agreement**"). All capitalized terms not otherwise defined herein shall have the meanings given to those terms in the Settlement Agreement. Payment of the indebtedness evidenced by this Note is secured by the Security Agreement, the Guarantee and the Pledge Agreement.

1.     Payments.

a.     The principal amount of this Note shall be due and payable in monthly installments on the fifteenth day of each month, commencing with the first such date following the date of this Note, in accordance with Section 1 of the Stock Redemption Agreement, with all outstanding amounts due hereunder payable no later than December 31, 2008.

b.     The Maker hereby unconditionally promises to pay, without set-off or claim, the amounts due under this Note to the Payee in accordance with the terms of Section 1 of the Stock Redemption Agreement and this Note. Payments shall be made by wire transfer of immediately available funds and must be received on or before the fifteenth of each month as set forth below:

Bank:          _____
Location:      _____
Account No.:   _____
ABA No.:       _____
Attn:          _____

2.     Events of Default. The occurrence of any one or more of the following events with respect to the Maker shall constitute an event of default hereunder ("Event of Default"):

6

S417256.4

a.    If the Maker shall fail to pay when due any payment due under this Note.

b.    If the Maker shall fail to perform any of its covenants or agreements under this note, the Settlement Agreement, the Stock Redemption Agreement or the Security Agreement.

c.    If any representation or warranty made by the Maker in this Note, the Settlement Agreement, the Stock Redemption Agreement, or the Security Agreement shall prove to have been incorrect or inaccurate in any material respect on or as of the date made.

d.    If any amendment to or termination of a financing statement naming the Maker as debtor and the Payee as secured party, or any correction statement respect thereto, is filed in any jurisdiction by any party other than Payee or its counsel without the prior written consent of Payee.

e.    If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors (a "**Bankruptcy Law**"), the Maker shall (i) commence a voluntary case or proceeding; (ii) consent to the entry of an order for relief against it in an involuntary case; (iii) consent to the appointment of a trustee, receiver, assignee, liquidator or similar official; (iv) make an assignment for the benefit of its creditors; or (v) admit in writing its inability to pay its debts as they become due.

f.    If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against the Maker in an involuntary case, (ii) appoints a trustee, receiver, assignee, liquidator or similar official for the Maker or substantially all of the Maker's properties, or (iii) orders the liquidation of the Maker, and in each case the order or decree is not dismissed within 120 days.

The Maker shall notify the Payee in writing within five (5) business days after the occurrence of any Event of Default of which the Maker acquires knowledge.

3.    <u>Remedies</u>.  Upon the occurrence of an Event of Default hereunder (unless all Events of Default have been cured or waived by the Payee), the Payee may, at its option, **(i)** by written notice to the Maker, declare the entire unpaid balance of this Note immediately due and payable regardless of any prior forbearance and without presentment, demand, protest, or further notice of any kind, all of which are hereby waived, and (ii) exercise any and all rights and remedies available to the Payee under applicable law (including the rights of a secured party), including, without limitation, the right to collect from the Maker all sums due under this Note, without presentment, demand, protest, or further notice of any kind, all of which are hereby waived.   The Maker shall pay all reasonable costs and expenses incurred by or on behalf of the Payee in connection with the Payee's exercise of any or all of its rights and remedies under this Note, including, without limitation, reasonable attorneys' fees actually incurred by the Payee.

4.    <u>Waiver</u>.  The Maker and any sureties, endorsers, or guarantors, hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note

<div align="center">7</div>

S417256.4

notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal; and all such parties waive all and every kind of notice of such change or changes of every kind and, to the full extent permitted by law, the right to plead any statute of limitations to any demand hereunder and agree that the same may be made without notice or consent of any of them.

5.   <u>Representations and Warranties</u>.  Maker hereby represents and warrants to Payee on the date of issuance of this Note that:

a.   it is a duly formed and validly existing corporation in good standing under the laws of the State of California and has the corporate power and authority to execute and deliver this Note;

b.   this Note constitutes the duly authorized, legally valid and binding obligation of Maker, enforceable against Maker in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability; and

c.   the execution, delivery and performance by Maker of this Note do not and will not violate any law, governmental rule or regulation, court order or agreement to which it is subject or the articles of incorporation or bylaws of the Maker.

6.   <u>Miscellaneous</u>.

a.   Amendment; No Waiver.  This Note may not be amended except in a writing executed by both parties.  No waiver of the rights of the Payee hereunder shall be effective unless in writing and executed by an authorized officer of the Payee, and any waiver so granted by the Payee shall be limited to that particular matter and shall not constitute a waiver of any other or similar matter.  No failure or delay on the part of Payee or any other holder of this Note to exercise any right, power or privilege under this Note and no course of dealing between Maker and Payee shall impair such right, power or privilege or operate as a waiver of any default or any acquiescence therein.

b.   Assignment.  This Note shall inure to the benefit of the Payee and its successors and assigns.  All of the covenants and agreements contained herein are the promises of the Maker and shall bind the Maker and its respective successors, heirs and assigns; provided, however, that the Maker may not assign any of its respective rights or delegate any of its respective obligations under this Note without the prior written consent of the Payee and Payee, at its sole discretion, may require that Maker remain liable for all covenants and obligations set forth herein as a condition to granting such consent.

c.   Severability.  If any provision of this Note shall be invalid, illegal or unenforceable, then the validity, legality and enforceability of the remaining provisions shall not be affected thereby.

8

S417256.4

d.   Governing Law; Jurisdiction.  This Note shall be governed by and construed in accordance with the laws of the State of California, excluding its conflicts of law principles.  Any action or proceeding relating to this Note or its enforcement shall be commenced and heard exclusively in the appropriate court for Alameda, California, and the parties hereby consent and submit to the sole and exclusive jurisdiction of the state and federal courts of California.

e.   Attorneys' Fees.  In the event that suit be brought hereon, or an attorney be employed or expenses be incurred to compel payment of this Note or any portion of the indebtedness evidenced hereby or enforce its provisions, Maker promises to pay all such expenses and attorneys' fees, including but not limited to all expenses incurred in any bankruptcy proceeding.

f.   Mutilated or Lost Note.  If this Note shall become mutilated, destroyed, lost or stolen, upon the written request of Payee, Maker shall issue and deliver to Payee, in replacement thereof, a new Note, in the same face amount and dated the same date as this Note so mutilated, destroyed, lost or stolen.  If this Note has become mutilated, such Note shall be surrendered to Maker for cancellation.  If this Note has been destroyed, lost, or stolen, Payee shall furnish to Maker such security or indemnity as may be required by it to hold the Maker harmless for the issuance of a new Note. Payee shall also advise as to the principal which has been paid and the date to which interest has been paid on this Note.  Maker shall make a notation on each new Note of the amount of all payments of principal previously made on the mutilated, destroyed, lost or stolen Note with respect to which such new Note is issued and the date to which interest on such old Note has been paid.  Maker shall then distribute the new Note to Payee and, in the case of a mutilated Note, cancel the original, mutilated Note.

g.   Notices.  All notices and other communications provided for under this Note shall be in writing and shall be personally delivered or sent by first class United States mail, by nationally recognized overnight courier such as Federal Express or DHL, or by facsimile or by other means of telecommunication, to the following addresses:

If to Maker:          Smart Alec's Intelligent Fast Food, Inc.
                      2355 Telegraph Avenue
                      Berkeley, CA  94704
                      Telephone No.: (510) 704-4000
                      Facsimile No.:  (510) 644-2998


and if to Payee:      Yugen Kaisha, Y.F.K
                      c/o George H. Pretty, II
                      PARKER, POE, ADAMS, & BERNSTEIN, L.L.P.
                      401 South Tryon Street, Suite 3000
                      Charlotte, North Carolina 28202
                      Telephone No.: (704) 372-9000

9

S417256.4

Facsimile No.:  (704) 334-4706

or, as to each party, at such other address as shall be designated by such party in a written notice to the other party complying as to delivery with the terms of this Section.  All such notices and communications shall be deemed received (i) if personally delivered, upon delivery; (ii) if sent by first class United States mail, following deposit in the mail with first class postage prepaid, upon receipt; (iii) if sent by courier service with next business day delivery charges prepaid, upon receipt; and (iv) if sent by facsimile or similar form of telecommunications, upon receipt.

[Signature Page Follows]

10

S417256.4

IN WITNESS WHEREOF, the Maker has executed or caused this instrument to be executed as of the day and year first written above.

**Smart Alec's Intelligent Food, Inc.**

By: _____

Name: ___Alex Popov_____

Title: ___CEO_____

S417256.4

# EXHIBIT 2

7516402.1

## <u>Closing Agreement re Payoff of Secured Redemption Promissory Note</u>

This Closing Agreement ("Agreement") is executed this 12th day of March, 2007 by Yugen Kaisha, Y.K.F., a Japanese corporation ("YKF") and Stephanie Dodson ("Dodson") for the purpose of evidencing the agreement of the parties with respect to the delivery and receipt of certain funds and documents by and between the parties as set forth herein.

**I.    Introduction.**

YKF holds security interests in certain tangible and intangible assets of Smart Alec's Intelligent Food, Inc., a California corporation ("Smart Alec's"), including, without limitation, deposit accounts, intellectual property, Smart Alec's leasehold interest in the property located at 2355 Telegraph Avenue, Berkeley, CA, inventory, equipment, fixtures, accounts and general intangibles, and in certain shares of common stock of Smart Alec's (referred to collectively as the "Security Interests"), pursuant to the following documents: (a) that certain Settlement Agreement and Release by and among YKF, Smart Alec's, Alexander Popov ("Popov") and Dodson dated as February 6, 2004 (the "Settlement Agreement"); (b) that certain Stock Redemption Agreement by and between Smart Alec's and YKF dated as of February 6, 2004 the (the "Stock Redemption Agreement"); (c) that certain Secured Redemption Promissory Note of Smart Alec's to YKF dated as of February 6, 2004 (the "Note"); (d) that certain Security Agreement by and between Smart Alec's and YKF dated as of February 6, 2004 (the "Security Agreement"); (e) that certain Leasehold Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents and Leases executed by Smart Alec's dated June 28, 2006 (the "Deed of Trust"); and (f) that certain Stock Pledge Agreement by and between Popov and YKF dated as of February 6, 2004 (the "Pledge Agreement"). The Settlement Agreement, Stock Redemption Agreement, Note, Security Agreement, Deed of Trust, and Pledge Agreement are referred to collectively herein as the "Settlement Documents").

Dodson has informed YKF that she intends to payoff the balance of Smart Alec's obligations to YKF under the Stock Redemption Agreement and Note in exchange for YKF's release of all of the Security Interests and on condition that she receive the documents listed in Part III hereof, and YKF is willing to do so in the manner set forth in Part III on the condition that it receive the funds listed in Part II hereof. Delivery of the funds and documents referred to herein will occur on the "Closing Date," which shall be on March 12, 2007 or such later date as may be approved by YKF and Dodson.

**II.    Funds to be received by YKF at Closing.**

YKF shall receive on the Closing Date:

A.    Cash, in immediately available funds, in the amount of $535,458.99 (the "Closing Payment"), consisting of:

(i)    $519,615.21, being the principal balance of the Note;

(ii)    $1,817.36, being accrued and unpaid interest on the principal amount of the Note to and including March 12, 2007;

(iii)    $10,022.89, being unpaid fees and expenses of YKF's counsel; and

-1-

      (iv)    $4,003.53, being reimbursement from the Smart Alec's Transfer Account of expenses incurred by Brian Baymiller as an officer of Smart Alec's.

B.    The Closing Payment shall be paid as follows:

      (i)    A cashier's check in the amount of $50,016.81, being funds withdrawn from the Smart Alec's Transfer Account on March 9, 2007, payable to the Nixon Peabody Trust Account; and

      (ii)    A cashier's check in the amount of $485,442.18, being funds of Dodson, payable to the Nixon Peabody Trust Account.

C.    The Closing Payment is in addition to the payment in the amount of $72,228.59 received by YFK from the Smart Alec's Transfer Account on or about February 26, 2007 (the "Pre-Closing Payment") and applied to the following:

      (i)    $37,933 for attorneys' fees incurred by YFK in connection with the Note and Redemption Agreement through February 15, 2007;

      (ii)    Accrued interest on the principal balance of the Note ($525,000) from July 17, 2006 to December 20, 2006 in the amount of $22,438 and from January 13, 2007 to February 26, 2007 in the amount of $6,472.80, total of $28,910.80; and

      (iii)    $5,384.79 as a partial payment on account of the principal balance of the Note.

## III.    Documents to be delivered by YFK at Closing.

Upon receipt by YFK of the Closing Payment, YKF will deliver the following to Dodson, receipt of which is hereby acknowledged:

A.    The original Deed of Trust which was not recorded;

B.    The original Note, marked "Paid in Full;"

C.    An original Notice of Rescission rescinding the Notice of Default and Election to Sell Under Deed of Trust which was recorded in the Office of the County Recorder of Alameda County, California on October 3, 2006 as Instrument No. 2006373587;

D.    An original Notice of Rescission rescinding the Notice of Trustee's Sale which was recorded in the Office of the County Recorder of Alameda County, California on February 21, 2007 as Instrument No. 2007078887;

E.    A copy of the full Reconveyance of the Deed of Trust executed by YKF (without notary acknowledgement), dated as of March 12, 2007, the original of which will be provided to Dodson's counsel upon receipt from Japan;

F.    An original UCC Financing Statement Amendment form, terminating the UCC-1 Financing Statement filed by YKF with the California Secretary of State on April 1, 2004, as Filing No. 0409960088;

G.    Formal resignations of the existing officers and directors of Smart Alec's, Brian Baymiller and Yasuo Ezaki;

H.    The Original Stock Certificate of YFK dated May 26, 2006, certificate number 5, representing the total shares of Smart Alec's held by YFK (975,484) after the redemption in May 2006, together with an original Stock Power signed by YFK;

I.    The original Stock Certificate #1 dated January 10, 1997, issued to Popov for 3,744,000 shares of Smart Alec's.

J.    The original Consolidated Promissory note in the amount of $85,000, dated as of February 6, 2004, executed by Popov to Smart Alec's;

## IV.    Other Matters.

A.    Merger.  This Agreement constitutes the complete and final agreement between the parties regarding the matters that are addressed herein and supersedes all prior or contemporaneous negotiations, covenants, agreements, understandings, representations, or warranties of any nature whatsoever with respect thereto, all of which have become merged and finally integrated into this Agreement.

B.    Amendments.  No amendment, modification, termination, or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by all parties hereto.

C.    Governing Law.  This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California.

D.    Further Acts and Assurances.  Each party hereto shall do such further acts, shall perform such further action, and shall execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm the agreements and understandings contained herein in the manner contemplated hereby.

YUGEN KAISHA, Y.K.F.

By: _____

James S. Monroe, its attorney

_____

Stephanie Dodson

-3-

1  James S. Monroe, Esq. (State Bar Number: 102328)
   Gregory E. Schopf (State Bar Number: 122862)
2  NIXON PEABODY LLP
   One Embarcadero Center, Suite 1800
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300
   E-mail:  jmonroe@nixonpeabody.com
5
   Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.
6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11
   In re:                              Case No. 05-32929-TC
12
   ALEXANDER N. POPOV,                 Chapter 7
13
                     Debtor.
14

15  _____

16  YUGEN KAISHA, Y.K.F.,              Adv. Pro. No.: 07-3104-TC

17                    Plaintiff,

18         v.                          **CERTIFICATE OF SERVICE**

19  STEPHANIE DODSON,

20                    Defendant.
    _____
21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

| | |
|---|---|
| **CASE NAME:** | **IN RE ALEXANDER N., POPOV, Debtor;** |
| **ADV. PROCEEDING:** | **YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON** |
| **COURT:** | **U.S. Bankruptcy Court, Northern District of California (San Francisco)** |
| **CASE NO.:** | **05-32929-TC; Adv. Proc. No.: 07-3104-TC** |
| **FILE:** | **031405.000006** |

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this date, I served the following document(s):

(1)   **Notice of Hearing on Motion of Yugen Kaisha, Y.K.F. to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction;**

(2)   **Motion of Yugen Kaisha, Y.K.F. to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction;**

(3)   **Declaration of James S. Monroe in Support of Motion of Yugen Kaisha, Y.K.F. to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction;**

(4)   **Certificate of Service.**

on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

  X  : By First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

      : By Certified Mail Service — I am readily familiar with the firm's practice for collection and processing of correspondence for Certified Mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with Certified Mail postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

Addressee

| | |
|---|---|
| Joel K. Belway | United States Trustee |
| (State Bar Number 60556) | San Francisco Division |
| THE LAW OFFICE OF JOEL K. BELWAY | 235 Pine Street, Suite 700 |
| Professional Corporation | San Francisco, CA 94104 |
| 235 Montgomery Street, Suite 668 | |
| San Francisco, California 94104 | |

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 14, 2007, at San Francisco, California.

*Carol S. Hardy*

Carol S. Hardy

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8                UNITED STATES BANKRUPTCY COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  In re:                          )
                                    )    Case No.  05-32929
13  ALEXANDER N. POPOV,             )
                                    )    Chapter 7
14      Debtor.                     )
                                    )    Adv. Pro. No.: 07-03104
15  _____        )
                                    )
16  YUGEN KAISHA, Y.K.F.,           )    **MOTION FOR INTERVENTION**
                                    )    **BY MARTIN F. TRIANO**
17                                  )    **DBA LAW OFFICES OF**
        Plaintiff,                  )    **MARTIN F. TRIANO**
18  v.                              )
                                    )
19                                  )
    STEPHANIE DODSON                )
20                                  )    DATE:      DECEMBER 14, 2007
                                    )    TIME:      9:30 A.M.
21      Defendants.                 )    ROOM.:     23
                                    )
22  _____        )

23         By this Motion for Intervention Martin F. Triano, dba Law Offices of Martin F. Triano

24  seeks to file a complaint to intervene in the adversary proceeding and for declaratory relief

25  regarding his rights and remedies in this adversary proceeding, based upon his secured interest in

26  the shares that are the subject of this adversary proceeding as evidenced by his Proof of Claim in

27  this bankruptcy action.

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

MOTION FOR INTERVENTION
                              1

1        Martin F. Triano, dba Law Offices of Martin F. Triano seeks to protect its claim secured

2    by the same shares of stock which are the subject of this adversary proceeding. He should be

3    allowed to intervene in the present action to avoid the necessity of litigating his claims in an

4    alternative forum, which could result in inconsistent rulings and which would not efficiently use

5    judicial resources. Therefore, this court should grant the application for intervention in the

6    present action.

7        This motion for intervention in this adversary proceeding is based upon the Points and

8    Authorities of the Declaration of Mark D. Byrne, the Complaint submitted herewith, the

9    Memorandum of Points and Authorities served and filed herewith, together with such papers and

10   records, and other evidence as may presented at the Hearing on this matter.

11   Dated: 11/15/07                    LAW OFFICES OF TRIANO & BYRNE

12

13                                       By:

14                                          MARK D. BYRNE

15                                          Attorney for Martin F. Triano
                                            dba Law Office of Martin F. Triano

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

MOTION FOR INTERVENTION

2

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8               UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

| | |
|---|---|
| In re: ) | Case No. 05-32929 |
| ) | |
| ALEXANDER N. POPOV, ) | Chapter 7 |
| ) | |
| Debtor. ) | Adv. Pro. No.: 07-03104 |
| _____ ) | |
| ) | |
| YUGEN KAISHA, Y.K.F., ) | **NOTICE OF HEARING ON** |
| ) | **MOTION FOR INTERVENTION** |
| Plaintiff, ) | **BY MARTIN F. TRIANO** |
| v. ) | **DBA LAW OFFICES OF** |
| ) | **MARTIN F. TRIANO** |
| STEPHANIE DODSON ) | |
| ) | **DATE:    DECEMBER 14, 2007** |
| Defendants. ) | **TIME:    9:30 A.M.** |
| ) | **ROOM.:   23** |
| _____ ) | |

        NOTICE IS HEREBY GIVEN TO James Monroe, Esq. of Nixon Peabody LLP, counsel

for Yugen Kaisha (YKF), Joel Belway, counsel for Stephanie Dodson that the Law Offices of

Triano & Byrne, on behalf of Martin F. Triano dba Law Offices of Martin F. Triano will bring a

motion for intervention in the instant adversary proceeding by Yugen Kaisha (YKF) at the

Hearing on December 14, 2007 at 9:30 a.m. at the U.S. Bankruptcy Court, Northern District of

California, San Francisco Division, in Room 23.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

NOTICE OF MOTION FOR INTERVENTION

1

1    By this Motion for Intervention Martin F. Triano, dba Law Offices of Martin F. Triano

2  seeks to file a complaint to intervene in the adversary proceeding and for declaratory relief

3  regarding his rights and remedies in this adversary proceeding, based upon his secured interest in

4  the shares that are the subject of this adversary proceeding as evidenced by his Proof of Claim in

5  this bankruptcy action.

6

7  Dated:  11/15/07          LAW OFFICES OF TRIANO & BYRNE

8

9                     By: _____

10                          MARK D. BYRNE

11                          Attorney for Martin F. Triano
                            dba Law Office of Martin F. Triano

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

NOTICE OF MOTION FOR INTERVENTION

2

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  In re:                          )
                                    )   Case No.  05-32929
13  ALEXANDER N. POPOV,             )
                                    )   Chapter 7
14       Debtor.                    )
                                    )
15  _____ )
                                    )   Adv. Pro. No.: 07-03104
16  YUGEN KAISHA, Y.K.F.,           )
                                    )
17                                  )   **MEMORANDUM OF POINTS AND**
         Plaintiff,                 )   **AUTHORITIES IN SUPPORT OF**
18                                  )   **MOTION FOR INTERVENTION**
    v.                              )   **BY MARTIN F. TRIANO DBA LAW**
19                                  )   **OFFICES OF MARTIN F. TRIANO**
    STEPHANIE DODSON,               )
20                                  )
         Defendant.                 )   DATE:      DECEMBER 14, 2007
21                                  )   TIME:      9:30 A.M.
                                    )   ROOM.:     23
22                                  )
                                    )
23  _____ )

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ....................................................................................... iv

I. INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 1

III. ARGUMENT ............................................................................................................ 3

    A. MFT Is Entitled to Intervention of Right in this Action and Permissive Intervention, Because He Holds a Secured Interest In the Shares that Are the Subject of this Action and a Valid Proof of Claim Based on that Security. ..................................................... 3

    B. MFT Is Entitled to Intervention of Right in this Action, because He Has an Interest Relating to the Property or Transaction that Is the Subject of this Action and Disposition of this Action Will Impair His Interest If He Is Not Allowed to Intervene. ....................................... 4

        1. This intervention is timely because it is filed at the incipient stages of this action; therefore intervention of right is warranted. ........................................................ 4

        2. MFT has a significantly protectable interest that is related to this action, because he has a valid Proof of Claim as a secured creditor of Debtor's estate and he has a perfected interest in the Shares that are the subject of this action; therefore intervention of right is warranted. ....... 5

        3. Disposition of this action will impair and impede MFT's ability to collect upon interest in the shares and their proceeds if he is not allowed to participate in the remedial scheme in this case and forced to litigate is claim in another forum; therefore intervention of right is warranted. ................................................................................................ 6

           a. MFT's clear interest in the remedial scheme in this action, because he has a valid Proof of Claim for his secured interest in the shares that are the subject of this action; therefore intervention of right is warranted. ..................................................... 6

           b. A decision in this case could impair and impede in a practical manner MFT's ability to pursue his claim in state courts, because of the jurisprudential weight of federal rulings in state court; therefore intervention of right is warranted. ........................................... 8

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

ii

4. The current parties do not adequately represent MFT's interest in this action, because they are pursuing only their own personal interests; therefore intervention of right is warranted. .. 9

C. MFT Is Entitled to Permissive Intervention, Because He Has Filed a Timely Motion that Sets Forth His Interest in the Shares that are the Subject of this Action and is Based Upon Independent Grounds for Jurisdiction, and Because Equity and Judicial Economy Weigh in Favor of Allowing the Action. ................................................................................... 10

    1.  Equity and judicial economy weigh in favor of allowing MFT's intervention, because without intervention MFT would be forced to present the a record that would consist of facts and arguments that are already before this court; therefore permissive intervention warranted. ........................................................................................................................ 10

    2. MFT timely files this motion to intervene based upon his secured interest in the shares that are the subject of this action which is validated by MFT's Proof of Claim previously upheld by this court; therefore permissive intervention warranted.................................. 11

IV. CONCLUSION........................................................................................... 12

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

Case: 07-03104     Doc #: 12     Filed: 11/15/2007     Page 3 of 16

1

# TABLE OF AUTHORITIES

2

3

## Cases

4    *Donaldson v. U.S.*, 400 U.S. 517 (1971)......................................................................... 5

5    *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (1983) ................................. passim

6    *See In re Bernal*, 223 B.R. 542 (9th Cir. B.A.P., 1998)............................................. 4

7    *Sierra Club v. U.S. Environmental Protection Agency*, 995 F. 2d 1478 (1993)................. 4, 5, 11

8    *Stockton v. U.S.*, 493 F.2d 1021 (9th Cir. 1971) ....................................................... 9

9    *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ........................... 8

10   *U. S., ex. rel. v. McGough*, 967 F.2d 1391 (1992) ................................................... 4

11   *U.S. v. Stringfellow*, 783 F.2d 821 (1986) vacated on other grounds, 480 U.S. 370 (1987) ...... 6, 7

12   *Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989)....................................................... 9, 10, 11

13   *Wood v. Motorola, Inc.*, 587 F. Supp. 531 (D.Haw. 1984.)......................................... 10

14
15   *Yniguez v. State of Arizona*, 939 F.2d 727 (9th Cir. 1991) ........................................ 6, 7, 8

16

## Statutes

17   Federal Rules of Bankruptcy Procedure, Rule 7024 ....................................................... 3

18   Federal Rules of Civil Procedure, Rule 24 ............................................................... passim

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

iv

# I. INTRODUCTION

By this Motion for Intervention Martin F. Triano, dba Law Offices of Martin F. Triano seeks to protect its claim secured by the same shares of stock which are the subject of this adversary proceeding. Martin F. Triano should be allowed to intervene in the present action to avoid the necessity of litigating his claims in an alternative forum, which could result in inconsistent rulings and which would not efficiently use judicial resources. Therefore, this court should grant the application for intervention in the present action.

# II. STATEMENT OF FACTS

In this application for intervention ("Application") and its accompanying complaint, Martin F. Triano dba Law Offices of Martin F. Triano ("MFT") seeks relief from this court relating to the adversary proceeding commenced by Yugen Kaisha, Y.K.F. ("YKF") on September 5, 2007 ("Adversary Proceeding"). *See* Declaration of Mark D. Byrne in Support of Motion for Intervention ("Byrne Declaration"), ¶ 2, Exhibit A. Like YKF's complaint in the Adversary Proceeding, MFT's application for intervention is based upon the ownership of 3,744,000 shares ("Shares") of Smart Alec's Intelligent Foods, Inc. ("Smart Alec's") by Alexander Popov ("Debtor"), which were transferred to Stephanie Dodson ("Defendant" or "Dodson") for the sum of $12,500, pursuant to the Share Purchase Agreement dated April 18, 2004 ("Transfer"). *See* Byrne Declaration, ¶ 3, Exhibit B.

Debtor filed bankruptcy on September 6, 2005 ("Bankruptcy Action") and was subsequently discharged on April 9, 2006. *See* Byrne Declaration, ¶¶ 4-5, Exhibits C, D.  MFT timely presented a proof of claim secured by the Shares for payment of attorney's fees ("Proof of Claim"), which was not objected to by any creditors. *See* Byrne Declaration, ¶¶ 6-7, 9, Exhibit E. However, upon objection by the Trustee of the Debtor's estate, E. Lynn Schoenmann ("Trustee"), to a portion of the claim, but not that portion related to the secured interest in the Shares, the Proof of Claim was upheld by this bankruptcy court and the federal district court upon appeal. *See* Byrne Declaration, ¶¶ 8, 10-11, Exhibits F, G.  On or about August 1, 2007, YKF purchased from the Trustee the right to bring this Adversary Proceeding against Defendant on behalf of the Debtor's estate. *See* Byrne Declaration, ¶¶ 12, Exhibit H. But, that right was taken subject to MFT's interest

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1

Case: 07-03104     Doc #: 12     Filed: 11/15/2007     Page 5 of 16

1   as a secured creditor, which limitation was acknowledged by YKF and the Trustee prior to the

2   completion of the sale. *See* Byrne Declaration, ¶¶ 13-21, Exhibits I-L.

3        On April 17, 2002, while Debtor owned the Shares and was President of Smart Alec's, he

4   executed a promissory note for payment he owed to MFT for legal services, in an amount of

5   $45,648 along with "such additional sums which may accrue from the legal services being

6   provided" by MFT ("Note"). *See* Byrne Declaration, ¶¶ 22, 25, Exhibit M. At the same time,

7   Debtor also pledged the Shares as collateral to secure payment of the Note, and executed a

8   guarantee by Smart Alec's for performance by Debtor under the Note. *See* Byrne Declaration,

9   ¶¶ 23, 25, Exhibit M. The Note also provided for the collection of attorneys fees and costs incurred

10  in the enforcement of its terms. *See* Byrne Declaration, ¶¶ 24, 25, Exhibit M. MFT subsequently

11  perfected his interest in the Shares by filing a UCC-1 filing statement with the California Secretary

12  of State on May 10, 2002, which filing was amended on April 20, 2007 to reflect MFT's continuing

13  interest in the shares subsequent to the Debtor's discharge in the Bankruptcy Action. *See* Byrne

14  Declaration, ¶¶ 26-27, Exhibit N. MFT also mailed a copy of the Note to Defendant on January 27,

15  2003, more than one year prior to the date of the Share Purchase Agreement, to provide her with

16  notice of MFT's secured interest. *See* Byrne Declaration, ¶¶ 28-29, Exhibit O.

17       In order to collect upon the guarantor of the Note, MFT filed an action in state court against

18  Smart Alec's and Dodson on July 17, 2007 ("State Action"). *See* Byrne Declaration, ¶¶ 30-31,

19  Exhibit P. Additionally, MFT alleges that Defendant purchased and subsequently encumbered the

20  Shares without notice to MFT in violation of the Note, due to her belief that the Note is not valid

21  and enforceable. *See* Byrne Declaration, ¶¶ 30-31, Exhibit P. The State Action therefore requests a

22  judicial determination that the Note gives MFT a valid, enforceable security interest in the Shares

23  and that Dodson shall not further encumber MFT's secured interest in the Shares. *See* Byrne

24  Declaration, ¶¶ 30-31, Exhibit P. MFT also prays for damages against Defendant for Intentional

25  Interference with Contractual Relations. *See* Byrne Declaration, ¶¶ 30-31, Exhibit P.

26       YKF brought its Adversary Proceeding on or about September 5, 2007. *See* Byrne

27  Declaration, ¶ 2, Exhibit A. In its complaint, YKF contends that (1) the Transfer actually took place

28  in the month prior to the Bankruptcy Action filing, that (2) Defendant did not receive the Transfer

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

2

1  in good faith and that (3) she did not pay a reasonably equivalent value for the Shares. *See* Exhibit

2  A attached hereto.  Thus, YKF argues that the Transfer is subject to set aside and the Shares are

3  property of the Debtor's estate. *See* Byrne Declaration, ¶ 2, Exhibit A.  Accordingly, YKF seeks

4  relief preventing Defendant from transferring the Shares prior to judgment in this Adversary

5  Proceeding, seeks to set aside the Transfer and to recover the Shares on behalf of the bankruptcy

6  estate for its own benefit. *See* Byrne Declaration, ¶ 2, Exhibit A.

7     The complaint submitted by MFT along with this Application requests relief related to

8  YKF's Adversary Proceeding complaint and similar to the relief requested in MFT's State

9  Action. *See* Byrne Declaration, ¶ 32, Exhibit Q. Namely, MFT seeks declaratory relief from the

10  court to enforce and collect upon his secured interest in the Shares, in light of the Note he holds,

11  his filed UCC statement, the Transfer of the Shares without notice to MFT and Dodson's

12  knowledge of the Note. Therefore, MFT seeks a confirmation from this court that (a) he holds a

13  valid proof of claim in the Debtor's estate; (b) he is entitled to recover in this Adversary

14  Proceeding based upon his proof of claim (c) he possesses a valid security interest on the Shares

15  of stock formerly held by Debtor and now held by Defendant; (d) he possesses a valid security

16  interest in the proceeds from the Shares formerly held by Debtor and now held by Defendant; (e)

17  any amounts recovered by YKF in this action are proceeds of the Shares and should be paid

18  directly to him pursuant to his secured interest in the Shares; and (e) attorneys fees and costs

19  incurred herein are collectable under the Note. *See* Byrne Declaration, ¶ 32, Exhibit Q.

20                                    **III. ARGUMENT**

21     **A.  MFT Is Entitled to Intervention of Right in this Action and Permissive**

22  **Intervention, Because He Holds a Secured Interest In the Shares that Are the Subject of this**

23  **Action and a Valid Proof of Claim Based on that Security.**

24     MFT is entitled to intervene in the present action pursuant to Rule 7024 of the Federal

25  Rules of Bankruptcy Procedure, which states that intervention in an adversary proceeding is

26  governed by the Federal Rules of Civil Procedure, Rule 24 ("Rule 24"). Rule 24 allows for

27  intervention of right and permissive intervention and "traditionally has received a liberal

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1    construction in favor of applicants for intervention." *See Sagebrush Rebellion, Inc. v. Watt*, 713

2    F.2d 525, 527 (1983).

3    MFT holds a valid proof of claim as a secured creditor of Debtor, and he holds a secured

4    interest in the Shares and the proceeds realized therefrom, which are the subject of the Adversary

5    Proceeding. The Transfer of those Shares, as alleged by YKF, has affected MFT's secured interest

6    pursuant to the Note he holds. Accordingly, any determination in the Adversary Proceeding will

7    impair and impede MFT's ability to collect upon his valid proof of claim and protect his secured

8    interest in the Shares. MFT is, therefore, entitled to intervene and participate in the present action

9    and its remedy, as discussed below.

10    **B. MFT Is Entitled to Intervention of Right in this Action, because He Has an Interest**

11    **Relating to the Property or Transaction that Is the Subject of this Action and Disposition of**

12    **this Action Will Impair His Interest If He Is Not Allowed to Intervene.**

13    The Ninth Circuit has set forth a 4 part test for Intervention of Right pursuant to Rule

14    24(a)(2)[1]: "(1) the applicant's motion must be timely; (2) the applicant must assert an interest

15    relating to the property or transaction which is the subject of the action; (3) the applicant must be so

16    situated that without intervention the disposition of the action may, as a practical matter, impair or

17    impede his ability to protect that interest; and (4) the applicant's interest must be inadequately

18    represented by the other parties." *See In re Bernal*, 223 B.R. 542, 547 (9th Cir. B.A.P., 1998), *citing*

19    *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983). As discussed below, MFT

20    clearly meets each prong of this test, and as such, he is entitled to intervene in the present action.

21    **1. This intervention is timely because it is filed at the incipient stages of this**

22    **action; therefore intervention of right is warranted.**

23    Where the "application for intervention was made at the outset of the litigation," it is

24    accepted as timely submitted. *Sierra Club v. U.S. Environmental Protection Agency*, 995 F. 2d

25    1478, 1481 (1993) (application for intervention made "before the EPA had even filed its answer"

26

27    ――――――――――――――――――――
      [1] Rule 24(a)(2) provides that "the court must permit anyone to intervene who . . . (2) claims

28    an interest relating to the property or transaction that is the subject of the action, and is so

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

4

1    was timely.); *see also U. S., ex. rel. v. McGough*, 967 F.2d 1391, 1394 (1992) (three part test for

2    timeliness, includes "(1) the stage of the proceeding at which the applicant seeks to intervene; (2)

3    the prejudice to the other parties; and (3) the reason for and length of the delay."). Here, MFT is

4    presenting his application for intervention contemporaneously with Defendant's answer. As such,

5    he clearly did not delay in his application, and thus there is no resulting prejudice to other parties.

6    Therefore, MFT's Application is timely, and he meets the first test for Intervention of Right.

7        **2. MFT has a significantly protectable interest that is related to this action,**

8    **because he has a valid Proof of Claim as a secured creditor of Debtor's estate and he**

9    **has a perfected interest in the Shares that are the subject of this action; therefore**

10    **intervention of right is warranted.**

11        A movant must show that they have a "significantly protectable interest" to justify their

12    intervention in the matter. *See Donaldson v. U.S.*, 400 U.S. 517, 531 (1971). "It is generally

13    enough that the interest is protectable under some law, and that there is a relationship between

14    the legally protectable interest and the claims at issue." *Sierra Club v. U.S. Environmental*

15    *Protection Agency*, 995 F. 2d 1478, 1481 (1993) (interpreting *Donaldson*'s "significantly

16    protectable interest" requirement).

17        MFT can show he has a related interest in two ways. First, MFT holds a Proof of Claim in

18    this Bankruptcy Action as a secured creditor. YKF seeks to recover such shares or their value in

19    this Adversary Proceeding on behalf of Debtor's estate, and he purchased the right to this action

20    subject to secured creditors' interests in the estate. Second, MFT he holds a perfected interest in

21    the Shares that are the subject of Adversary Proceeding and which were transferred by Debtor to

22    Defendant in violation of the Note, without notice to MFT and without payment of proceeds to

23    MFT, during the Transfer that is the subject of this action. As a result, MFT's interest in the

24    Debtor's estate and his secured interest in the Shares and any proceeds realized therefrom are

25    protectable under law. Therefore, MFT has met the second requirement for intervention by

26

27

28    situated the disposing of the action may as a practical matter impair or impede the movant's
     ability to protect its interest, unless existing parties adequately represent their interest."

Law Offices
TRIANO & BYRNE
15 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

5

1   asserting a "significantly protectable interest" related to this action pursuant to his Proof of Claim

2   and the Note he holds.

3          **3. Disposition of this action will impair and impede MFT's ability to collect**

4          **upon interest in the shares and their proceeds if he is not allowed to participate in the**

5          **remedial scheme in this case and forced to litigate is claim in another forum; therefore**

6          **intervention of right is warranted.**

7          The third test for intervention of right is whether the court's decision in the principle case

8   will result in *practical* impairment of the intervenor's interest. *See Yniguez v. State of Arizona*,

9   939 F.2d 727, 735 (9th Cir. 1991). In the present action, there are two ways in which MFT's

10  interest can be practically impaired. First, MFT could be excluded from the remedial scheme in

11  this action and thus, forced to chase yet another defendant to collect upon the Note he holds.

12  Second, a judgment that is adverse to MFT's interests could be entered by this court, providing

13  persuasive authority against MFT in any related action. The impairment of MFT's interest is not

14  tempered by his ability to raise related claims in state court. *See U.S. v. Stringfellow*, 783 F.2d

15  821, 827 (1986) vacated on other grounds, 480 U.S. 370 (1987). As a result, MFT's ability to

16  protect his interest in the Shares will clearly be impaired by disposition of the present action, and

17  thus, MFT seeks to intervene to fully participate in the record upon which he may have to rely,

18  and to participate in formulation of the applicable remedial scheme in the Adversary Proceeding.

19  *See Sagebrush Rebellion, Inc.*, 713 F.2d at 528; *see also Stringfellow*, 783 F.2d at 827.

20         **a. MFT's clear interest in the remedial scheme in this action, because he**

21         **has a valid Proof of Claim for his secured interest in the shares that are the**

22         **subject of this action; therefore intervention of right is warranted.**

23         In this case, a decision in favor of YKF could will impair MFT's ability to protect his

24  interest in the Shares that are the subject of this Adversary Proceeding. MFT holds a secured

25  interest in the Shares and in any proceeds therefrom, and he holds a valid Proof of Claim as a

26  secured creditor of the Debtor's estate.

27         In this action, YKF seeks relief based upon the fraudulent transfer of the Shares on behalf

28  of the Debtor's estate, including possession of the Shares and payment of the actual value of the

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

6

Case: 07-03104    Doc #: 12    Filed: 11/15/2007    Page 10 of 16

1  Shares at the time of the Transfer. MFT as a secured creditor with a valid Proof of Claim and a

2  secured interest in the shares, has a significantly protectable interest in the Debtor's estate and in

3  the Shares, which will be impaired if he is not allowed to participate in any distribution on behalf

4  of the estate. Not only will MFT be required to chase yet another owner of his collateral, but he

5  will be denied the benefit of the bankruptcy court forum, which was created for just this purpose:

6  distribution of a debtor's estate. Therefore, MFT seeks to intervene to participate in the remedy

7  in this action and and the remedy he seeks is different from that sought by YKF, which seeks

8  personal recovery of all funds that are collected on behalf of the Debtor's estate.

9        The *Stringfellow* court considered that "the disposition of the present litigation will, as a

10  practical matter, establish the applicable remedial scheme," and that the applicant "has a palpable

11  interest in that scheme." *See Stringfellow*, 783 F.2d at 827. Finding that the applicant's interests

12  could be impaired, the court held that:

13          [w]here as here, a prospective intervenor has demonstrated a clear

14          interest in the remedial scheme, and where the prospective intervenor

15          seeks to obtain remedies that differ from those sought by the original

16          plaintiffs, it is reasonable to conclude that disposition of the litigation

17          may impair the prospective intervenor's ability to protect its interests.

18  *See Stringfellow*, 783 F.2d at 827.

19        Here, MFT seeks to recover pursuant to his valid Proof of Claim as a secured creditor in

20  this action, and his perfected interest in the Shares and their proceeds. YKF seeks to recover

21  upon the Shares pursuant to its fraudulent conveyance claim on behalf of the estate, which claim

22  it purchased subject to the claims of secured creditors and therefore subject to MFT's claim. The

23  possibility that MFT may collect upon the Note in a subsequent action against YKF for the

24  Shares or the proceeds from the Shares is outweighed by the sum of the burden of such litigation

25  and MFT's "palpable interest in the remedial scheme" in the present action. *See Stringfellow*,

26  783 F.2d at 825. Additionally, the bankruptcy court is the proper forum for this action, which

27  concerns distribution of the Debtor's estate to creditors. Thus, MFT's intervention is proper.

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

7

1    **b. A decision in this case could impair and impede in a practical**

2    **manner MFT's ability to pursue his claim in state courts, because of the**

3    **jurisprudential weight of federal rulings in state court; therefore**

4    **intervention of right is warranted.**

5    In *Yniguez*, the Ninth Circuit held that a decision in a federal action may impair the

6    applicants' interests in a related state action, regardless of the precedential weight of that

7    judgment in state court. *See Yniguez*, 939 F.2d at 737. The issue is thus not whether the federal

8    court decision is binding upon states actions, but whether it will impair the applicants' interest in

9    that action in a *practical* manner. *See Yniguez*, 939 F.2d at 735. The court held that:

10        jurisprudential concerns might cause other courts to find the

11        reasoning of the district court more persuasive than they may

12        otherwise find a similar argument to be and that they might choose

13        to accept the district court's reasoning to avoid confusion, lack of

14        finality and disrespect of for law.

15
16   *See Yniguez*, 939 F.2d at 737. Thus, the *Yniguez* court found that intervention was proper when

17   an adverse federal court decision "substantially weakened" the applicants' position, and "thereby

     impaired the interest" of the applicants. *See Yniguez*, 939 F.2d at 737.

18
19        Similarly, the principal claim by YKF for fraudulent conveyance is directly related to the

20   claims raised by MFT in his pending Sate Action against Dodson, namely MFT's claim that

21   Dodson "Intentionally Interfered with Contractual Relations." Both YKF's claim and MFT's

22   claim against Dodson concern the circumstances of the Transfer of the Shares. Because the

23   claims concern the same facts and similar allegations, the persuasive weight of the federal

24   decision in state court could "cast[] a cloud" over MFT's ability to pursue his related claims

25   against Dodson in state court, due to and jurisprudential concerns for avoiding inconsistent

26   rulings. *See Yniguez*, 939 F.2d at 737. Thus, disposition by the bankruptcy court could likely

27   impair MFT's interest, and as a result, he is entitled to intervene in the present action.

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1    **4. The current parties do not adequately represent MFT's interest in this**
2    **action, because they are pursuing only their own personal interests; therefore**
3    **intervention of right is warranted.**

4    "The requirement of [Rule 24] is satisfied if the applicant shows that representation of his
5    interest 'may be' inadequate; and the burden of making that showing should be treated as
6    minimal." *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972); *see*
7    *also Sagebrush Rebellion, Inc.*, 713 F.2d at 528. In general, "to determine whether an original
8    party to a private action will adequately represent the intervenor's interests, a court considers the
9    following three factors: (1) whether the interests of the present party are such that it will make all
10   of the arguments the intervenor would make; (2) whether the present party is capable of and
11   willing to make such arguments; and (3) whether the intervenor would offer a necessary element
12   to the proceedings that the other parties would neglect." *See Sagebrush Rebellion, Inc.*, 713
13   F.2d at 528. Specifically, the Ninth Circuit has held that existing litigants do not adequately
14   represent the interests of a discharged attorney who seeks to intervene to recover his fee in a
15   related action. *See Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989); *see also Stockton v.*
16   *U.S.*, 493 F.2d 1021, 1023 (9th Cir. 1971).

17   MFT's interest in this Adversary Proceeding is based upon collection of his attorney's
18   fees pursuant to his Proof of Claim as a secured creditor and his perfected interest in the Shares.
19   Thus, as the Ninth Circuit recognized in *Venegas*, MFT's interest in collecting his attorneys fees
20   is clearly not represented by the current parties. *See Venegas*, 867 F.2d at 530; *see also Stockton*,
21   493 F.2d at 1023. YKF purchased the rights to the present action from the Trustee and now
22   seeks to recover on behalf of the estate for its own personal benefit. Illustratively, YKF's
23   complaint and specifically its prayer for relief in this action make NO mention of a distribution to
24   secured creditors, and only request recovery for YKF personally. Likewise, Defendant, who owns
25   the subject Shares, will not represent MFT's interest in the present action, as her interest directly
26   conflicts with that of MFT. Therefore, there is no basis to believe that YKF or the Defendant
27   would make the arguments that MFT would make or that they are willing or even capable of to
28   make those arguments. *See Sagebrush Rebellion, Inc.*, 713 F.2d at 528. As a result, MFT would

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION
9
Case: 07-03104    Doc #: 12    Filed: 11/15/2007    Page 13 of 16

1   clearly offer a necessary element to the proceedings that the current parties would neglect. *See*

2   *Sagebrush Rebellion, Inc.*, 713 F.2d at 528. Accordingly, MFT has met the "minimal burden"

3   of demonstrating that his interests are inadequately represented by the present parties, and thus,

4   intervention is proper.

5   **C. MFT Is Entitled to Permissive Intervention, Because He Has Filed a Timely Motion**

6   **that Sets Forth His Interest in the Shares that are the Subject of this Action and is Based**

7   **Upon Independent Grounds for Jurisdiction, and Because Equity and Judicial Economy**

8   **Weigh in Favor of Allowing the Action.**

9   "Rule 24(b) necessarily vests 'discretion in the district court to determine the fairest and

10  most efficient method of handling a case." *Venegas*, 867 F.2d at 530. In *Venegas*, a discharged

11  attorney sought to intervene in order to recover his fees. The court held that it was an abuse of

12  discretion for the trial court to have not allowed permissive intervention, where judicial

13  economy, equity and the related interests of claims clearly weighed in favor of such intervention.

14  *See Venegas*, 867 F.2d at 530.

15              **1. Equity and judicial economy weigh in favor of allowing MFT's**

16              **intervention, because without intervention MFT would be forced to present**

17              **the a record that would consist of facts and arguments that are already**

18              **before this court; therefore permissive intervention warranted.**

19  The principals relied upon in *Venegas* support MFT's permissive intervention in this

20  matter; "[e]quity along with judicial economy dictate that this court employ its ancillary

21  jurisdiction to hear this motion." *See Venegas*, 867 F.2d at 531. Similarly to *Venegas*, this court

22  is "well acquainted with the underlying litigation and the parties" to MFT's claim, and "no novel

23  or difficult issues of state law" requiring a state court decision are raised in MFT's claim. *See*

24  *Venegas*, 867 F.2d at 531.

25  The *Venegas* court determined that if it mandated litigation of the attorney's claim in state

26  court "[t]he parties would be required to make a record that would consist of **facts and**

27  **arguments** that are **already before this court**," and additionally, "the parties would be forced to

28  litigate before a judge who lacks the **long experience with this case**, and with these parties, that

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

10

1   this court has had." (emphasis added) *See Venegas*, 867 F.2d at 531, (*quoting Wood v. Motorola,*

2   *Inc.*, 587 F. Supp. 531, 532-33 (D.Haw. 1984).)  Similarly here, this court has already determined

3   that MFT has a valid Proof of Claim as a secured creditor of Debtor's Estate, based upon the

4   Note MFT holds and his perfected interest in the subject Shares. Also, the present action seeks to

5   establish facts that, as discussed above, directly relate to MFT's claim for collection upon the

6   Note of the Shares or the proceeds from the Shares. Finally, YKF's right to bring this Adversary

7   Proceeding was taken subject MFT's interest as a secured creditor of Debtors' estate.  Therefore,

8   based upon the interests of equity and judicial economy formulated in *Venegas*, MFT should be

9   permitted to intervene in the present action, pursuant to Rule 24(b)(2).

10          **2. MFT timely files this motion to intervene based upon his secured interest**

11          **in the shares that are the subject of this action which is validated by MFT's Proof of**

12          **Claim previously upheld by this court; therefore permissive intervention warranted.**

13          A court may grant permissive intervention pursuant to Rule 24(b)(2)[1] "if three conditions

14   are met: (1) the movant must show an independent grounds for jurisdiction; (2) the motion must

15   be timely; and (3) the movant's claim or defense and the main action must have a question or law

16   and fact in common." *See Venegas*, 867 F.2d at 529.  As discussed above, MFT's claim is based

17   upon a timely application, his related interest in the Shares as discussed above, and his Proof of

18   Claim that was upheld in the Bankruptcy Action.

19          MFT has shown that he is presenting his application for intervention contemporaneously

20   with the answer of Dodson, which clearly is timely, and as such, would not unduly delay or

21   prejudice the rights of the original parties. *See Sierra Club*, 995 F. 2d at 1481 (1993) (application

22   for intervention made "before the EPA had even filed its answer" was timely). Also, MFT's

23   claim has a question of law or fact in common with the present action, because both claims

24   concern the ownership of the Shares and their Transfer between Debtor and Defendant.

25

26

27   _____

     [1] Rule 24(b)(2) provides that "the court may permit anyone to intervene who: . . . (B) has a claim
     or defense that shares with the main action a common question of law or fact . . . (3) *Delay or*
28   *Prejudice*. In exercising its discretion, the court must consider whether the intervention will
     unduly delay or prejudice the adjudication of the original parties' rights."

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

11

1    MFT's Application is also based upon the Proof of Claim that he submitted during the

2    Bankruptcy Action from which this Adversary Proceeding stems. The Proof of Claim is based

3    upon the Note held by MFT and secured by the Shares that are the subject of this Adversary

4    Proceeding. No creditors objected to MFT's Proof of Claim, and this court and the district court

5    affirmed MFT's Proof of Claim upon objection and appeal by the Trustee. Additionally, YKF

6    purchased its right to pursue this fraudulent conveyance claim, subject to the MFT's claim as a

7    secured creditor of Debtor's estate.  Thus, based upon his valid Proof of Claim claim, MFT has

8    independent grounds for jurisdiction by this court.

9    Accordingly, MFT has provided sufficient evidence to show that he is entitled to

10    permissive intervention in this matter, pursuant to *Venegas*, 867 F.2d at 529.

11    **IV. CONCLUSION**

12    MFT has demonstrated that he is entitled to intervene in this Adversary Proceeding under

13    both theories of Intervention of Right and Permissive Intervention.  MFT's application for

14    intervention is supported by substantial case authority that provides controlling authority in favor

15    of MFT's intervention. It is therefore clear the MFT has satisfied the requirements for

16    intervention, especially since Rule 24 has "traditionally has received a liberal construction in

17    favor of applicants for intervention." *See Sagebrush Rebellion, Inc.*, 713 F.2d at 527.

18    Accordingly, MFT's application for intervention should be granted.

19

20    Dated: 11/10/07                          LAW OFFICES OF TRIANO & BYRNE

21

22                                         By: _____

23                                              MARK D. BYRNE
                                               Attorney for Martin F. Triano
24                                             dba Law Office of Martin F. Triano

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

12

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  In re:                          )
                                    )   Case No. 05-32929
13  ALEXANDER N. POPOV,             )
                                    )   Chapter 7
14      Debtor.                     )
                                    )
15  _____  )
                                    )   Adv. Pro. No.: 07-03104
16                                  )
    YUGEN KAISHA, Y.K.F.,           )
17                                  )   **DECLARATION OF MARK D. BYRNE**
        Plaintiff,                  )   **IN SUPPORT OF MOTION FOR**
18                                  )   **INTERVENTION BY MARTIN F.**
    v.                              )   **TRIANO DBA LAW OFFICES OF**
19                                  )   **MARTIN F. TRIANO**
    STEPHANIE DODSON,               )
20                                  )
        Defendants.                 )   DATE:      DECEMBER 14, 2007
21                                  )   TIME:      9:30 A.M.
                                    )   ROOM.:     23
22                                  )
                                    )
23  _____  )

24      I, MARK D. BYRNE, declare:

25      1.  I am an attorney duly licensed to practice before all the courts of the State of California,

26  and I am associated with the Law Office of Triano & Byrne, previously known as the Law Offices

27  of Martin F. Triano.

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF MOTION FOR INTERVENTION
1

1  conveyance claim against Stephanie Dodson on behalf of the bankruptcy estate of Alexander Popov

2  and the Order of the Court approving such Agreement are hereto as Exhibit H.

3         13. On or about July 2, 2007, I sent a letter to James Monroe, counsel for YKF, in order

4  to clarify that YKF did not intend that the Agreement for purchase of the fraudulent conveyance

5  claim would allow YKF to recover on behalf of the estate free and clear of MFT's security interest.

6         14. A true and correct copy my correspondence to Mr. Monroe dated July 5, 2007, is

7  attached hereto as Exhibit I.

8         15. On or about July 5, 2007, Mr. Monroe confirmed by facsimile correspondence that

9  the Agreement had no impact on any rights MFT had in the shares that are the subject of the

10  Agreement. Mr. Monroe also confirmed that the Agreement did not allow YKF to recover on behalf

11  of the estate of Mr. Popov free and clear of liens.

12         16. A true and correct copy Mr. Monroe's facsimile correspondence dated July 5, 2007,

13  is attached hereto as Exhibit J.

14         17. On or about July 10, 2007, I sent a letter to Dennis Davis, counsel for the Trustee,

15  in order to clarify that the Trustee did not intend that the Agreement for Purchase of the fraudulent

16  conveyance claim would allow YKF to recover on behalf of the estate free and clear of MFT's

17  security interest.

18         18. A true and correct copy my correspondence to Mr. Davis dated July 10, 2007, is

19  attached hereto as Exhibit K.

20         19. On or about, July 11, 2007, I spoke with Mr. Davis and confirmed with him that the

21  Agreement for the purchase of the fraudulent conveyance claim does not transfer the fraudulent

22  conveyance claim free and clear of liens, and the claim would be taken subject to MFT's interest in

23  the subject shares.

24         20. Then on July 12, 2007, I wrote a letter to Mr. Davis confirming our telephone

25  conversation. I received no objection to such correspondence from counsel for the Trustee.

26         21. A true and correct copy my correspondence to Mr. Davis dated July 12, 2007, is

27  attached hereto as Exhibit L.

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF MOTION FOR INTERVENTION
3

1     22. On April 17, 2002, while Mr. Popov owned 3,744,000 shares of Smart Alec's and

2  was President of Smart Alec's, he executed a promissory note for payment of legal services

3  performed by MFT, in an amount of $45,648 along with "such additional sums which may accrue

4  from the legal services being provided" ("Note").

5     23. On April 17, 2002, Mr. Popov pledged the 3,744,000 shares of Smart Alec's that he

6  then owned as collateral to secure payment of the Note, and he executed a guarantee by Smart

7  Alec's for performance under the Note.

8     24. The Note provided for the collection of attorneys fees and costs incurred in the

9  enforcement of its terms.

10     25. A true and correct copy of the promissory note and the guarantee entered into by

11  Mr. Popov is attached hereto as Exhibit M.

12     26. MFT's interest in the Shares was perfected subsequently by filing a UCC-1 filing

13  statement with the California Secretary of State on May 10, 2002, which filing was amended on

14  April 20, 2007 to reflect MFT's continuing interest in the shares subsequent to the Debtor's

15  discharge in the Bankruptcy Action.

16     27. A true and correct copy of the UCC Statements I filed with California Secretary of

17  State is attached hereto as Exhibit N.

18     28. A copy of the Note to was mailed to Ms. Dodson on January 27, 2003 to provide

19  notice of MFT's secured interest.

20     29. A true and correct copy of the letter that was sent to Dodson enclosing the Note is

21  attached hereto as Exhibit O.

22     30. MFT filed an action in state court against Dodson and Smart Alec's on July 17,

23  2007 ("State Action") based upon the guarantee by Smart Alec's and the Note executed by Mr.

24  Popov on April 17, 2002.

25     31. A true and correct copy of the Complaint in the State Action is attached hereto as

26  Exhibit P.

27     32. A true and correct copy of the Complaint that I intend to file on behalf of MFT

28  requesting declaratory relief in this matter is attached hereto as Exhibit Q.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF MOTION FOR INTERVENTION
4

Case: 07-03104     Doc #: 12     Filed: 11/15/2007     Page 4 of 5

1    The foregoing is within my personal knowledge and if called to testify, I would relate the

2    same information. I declare under penalty of perjury under the laws of the State of California that

3    the foregoing is true and correct.

4    Dated:

5    11/13/07                                        MARK D. BYRNE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF MOTION FOR INTERVENTION

5

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE (415) 371-8001

# Exhibit A

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Yugen Kaisha, Y.K.F. | DEFENDANTS<br>Stephanie Dodson |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>James S. Monroe (State Bar No. 102328)<br>Nixon Peabody LLP, One Embarcadero Center, 18th Floor<br>San Francisco, CA 94111; Telephone: (415) 984-8200 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☒ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**Complaint to avoid and recover fraudulent transfer of corporate stock by debtor to defendant and injunctive relief. 11 U.S.C. §§ 544(b)(1), 548 & 550.**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ **According to proof** |

**Other Relief Sought**

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR    Alexander N. Popov | BANKRUPTCY CASE NO.    05-32929 | |
| DISTRICT IN WHICH CASE IS PENDING<br>**Northern District of California** | DIVISION OFFICE<br>**San Francisco** | NAME OF JUDGE<br>**Thomas E. Carlson** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>**Nixon Peabody LLP**<br><br>**By: /s/ James S. Monroe** | | |
| DATE    **September 5, 2007** | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>**James S. Monroe** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B 250B (CANB)

# UNITED STATES BANKRUPTCY COURT

### NORTHERN    DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ALEXANDER N. POPOV | Bankruptcy Case No.<br>05-32929 |
| **Debtor** | |
| YUGEN KAISHA, Y.K.F. | |
| **Plaintiff** | Adversary Proceeding No. |
| STEPHANIE DODSON | |
| **Defendant** | |

### SUMMONS AND NOTICE OF STATUS CONFERENCE
### IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

> Address of Clerk
> United States Bankruptcy Court
> 235 Pine Street
> San Francisco, CA 94104-2701

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> Name and Address of Plaintiff's Attorney
> James S. Monroe Esq. (SBN 102328)
> Nixon Peabody LLP
> One Embarcadero Center, Suite 1800
> San Francisco, CA 94120

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a status conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| Address | Room<br>23 |
|---|---|
| United States Bankruptcy Court<br>Honorable Judge Thomas E. Carlson<br>235 Pine Street<br>San Francisco, CA 94120 | Date and Time |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT. PLAINTIFF SHALL PROMPTLY SERVE A COPY OF THE BANKRUPTCY DISPUTE RESOLUTION PROGRAM INFORMATION SHEET ON ALL PARTIES. A COPY OF THE INFORMATION SHEET IS AVAILABLE ON THE COURT'S WEB SITE AT WWW.CANB.USCOURTS.GOV, AND THE CLERK'S OFFICE.**

_____
_Clerk of the Bankruptcy Court_

_____        By: _____
_Date_                                      _Deputy Clerk_

## CERTIFICATE OF SERVICE

I, _____ , certify that I am, and at all times during the service
(name)

of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was made _____ by:
(date)

☐ Mail Service: Regular, first-class United States mail, postage fully pre-paid, addressed to:

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Publication: The defendant was served as follows: [Describe briefly]:

☐ State Law: The defendant was served pursuant to the laws of the State of _____
as follows: [Describe briefly]                                                   (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____        _____
Date                                                        Signature

| Print Name | | |
|---|---|---|
| Business Address | | |
| City | State | Zip |

1   James S. Monroe, Esq. (State Bar Number: 102328)
    Gregory E. Schopf (State Bar Number: 122862)
2   NIXON PEABODY LLP
    One Embarcadero Center, Suite 1800
3   San Francisco, CA 94111-3996
    Telephone: (415) 984-8200
4   Facsimile: (415) 984-8300
    E-mail: jmonroe@nixonpeabody.com
5
    Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11
    In re:                                  Case No. 05-32929
12
    ALEXANDER N. POPOV,                     Chapter 7
13
                        Debtor.
14

15

16  YUGEN KAISHA, Y.K.F.,                   Adv. Pro. No.:

17                       Plaintiff,

18      v.                                  **COMPLAINT TO AVOID AND RECOVER**
                                            **FRAUDULENT TRANSFER AND FOR**
19  STEPHANIE DODSON,                       **INJUNCTIVE RELIEF**

20                       Defendant.

21

22      YUGEN KAISHA, Y.K.F., a Japanese corporation (the "Plaintiff"), alleges that:

23                       **JURISDICTION AND VENUE**

24      1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

25      2.      This adversary proceeding is brought pursuant to Rule 7001, *et seq.* of the Federal

26  Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544(b)(1), 548 and 550.

27

28
    COMPLAINT TO AVOID AND RECOVER FRAUDULENT                              10714326.1
    TRANSFER AND FOR INJUNCTIVE RELIEF;
    CASE NO. 05-32929

1    3.    Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary

2    proceeding arises under and in connection with the above-captioned case under 11 U.S.C. § 101, *et*

3    *seq.* (the "Bankruptcy Code"), which is pending in this District.

4    4.    This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(H).

5    ## PARTIES AND BACKGROUND FACTS

6    5.    On September 6, 2005 (the "Petition Date") Alexander N. Popov (the "Debtor") filed a

7    voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing the above-

8    captioned bankruptcy case (the "Bankruptcy Case").

9    6.    Thereafter, E. Lynn Schoenmann (the "Trustee") became the duly appointed Chapter 7

10   Trustee to administer the Debtor's bankruptcy estate (the "Estate").

11   7.    Prior to the filing of the Bankruptcy Case, the Debtor was the owner of record of

12   3,744,000 shares of common stock (the "Shares") of Smart Alec's Intelligent Food, Inc., a California

13   corporation ("Smart Alec's").

14   8.    Plaintiff is informed and believes and thereon alleges that defendant Stephanie

15   Dodson, an individual (the "Defendant"), is the spouse of the Debtor and resides at 2032 Donald

16   Drive, Moraga, California 94556.

17   9.    Plaintiff is informed and believes and thereon alleges that in or about August 2005, the

18   Debtor transferred all right, title and interest in the Shares to the Defendant.

19   10.   On or about August 1, 2007, Plaintiff and the Trustee entered into an Assignment

20   Agreement, pursuant to an Order Authorizing and Approving Assignment of Personal Property to

21   Yugen Kaisha, Y.K.F. (the "Approval Order"), entered in the Bankruptcy Case on or about July 31,

22   2007, whereby the Trustee sold, transferred, assigned, granted and conveyed to Plaintiff, in exchange

23   for Plaintiff's payment of $30,000 to the Trustee and the Estate, all rights, claims, causes of action

24   and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's

25   purported transfer of the Shares to Defendant and/or any subsequent transferee thereof as a fraudulent

26   transfer under any applicable law, including without limitation, Bankruptcy Code §§ 544(b), 548 and

27   550, and California Civil Code §§ 3439-3439.12, inclusive, and any and all right, title and interest of

28   COMPLAINT TO AVOID AND RECOVER FRAUDULENT         -2-
     TRANSFER AND FOR INJUNCTIVE RELIEF;
     CASE NO. 05-32929

1  the Estate in and to the Shares (the "Assigned Claims and Causes of Action"). True and correct

2  copies of the Assignment Agreement and the Approval Order are attached hereto, respectively, as

3  Exhibits 1 and 2 and incorporated herein.

4       11.    Pursuant to the Assignment Agreement and Approval Order, Plaintiff has the right,

5  *inter alia*, to enforce, sue on, settle and compromise the Assigned Claims and Causes of Action,

6  including claims under §§ 544(b)(1), 548 and 550 of the Bankruptcy Code.

7  <div align="center">**CLAIMS FOR RELIEF**</div>

8  <div align="center">**FIRST CAUSE OF ACTION**</div>

9  <div align="center">**(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code § 548(a)(1)(A))**</div>

10       12.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in

11  paragraphs 1 through 11 of this Complaint as though fully set forth herein.

12       13.    Plaintiff is informed and believes and thereon alleges that in or about August 2005 the

13  Debtor transferred all of his right, title and interest in and to the Shares to the Defendant for no

14  consideration or nominal consideration of no more than $12,500 (the "Transfer").

15       14.    Plaintiff is informed and believes and thereon alleges that the Debtor made the

16  Transfer with the actual intent to hinder, delay, or defraud all of the Debtor's then and future creditors

17  by wrongfully removing the Shares as an asset of the Debtor's Estate shortly before the Petition Date

18  to enable the Debtor and the Defendant to retain control of Smart Alec's, a valuable and profitable

19  restaurant, to the exclusion of the Debtor's unsecured creditors.

20       15.    Plaintiff is informed and believes and thereon alleges that the Defendant received the

21  Transfer with knowledge that the Debtor intended to hinder, delay, or defraud all of his then and

22  future creditors and actively participated and colluded with the Debtor in structuring and effecting the

23  Transfer with the purpose of removing the Shares from the Estate and to thereby retain control of

24  Smart Alec's to the exclusion of the Debtor's unsecured creditors.

25       16.    Plaintiff is informed and believes and thereon alleges that in furtherance of the

26  foregoing, the Debtor and the Defendant executed a Share Purchase Agreement for the Shares in or

27  about August 2005 which they backdated to April 18, 2004 to make the Transfer appear less

28  COMPLAINT TO AVOID AND RECOVER FRAUDULENT     -3-
   TRANSFER AND FOR INJUNCTIVE RELIEF;
   CASE NO. 05-32929

1   fraudulent and to establish consideration for the Transfer based upon certain prior cash transfers from

2   Defendant to the Debtor totaling $12,500 which were originally made for an unrelated purpose.  A

3   true and correct copy of the Share Purchase Agreement is attached hereto as Exhibit 3 and

4   incorporated herein by this reference.

5       17.   Defendant did not receive the Transfer in good faith and did not pay reasonably

6   equivalent value for the Transfer.

7       18.   As reflected in the Debtor's bankruptcy schedules filed in the Bankruptcy Case, there

8   are numerous general unsecured creditors of the Debtor who have allowable claims against him

9   which claims were in existence at the time of the Transfer (the "Unsecured Creditors") .

10      19.   As a proximate result of the wrongful acts of the Debtor and the Defendant, the

11  Transfer was fraudulent and must be declared null and void and set aside.

12      20.   The Transfer, to the extent it is avoided pursuant to § 548 of the Bankruptcy Code,

13  may be recovered by Plaintiff pursuant to § 550(a)(1) of the Bankruptcy Code.

14                    **SECOND CAUSE OF ACTION**
    **(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §544(b)(1)**
15                **and California Civil Code §3439.04(a)(1))**

16      21.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in

17  paragraphs 1 through 20 of this Complaint as though fully set forth herein.

18      22.   Based upon the foregoing, the Transfer is voidable by the Unsecured Creditors under

19  California Civil Code §3439.04(a)(1) and is voidable by Plaintiff as assignee of the Trustee pursuant

20  to Bankruptcy Code §544(b)(1).

21                     **THIRD CAUSE OF ACTION**
    **(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §548(a)(1)(B))**
22

23      23.   Pleading in the alternative, Plaintiff repeats, realleges and incorporates by reference

24  the allegations contained in paragraphs 1 through 13, 17, 18 and 20 of this Complaint as though fully

25  set forth herein.

26      24.   The Transfer was to or for the benefit of the Defendant.

27

28  COMPLAINT TO AVOID AND RECOVER FRAUDULENT          -4-
    TRANSFER AND FOR INJUNCTIVE RELIEF;
    CASE  NO. 05-32929

25.     Plaintiff is informed and believes and thereon alleges that the Debtor received less than reasonably equivalent value in exchange for the Transfer.

26.     Plaintiff is informed and believes and thereon alleges that Debtor was: (1) insolvent on the date of the Transfer, or became insolvent as a result of the Transfer; and/or (ii) engaged in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital at the time of, or as a result of the Transfer.

### FOURTH CAUSE OF ACTION
**(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code § 544(b)(1) and California Civil Code § 3439.05)**

27.     Pleading in the alternative, Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 13, 17, 18, 20 and 24 through 26 of this Complaint as though fully set forth herein.

28.     Plaintiff is informed and believes and thereon alleges that at the time of the Transfer, the Debtor was insolvent or in the alternative such Transfer rendered the Debtor insolvent.

29.     Based upon the foregoing, the Transfer is voidable by the Unsecured Creditors under California Civil Code § 3439.05 and is voidable by Plaintiff as assignee of the Trustee pursuant to Bankruptcy Code § 544(b)(1).

### FIFTH CAUSE OF ACTION
**(Injunctive Relief under Rule 7065 of the Federal Rules of Bankruptcy Procedure and California Civil Code § 3439.07)**

30.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31.     At present there is nothing to prevent the Defendant from transferring some or all of the Shares and/or interests therein to third parties and/or from secreting or dissipating any proceeds from a sale or other disposition of the Shares.

32.     Such acts, unless enjoined, will cause Plaintiff great or irreparable injury for which it has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     That the Transfer of the Shares to Defendant be set aside and declared null and void;

COMPLAINT TO AVOID AND RECOVER FRAUDULENT            -5-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

2.  That the Defendant be required to transfer and deliver up the Shares to Plaintiff;

3.  That Defendant and her representatives, attorneys, and agents be enjoined and restrained from selling, transferring, conveying, or otherwise disposing of any of the Shares or of any interest therein until Plaintiff's rights to the Shares have been fully adjudicated and that a temporary restraining order and preliminary injunction be granted to Plaintiff herein;

4.  That the judgment herein be declared a lien on the Shares;

5.  That an order be made declaring that the Defendant holds the Shares in trust for the Plaintiff;

6.  That Defendant be required to account to Plaintiff for all profits and proceeds earned from or taken in exchange for the Shares and/or attributable to her equity interest in Smart Alec's based upon the Shares;

7.  That if the Defendant has disposed of any of the Shares or any interest therein, that she be required to account to Plaintiff for the proceeds;

8.  For compensatory damages according to proof;

9.  For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem proper.

Dated: September 5, 2007                    NIXON PEABODY LLP


By: /s/ James S. Monroe
    James S. Monroe
    Attorneys for Yugen Kaisha, Y.K.F.

COMPLAINT TO AVOID AND RECOVER FRAUDULENT           -6-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

# EXHIBIT 1

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (this "Agreement") is made by and between E. Lynn Schoenmann, trustee (the "Trustee") of the Chapter 7 bankruptcy estate of Alexander N. Popov, bankruptcy case number 05-32929, and Yugen Kaisha, Y.K.F., a Japanese corporation ("YKF").

## WITNESSETH

WHEREAS, on September 6, 2005, Alexander N. Popov (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Bankruptcy Court") and the Trustee was thereafter duly appointed to administer the Debtor's Chapter 7 bankruptcy estate (the "Estate");

WHEREAS, prior to the filing of the Bankruptcy Case, (a) the Debtor was the owner of record of 3,744,000 shares of common stock of Smart Alec's Intelligent Food, Inc., a California corporation, (the "Shares"), and (b) the Debtor purportedly sold all of his right, title, and interest in the Shares to Stephanie Dodson ("Dodson") for $12,500; and

WHEREAS, the Trustee desires to sell to YKF, and YKF desires to purchase from the Trustee, the Assigned Property (as defined herein);

NOW, THEREFORE, in consideration of the recitals, mutual covenants and conditions contained herein, the parties agree as follows:

1.    **Definitions.**  The following capitalized terms shall have the meanings as set forth below:

"Assigned Property" means any and all rights, claims, causes of action and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's purported transfer of the Shares to Dodson and/or any subsequent transferee thereof as a fraudulent transfer under any applicable law, including, without limitation, Bankruptcy Code §§ 544(b), 548 and 550, and California Civil Code §§ 3439-3439.12, inclusive; and any and all right, title and interest of the Estate in and to the Shares.

"Proceeds" means whatever is recovered, collected, acquired, received, distributed or otherwise obtained on account of or with respect to the Assigned Property.

"Purchase Price" means $30,000.00.

2.    **Effective Date.**  This Agreement shall become effective when (a) each of the parties hereto and their counsel shall have duly executed and delivered this Agreement, and (b) the Bankruptcy Court shall have entered an order approving this Agreement  The first business day on which all of the foregoing conditions have been satisfied shall be referred to herein as the "Effective Date."

3.    **Bankruptcy Court Approval.**  The Trustee shall have the obligation to file and serve an appropriate motion requesting Bankruptcy Court approval of this Agreement (the "Approval Order").  The parties shall cooperate as reasonably required in seeking the Approval Order.  This Agreement is contingent upon entry of the Approval Order and, in the absence thereof, this Agreement is null and void.  In the event an appeal is taken from the Approval Order, (a) YKF shall have the sole and complete responsibility to assume any defense of the appeal and shall bear any and all attorneys' fees, costs, expenses, losses, obligations, liabilities and damages that may be incurred in connection therewith, (b) the Trustee shall have no

1

10333089.1

obligation to defend such appeal, and (c) this Agreement shall nonetheless become effective and bind the parties as provided in paragraph 2 hereof.

4. <u>Assignment and Purchase.</u> Subject to the terms and conditions of this Agreement, the Trustee hereby agrees to sell, transfer, assign, grant and convey the Assigned Property to YKF, its successors and assigns, YKF agrees to purchase the Assigned Property from the Trustee, and YKF shall be solely entitled to exercise and enforce all rights with respect to the Assigned Property and to collect and receive any and all Proceeds.

5. <u>Payment.</u> In consideration of the sale and assignment of the Assigned Property, YKF shall pay the Purchase Price to the Trustee within 2 business days after the Effective Date in immediately available funds by wire transfer to an account specified in writing by the Trustee.

6. <u>Representations and Warranties of Trustee</u>. The Trustee represents and warrants that it has made no prior assignment of the Assigned Property or of any interest therein and that the Trustee is the sole owner thereof and has good title thereto, free and clear of all liens, claims and encumbrances of any kind and will transfer to YKF such title, free and clear of any liens or encumbrances of any kind.

7. <u>YKF's Acknowledgements</u>. YKF acknowledges to the Trustee that except as expressly set forth in this Agreement, the Trustee does not make, and hereby disclaims any and all, representation or warranties regarding the Assigned Property. YKF acknowledges and agrees that the Assigned Property is acquired by YKF for its own account and risk and that the sale of the Assigned Property to YKF is a sale without recourse against the Trustee and/or the Estate and without obligation of the Trustee and/or the Estate to repurchase the Assigned Property under any circumstances.

8. <u>No Reliance; Independent Investigation.</u> The undersigned agree that each party hereto in entering into this Agreement relies upon its own investigation and judgment in regard to all matters herein contained and that they have not relied on any representations made by the other parties, that this Agreement is made and entered into by each of the parties of its own volition, and each of the parties hereto warrants that this Agreement was made and entered into free of any duress, coercion, or undue influence from any source whatsoever.

9. <u>Merger</u>. It is expressly understood and agreed that this Agreement constitutes the complete and final agreement among the parties regarding the matters herein addressed. Any and all prior negotiations, representations, understandings or agreements, whether written or oral, among the parties, relating to the subject matter of this Agreement and the facts as set forth in the recitals hereto are terminated and shall be of no further force or effect.

10. <u>Amendments.</u> No amendment, modification, termination, or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by all parties hereto.

11. <u>Authority.</u> Each of the parties to this Agreement has full authority and power to enter into this Agreement and this Agreement is the legal, valid and binding obligation thereof.

12. <u>Drafting of Agreement</u>. The undersigned agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to any interpretation of this Agreement.

13. <u>Successors and Assigns.</u> This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

10333089.1

14.    Governing Law.    This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California, as well as any applicable United States bankruptcy law.    The Bankruptcy Court shall retain jurisdiction over any disputes regarding this Agreement or enforcement of this Agreement.

15.    Attorneys' Fees.    In the event that any legal proceeding, of any kind or nature, is brought by any party concerning the enforcement or interpretation of this Agreement, or any rights and duties hereunder, the prevailing party shall be entitled to recover its attorneys' fees and costs incurred in said proceedings.

16.    Counterparts.    This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.    Any of the parties hereto may execute this Agreement by signing any such counterparts.    Photocopies or facsimiles of executed copies of this Agreement may be treated as originals.

17.    Further Assurances.    The parties and their counsel shall execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the provisions of this Agreement.

18.    Captions.    The captions appearing at the commencement of the paragraphs hereof are descriptive only and for convenience of reference.    Should there be any conflict, or apparent conflict, between any such caption and any paragraph at the head of which it appears, the content of the paragraph shall govern the construction of this Agreement.

19.    Partial Invalidity.    If any provision of this Agreement is found to be invalid by any court, the invalidity of such provision shall not affect the validity of the remaining provisions hereof.

20.    Survival of Representations and Warranties.    The representations and warranties made by the parties herein shall survive the performance of this Agreement.

21.    Notice.    Any notice, request, demand, or other communication required or permitted hereunder will be given in writing by first-class mail, postage prepaid, to the party(ies) to be notified.    All communications will be deemed given when received.    The addresses of the parties for the purposes of such communication are:

Trustee:        E. Lynn Schoenmann
                c/o Dennis D. Davis, Esq.
                Goldberg, Stinnett, Meyers & Davis
                44 Montgomery Street, Suite 2900
                San Francisco, CA 94104

YKF:            Yugen Kaisha, Y.K.F.
                c/o James S. Monroe, Esq.
                Nixon Peabody LLP
                One Embarcadero Center
                San Francisco, CA 94111

A party may change his or her address for purposes of notice hereunder only upon written notice to the other party as provided hereinabove.

*[Signature Page Follows]*

3

10333089.1

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be duly executed on the date appearing opposite their names hereinbelow.

Dated: _Aug 1, 2007_

E. Lynn Schoenmann, Trustee of the Chapter 7 Bankruptcy Estate of Alexander N. Popov

By: _____
    B. Lynn Schoenmann

Dated: _June 8, 2007_

YUGEN KAISHA, Y.K.F.

By: _____
Its: _____President_____

APPROVED AS TO FORM AND CONTENT:

Nixon Peabody LLP

By: _____
    James S. Monroe, Esq.
Attorneys for Yugen Kaisha, Y.K.F.

Goldberg, Stinnett, Meyers & Davis

By: _____
    Dennis D. Davis, Esq.
Attorneys for B. Lynn Schoenmann, Trustee

4

10333089.1

**EXHIBIT 2**

7516402.1

Entered on Docket
July 31, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1    GOLDBERG, STINNETT, DAVIS & LINCHEY
     A Professional Corporation
2    DENNIS D. DAVIS, ESQ. CA Bar #070591
     44 Montgomery Street, Suite 2900
3    San Francisco, CA 94104
     Telephone: (415) 362-5045
4    Facsimile: (415) 362-2392
     Email: ddavis@gsmdllaw.com
5
     Attorneys for E. Lynn Schoenmann, Trustee
6

Signed and Filed: July 30, 2007

_____
THOMAS E. CARLSON
U.S. Bankruptcy Judge

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   In re:                              Case No. 05-32929

13   ALEXANDER POPOV,                    Chapter 7

14

15                Debtor.

16

17

18        ORDER AUTHORIZING AND APPROVING ASSIGNMENT
          OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.

19        Upon the Application for Entry of Order by Default Authorizing Sale of Personal Property to

20   Yugen Kaisha, Y.K.F. for an order authorizing and approving the Trustee's assignment of personal

21   property to Yugen Kaisha, Y.K.F., as more fully set forth in the Notice of Trustee's Assignment of

22   Personal Property to Yugen Kaisha, Y.K.F. filed herein June 26, 2007, and the Declaration of Dennis D.

23   Davis filed in support of said application, submitted, no objections or requests having been filed or

24   served, following date and adequate notice on appropriate parties, and

25        GOOD CAUSE APPEARING THEREFOR,

26        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

27        1.    The Trustee's application is granted in its entirety.

28        2.    On the terms set forth in the notice, this Court hereby authorizes and approves the

-1-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

1  Trustee's assignment of personal property to Yugen Kaisha, Y.K.F., pursuant to the terms of the

2  Assignment Agreement, a copy of which is attached as Exhibit "B" to the Declaration of Dennis Davis

3  filed in support of the application.

4     3.      The Trustee is authorized to take any and all reasonably necessary steps to effectuate the

5  terms of this order.

6

7

8                          **END OF ORDER**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

-2-

1

2

**COURT SERVICE LIST**

3

4   Dennis D. Davis, Esq.
    Goldberg, Stinnett, Meyers & Davis
5   44 Montgomery Street, Suite 2900
    San Francisco, CA  94104

6

7   Office of the U.S. Trustee
    235 Pine Street, Suite 700
8   San Francisco, CA  94104-3401

9   E. Lynn Schoenmann
    800 Powell Street
10  San Francisco, CA  94108

11

12  James S. Monroe, Esq.
    Nixon Peabody LLP
13  Two Embarcadero Center, Suite 2700
    San Francisco, CA  94111-3996
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10206/113282.DOC

**EXHIBIT 3**

7516402.1

Aug 31 05 12:28p     Alexander Popov                     415-474-4554          p.1

# Share Purchase Agreement

THIS SHARE PURCHASE AGREEMENT (the "Agreement") made and entered into this 18th day of April, 2004 (the "Execution Date"),

**BETWEEN**

Alex Popov of 2015 Laguna Street #8, San Francisco, CA 94115
(the "Seller")

and

Stephanie Dodson of 5728 Owens Dr. 206  Pleasanton, CA 94588
(the "Purchaser")

**BACKGROUND**

A. The Seller is the owner of record of an aggregate of 3,744,000 common shares (the "Shares") of Smart Alec's Intelligent Food, Inc. (the "Corporation").

B. The Seller desires to sell the Shares to the Purchaser and the Purchaser desires to purchase the Shares from the Seller.

IN CONSIDERATION OF and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Agreement agree as follows:

Purchase and Sale

1. The Seller agrees to sell and the Purchaser agrees to purchase all the residual rights, title, interest, and property of the Seller in the Shares for an aggregate purchase price of *Twelve Thousand Five Hundred Dollars ($12,500)* (the "Purchase Price").

2. Payments by the Purchaser shall be as follows:

   a. $5,000 payable at the signing of this Agreement.

   b. $5,000 payable before December 31st, 2004

   c. $2,500 payable before March 31st, 2005

*Share Purchase Agreement*                                    ***Page 1/3***



### Representations and Warranties of the Seller

3. The Seller warrants and represents to the Purchaser as follows:
   a. The Shares are currently pledged as collateral for repayment of $775,000 to the YKF Corporation.
   b. The Purchaser is purchasing the residual value of the rights, title, and interest in the Shares after YKF is repaid a total of $775,000 by December 31st, 2008.
   c. The repayment of $775,000 must occur before December 31st, 2008 or YKF may foreclose on the Shares.
   d. Upon repayment to YKF, Purchaser shall become the rightful owner of the Shares and take immediate possession of the Shares.
   e. Upon repayment to YKF, Purchaser shall be sole shareholder of the Corporation.
   f. Except as provided in the incorporating documents of the Corporation or as indicated on the face of the certificates for the Shares, the Purchaser would not be prevented or restricted in any way from re-selling the Shares in the future.

### Miscellaneous

(a) The parties agree to cooperate with each other in executing and delivering all further documents necessary to effect the purchase and sale of the Shares, and both parties agree to cooperate with the other for purposes of effecting the other terms of this Agreement.

(b) All representations, warranties, covenants, and obligations in this Agreement will survive the Closing.

(c) The parties agree that the terms of this Agreement, and the discussion relating to this Agreement, are and shall remain privileged and confidential as between the parties.

(d) This Agreement contains the entire agreement of the parties hereto with respect to the purchase of the Shares and the other transactions contemplated herein, and supersedes all prior understandings and agreements of the parties with respect to the subject matters hereof.

(e) All notices, requests, consents and other communications required or permitted hereunder shall be in writing and shall be hand delivered or mailed postage prepaid by registered or certified mail or transmitted by facsimile transmission (with immediate telephonic confirmation thereafter).

*Share Purchase Agreement*                                          *Page 2/3*

IN WITNESS WHEREOF, each of the undersigned has duly executed, or caused its authorized officer to duly execute, this Agreement as of the date first set forth above.

_____                   4-18-04
Alex Popov                                          Date:
2015 Laguna Street #8
San Francisco, CA 94115


_____                   4·18·04
Stephanie Dodson                                    Date:
5728 Owens Dr. 206
Pleasanton, CA 94588

*Share Purchase Agreement*                                          *Page 3/3*



LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE: (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit B

# Share Purchase Agreement

**THIS SHARE PURCHASE AGREEMENT** (the "Agreement") made and entered into this 18th day of April, 2004 (the "Execution Date"),

**BETWEEN**

Alex Popov of 2015 Laguna Street #8, San Francisco, CA 94115
(the "Seller")

and

Stephanie Dodson of 5728 Owens Dr. 206  Pleasanton, CA 94588
(the "Purchaser")

**BACKGROUND**

    A.  The Seller is the owner of record of an aggregate of 3,744,000 common shares (the "Shares") of Smart Alec's Intelligent Food, Inc. (the "Corporation").

    B.  The Seller desires to sell the Shares to the Purchaser and the Purchaser desires to purchase the Shares from the Seller.

**IN CONSIDERATION OF** and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Agreement agree as follows:

Purchase and Sale

1.  The Seller agrees to sell and the Purchaser agrees to purchase all the residual rights, title, interest, and property of the Seller in the Shares for an aggregate purchase price of Twelve Thousand Five Hundred Dollars ($12,500) (the "Purchase Price").

2.  Payments by the Purchaser shall be as follows:

        a.  $5,000 payable at the signing of this Agreement.

        b.  $5,000 payable before December 31st, 2004

        c.  $2,500 payable before March 31st, 2005



EXHIBIT
15
POPOV 10/24/06

Representations and Warranties of the Seller

3.  The Seller warrants and represents to the Purchaser as follows:

    a.  The Shares are currently pledged as collateral for repayment of $775,000 to the YKF Corporation.

    b.  The Purchaser is purchasing the residual value of the rights, title, and interest in the Shares after YKF is repaid a total of $775,000 by December 31st, 2008.

    c.  The repayment of $775,000 must occur before December 31st, 2008 or YKF may foreclose on the Shares.

    d.  Upon repayment to YKF, Purchaser shall become the rightful owner of the Shares and take immediate possession of the Shares.

    e.  Upon repayment to YKF, Purchaser shall be sole shareholder of the Corporation.

    f.  Except as provided in the incorporating documents of the Corporation or as indicated on the face of the certificates for the Shares, the Purchaser would not be prevented or restricted in any way from re-selling the Shares in the future.

Miscellaneous.

    (a)  The parties agree to cooperate with each other in executing and delivering all further documents necessary to effect the purchase and sale of the Shares, and both parties agree to cooperate with the other for purposes of effecting the other terms of this Agreement.

    (b)  All representations, warranties, covenants, and obligations in this Agreement will survive the Closing.

    (c)  The parties agree that the terms of this Agreement, and the discussion relating to this Agreement, are and shall remain privileged and confidential as between the parties.

    (d)  This Agreement contains the entire agreement of the parties hereto with respect to the purchase of the Shares and the other transactions contemplated herein, and supersedes all prior understandings and agreements of the parties with respect to the subject matters hereof.

    (e)  All notices, requests, consents and other communications required or permitted hereunder shall be in writing and shall be hand delivered or mailed postage prepaid by registered or certified mail or transmitted by facsimile transmission (with immediate telephonic confirmation thereafter),

*Share Purchase Agreement*                                                          *Page 2/3*

IN WITNESS WHEREOF, each of the undersigned has duly executed, or caused its authorized officer to duly execute, this Agreement as of the date first set forth above.

Alex Popov
2015 Laguna Street #8
San Francisco, CA 94115

4-18-04
Date:

Stephanie Dodson
5728 Owens Dr. 206
Pleasanton, CA 94588

4-18-04
Date:

*Share Purchase Agreement*

*Page 3/3*

DD-00009

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | C

(Official Form 1) (12/03)                                                          FORM B1. Page 2

**Voluntary Petition**
*(This page must be completed and filed in every case)*

Name of Debtor(s):
**Popov, Alexander N.**

**Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet)

| | Case Number: | Date Filed: |
|---|---|---|

Location
Where Filed:**None**

**Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet)

Name of Debtor:
**None**

Case Number:          Date Filed:

District:             Relationship:          Judge:

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under Chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United State Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Alexander N. Popov**
Signature of Debtor                            Alexander N. Popov

X
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

**September 6, 2005**
Date

### Signature of Attorney

X **/s/ Joan M. Chipser**
Signature of Attorney for Debtor(s)

**Joan M. Chipser 83192**
Printed Name of Attorney for Debtor(s)

**Joan M. Chipser Attorney-At-Law**
Firm Name

**1 Green Hills Court**
Address

**Millbrae, CA  94030**

**(650) 697-1564**
Telephone Number

**September 6, 2005**
Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X
Signature of Authorized Individual

Printed Name of Authorized Individual

Title of Authorized Individual

Date

#### Exhibit A

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

Exhibit A is attached and made a part of this petition.

#### Exhibit B

(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X **/s/ Joan M. Chipser**                                 **9/06/05**
Signature of Attorney for Debtor(s)                          Date

#### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

___Yes, and Exhibit C is attached and made a part of this petition.

✓No

#### Signature of Non-Attorney Petition Preparer

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

Printed Name of Bankruptcy Petition Preparer

Social Security Number (Required by 11 U.S.C. § 110(c).)

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X
Signature of Bankruptcy Petition Preparer

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156.

© 1993-2005 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**VOLUNTARY PETITION**

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | D

Form CAodsc7

# UNITED STATES BANKRUPTCY COURT
## Northern District of California (San Francisco)

| | |
|---|---|
| In re:<br>   Alexander N. Popov<br>   aka  Alex Popov<br>   2015 Laguna Street<br>   Apt 8<br>   San Francisco, CA 94115 | Case Number: 05-32929 TEC 7<br>Chapter: 7 |

<center>Debtor(s)</center>

**Debtor/Joint Debtor Social Security Number(s):**
  xxx–xx–0001

## DISCHARGE OF DEBTOR

    It appearing that the debtor(s) is/are entitled to a discharge, **IT IS ORDERED** :
The debtor(s) is/are granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

Dated: <u>3/29/07</u>                    By the Court:


                                         Thomas E. Carlson
                                         United States Bankruptcy Judge


### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

Doc # 53

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | E

1  MARK D. BYRNE, ESQ., SBN 109268
   LAW OFFICES OF MARTIN F. TRIANO
2  25 Ecker Square, 16th Floor
3  San Francisco, CA 94105
   Telephone: (415) 371-8000
4  Facsimile: (415) 371-8001
5  Mailbox@martinftriano.com
6
   Attorney for Creditor Martin F. Triano
7
8              UNITED STATES BANKRUPTCY COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10                 SAN FRANCISCO DIVISION
11
12                                   )        Case Number: 05-32929
                                     )
13  IN RE                            )     **CHAPTER 7**
                                     )
14                                   )     **PROOF OF CLAIM ATTACHMENT**
15  ALEXANDER POPOV,                 )
                                     )
16      Debtor.                      )
                                     )
17                                   )
                                     )
18                                   )
                                     )
19                                   )
                                     )
20  _____)  _____
    COMES NOW MARTIN F. TRIANO and makes the following proof of claim:
21      1.    The basis of the claim regards the following:
22          a.  The basis of the claim is set forth in the Statement of Claim which was filed in
23              arbitration before JAMS in San Francisco. A true and correct copy of such
24              arbitration statement is attached as Exhibit A. In addition, please review the
25              following information and attached documentation.
26          b.  Claimant was first retained by Debtor pursuant to an Attorney Client Fee Contract
27              and Arbitration Agreement, which was signed and returned by the Debtor on
28              October 12, 2001. A true and correct copy of the Attorney Client Fee Contract

1   and Arbitration Agreement is attached as Exhibit B. The nature and extent of

2   legal services provided in the Popov v. Hayashi matter is further set forth in

3   Exhibit C, which more particularly sets forth the work completed, the date work

4   was completed, and the attorney accomplishing the task. As set forth in Exhibit

5   A, the matter proceeded through a 17 day trial, after a judgment was entered in

6   Popov's favor, providing him one half of the value of the baseball. At the time of

7   the trial, the previous record breaking homerun baseball sold for approximately

8   $3,000,000. The baseball subsequently sold at auction, conducted in a manner

9   against the legal advice of counsel, for the sum of only $450,000. The total

10  amount of Attorney's fees and costs sought in representing the Debtor on this

11  matter is

12  c.   On August 14, 2002, Claimant was again retained by the Debtor, on an emergency

13  basis, in the matter of YKF v. Popov et. al., wherein the debtor was sued for

14  fraud, among other causes of action. The Plaintiff was seeking injunctive orders,

15  including the appointment of a receiver on the Debtor's business on an ex parte

16  basis. An Attorney Client Fee Contract and Arbitration Agreement was

17  subsequently entered on December 31, 2002. A true and correct copy of the

18  Attorney Client Fee Contract and Arbitration Agreement is attached as Exhibit D.

19  The nature and extent of legal services provided in the YKF v. Popov et. al.,

20  matter is further set forth in Exhibit E, which more particularly sets forth the work

21  completed, the date work was completed, and the attorney accomplishing the task.

22  The total amount of Attorney's fees and costs sought in representing the Debtor

23  on this matter is $18,864.57, together with interest.

24  d.   Under the terms of the Attorney Client Fee Contract and Arbitration Agreement in

25  both of the above matters include a provision allowing the recovery of attorneys.

26  In pursuit of the claims owed, Mr. Popov had demanded mediation before BASF,

27  which was subsequently determined to be waived by the Debtor's conduct in

28  filing an action for affirmative relief. After multiple motions and three different

---

MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 2004 FOR EXAMINATION OF DEBTOR AND PRODUCTION OF DOCUMENTS

1   appeals by the Debtor (which were all dismissed or rejected), the matter was
2   finally scheduled for arbitration proceedings before the Honorable Richard Patsey
3   (ret) at JAMS San Francisco. The nature and extent of attorneys fees, totaling
4   $31,350.00, earned by Jonathan Arons on behalf of the claimant is more
5   particularly set forth in Exhibit F. The nature and extent of attorneys fees earned
6   by the associates in the Law Offices of Martin F, Triano on behalf of the claimant
7   is more particularly set forth in Exhibit G. The total amount sought in this proof
8   of claim for the collection of this debt prior to the filing of the bankruptcy is
9   $_____

10   2.   The Debt was incurred beginning October 12, 2001 up until the filing of the
11   Bankruptcy. See above.

12   3.   No judgment has been obtained on any amount sought in this proof of claim.
13   Claimant did obtain a judgment for attorney's fee as costs incurred on one of the affirmative
14   actions brought by the Debtor. Such Judgment was satisfied by the Debtor prior to filing
15   Bankruptcy. No amount contained in the previous judgment has been included in this claim.

16   4.   The total value of this secured claim is $ _____, which includes $_____ in
17   attorney fees and $_____ in costs, as well as $134,744.67 in additional interest accumulated at
18   the rate of 10 percent per annum from and after payment was not made on the attorneys' fees,
19   until the date of filing.

20   5.   The portion of this claim represented by the fees incurred in representing the
21   Debtor in the matter of Popov v. Hayashi is secured by one-half of the proceeds of the sale of the
22   Baseball, which were obtained as a result of the claims and causes of action brought by Claimant
23   on behalf of Mr. Popov prior to filing of Bankruptcy. Under the terms of the Attorney Client Fee
24   Contract and Arbitration Agreement attached as Exhibit B, a contractual lien exists on such
25   proceeds. At the time of the filing of the Bankruptcy, such funds were held at the Bank of
26   America. Claimant understands that the Chapter 7 Trustee presently has possession of these
27   funds.

28

1    a. The entire amount of this claim, including the amount of fees incurred in
2  representing the debtor in Popov v. Hayashi and YKF v. Popov et. al., as well as
3  the attorney's fees and costs incurred in collecting on these matters, are all secured
4  by the Debtor's 3,744,000 shares of stock in Smart Alecs Intelligent Foods. A
5  copy of the promissory note and UCC-1 filing is attached hereto as Exhibit H.
6  Please note that a portion of the promissory note was subsequently redacted so as
7  to represent the Claimant's waiver of certain rights regarding the operation of
8  Smart Alecs Intelligent Foods.
9    b. At all times herein relevant, claimant has complied with the provisions of the
10  Rules of Professional Responsibility 3-300, including allowing the debtor
11  sufficient time to obtain independent legal advice prior to the execution of any
12  agreement containing a provision of security for the claimants. Upon request, the
13  claimant can provide written documentation and oral testimony attesting to such
14  compliance.
15    c. Please note that although the Debtor contends he has sold the shares, he admitted
16  during his bankruptcy rule 2004 examination that the share certificates themselves
17  are held by YKF; therefore, he has been unable to deliver the share certificates to
18  the alleged purchaser. Please further note that claimant has filed a Complaint to
19  Object to the Discharge of the Debtor, on the basis that the Debtor fraudulently
20  concealed an interest in such shares

Respectfully Submitted,
Mark D. Byrne, Esq.
Law Offices of Martin F. Triano
25 Ecker Square, 16th Floor
San Francisco, CA 94105

Dated: December 2, 2005

_____/s/ Mark D. Byrne_____
MARK D. BYRNE

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | F

1   MARK D. BYRNE, ESQ., SBN 109628
2   LAW OFFICES OF MARTIN F. TRIANO
     25 Ecker Square, 16th Floor
3   San Francisco, CA 94105
     Telephone: (415) 371-8000
4   Facsimile: (415) 371-8001
5   mailbox@martinftriano.com

6

7   Attorney for Creditor Martin F. Triano

8

9          IN THE UNITED STATES BANKRUPTCY COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

| 13 | In re: | ) | Case No. 05-32929 |
|----|--------|---|-------------------|
| | | ) | Chapter 7 |
| 14 | ALEXANDER POPOV, | ) | |
| 15 | Debtor. | ) | Date: March 31, 2006 |
| | | ) | Time: 9:30 A.M. |
| 16 | | ) | Place: U.S. Bankruptcy Court |
| 17 | | ) | 235 Pine St., Courtroom 23 |
| | | ) | San Francisco, CA. |
| 18 | _____ | ) | Judge: Hon. Thomas E. Carlson |

19

20      **ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING**
21             **TRUSTEE'S OBJECTION TO CLAIM**

22        The above-entitled matter came on regularly for Hearing on March 31, 2006 at 9:30 A.M.

23  in Department 23 before the Honorable Judge Thomas E. Carlson. Dennis Davis, Esq., appeared

24  on behalf of the Chapter 7 Trustee, E. Lynn Schoenmann, as the moving party.  Mark D. Byrne,

25  Esq. appeared on behalf of the responding party, the Law Offices of Martin F. Triano.  The

26  Debtor did not appear or file any response.

27

28

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING TRUSTEE'S OBJECTION
TO CLAIM

1    Upon review of the pleadings, affidavits and evidence submitted by the parties, having

2  heard oral argument of the parties during the hearing as well as good cause having been

3  otherwise shown; and the Court having made its finding of fact and conclusions of law on the

4  record:

5  IT IS HEREBY ORDERED:

6    1.    The Trustee's Motion for Summary Judgment is denied.

7    2.    The Trustee's objection to Martin F. Triano dba Law Offices of Martin F. Triano's

8  claim is overruled.

9    3.    Martin F. Triano dba Law Offices of Martin F. Triano has a valid and enforceable

10  security interest in the proceeds of the Debtor's share from the sale of the baseball.

11    APPROVED AS TO FORM AND CONTENT

12  Dated:  Apr 4, 2006

13

14

15

16  Dennis Davis, Esq.
    Attorney for Chapter 7 Trustee, E. Lynn Schoenmann

17

18    **END OF ORDER**

19

20

21

22

23

24

25

26

27

28

---

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING TRUSTEE'S OBJECTION
TO CLAIM

2

| | |
|---|---|
| 1 | <div align="center">**COURT SERVICE LIST**</div> |
| 2 | |
| 3 | <u>Attorney for Plaintiff</u> |
| 4 | Mark D. Byrne, Esq. |
|   | Law Office of Martin F. Triano |
| 5 | 25 Jessie Street |
| 6 | at Ecker Square, 16th Floor |
|   | San Francisco, California 94105 |
| 7 | |
| 8 | <u>Attorney for Defendant</u> |
|   | Joel K. Belway, Esq. |
| 9 | Law Offices of Joel K. Belway, P.C. |
| 10 | 235 Montgomery St. #668 |
|   | San Francisco, California 94104 |
| 11 | |
| 12 | <u>Trustee</u> |
|   | E. Lynn Schoenmann, Trustee |
| 13 | 800 Powell Street |
| 14 | San Francisco, California 94108 |
| 15 | <u>Attorney for the Trustee</u> |
| 16 | Dennis D. Davis, Esq. |
|   | Goldberg, Stinnett, Meyers & Davis |
| 17 | 44 Montgomery Street, Ste. 2900 |
|   | San Francisco, California 94104 |
| 18 | |
| 19 | <u>U.S. Trustee</u> |
|   | U.S. Trustee |
| 20 | 235 Pine Street, Ste 850 |
| 21 | San Francisco, California 94104 |
| 22 | <u>Request for Special Notice</u> |
| 23 | <u>Attorney for Y.K.F.</u> |
|   | James S. Monroe, Esq. |
| 24 | Nixon Peabody LLP |
| 25 | Two Embarcadero Center, 27th Floor |
|   | San Francisco, California 94111-3996 |
| 26 | |
| 27 | |
| 28 | |

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING TRUSTEE'S OBJECTION
TO CLAIM

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | G

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:

ALEXANDER POPOV,

          Debtor

No. C-06-2696 MMC

**DECISION AFFIRMING ORDER OF BANKRUPTCY COURT**

      Before the Court is appellant Trustee E. Lynn Schoenmann's ("Trustee") appeal from the bankruptcy court's order of April 6, 2006, overruling the Trustee's objection to appellee Martin F. Triano's ("Triano") claim against the bankruptcy estate of Alexander Popov ("Popov"). Having reviewed the briefs filed by the parties, the Court rules as follows.

**BACKGROUND**

**A. Proceedings in State Court**

      On October 7, 2001, professional baseball player Barry Bonds hit a record-setting home run. The ownership of the baseball was disputed between Popov and Patrick Hayashi ("Hayashi"). On October 12, 2001, Popov and Triano signed an Attorney-Client Fee Contract and Arbitration Agreement ("Fee Contract"), whereby Popov retained Triano to represent him in a civil action against Hayashi. The Fee Contract contains the following lien provision: "Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Contract. Attorney's lien

1  will be for any sums due and owing to Attorney at the conclusion of Attorney's services."

2  (Record on Appeal ("ROA") Tab 5, Ex. C at 2.)

3          On October 24, 2001, Triano filed a complaint on behalf of Popov against Hayashi in

4  the Superior Court of California, County of San Francisco, asserting various causes of

5  action and seeking recovery of the baseball. Triano represented Popov in said action until

6  May 14, 2003, after which time Popov represented himself. On June 25, 2003, the

7  baseball was sold at auction for $450,000; Popov's share was $225,000.[1]

8          After the baseball was sold, Triano filed an action to compel arbitration as to his

9  dispute with Popov over the amount of fees due Triano, and "obtained a preliminary

10  injunction prohibiting Popov from transferring or encumbering the proceeds of the sale until

11  the fee dispute is resolved." See Triano v. Popov, 2005 WL 1230766, *1 (Cal. Ct. App.

12  2005). Additionally, the state court granted Triano's motion to compel arbitration of the

13  parties' fee dispute.

14  **B. Proceedings in Bankruptcy Court**

15          On September 6, 2005, Popov filed a petition for bankruptcy pursuant to Chapter 7

16  of the Bankruptcy Code, (see ROA Tab 8 at 1), thereby automatically staying the court-

17  ordered arbitration as to the fee dispute. On December 2, 2005, Triano filed a claim

18  against the bankruptcy estate, asserting $777,356.89 as a secured claim. (See ROA Tab

19  8, Ex H at 1.) Of the total amount, Triano alleged that $473,402.65 constituted attorneys'

20  fees and costs owed in connection with Popov's action against Hayashi, and that such fees

21  and costs were, by reason of the lien provision in the Fee Contract, secured by the

22  proceeds of the baseball sale. (See id. at 4.)

23          On December 9, 2005, the Trustee filed an objection to Triano's claim, (see ROA

24  Tab 1), and, on March 2, 2006, filed a motion for summary judgment in support of the

25  objection, (see ROA Tab 6). In its motion, the Trustee argued that Triano's lien was

26

27          [1]On December 18, 2002, the state court issued a Statement of Decision, finding
Popov and Hayashi each had "an equal and undivided interest in the ball," and ordered that

28  the ball be sold, with the proceeds to be divided equally. See Popov v. Hayashi, 2002 WL
31833731, *8 (Cal. Superior 2002)

2

1  avoidable on the ground Triano had failed to fully disclose in writing to Popov sufficient

2  information concerning the nature and extent of the lien, and, as such, had violated Rule 3-

3  300 of the California State Bar Rules of Professional Conduct.[2]  In his opposition to the

4  Trustee's motion for summary judgment, Triano argued, inter alia, that the Fee Contract

5  complied with the requirements of Rule 3-300. (See ROA Tab 4 at 11-14.)

6         On March 31, 2006, the Bankruptcy Court conducted a hearing, and found that

7  Triano had complied with Rule 3-300(A). (See ROA Tab 22 at 10.)  Thereafter, on April 6,

8  2006, the Bankruptcy Court filed an order denying the Trustee's motion for summary

9  judgment, overruling the Trustee's objection to Triano's claim, and finding "Triano has a

10  valid and enforceable security interest in the proceeds of [Popov's] share from the sale of

11  the baseball." (See ROA Tab 18 at 2.)[3]  On April 7, 2006, the Trustee filed a timely notice

12  of appeal. (See ROA Tab 19.)

13                              **LEGAL STANDARD**

14         A final order of a bankruptcy court is appealable to a district court, see 28 U.S.C.

15  § 158(a)(1); a bankruptcy court's order overruling a trustee's objection to a claim is a final

16  order, see Siegel v. Federal Home Loan Mortg. Corp., 143 F. 3d 525, 529 (9th Cir. 1998)

17  (holding order "allowing or disallowing" claim is "in the nature of a final judgment").  In

18  reviewing a final order of a bankruptcy court, a district court reviews the bankruptcy court's

19

20         [2]Rule 3-300 provides as follows:

21         A member shall not . . . knowingly acquire [a] . . . security . . . interest . . .
           adverse to a client, unless each of the following requirements has been
           satisfied:

22         (A) The transaction or acquisition and its terms are fair and reasonable to the
           client and are fully disclosed and transmitted in writing to the client in a

23         manner which should reasonably have been understood by the client; and
           (B) The client is advised in writing that the client may seek the advice of an

24         independent lawyer of the client's choice and is given a reasonable
           opportunity to seek that advice; and

25         (C) The client thereafter consents in writing to the terms of the transaction or
           the terms of the acquisition.

26

27  See Cal. Rules of Prof'l Conduct 3-300.

28         [3]The Bankruptcy Court, in effect, granted summary judgment sua sponte in favor of
    Triano on the Trustee's objection.  The Trustee has not challenged such procedure.

                                        3

1  factual findings for clear error and its conclusions of law de novo. See Diamant v.

2  Kasparian (In re Southern Cal. Plastics, Inc.), 165 F.3d 1243, 1245 (9th Cir. 1999).

3  **DISCUSSION**

4      Rule 3-300 provides that an attorney may not "acquire an ownership, possessory,

5  security, or other pecuniary interest adverse to a client, unless," inter alia, "the transaction

6  or acquisition and its terms" are "fully disclosed and transmitted in writing to the client in a

7  manner which should reasonably have been understood by the client." See Cal. R. Prof.

8  Conduct 3-300. The California Supreme Court has held that a "charging lien" is "an

9  adverse interest within the meaning of [R]ule 3-300 and thus requires the client's informed

10 written consent." See Fletcher v. Davis, 33 Cal. 4th 61, 69 (2004). Consequently, an

11 attorney seeking to secure payment of hourly fees and costs by obtaining a "charging lien

12 against a client's future judgment or recovery" must comply with the requirements of Rule

13 3-300. See id. at 71. If the attorney has not complied with Rule 3-300, the lien agreement

14 is unenforceable. See id. at 72.[4]

15     As noted, the lien provision here at issue consists of the following language:

16     **LIEN.** Client hereby grants Attorney a lien on any and all claims or
causes of action that are the subject of Attorney's representation under
17     this Contract. Attorney's lien will be for any sums due and owing to
Attorney at the conclusion of Attorney's services.

18 (See ROA Tab 5, Ex. C at 2.) The Trustee argues such language is deficient, under Rule

19 3-300, for three reasons: (1) Popov was not advised in the lien agreement that if the

20 amount of the lien was later disputed, any recovery Popov obtained on his claims could be

21 delayed pending resolution of such dispute, either by arbitration or litigation; (2) the Fee

22 Contract does not specifically define "lien"; and (3) the lien agreement is "buried" in the Fee

23 Contract.

24     As to the first argument raised by Popov, Fletcher does not address what language

25

26 _____

27  [4]As noted, Popov and Triano entered into the Fee Contract in October 2001, and
Triano provided services thereunder until May 2003. Fletcher was decided in June 2004.
28  Because Triano does not argue the holding in Fletcher is not retroactive, the Court
assumes the holding is retroactive.

4

1   in a lien agreement would satisfy the full disclosure requirement of Rule 3-300, and neither

2   of the parties has cited, nor has the Court found, any case that directly addresses the

3   issue.[5]  The plain language of the Rule, however, refers to an attorney's having to fully

4   disclose the "transaction or acquisition and its terms."  The information that the Trustee

5   argues should have been disclosed is not a "term" of the security interest, but, rather,

6   pertains to how the security interest might, in the future, impact the client.  The concerns

7   expressed by the Trustee, specifically, how the lien agreement might impact the client in

8   the future, are addressed by subsection (B) of Rule 3-300, which requires that the attorney

9   advise the client to seek the advice of independent counsel, i.e., one who is not adverse to

10  the client with respect to creation of the charging lien, and that the attorney provide the

11  client a reasonable opportunity to seek such advice.  See Rule 3-300(B).[6]

12          With respect to a definition of "lien," the Fee Contract does not, as Popov observes,

13  define such term in a glossary or otherwise.  "Lien" is, however, a commonly-used term,

14  and the Trustee cites no authority that common terms must be expressly defined as a

15  predicate to enforceability under Rule 3-300, either as a general matter or under the

16  circumstances presented.[7]

17          Finally, although the Trustee describes the lien agreement as being "buried" in the

18  Fee Contract, the Trustee's characterization is not accurate.  The words of the lien

19  provision are included on the second page of a four-page agreement, and are set forth in

20  _____

21      [5]The lien agreement at issue in Fletcher was oral, see id. at 64, and, consequently,
    the California Supreme Court had no occasion to consider what specific written language
22  would comply with the full disclosure requirement set forth in Rule 3-300.

23      [6]The Trustee did not contend before the Bankruptcy Court, or before this Court, that
    Triano failed to comply with section (B) of Rule 3-300.

24      [7]Indeed, in an agreement Popov entered before executing the Fee Contract, by
25  which Popov borrowed money from his parents to pay for "upcoming legal expenses,"
    Popov included language granting his parents a "lien" in the baseball: "Security: Borrower
26  grants Lenders a lien on Barry Bonds 73rd Home Run Baseball as security for any and all
    money borrowed."  (See ROA Tab 12, Ex. A to Ex. H.)  Similarly, in another agreement
27  Popov entered before signing the Fee Agreement, by which Popov borrowed money from a
    corporation of which he was president, Popov included language granting a "lien," as
28  follows: "Security: Borrower grants Lender a lien on any proceeds from marketing,
    endorsements or sale of the 73rd Home Run Baseball." (See ROA Tab 12, Ex. B to Ex. H.)

5

1  the same font size as the other provisions.  Moreover, it is undisputed that Popov had

2  actual notice of the lien provision before he agreed to enter into the Fee Contract; in

3  particular, Popov discussed the provision with Triano's associate prior to agreeing to

4  execute the Fee Contract.  (See ROA Tab 12 ¶ 6.)

5                                   **CONCLUSION**

6       For the reasons stated, the order of the Bankruptcy Court overruling the Trustee's

7  objection to Triano's claim is hereby AFFIRMED.

8       **IT IS SO ORDERED.**

9

10  Dated: July 3, 2007

                                        MAXINE M. CHESNEY
11                                       United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           6

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE (415) 371-8001

# Exhibit | H

# ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (this "Agreement") is made by and between E. Lynn Schoenmann, trustee, (the "Trustee") of the Chapter 7 bankruptcy estate of Alexander N. Popov, bankruptcy case number 05-32929, and Yugen Kaisha, Y.K.F., a Japanese corporation ("YKF").

## W I T N E S S E T H

WHEREAS, on September 6, 2005, Alexander N. Popov (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Bankruptcy Court") and the Trustee was thereafter duly appointed to administer the Debtor's Chapter 7 bankruptcy estate (the "Estate");

WHEREAS, prior to the filing of the Bankruptcy Case, (a) the Debtor was the owner of record of 3,744,000 shares of common stock of Smart Alec's Intelligent Food, Inc., a California corporation, (the "Shares"), and (b) the Debtor purportedly sold all of his right, title, and interest in the Shares to Stephanie Dodson ("Dodson") for $12,500; and

WHEREAS, the Trustee desires to sell to YKF, and YKF desires to purchase from the Trustee, the Assigned Property (as defined herein);

NOW, THEREFORE, in consideration of the recitals, mutual covenants and conditions contained herein, the parties agree as follows:

1.     Definitions.  The following capitalized terms shall have the meanings as set forth below:

"Assigned Property" means any and all rights, claims, causes of action and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's purported transfer of the Shares to Dodson and/or any subsequent transferee thereof as a fraudulent transfer under any applicable law, including, without limitation, Bankruptcy Code §§ 544(b), 548 and 550, and California Civil Code §§ 3439-3439.12, inclusive; and any and all right, title and interest of the Estate in and to the Shares.

"Proceeds" means whatever is recovered, collected, acquired, received, distributed or otherwise obtained on account of or with respect to the Assigned Property.

"Purchase Price" means $30,000.00.

2.     Effective Date.  This Agreement shall become effective when (a) each of the parties hereto and their counsel shall have duly executed and delivered this Agreement, and (b) the Bankruptcy Court shall have entered an order approving this Agreement  The first business day on which all of the foregoing conditions have been satisfied shall be referred to herein as the "Effective Date."

3.     Bankruptcy Court Approval.  The Trustee shall have the obligation to file and serve an appropriate motion requesting Bankruptcy Court approval of this Agreement (the "Approval Order").  The parties shall cooperate as reasonably required in seeking the Approval Order.  This Agreement is contingent upon entry of the Approval Order and, in the absence thereof, this Agreement is null and void.  In the event an appeal is taken from the Approval Order, (a) YKF shall have the sole and complete responsibility to assume any defense of the appeal and shall bear any and all attorneys' fees, costs, expenses, losses, obligations, liabilities and damages that may be incurred in connection therewith, (b) the Trustee shall have no

obligation to defend such appeal, and (c) this Agreement shall nonetheless become effective and bind the parties as provided in paragraph 2 hereof.

4.     <u>Assignment and Purchase.</u>  Subject to the terms and conditions of this Agreement, the Trustee hereby agrees to sell, transfer, assign, grant and convey the Assigned Property to YKF, its successors and assigns, YKF agrees to purchase the Assigned Property from the Trustee, and YKF shall be solely entitled to exercise and enforce all rights with respect to the Assigned Property and to collect and receive any and all Proceeds.

5.     <u>Payment.</u>  In consideration of the sale and assignment of the Assigned Property, YKF shall pay the Purchase Price to the Trustee within 2 business days after the Effective Date in immediately available funds by wire transfer to an account specified in writing by the Trustee.

6.     <u>Representations and Warranties of Trustee.</u>  The Trustee represents and warrants that it has made no prior assignment of the Assigned Property or of any interest therein and that the Trustee is the sole owner thereof and has good title thereto, free and clear of all liens, claims and encumbrances of any kind and will transfer to YKF such title, free and clear of any liens or encumbrances of any kind.

7.     <u>YKF's Acknowledgements.</u>  YKF acknowledges to the Trustee that except as expressly set forth in this Agreement, the Trustee does not make, and hereby disclaims any and all, representation or warranties regarding the Assigned Property.  YKF acknowledges and agrees that the Assigned Property is acquired by YKF for its own account and risk and that the sale of the Assigned Property to YKF is a sale without recourse against the Trustee and/or the Estate and without obligation of the Trustee and/or the Estate to repurchase the Assigned Property under any circumstances.

8.     <u>No Reliance; Independent Investigation.</u>  The undersigned agree that each party hereto in entering into this Agreement relies upon its own investigation and judgment in regard to all matters herein contained and that they have not relied on any representations made by the other parties, that this Agreement is made and entered into by each of the parties of its own volition, and each of the parties hereto warrants that this Agreement was made and entered into free of any duress, coercion, or undue influence from any source whatsoever.

9.     <u>Merger.</u>  It is expressly understood and agreed that this Agreement constitutes the complete and final agreement among the parties regarding the matters herein addressed.  Any and all prior negotiations, representations, understandings or agreements, whether written or oral, among the parties, relating to the subject matter of this Agreement and the facts as set forth in the recitals hereto are terminated and shall be of no further force or effect.

10.     <u>Amendments.</u>  No amendment, modification, termination, or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by all parties hereto.

11.     <u>Authority.</u>  Each of the parties to this Agreement has full authority and power to enter into this Agreement and this Agreement is the legal, valid and binding obligation thereof.

12.     <u>Drafting of Agreement.</u>  The undersigned agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to any interpretation of this Agreement.

13.     <u>Successors and Assigns.</u>  This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

14.    <u>Governing Law.</u>  This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California, as well as any applicable United States bankruptcy law.  The Bankruptcy Court shall retain jurisdiction over any disputes regarding this Agreement or enforcement of this Agreement.

15.    <u>Attorneys' Fees.</u>  In the event that any legal proceeding, of any kind or nature, is brought by any party concerning the enforcement or interpretation of this Agreement, or any rights and duties hereunder, the prevailing party shall be entitled to recover its attorneys' fees and costs incurred in said proceedings.

16.    <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.  Any of the parties hereto may execute this Agreement by signing any such counterparts.  Photocopies or facsimiles of executed copies of this Agreement may be treated as originals.

17.    <u>Further Assurances.</u>  The parties and their counsel shall execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the provisions of this Agreement.

18.    <u>Captions.</u>  The captions appearing at the commencement of the paragraphs hereof are descriptive only and for convenience of reference.  Should there be any conflict, or apparent conflict, between any such caption and any paragraph at the head of which it appears, the content of the paragraph shall govern the construction of this Agreement.

19.    <u>Partial Invalidity.</u>  If any provision of this Agreement is found to be invalid by any court, the invalidity of such provision shall not affect the validity of the remaining provisions hereof.

20.    <u>Survival of Representations and Warranties.</u>  The representations and warranties made by the parties herein shall survive the performance of this Agreement.

21.    <u>Notice.</u>  Any notice, request, demand, or other communication required or permitted hereunder will be given in writing by first-class mail, postage prepaid, to the party(ies) to be notified.  All communications will be deemed given when received.  The addresses of the parties for the purposes of such communication are:

Trustee:          E. Lynn Schoenmann
                  c/o Dennis D. Davis, Esq.
                  Goldberg, Stinnett, Meyers & Davis
                  44 Montgomery Street, Suite 2900
                  San Francisco, CA 94104

YKF:              Yugen Kaisha, Y.K.F.
                  c/o James S. Monroe, Esq.
                  Nixon Peabody LLP
                  One Embarcadero Center
                  San Francisco, CA 94111

A party may change his or her address for purposes of notice hereunder only upon written notice to the other party as provided hereinabove.

*[Signature Page Follows]*

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be duly executed on the date appearing opposite their names hereinbelow.

Dated: _Aug 1, 2007_____    E. Lynn Schoenmann, Trustee of the
                                 Chapter 7 Bankruptcy Estate of Alexander
                                 N. Popov

                                 By: _____
                                     E. Lynn Schoenmann

Dated: _June 8, 2007_____    YUGEN KAISHA, Y.K.F.

                                 By: _____
                                 Its: __President_____

APPROVED AS TO FORM AND CONTENT:

Nixon Peabody LLP                Goldberg, Stinnett, Meyers & Davis

By: _____        By: _____
    James S. Monroe, Esq.            Dennis D. Davis, Esq.
Attorneys for Yugen Kaisha, Y.K.F.   Attorneys for E. Lynn Schoenmann, Trustee

4

10333089.1

Entered on Docket
July 31, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA 94104
   Telephone: (415) 362-5045
4  Facsimile: (415) 362-2392
   Email: ddavis@gsmdllaw.com
5
   Attorneys for E. Lynn Schoenmann, Trustee
6

Signed and Filed: July 30, 2007

THOMAS E. CARLSON
U.S. Bankruptcy Judge

7

8          IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  In re:                          Case No. 05-32929

13  ALEXANDER POPOV,                Chapter 7

14

15              Debtor.

16

17

18      **ORDER AUTHORIZING AND APPROVING ASSIGNMENT
        OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.**

19      Upon the Application for Entry of Order by Default Authorizing Sale of Personal Property to

20  Yugen Kaisha, Y.K.F. for an order authorizing and approving the Trustee's assignment of personal

21  property to Yugen Kaisha, Y.K.F., as more fully set forth in the Notice of Trustee's Assignment of

22  Personal Property to Yugen Kaisha, Y.K.F. filed herein June 26, 2007, and the Declaration of Dennis D.

23  Davis filed in support of said application, submitted, no objections or requests having been filed or

24  served, following date and adequate notice on appropriate parties, and

25      GOOD CAUSE APPEARING THEREFOR,

26      IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

27      1.    The Trustee's application is granted in its entirety.

28      2.    On the terms set forth in the notice, this Court hereby authorizes and approves the

-1-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

1  Trustee's assignment of personal property to Yugen Kaisha, Y.K.F., pursuant to the terms of the

2  Assignment Agreement, a copy of which is attached as Exhibit "B" to the Declaration of Dennis Davis

3  filed in support of the application.

4      3.      The Trustee is authorized to take any and all reasonably necessary steps to effectuate the

5  terms of this order.

6

7

8                          **END OF ORDER**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

1

2

**COURT SERVICE LIST**

3

4  Dennis D. Davis, Esq.
   Goldberg, Stinnett, Meyers & Davis
5  44 Montgomery Street, Suite 2900
   San Francisco, CA 94104

6

7  Office of the U.S. Trustee
   235 Pine Street, Suite 700
   San Francisco, CA 94104-3401
8

9  E. Lynn Schoenmann
   800 Powell Street
10 San Francisco, CA 94108

11

12 James S. Monroe, Esq.
   Nixon Peabody LLP
13 Two Embarcadero Center, Suite 2700
   San Francisco, CA 94111-3996
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10206/113282.DOC

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8001
FACSIMILE: (415) 371-8001

# Exhibit I

MARTIN F. TRIANO
MARK D. BYRNE
CAROLYN N. PETTIFER
Attorneys at Law

LAW OFFICES

# TRIANO & BYRNE

ALAN H. DAVIDSON (1931-1999)

25 JESSIE STREET, 16TH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2749

TELEPHONE (415) 371-8000

FACSIMILE (415) 371-8001

www.martinftriano.com
mailbox@martinftriano.com

Our File No.: 1929

July 2, 2007

**VIA FACSIMILE AND U.S. MAIL**

James Monroe, Esq.
Nixon Peabody, LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3996

      Re:    *In re Alexander Popov, Debtor*
            *Chapter 7 Case Number: 05-32929*

Dear Mr. Monroe:

      I am writing this letter to you with the understanding that you continue to represent YKF, as initially noted in your Request for Special Notice and YKF's Proof of Claim. This letter will follow receipt of a Notice of Trustee's Assignment of Personal Property to Yugen Kaisha, Y.K.F.

      According to the Notice provided by Dennis Davis, as Trustee for the above debtor, YKF is purchasing "all of the estate's rights, claims, causes of action and remedies to avoid and recover the debtor's purported transfer of shares of common stock of Smart Alec's Intelligent Food, Inc. to Stephanie Dodson and any subsequent transferee..." The notice further provides that the Trustee in not pursuing the fraudulent transfer action, and is selling the right to such actions to YKF for $30,000, as a business decision because the shares are subject to a pre-petition lien in favor of YKF.

      In light of the foregoing information, I request clarification from YKF in regard to two matters. First, as you know, the Law Offices of Martin Triano also possesses a security interest in the same shares of stock. Conceivably, one of the remedies sought by YKF in "the estate's rights, claims, causes of action and remedies" may include the recovery of the shares of stock in Smart Alec's Intelligent Foods. Notably, the Trustee's Notice does not include any notice that such property is being sold "free and clear of liens." As a result, I am presuming that, in the event that that YKF should acquire the shares, such shares would remain subject to our lien. Please clarify if you agree with this understanding.

      Secondly, I am puzzled in regard to the Trustee's statement that the sale of the shares to YKF represented a business decision because of YKF's pre-bankruptcy filing lien in such stock. According to the testimony of Stephanie Dodson during the objection to discharge proceedings against Mr. Popov, YKF commenced foreclosure proceedings

Letter to James Monroe, Esq.
July 2, 2007
Page 2 of 2

earlier this year which resulted in YKF's lien being paid off in its entirety. Is this correct? Assuming this is correct, in view of YKF no longer possessing any lien on such shares, do you know why the Trustee made the business decision noted above to sell such actions for only $30,000 to YKF?   Moreover, after receiving payment in full for its debt, does YKF continue to have any interest in Smart Alecs?  Was YKF obligated to make such purchase as part of an agreement for settlement with Smart Alec's and Stephanie Dodson?  Do you intend to pursue a fraudulent transfer action assuming the Bankruptcy Court approves the transfer from the Trustee?

In view of our required deadline to object if necessary to the proposed action, please respond no later than July 6, 2007. If you have any questions, or wish to discuss this matter, please do not hesitate to telephone.

Very truly yours,
LAW OFFICES OF TRIANO & BYRNE

MARK D. BYRNE, ESQ.

Cc:     Jonathan Arons, Esq.
        Dan Hager, Esq.
        Robert Roth, Esq.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | J

JUL-05-2007 10:38   From:415 984 8300          Nixon Peabody  San Francisco       Page:2/2

## Nixon Peabody LLP
### Attorneys at Law

One Embarcadero Center
Suite 1800
San Francisco, California 94111-3996
(415) 984-8200

Fax: (415) 984-8300

**PRIVILEGE AND CONFIDENTIALITY NOTICE**
The information in this fax is intended for the named recipients only. It contains privileged and confidential matter. If you have received this fax in error, please notify us immediately by a collect telephone call to (415) 984-8200 and return the original to the sender by mail. We will reimburse you for postage. Do not disclose the contents to anyone. Thank you.

# FAX

| To: | Company: | Fax #: | Telephone #: |
|---|---|---|---|
| 1)  Mark D. Bryne, Esq. | Law Offices of Martin F. Triano | (415) 371-8001 | (415) 371-8000 |
| 2) | | | |
| 3) | | | |
| 4) | | | |
| 5) | | | |

INTERNATIONAL PHONE NUMBERS MUST INCLUDE COUNTRY & CITY CODE. SEE LOCAL WHITE PAGES FOR CODES NEEDED

| From: James S. Monroe | Date: July 5, 2007 | No. of Pages: 1 (including this page) | |
|---|---|---|---|

**Comments:**

Re:  Chapter 7 of Alexander Popov , Case No. 05-32929

In response to your letter of July 2nd:

1. We agree that the proposed sale to YKF has no impact on any lien rights that your firm may have against the shares and does not purport to be "free and clear of liens";

2. You are correct that YKF's lien has now been paid off. However, as I understand it, the majority of the payoff was funded by a loan from Summit Bank which took a replacement 1st lien in the shares;

3. YKF has no present interest in Smart Alec's;

4. YKF was not obligated to make the purchase offer to the Trustee; and

5. YKF intends to pursue the fraudulent conveyance action if the sale is approved.

Original of the transmitted document will be sent by:

o First Class Mail      o Overnight Mail      o Hand Delivery      o This transmission will be the only form of delivery of this document

**IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CONTACT THE FAX ADMINISTRATOR AS SOON AS POSSIBLE AT: (415) 984-8200.  THANK YOU.**

CONFIRMATION: DATE SENT _____ TIME _____ BY _____

| INTEROFFICE TO: | o Albany | o Boston | o Buffalo | o Hartford | o Long Island | o Los Angeles |
|---|---|---|---|---|---|---|
| | o Manchester | o New York City | o Northern Virginia | o Palm Beach Gardens | o Philadelphia | o Providence |
| | o Rochester | o San Francisco | o Washington | | | |

| To: | Company: | Fax #: | Telephone #: |
|---|---|---|---|
| 1)  Mark D. Bryne, Esq. | Law Offices of Martin F. Triano | (415) 371-8001 | (415) 371-8000 |

INTERNATIONAL PHONE NUMBERS MUST INCLUDE COUNTRY & CITY CODE. SEE LOCAL WHITE PAGES FOR CODES NEEDED.

| From: James S. Monroe | Date: | No. of Pages: 1 (including this page) | Client/Matter: 031405/6 |
|---|---|---|---|
| User #: 4628 | Ext: 8227 | Disbursement Amount: $ | |

10260136.1

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit K

**Subject:** Re: In re Alexander Popov, Debtor
**From:** "Law Offices of Martin F. Triano" <reception@martinftriano.com>
**Date:** Tue, 10 Jul 2007 14:21:32 -0700
**To:** ddavis@gsmdlaw.com

Dear Mr. Davis,

    Per the request of Mark D. Byrne, attached please find a copy of his
correspondence from July 5, 2007.  A hard copy will not follow.

    If you have any questions, or have difficulties opening the attachment, please do
not hesitate to call this office at (415) 371-8000.

Very truly yours,
LAW OFFICES OF TRIANO & BYRNE


Jose M. Lagniton
Legal Assistant


**L-Dennis Davis re adequate protection.rtf**   **Content-Type:**   application/msword
**Content-Encoding:** base64

MARTIN F. TRIANO
MARK D. BYRNE
CAROLYN N. PETTIFER
Attorneys at Law

LAW OFFICES

**TRIANO & BYRNE**

25 JESSIE STREET, 16TH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2749

TELEPHONE (415) 371-8000

FACSIMILE (415) 371-8001

ALAN H. DAVIDSON (1931-1999)

www.martinftriano.com
mailbox@martinftriano.com

Our File No.: 1929

July 5, 2007

<u>**VIA E-MAIL AND U.S. MAIL**</u>

Dennis Davis, Esq.
Goldberg, Stinnett, Meyers & Davis
44 Montgomery St., Suite 2900
San Francisco, CA 94104

> Re:    *In re Alexander Popov, Debtor*
> *Chapter 7 Case Number: 05-32929*

Dear Mr. Davis:

This letter will follow our June 27, 2007 telephone conversation and receipt of the proposed agreement subject to court approval between the Trustee and YKF. After reviewing this matter with my client, there are several issues I wish to raise with you, which I suspect may be easily resolved.

First, according to the assignment agreement, the Trustee is assigning various actions/remedies available for a fraudulent transfer under both state and federal law, as well as "any and all right title and interest of the Estate in and to the Shares." The Shares are defined as 3,744,00 shares of common stock of Smart Alec's Intelligent Foods. Furthermore, according to Paragraph 6, the Trustee warrants that, "...the Trustee is the sole owner thereof and has good title thereto, free and clear of all liens, claims and encumbrances of any kind and will transfer to YKF such title free and clear of any liens and encumbrances of any kind." We are greatly troubled by this language in view of the fact that my client has filed a proof of claim evidencing a security arrangement in regard to such shares, which became second in priority to YKF's later lien. Therefore, if necessary, we would seek adequate protection of our lien, based upon the possible impact of the provisions of paragraph 6. Indeed, as you know, adequate protection is mandatory in an 11 USC §363 proceeding upon request by a lienholder.

Nevertheless, because you did not procedurally seek to transfer the shares "free and clear," as required by the local rules, I am presuming that the provisions of paragraph 6 were "boiler plate" and not intended to result in a transfer "free and clear of liens," as a result of the proposed assignment. Please note that I have also confirmed with counsel for YKF that they understand that the shares remain subject to our lien and that they do not understand that the proposed sale would result in the transfer of the shares of stock "free

and clear" of our lien. As a result, I request that the agreement be modified to reflect that the warranty by the Trustee was not meant to affect the existence/priority of my client's lien upon such shares of stock.

Secondly, I am also confused as to Trustee's rationale for assigning the fraudulent transfer actions and shares of stock for only $30,000 to YKF. According to the Notice,

> "Prepetition, the debtor was involved in the Smart Alec's business, which was subject to a security interest in favor of Yugen Kaisha, Y.K.F. Because of the security interest, the trustee made the business decision that pursuing the fraudulent transfer claims was not in the best interests of the estate."

Based upon testimony of Stephanie Dodson and the representations of counsel for YKF, YKF's lien has now been paid off in its entirety. Moreover, both Ms. Dodson and YKF follow up such statement by noting that Summit Bank now holds a lien, first in priority upon such shares. Therefore, I suspect that your reference to a lien in favor of YKF, as being the basis for seeking only $30,000, was made in error. Please confirm.

In view of the fact that we must file an objection to the Notice of Assignment within a very short time, I would appreciate a response no later than July 9, 2007. Your courtesy and cooperation are greatly appreciated. If you have any questions, or wish to discuss this matter, please do not hesitate to telephone.

Very truly yours,
**LAW OFFICES OF MARTIN F. TRIANO**

// S //

MARK D. BYRNE, ESQ.

Cc:   Jonathan Arons, Esq.
      Dan Hager, Esq.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | L

LAW OFFICES

**MARTIN F. TRIANO**
**MARK D. BYRNE**
**CAROLYN N. PETTIFER**
Attorneys at Law

# TRIANO & BYRNE

25 JESSIE STREET, 16TH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2749

TELEPHONE (415) 371-8000

FACSIMILE (415) 371-8001

ALAN H. DAVIDSON (1931-1999)

www.martinftriano.com
mailbox@martinftriano.com

Our File No.: 1929

July 12, 2007

**VIA E-MAIL AND U.S. MAIL**

Dennis Davis, Esq.
Goldberg, Stinnett, Meyers & Davis
44 Montgomery St., Suite 2900
San Francisco, CA 94104

> Re:    *In re Alexander Popov, Debtor*
>        *Chapter 7 Case Number: 05-32929*

Dear Mr. Davis:

This letter will follow our July 11, 2007 telephone conversation in regard to the June 26, 2007 Notice of Assignment to YKF concerning the assignment of various actions/remedies available for a fraudulent transfer under both state and federal law, as well as "any and all right title and interest of the Estate in and to the Shares."

Based upon our telephone conversation, this letter will confirm the following:

- The Notice Of Trustee's Assignment Of Personal Property To Yugen Kaisha, Y.K.F. does **not** result in the transfer of the shares of stock in Smart Alecs free and clear of all liens. The Trustee has not followed the necessary procedural requirements to request a court order that the shares are being transferred free and clear of all liens.
- The agreement prepared and executed by YKF is inaccurate when it states that the Trustee is warranting that it is transferring the assets free and clear of liens.
- The Trustee is only able to transfer what it possesses, which may or may be any interest in the shares. To the extent that the Estate does have an interest in such shares, such shares are subject to the security of the Law Offices of Martin F. Triano, as noted in our December 5, 2005 Proof of Claim.
- You have also spoken to James Monroe and requested a copy of his July 5, 2007 facsimile to this office, where he notes his agreement that, "the proposed sale to YKF has no impact on any lien rights that your firm may have against the shares and does not purport to be free and clear of liens."

Letter to Dennis Davis, Esq.
July 12, 2007
Page 2 of 2

     Please review the foregoing and advise if it is incorrect in any way.  As you know, we must file an objection no later than Monday, July 16, 2007; therefore, I would appreciate a response no later than Friday, July 13, 2007.   If you have any questions, or wish to discuss this matter, please do not hesitate to telephone.

                Very truly yours,
                **LAW OFFICES OF MARTIN F. TRIANO**

                MARK D. BYRNE, ESQ.

cc:    Jonathan Arons, Esq.
       Dan Hager, Esq.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | M

$45,648.54                     San Francisco, CA                     April 17, 2002

For value received Alex Popov promises to pay Martin F. Triano dba Law Offices of Martin F.
Triano the principal sum of Forty Five Thousand six hundred forty eight and 54/100
($45,648.54)[1], together with such additional sums which may accrue from legal services being
provided by the Martin F. Triano dba Law Offices of Martin Triano. All amounts due and owing
under this promissory note, together with any credit for payments, shall be reflected in a
statement provided to Alex Popov on a monthly basis. The initial principal sum of $45,648.54
shall accrue interest from May 1, 2002. Any future principal amounts, which will be reflected in
the monthly statements, shall accrue interest from the date of the first statement to contain the
additional principal charges. All interest on any unpaid principal amount shall accrue at the rate
of 10 percent per annum. Alex Popov further agrees to make principal and interest payments in
installments of $ (as required by Martin F. Triano) per month, beginning on May 1, 2002 and
continuing on the first of each month thereafter until April 30, 2003, when the entire amount of
unpaid principal and interest shall become fully due and payable

This note is secured by the following:

    All shares held in Smart Alecs Restaurant

Such security is protected by a UCC-1 Financing Statement.

In consideration for this promissory note, Alex Popov shall exercise his voting privileges
in the shares held in Smart Alecs to elect Martin F. Triano to the Board of Directors of Smart
Alecs. Alex Popov shall keep Martin F. Triano dba Law Offices of Martin Triano apprised at all
times of significant business developments, including but not limited to the status of any
negotiations, contractual agreements, or an escrow regarding the possible encumbrance,
hypothecation, or other transfer of any property belonging to Smart Alecs Restaurant. Beginning
on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter
thereafter, Alex Popov shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano,
financial statements for Smart Alecs Restaurant, with regard to the previous quarter. Such
financial statements shall include a balance statement, income statement and expense statement
of any business operated by Alex Popov. It is expressly understood that Martin F. Triano will be
relying on all information and documents provided by Alex Popov.

Any encumbrance, hypothecation, or other transfer of the above property being offered as
security without the consent of the Martin F. Triano dba Law Offices of Martin F. Triano shall
constitute a default under the terms of this note. Any failure to timely provide information and
documents required under this note shall constitute a default. Any failure to keep Martin F.
Triano dba Law Offices of Martin F. Triano apprised of any significant business developments
shall constitute a default. Any failure to make any timely payment of principal and/or interest
shall constitute a default.

[1] This amount does not include work in progress between 4/1/02 and 4/17/02.

EXHIBIT

In the event of a default, Martin F. Triano dba Law Offices of Martin F. Triano may pursue all available remedies, including but not limited to foreclose upon the above security under the provisions of the California Commercial Code. In the event that the Law Offices of Martin Triano needs to bring any action to enforce (including foreclosure) or interpret the provisions of this note, the prevailing party shall be entitled to attorney's fees.

This promissory note has been drafted by the Martin F. Triano dba Law Offices of Martin Triano, who has advised Alex Popov that he may seek independent legal advice regarding the terms of this note or any UCC-1 Financing Statement. By his signature below, Alex Popov acknowledges that he has had a reasonable opportunity to seek independent legal advice and is entering this promissory note freely and voluntarily.

Date: 4/17/02

Alex Popov

## Guarantee of Promissory Note

Smart Alecs Restaurant, Inc. guarantees the full performance of Alex Popov under the provisions of the above note. In the event of any default of the provisions of this note, and the pursuit of any remedies under this note, Martin F. Triano dba Law Offices of Martin F. Triano may pursue his remedies against the Alex Popov and/or against the Guarantor (jointly or severally), at the sole election of Martin F. Triano dba Law Offices of Martin F. Triano. Except as otherwise provided below, Martin F. Triano dba Law Offices of Martin F. Triano shall not be required to provide any advance notice to the Guarantor prior to seeking relief under this guarantee, nor shall Martin F. Triano dba Law Offices of Martin F. Triano be required to obtain any judgment against Alex Popov prior to pursuing any remedies against the Guarantor.

~~Smart Alecs Restaurant, Inc. shall keep the Martin F. Triano dba Law Offices of Martin F. Triano~~ apprised of any significant business developments. Beginning on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter thereafter, Smart Alecs Restaurant, Inc. shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano, financial statements for Smart Alecs Restaurant, with regard to the previous quarter. Such financial statements shall include a balance statement, income statement and expense statement of any business operated by Smart Alecs Restaurant, Inc. It is expressly understood that Martin F. ~~Triano will be relying on all information and documents provided by Smart Alecs Restaurant.~~

Any encumbrance, hypothecation, or other transfer of the above property being offered as security without the consent of Martin F. Triano dba the Law Offices of Martin F. Triano shall constitute a default under the terms of the above note or this guarantee of such note. Any failure to timely provide information and documents required under this guarantee shall constitute a default. Any failure to keep Martin F. Triano dba Law Offices of Martin F. Triano apprised of any significant business developments shall constitute a default. Any failure by Alex Popov, as

obligor, or Smart Alecs Restaurant Inc., as guarantor, to make any timely payment of principal and/or interest shall constitute a default.

In the event of a default, Martin F. Triano dba Law Offices of Martin F. Triano may pursue all available remedies, including but not limited to foreclose upon the above security under the provisions of the California Commercial Code. In the event that the Law Offices of Martin Triano needs to bring any action to enforce (including foreclosure) or interpret the provisions of this guarantee or the above note, the prevailing party shall be entitled to attorney's fees.

This Guarantee has been drafted by the Law Offices of Martin Triano, who has advised Smart Alecs Restaurant, Inc. that it may seek independent legal advice regarding the terms of this Guarantee or any UCC-1 Financing Statement.  By its signature below, Smart Alecs Restaurant, Inc. acknowledges that it has had a reasonable opportunity to seek independent legal advice and is entering this guarantee of the above promissory note freely and voluntarily.

Date: 4/17/02                    _____
                                 Alex Popov, President of Smart Alecs Restaurant, Inc.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit N

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Martin F. Triano (415)-371-8000

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Martin F. Triano
Law Offices of Martin F. Triano
25 Jessie Street, 16th Floor
San Francisco, CA 94105

**07-71110373**
**04/20/2007 17:00**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

12376870004   UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
0213360005

**1b.** This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only **one** of these two boxes.
Also check **one** of the following three boxes and provide appropriate information in items 6 and/or 7.

☒ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Triano | Martin | Francis | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME   Law Offices of Martin F. Triano | | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Triano | Martin | Francis | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 25 Jessie Street, 16th Floor | San Francisco | CA | 94105 | US |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | |

**8. AMENDMENT (COLLATERAL CHANGE):** check only **one** box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

☐ NONE

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Triano | Martin | Francis | |

**10. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

12a. ORGANIZATION'S NAME

OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX
| Triano | Martin | Francis

13. Use this space for additional information



1237667OOO4

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

The debtor filed Chapter 7 Bankruptcy on September 6, 2005 and was granted a discharge on April 9, 2007. This continuation concerns the secured interest held by the Secured Party of Interest. The original filing statement lists all of the shares of stock in Smart Alec's Intelligent Foods Inc. owned by debtor Alexander Popov. In April of 2004, prior to his filing for bankruptcy, Alexander Popov sold all of his shares of stock in Smart Alec's Intelligent Foods Inc. to Stephanie Dodson. Martin F. Triano continues to hold a lien against the shares sold to Stephanie Dodson.



### SECRETARY OF STATE
### STATE OF CALIFORNIA

## UCC Amendment Acknowledgement

04/20/2007

Page 1 of 1

LAW OFFICES OF TRIANO & BYRNE
25 JESSIE ST., 16TH FLOOR
SAN FRANCISCO CA 94105

Filing Fee:        $20.00

Total Fee:        $20.00

The California Secretary of State's Office has received and filed your document. The information stated below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Amendment Type: **Continuation, Amendment**        File Date: **04/20/2007**        File Time: **17:00**

Amendment Filing #: **07-71110373**

Original Filing Number: **02-13360005**        Lapse Date: **05/10/2012**

Secured Party(ies):
ORGANIZATION        **LAW OFFICES OF MARTIN F. TRIANO**
                    **25 JESSIE STREET, 16TH FLOOR SAN FRANCISCO CA**
                    **USA 94105**

**Not all data indexed :** This filing included Secured Party information that was either illegible or incomplete.

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC ARTICLE 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-1516 · HTTPS://UCCCONNECT.SS.CA.GOV

PROGRAMS ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM, MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

Case: 07-03104       Doc #: 12       Filed: 11/15/2007       Page 15 of 43

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | O

LAW OFFICES

MARTIN F. TRIANO
MARK D. BYRNE
JUDY J. MOON†
EVAN C. KAY
Attorneys at Law

BRUCE W. CARTER
Law Clerk

†Also admitted in New York
and New Jersey

# MARTIN F. TRIANO

25TH FLOOR, SHELL BUILDING

100 BUSH STREET

SAN FRANCISCO, CALIFORNIA 94104-3927

TELEPHONE (415) 391-2300

FACSIMILE (415) 391-1922

ALAN H. DAVIDSON (1931-1999)
ELVIRA J. ORLY
ROBERT A. ROTH*
Of Counsel

*Certified Appellate Specialist
State Bar of California
Board of Specialization

Our File No.: 1902

January 27, 2003

**VIA FACSIMILE & U.S. MAIL**

Alex Popov
2015 Laguna Street, #8
San Francisco, CA 94115

**VIA FACSIMILE & U.S. MAIL**

Alex Popov, President
Stephanie Dodson, Vice President
Smart Alec's Intelligent Foods
2355 Telegraph Avenue
Berkeley, CA 94704

**VIA FACSIMILE & U.S. MAIL**

Stephanie Dodson
5728 Owens Drive, Apt. #206
Pleasanton, CA 94588

Re: **Promissory Note by Alex Popov and Security thereon**

Dear Alex and Stephanie:

Pursuant to Alex's January 24, 2003 request for a copy of the Promissory Note and Guarantee he executed arising out of the Man.Com and Popov vs. Hayashi cases, please find enclosed herewith a true and correct copy of the Promissory Note and Guarantee executed by Alex, as well as the UCC-1 perfecting the security interest in the shares.

Upon review of the Promissory Note and Guarantee, we have realized Alex was required to exercise his voting privileges to elect Marty to the Board of Directors of Smart Alec's restaurant. Based upon our recollection and now review the corporate minute book which we were provided at the commencement of the *YKF* lawsuit, such election never occurred. Moreover, according to the Promissory Note and Guarantee, monthly financial statements were to be sent from Smart Alec's Intelligent Foods, Inc. beginning May 10, 2002; but, never occurred. This letter will confirm that we have never been provided with such financial statements prior to the onset of the *YKF* lawsuit. Subsequent to the commencement of the *YKF* lawsuit, we have received financial statements as required by the Stipulation and Order entered with counsel for *YKF*, for the sole purpose of satisfying the Stipulation and Order only. Therefore, this letter will confirm that this office has not received any financial statements nor obtained a seat upon the Board of Directors of Smart Alec's Restaurants as set forth in the Promissory Note and Guarantee.

Please note that this letter will confirm that Martin F. Triano dba Law Offices of Martin

**PRIVILEGED AND CONFIDENTIAL**

Letter to Alex Popov, Stephanie Dodson, and Smart Alec's Intelligent Food, Inc.
January 25, 2003, Page 2 of 3

F. Triano has previously and again hereby waives the following provisions of the Promissory Note dated April 17 2002:

"In consideration for this promissory note Alex Popov, shall exercise his voting privileges in the shares held in Smart Alec's to elect Martin F. Triano to the Board of Directors of Smart Alec's. Alex Popov shall keep Martin F. Triano dba Law Offices of Martin Triano apprised at all times of significant business developments, including but not limited to the status of any negotiations, contractual agreements, or an escrow regarding the possible encumbrance, hypothecation, or other transfer of any property belonging to Smart Alec's Restaurant. Beginning on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter thereafter, Alex Popov shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano, financial statements for Smart Alec's Restaurant, with regard to the previous quarter. Such financial statements shall include a balance statement, income statement and expense statement of any business operated by Alex Popov. It is expressly understood that Martin F. Triano will be relying on all information and documents provided by Alex Popov." *(Please note that this language has not been redacted in the original and your photocopy.)*

In addition, the Martin F. Triano dba Law Offices of Martin F. Triano has previously and again hereby waives any right to declare a default arising out of the above language.

Furthermore, the law offices of Martin Triano has previously and again waives the provision of the guarantee dated April 7, 2002, and regard to the following language:

"Smart Alec's Restaurant, Inc. shall keep the Martin F. Triano dba Law Offices of Martin F. Triano apprised of any significant business developments. Beginning on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter thereafter, Smart Alec's Restaurant, Inc. shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano, financial statements for Smart Alec's Restaurant, with regard to the previous quarter. Such financial statements shall include a balance statement, income statement and expense statement of any business operated by Smart Alec's Restaurant, Inc. It is expressly understood that Martin F. Triano will be relying on all information and documents provided by Smart Alec's Restaurant. *(Please note that this language has not been redacted in the original and your photocopy.)*

In addition, the Martin F. Triano dba Law Offices of Martin F. Triano hereby waives any right to declare a default arising out of the above language.

We request that the corporate minute book record minutes of the following: that neither Alex nor Smart Alec's Restaurant exercised its obligations described in the Promissory Note and Guarantee; that Mr. Triano never received any notice of having been elected to the Board of Directors; and that the Martin F. Triano dba Law Offices of Martin F. Triano is forever waving the rights specifically set forth above in the Promissory Note and Guarantee. I have enclosed for your review, some proposed language which may be appropriate for the Board of Directors to address at the next regularly scheduled or special meeting of the Board of Directors.

Letter to Alex Popov, Stephanie Dodson, and Smart Alec's Intelligent Food, Inc.
<u>January 25, 2003, Page 3 of 3</u>

       Nevertheless, please note that the Law Offices of Martin Triano still considers the Promissory Note and Guarantee to be fully enforceable with the exception of the language set forth above being waived

       If you have any questions or wish to discuss this matter, please do not hesitate to telephone

                   Very truly yours,
                   **THE LAW OFFICES OF MARTIN F. TRIANO**

                   MARK D. BYRNE, ESQ.

RESOLVED:

1. WHEREFORE President Alex Popov, on or about April 17, 2002, executed a Guarantee for Smart Alec's Intelligent Foods, Inc. (aka Smart Alec's Restaurant, Inc.) to guarantee a Promissory Note that was executed by Alex Popov for a personal obligation owing to Martin F. Triano dba Law Offices of Martin F. Triano;

2. WHEREFORE neither Alex Popov nor Smart Alec's Intelligent Foods, Inc. (aka Smart Alec's Restaurant, Inc.) never fulfilled the requirements set forth in the Promissory Note and Guarantee, to wit: the election of Martin F. Triano to the Board of Directors of Smart Alec's Restaurant, Inc.or the delivery of monthly financial statements to Martin F. Triano dba Law Offices of Martin F. Triano starting May 10, 2002;

3. WHEREFORE Martin F. Triano was never otherwise elected or appointed to the Board of Directors of Smart Alec's Restaurant;

4. WHEREFORE Neither Martin F. Triano nor the Law Offices of Martin F. Triano ever received any notice that Mr. Triano was elected to the Board of Directors nor did they ever believe that such election had taken place;

5. WHEREFORE Martin F. Triano never held himself out as, nor ever acted in the capacity of, a director of Smart Alec's Restaurant, Inc.;

6. WHEREFORE Martin F. Triano and / or the Law Offices of Martin F. Triano has never exercised any of their rights as set forth in the Promissory Note and Guarantee, in regard to the election of Martin F. Triano to the Board of Directors of Smart Alec's Restaurant, Inc. or the delivery of monthly financial statements to Martin F. Triano dba Law Offices of Martin F. Triano starting May 10, 2002;

7. WHEREFORE pursuant to the January 25, 2003 correspondence from the Law Offices of Martin F. Triano, Martin F. Triano and / or the Law Offices of Martin F. Triano, now and forever waives all rights provided by the Promissory Note and Guarantee in regard to the election of Martin F. Triano to the Board of Directors of Smart Alec's Restaurant, Inc. and the delivery of monthly financial statements to Martin F. Triano dba Law Offices of Martin F. Triano starting May 10, 2002.

8. WHEREFORE, all other provisions of the Promissory Note and Guarantee remain in effect.

NOW THEREFORE, based upon a vote of the Directors then present, the foregoing is ratified and accepted.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | P

DEC 17 2007

1  MARK D. BYRNE, ESQ., SBN 109268
2  LAW OFFICES OF MARTIN F. TRIANO
   25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   Telephone: (415) 391-2300
4  Facsimile: (415) 391-1922
5
6  Attorney for Plaintiff Martin F. Triano

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA
8              IN AND FOR THE CITY AND COUNTY OF ALAMEDA
9

10  MARTIN F. TRIANO, dba LAW           )        Case Number: RG-07-322877
    OFFICES OF MARTIN F. TRIANO        )
11                                      )
12  Plaintiff,                          )   MARTIN F. TRIANO'S FIRST
                                        )   AMENDED COMPLAINT FOR:
13  v.                                  )
14                                      )   1) BREACH OF WRITTEN
15  STEPHANIE DODSON, SMART             )      CONTRACT
    ALEC's INTELLIGENT FOODS INC, a    )   2) ACCOUNT STATED
16  California Corporation; DOES 1-20   )   3) DECLARATORY RELIEF
                                        )   4) INTENTIONAL
17  Defendant.                          )      INTERFERENCE WITH
18                                      )      CONTRACTUAL RELATIONS
                                        )   5) REFORMATION
19  _____ )
20

21  COMES NOW PLAINTIFF MARTIN F. TRIANO (hereinafter "TRIANO") who alleges as
22  follows:
23                          **GENERAL ALLEGATIONS**
24      1.      MARTIN F. TRIANO (hereinafter "TRIANO") dba THE LAW OFFICES OF
25  MARTIN F. TRIANO (hereinafter "TRIANO") is and at all times mentioned herein a law firm
26  with its principal place of business located in the City and County of San Francisco.
27  //
28

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION

Case 3:08-cv-00225-SC    Document 1    Filed 11/15/2007    Page 22 of 43

1

2.     TRIANO is informed and believes and thereon alleges that SMART ALEC'S INTELLIGENT FOOD INC. (hereinafter "SMART ALEC's") is corporation duly organized an existing under the laws of the State of California with its principal place of business located in the City of Berkeley and County of Alameda.

3.     TRIANO is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sue these Defendants by such fictitious names. TRIANO will amend this Complaint to allege their true names and capacities when ascertained. TRIANO is informed and believes and thereon alleges that each of the fictitiously-named Defendants are responsible for the occurrences herein alleged, and that TRIANO's damages as herein alleged were proximately caused by such Defendants.

4.     TRIANO is informed and believes and thereon alleges that STEPHANIE DODSON (herinafter "DODSON") is SMART ALEC's president and sole stockholder.

5.     TRIANO is informed and believes and thereon alleges that ALEXANDER POPOV (hereinafter "POPOV") was, until April of 2004, the majority shareholder in SMART ALEC's and until February of 2004, acting president of SMART ALEC's.

6.     TRIANO began representing ALEXANDER POPOV in October of 2001 in the case of Popov v. Hayashi. POPOV hired TRIANO for his case against Hayashi to recover Barry Bonds' 73rd homerun baseball. Thereafter TRIANO represented POPOV in the cases of Bantry Bay v. Popov and Yugen Kaisha (YKF) v. Popov.

7.     On April 17, 2002, POPOV owed TRIANO $45,648 for legal services rendered in the case of Popov v. Hayashi.

8.     On April 17, 2002, POPOV granted TRIANO a written Promissory Note (hereinafter "NOTE") for the $45,648 he owed together with "such additional sums which may accrue from legal services being provided" by TRIANO.  A true and correct copy of the Promissory Note is attached hereto as Exhibit A. POPOV secured his promissory note by pledging

---

**MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION.**

his 3,744,000 shares of stock in SMART ALEC's as collateral. On May 10, 2002 TRIANO

executed a UCC-1 filing statement with the California Secretary of State. On April 20, 2007, the

UCC-1 filing statement was amended and is due to lapse on May 10, 2012. A true and correct copy

of the amended UCC-1 filing statement is attached hereto as Exhibit B.

9.      Additionally, on April 17, 2002, POPOV, as acting president of SMART ALEC's,

signed and executed a written Guarantee of Promissory Note (hereinafter "GUARANTEE") by

SMART ALEC's for the full performance of POPOV under the provisions of the above mentioned

promissory note. The agreement was executed by POPOV as the President of Smart Alecs

Restaurant, Smart Alecs Intelligent Foods, Inc in error. At all times, the parties to the agreement

considered the security to be provided by Smart Alecs Intelligent Foods Inc, which operates a

restaurant called Smart Alecs Intelligent Fast Food. See Exhibit A.

10.     The GUARANTEE executed by SMART ALEC's stated that in the event of

default, TRIANO could pursue any claims in connection with POPOV's legal fees against either

POPOV or SMART ALEC's either jointly or severally. The note further stated that TRIANO need

not obtain a judgment against POPOV in the event of breach in order to recover from SMART

ALEC's.

11.     On or about December 18, 2002 the Judge in Popov v. Hayashi ordered the parties

to auction off the baseball and split the proceeds. When POPOV retained TRIANO the baseball

was expected to sell for over one million dollars. The baseball actually sold for $450,000, leaving

POPOV with $225,000, an amount far less than he expected. POPOV did not make a single

complaint about the legal fees he owed TRIANO until after announcement of the decision.

12.     TRIANO continued to represent POPOV in the Popov v. Hayashi matter until he

was discharged on May 14, 2003. Since TRIANO's discharge, neither POPOV as the obligor of

the NOTE, or SMART ALEC's as its guarantor has made the payments as required by the NOTE.

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION

Case: 07-03704    Doc # 12    Filed: 04/15/2007    Page 24 of 43

3

13.     TRIANO is informed and believes and thereon alleges that POPOV entered into a settlement agreement with Yugen Kaisha (hereinafter YKF) in February of 2004 whereby SMART ALEC's granted YKF a promissory note for $772,000 secured by POPOV's shares in SMART ALEC's and POPOV's personal guarantee for the payment of $280,000.

14.     Unbeknownst to TRIANO and in violation of the NOTE, POPOV in accordance with the settlement agreement with YKF, granted YKF superior lien interest in his 3,744,000 shares of stock in SMART ALEC's. As a result of POPOV's breach, TRIANO's lien against the shares of SMART ALEC's was subordinated to YKF's lien and he was unable to foreclose and collect on the full value of those shares.

15.     In April of 2004 POPOV, without any notice to TRIANO and in violation of the NOTE he granted TRIANO, sold his shares of stock in SMART ALEC's to Stephanie Dodson (hereinafter "DODSON"). A true and correct copy of DODSON's agreement to buy POPOV's shares of stock in SMART ALEC's is hereto attached as Exhibit C.

16.     On September 6, 2005 POPOV filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. POPOV was granted a discharge on April 9, 2006. Despite the Bankruptcy Court grant of discharge for POPOV, TRIANO continues to possess an In Rem action against the shares in SMART ALEC's now owned by DODSON, as TRIANO still possesses a secured interest in those shares.

17.     TRIANO was not informed of either YKF's lien against POPOV's shares in SMART ALEC's or DODSON's purchase of those shares until October of 2005.

18.     Neither POPOV nor SMART ALEC's has made a single payment to TRIANO since January of 2003.

19.     By the terms of the promissory note, the entire balance, including principal, costs and interest, was due on April 30, 2003.

---

**MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION**

4

20.    In April 1, 2007 the balance owed to TRIANO for legal services rendered, costs and interest accrued as a result of TRIANO's representation in the Popov v. Hayshi and Yugen Kaisha (YKF) v. Popov matters is $696,629.63. The balance owed to TRIANO continues to accrue interest at a rate of 10% per year.

21.    Prior to the filing of this lawsuit Plaintiff has complied with the provisions of Business and Professions Code § 6200 et. seq. and provided written notice to SMART ALEC's of its right to arbitration.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract as to SMART ALEC's Only)

22.    TRIANO re-alleges and incorporates herein paragraphs 1 to 21 as set forth above.

23.    TRIANO continued to provide and POPOV continued to receive legal services and incur legal fees and costs under the NOTE executed on or about April 17, 2002 until May 14, 2003 when TRIANO was discharged.

24.    At all times hereon alleged, TRIANO has performed all terms, conditions and covenants as required under the terms of the NOTE.

25.    Pursuant to its GUARANTEE, SMART ALEC's is liable to TRIANO for POPOV's failure to pay for his legal fees as provided in the GUARANTEE.

26.    As a direct and proximate result of SMART ALEC's breach of contract, TRIANO has incurred damages represented by the money owed to TRIANO for legal services rendered to POPOV, in the amount of $696,629.63, together with interest at 10% per annum on the principal amount from and after April 1, 2007.

27.    Additionally, TRIANO seeks payment of reasonable attorney's fees and costs associated with the collection of POPOV's debt to TRIANO, as provided in the NOTE, in an amount subject to proof.

WHEREFORE, Plaintiff prays for Judgment as hereinafter alleged.

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION

Case: 07-03704    Doc #: 12    Filed: 08/15/2007    Page 26 of 43
5

### SECOND CAUSE OF ACTION

#### (Account Stated as to SMART ALEC's)

28.     TRIANO re-alleges and incorporates herein paragraphs 1 to 27 as set forth above.

29.     The NOTE signed by POPOV states that as of April 1, 2002 POPOV owed TRIANO $45,648.54.

30.     Starting on May 1, 2002 TRIANO mailed invoices to POPOV, DODSON and SMART ALEC's on a monthly basis. The invoices contained the description of and fee for the legal services provided to POPOV in the previous month. Additionally, the invoices provided to POPOV, DODSON and SMART ALEC's contained a notice of the balance owed to TRIANO for legal services rendered, costs and interest.

31.     The following table represents the monthly balance listed on each invoice that was mailed to POPOV, DODSON and SMART ALEC's as well all payments made by POPOV or on POPOV's behalf for legal fees, costs and interest for services rendered from April 17, 2002-May 14, 2003:

| Date Invoice Mailed | Balance | Date Payment Made | Amount of Payment |
|---|---|---|---|
| May 1, 2002 | $31,824.13 | May 22, 2002 | $28,000 |
| June 1, 2002 | $20,953.13 | No Payment in June | N/A |
| July 1, 2002 | $38,748.27 | No Payment in July | N/A |
| August 1, 2002 | $57,658 | August 15, 2002. | $1,500 |
| September 1, 2002 | $91,393.85 | September 1, 2002 | $16,076.20 |
| October 1, 2002 | $176,315.21 | October 9, 2002 | $4,750 |
| November 1, 2002 | $340,662.98 | November 14, 2002 | $150 |
| December 1, 2002 | $416,389.64 | December 6, 2002 | $720 |
| January 2, 2003 | $428,070.01 | January 2, 2003 | $1050 |

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION 12/15/2007    Page 27 of 43

6

| February 1, 2003 | $439,622.63 | No Payment in February | N/A |
| On March 1, 2003 | $452,872.16 | No Payment in March | N/A |
| April 1, 2003 | $463,967.95 | No Payment in April | N/A |
| Date Invoice Mailed | Balance | Date Payment Made | Amount of Payment |
| May 1, 2003 | $468,355.15 | No Payment in May | N/A |
| June 1, 2003 | $473,530.32 | No Payment in June | N/A |

32.    After receipt of the invoices and an opportunity to review them, Smart Alec's paid the invoices without objection which evidenced the corporation's agreement to discharge its debt to TRIANO.  For example, before the Note and Guarantee were executed, Smart Alec's made payments to TRIANO including on February 11, 2002, (Check #4542) in the amount of $24,860.15 and, on March 14, 2002, (Check #4600) in the amount of $15,715.22.   On the date of execution of the Note and Guarantee, namely April 17, 2002, Smart Alec's made payment (check # 4678) in the amount of $11,215.65 to TRIANO.  After the Note and Guarantee were executed, Smart Alec's made payment to TRIANO on May 21, 2002 (check #4739) in the amount of $28,000.

33.    POPOV continued to receive legal services from TRIANO and incur legal fees until May 14, 2003 when TRIANO was discharged. At no time prior to December 18, 2002 when the judge ruled that POPOV and Hayashi sell the baseball and split the proceeds did POPOV or Smart Alec's object to his legal fees.

34.    From July 1, 2003-September 1, 2005 TRIANO continued to mail POPOV, DODSON and SMART ALEC's invoices on a monthly basis. While no new legal fees or costs have been charged since May 14, 2003, the interest on his balance continues to accrue.

35.    An account was stated by and between TRIANO and SMART ALEC'S by mutual agreement of the amount owing under the personal Guarantee which is presently in the amount of

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION

Case 3:08-cv-00225-SC    Doc ID: 0864    Filed 05/15/2007    Page 28 of 43

7

$696,629.63, together with interest at 10% per annum on the principal amount from and after April 1, 2007.

WHEREFORE, Plaintiff prays for Judgment as hereinafter alleged.

## THIRD CAUSE OF ACTION

### (Declaratory Relief as to DODSON and SMART ALEC's)

36. TRIANO re-alleges and incorporates herein paragraphs 1 to 38 as set forth above.

37. On or about April 17, 2002 POPOV granted TRIANO a NOTE for the balance he owed TRIANO for legal services rendered, costs and interest as well as all future legal services performed on behalf of POPOV.

38. POPOV's legal fees were secured by all of POPOV's stock in SMART ALEC's and a GUARANTEE by SMART ALEC's. The GUARANTEE was signed by POPOV as the President of SMART ALEC's.

39. On or about April 18, 2004, POPOV, in violation of his agreement with TRIANO, sold all of his shares of stock in SMART ALEC's to DODSON.

40. TRIANO was not made aware of the sale until October of 2005.

41. On or about February 22, 2007, during a deposition held at the Law Offices of Martin F. Triano, DODSON testified that she did not believe that TRIANO had a lien against the shares of stock in SMART ALEC's that she purchased from POPOV. She testified that she believes the lien is invalid due to statements made to her by POPOV as well as statements made by the attorneys for YKF during settlement negotiations.

42. TRIANO is informed and believes and thereon alleges that DODSON continues to maintain that TRIANO does not hold a valid lien against the shares of stock in SMART ALEC's that she purchased from POPOV.

1    43.    TRIANO is informed and believes and thereon alleges that DODSON took out a

2    loan to pay off the debt owed by SMART ALEC's to YKF. As a result of the payment, YKF no

3    longer has any interest in the shares of stock in SMART ALEC's.

4

5    44.    TRIANO is informed and believes and thereon alleges that DODSON used the

6    shares of stock in SMART ALEC's as security for the loan she took out to pay off the debt owed

7    to YKF.

8    45.    TRIANO is informed and believes and thereon alleges that as a result of

9    DODSON's actions, TRIANO's lien against the stock has again been subordinated.

10    46.    TRIANO contends that he still holds a valid lien against DODSON's shares of

11    stock in SMART ALEC's.

12    47.    An actual and present controversy exists between TRIANO, DODSON and

13    SMART ALEC's concerning their respective rights and duties in regard to the NOTE, the

14    GUARANTEE, and the security provided to TRIANO on or about April 17, 2002.

15

16    48.    TRIANO desires a judicial determination of the respective rights and duties of

17    TRIANO, DODSON and SMART ALEC's as to:

18        (a) Whether TRIANO possesses a valid security interest on the shares of stock

19        formerly held by POPOV and now held by DODSON.

20        (b) The ability of DODSON to grant any additional security interests to other

21        parties that render TRIANO's security into an inferior or junior position.

22    WHEREFORE, Plaintiff prays for Judgment as hereinafter alleged.

23                        **FOURTH CAUSE OF ACTION**

24        **(Intentional Interference with Contractual Relations as to DODSON Only)**

25    49.    TRIANO re-alleges and incorporates herein paragraphs 1 to 51 as set forth above.

26    50.    On or about January 27, 2003, TRIANO faxed and mailed copies of the NOTE and

27    GUARANTEE to DODSON.

28

---

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT,
ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH
CONTRACTUAL RELATIONS AND REFORMATION

1     51.    TRIANO is informed and believes and thereon alleges that on or about April 18,

2  2004 DODSON purchased all of POPOV's shares of stock in SMART ALEC's.

3     52.    TRIANO is informed and believes and thereon alleges that DODSON knew about

4  his lien against POPOV's shares when she purchased them.

5     53.    TRIANO is informed and believes and thereon alleges that DODSON knew that her

6  purchase of POPOV's shares of stock was in direct violation of the NOTE signed by POPOV.

7     54.    TRIANO informed and believes and thereon alleges that DODSON used her shares

8  of stock in SMART ALEC's to secure a bank loan in order to pay the debt owed to YKF.

9     55.    TRIANO is informed and believes and thereon alleges that DODSON subordinated

10  TRIANO's lien without his knowledge or consent, to secure a bank loan. DODSON's use of the

11  shares of stock in SMART ALEC's was in violation of the terms of the NOTE signed by POPOV.

12     56.    As a direct result of DODSON's actions, TRIANO is forced to take legal action in

13  order to protect his interest in the shares of stock in SMART ALEC's.

14     57.    As a direct result of DODSON's actions TRIANO's ability to collect legal fee's

15  owed to him in the amount of $696,629.63 together with interest at 10% per annum from and after

16  April 1, 2007 on the principal amount, has been hindered and delayed for an undetermined amount

17  of time.

18     58.    As a further direct and proximate result of DODSON's intentional interference,

19  TRIANO has incurred damages represented by the cost of reasonable attorney's fees associated with

20  defending and determining his rights as to the shares of stock in SMART ALEC's in an amount

21  subject to proof.

### FIFTH CAUSE OF ACTION

### (Reformation as to Smart Alec's Only)

     59.    TRIANO re-alleges and incorporates herein paragraphs 1 to 62 as set forth above.

1

2

60.     On April 17, 2002, and as described above, in consideration of valuable services,

3
POPOV granted TRIANO a written Promissory Note under which POPOV promised to pay

4
TRIANO the sum of $45,648.54, together with "such additional sums which may accrue from

5
legal services being provided" by TRAINO.

6
61.     This Promissory Note was secured by a Guarantee of all shares held in Smart

7
Alec's Restaurant and, was signed by POPOV as acting President of Smart Alec's Restaurant, Inc.

8
62.     At the time of preparing the Note and Guarantee, POPOV represented, in error, that

9
the name of the corporation was Smart Alec's Restaurant, Inc.

10
63.     As described above, the Guarantee was executed by POPOV as the President of

11
Smart Alec's Restaurant, Inc., instead of Smart Alec's Intelligent Foods, Inc., in error. At all

12
times, the parties to the agreement considered the security to be provided by Smart Alec's

13
Intelligent Foods Inc, rather than Smart Alec's Restaurant, Inc.

14
64.     Because of the mutual mistake of the parties, the Guarantee did not reflect the true

15
name of POPOV's corporation.  If both parties had not been mistaken at the time of preparing and

16
executing the Guarantee, the corporation would have been correctly named.

17
65.     With the exception of the misnomer, the Promissory Note and Guarantee truly

18
expresses the intention of the parties.

19
20    ////

21    ////

22    ////

23    ////

24    ////

25    ////

26    ////

27    ////

28    ////

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT,
ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH
CONTRACTUAL RELATIONS AND REFORMATION
11

Case: 0A-03464     Doc #: RE     07/15/2007     Page 32 of 43

1   WHEREFORE, Plaintiff TRIANO prays for judgment against DODSON and SMART

2   ALEC's as follows:

3   As to DODSON Only:

4   1.   TRIANO desires a judicial determination that:

5

6   (a) TRIANO possesses a valid security interest on the shares of stock

7   formerly held by POPOV and now held by DODSON;

8   (b) DODSON shall not to grant any additional security interests to other

9   parties that render TRIANO's security into an inferior or junior position;

10   2.   For damages in an amount subject to proof;

11   3.   For reasonable Attorney's fees incurred in defending and determining TRIANO's

12   rights as to DODSON's shares of stock in SMART ALEC's in an amount subject to proof;.

13   As to SMART ALEC's Only:

14   1.   TRIANO desires a judicial determination that:

15

16   (a) TRIANO possesses a valid security interest on the shares of stock

17   formerly held by POPOV and now held by DODSON;

18   (b) DODSON shall not to grant any additional security interests to other

19   parties that render TRIANO's security into an inferior or junior position;

20   2.   TRIANO desires a judicial determination that:

21   (a) the Note and Guarantee be reformed to reflect the mutual intent of the

22   parties at the time of execution, to wit, the document was signed by POPOV

23   for Smart Alec's Intelligent Foods, Inc., instead of Smart Alec's Restaurant,

24   Inc.

25   3.   For damages represented by the money owed to TRIANO in an amount subject to

26   proof;

27   4.   For reasonable Attorney's fees in an amount subject to proof;

28

---

**MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION**

1  | As to all Defendants:

2  | 1.    For costs of suit incurred herein in an amount subject to proof;

3  | 2.    For such other and further relief as the court may deem just and proper.

4  |

5  | Dated: 7/13/07

6  | Respectfully submitted,

7  | LAW OFFICES OF MARTIN F. TRIANO

8  |

9  | By:

10 | MARK D. BYRNE, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     I declare:

2     I am employed in the County of San Francisco, State of California. My business address is

3     25 Jessie Street, 16th Floor, San Francisco, CA 94105. I am over the age of eighteen years, and I am

4     not a party to the within action. On July 13, 2007 I served the following documents:

5     • *MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR: 1) BREACH*
6       *OF WRITTEN CONTRACT 2) ACCOUNT STATED 3) DECLARATORY*
       *RELIEF 4) INTENTIONAL INTEFERENCE WITH CONTRACTUAL*
7       *RELATIONS 5) REFORMATION.*

8     Upon the parties listed below, addressed as follows:

9     **Lawrence K. Rockwell, Esq.**
10    **300 Lakeside Drive, Suite 1900**
11    **Oakland, CA 94612-2979**

12

13    **XXX**   **First Class Mail:** By depositing a sealed envelope in the United States mail at San
              Francisco, California, with postage fully prepaid.
14
      **Facsimile:** By transmitted a true and correct copy via facsimile electronic equipment
15    transmission (fax) to the office(s) of the addressee(s) at the fax number(s) listed above.

16    **Personal Delivery:** By personally delivering the document(s) listed above to the
17    person(s) at the address(es) on the date set forth above.

18    **Overnight:** By placing the document(s) thereof into envelope(s) bearing the name(s)
      and address(es) of the person(s) to be served by Federal Express delivery.
19

20    I declare under penalty of perjury under the laws of the State of California that the foregoing

21    is true and correct. Executed on July 13, 2007 at San Francisco, California.

22

23

24    By: _____
25        Jose M. Lagniton
          Legal Assistant
26

27

28

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

PROOF OF SERVICE

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET, 16ᵀᴴ FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit | Q

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8              UNITED STATES BANKRUPTCY COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  In re:                          )
                                    )   Case No.  05-32929
13  ALEXANDER N. POPOV,             )
                                    )   Chapter 7
14      Debtor.                     )
                                    )
15                                  )
                                    )
16  _____  )
                                    )
17  YUGEN KAISHA, Y.K.F.,           )   Adv. Pro. No.: 07-03104
                                    )
18      Plaintiff,                  )   **COMPLAINT FOR**
                                    )   **DECLARATORY RELIEF IN**
19  v.                              )   **INTERVENTION BY MARTIN F.**
                                    )   **TRIANO DBA LAW OFFICES OF**
20                                  )   **MARTIN F. TRIANO**
21  STEPHANIE DODSON                )
                                    )
22      Defendants.                 )
                                    )
23  _____  )

24  COMES NOW PLAINTIFF MARTIN F. TRIANO (hereinafter "MFT") who alleges as follows:

25                    **JURISDICTION AND VENUE**

26      1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

27      2.  This adversary proceeding is brought pursuant to Rule 7001, et seq. of the Federal

28  Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544(b)(1), 548 and 550.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION
1

3. This intervention in the adversary proceeding is brought pursuant to Rule 7024 of the Federal Rules of Bankruptcy Procedure.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this intervention is for the adversary proceeding that arises under and in connection with the above-captioned case under 11 U.S.C. § 101, et seq (the "Bankruptcy Code"), which is pending in this District.

5. The adversary proceeding, under which this intervention arises, is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(H).

## PARTIES AND BACKGROUND FACTS

6. On September 6, 2005 (the "Petition Date") Alexander N. Popov ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy (the "Bankruptcy Action").

7. Thereafter, E. Lynn Schoenmann ("Trustee") became the duly appointed Chapter 7 Trustee to administer the Debtor's bankruptcy estate (the "Estate").

8. On or about August 1, 2007, Yugen Kaisha, Y.K.F. ("YKF") purchased from the Trustee the right to bring the instant adversary proceeding pursuant to the Assignment Agreement and Order entered in the Bankruptcy Action on July 31, 2007.

9. Prior to filing the Bankruptcy Action, Debtor was the owner of record or 3,744,000 shares of common stock (the "Shares") of Smart Alec's Intelligent Food, Inc., a California corporation ("Smart Alec's").

10. Martin F. Triano dba Law Offices of Martin F. Triano (hereinafter "MFT") is, and at all times mentioned herein was, a law firm with its principal place of business located in the City and County of San Francisco.

11. MFT began representing Debtor in October of 2001 in the case of Popov v. Hayashi. Debtor hired MFT for his case against Hayashi to recover Barry Bonds' 73rd homerun baseball. Thereafter MFT represented POPOV in the cases of Bantry Bay v. Popov and Yugen Kaisha (YKF) v. Popov.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION
2

12. MFT is informed and believes and thereon alleges that Debtor was, until April of 2004, the majority shareholder in Smart Alec's and until February of 2004, the acting president of Smart Alec's.

13. On April 17, 2002, Debtor granted to MFT a promissory note ("Note") for the $45,648 owed by Debtor to MFT together with "such additional sums which may accrue from legal services being provided" by MFT. Debtor secured his promissory note by pledging his 3,744,000 Shares of stock in SMART ALEC's as collateral. See Exhibit A. The Note contains a provision for the payment of attorney fees and costs incurred in the enforcement in the Note.

14. On April 17, 2002, same day Debtor, as acting president of Smart Alec's, also signed and executed a written Guarantee of Promissory Note by Smart Alec's for the full performance of Debtor under the provisions of the Note ("Guarantee"). See Exhibit A.

15. On May 10, 2002 MFT executed a UCC-1 filing statement with the California Secretary of State. On April 20, 2007, the UCC-1 filing statement was amended and is due to lapse on May 10, 2012. A true and correct copy of the amended UCC-1 filing statement is attached hereto as Exhibit B.

16. MFT represented Debtor until he was Debtor discharged MFT on May 14, 2003.

17. MFT is informed and believes and thereon alleges that defendant Stephanie Dodson, an individual (the "Defendant"), is the spouse of Debtor and resides at 2032 Donald Drive, Moraga, California 94556.

18. On or about January 27, 2003, MFT faxed and mailed copies of the Note and Guarantee to Defendant.

19. MFT is informed and believes and thereon alleges that Debtor transferred all right, title and interest in the Shares to Defendant pursuant to the Share Purchase Agreement dated April 18, 2004 for the sum of $12,500 (the "Transfer"), which transfer was in violation of the Note's terms and constituted a default of the Note. See Exhibit C. MFT did not have notice of the Transfer until in or about October, 2005.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION

3

20. MFT is informed and believes and thereon alleges that Defendant is Smart Alec's president, and as a result of the Transfer, is Smart Alec's sole stockholder.

21. On September 6, 2005 Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("Bankruptcy Action"). Debtor was granted a discharge on April 9, 2006. Despite the Bankruptcy Court grant of discharge, MFT continues to possess a secured interest in the Shares now owned by Defendant.

22. MFT has not received a single payment on the amount set forth in the Note and secured by the Shares since January of 2003. By the terms of the promissory note, the entire balance, including principal, costs and interest, was due on April 30, 2003.

23. MFT timely presented a proof of claim in the Bankruptcy Action for his interest in the Shares ("Proof of Claim"), which claim was not objected to by any creditors and was upheld by this court and the district court upon objection and appeal by the Trustee.

24. MFT is informed and believes and thereon alleges that Defendant has taken out a loan to pay off the debt owed by Smart Alec's to YKF, which was incurred pursuant to a settlement agreement entered into between Debtor and YKF on or about February 6, 2004. MFT is informed and believes and thereon alleges that as a result of Defendant's actions, MFT's lien against the stock has been subordinated.

25. In April 1, 2007 the balance owed to MFT for legal services rendered, costs and interest accrued as a result of MFT's representation of Debtor is $696,629.63. The balance owed to MFT continues to accrue interest at a rate of 10% per year.

26. MFT filed an action in state court on July 13, 2007 for against Smart Alec's and Defendant for determination of his rights pursuant to the Note, which is currently pending before the San Francisco Superior Court and remains in the initial stage of proceedings.

27. On or about September 5, 2007, YKF filed the instant action alleging that Debtor and Defendant backdated the Share Purchase Agreement for the Transfer of the Shares and it from August, 2005 to April 18, 2004 with the actual intent to hinder and defraud Debtor's creditors by

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION
4

Case: 07-03104    Doc #: 12    Filed: 11/15/2007    Page 40 of 43

1  wrongfully removing the Shares as an asset of the Debtor's Estate shortly before the Petition

2  Date in order to retain control of Smart Alec's.

## FIRST CAUSE OF ACTION

### (Declaratory Relief as to DODSON and YKF)

28.  MFT re-alleges and incorporates herein paragraphs 1 to 27 as set forth above.

29.  MFT holds a Note that provides for his secured interest in the Shares and this interest was perfected by MFT. The Note provides for the collection of attorneys fees and costs incurred to enforce the Note.

30.  MFT is informed and believes and on that basis alleges that Defendant is not a protected purchaser because she had notice of the terms of the Note and of MFT's security interest in the Shares, and she did not receive the Transfer in good faith and did not pay reasonably equivalent value for the Transfer.

31.  MFT is informed and believes and on that basis alleges that pursuant to California Commercial Code Sections 9312(a) and 9315(a), he holds a valid and perfected security interest in the Shares, and in any proceeds from the Shares.

32.  On or about February 22, 2007, during a deposition held at the Law Offices of Martin F. Triano, Defendant testified that she did not believe that MFT had a lien against the Shares that she purchased from Debtor. She testified that she believes the lien is invalid due to statements made to her by Debtor as well as statements made by the attorneys for YKF during settlement negotiations. MFT is informed and believes and thereon alleges that Defendant continues to maintain that MFT does not hold a valid lien against the Shares she purchased from Debtor.

33.  An actual and present controversy exists between MFT and Defendant concerning their respective rights and duties in regard to the Note that granted MFT a security interest in the Shares on or about April 17, 2002.

34.  MFT is a secured creditor of Debtor's estate pursuant to his Proof of Claim. YKF purchased his right to bring the Adversary Proceeding subject to the interest of secured creditors of Debtor's estate.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION
5

35. YKF has not sought recovery in this Adversary Proceeding for the secured creditors of Debtor's estate. YKF has only requested that the court award relief to YKF personally.

36. An actual and present controversy exists between MFT and YKF concerning their respective rights and duties in regard to the right to recover from Debtor's estate, pursuant to YKF's purchase of the right to bring this Adversary Proceeding and MFT's Proof of Claim in the Bankruptcy Action.

37. MFT desires a judicial determination, as to respective rights and duties of MFT, YKF and Defendant, such that:

(a) MFT possesses a valid security interest on the Shares of stock formerly held by Debtor and now held by Defendant;

(b) MFT possesses a valid security interest in the proceeds from the Shares formerly held by Debtor and now held by Defendant;

(c) Any recovery by YKF in this action represents proceeds of the Shares and should be paid directly to MFT pursuant to his secured interest in the Shares in an amount according to proof;

(d) Attorneys fees and costs incurred herein are collectable under the Note;

(e) MFT holds a valid proof of claim in the Debtor's estate; and

(f) MFT is entitled to recover in this Adversary Proceeding based upon his Proof of Claim in an amount according to proof.

WHEREFORE, Plaintiff MFT prays for judgment against Defendant as follows:

1. A judicial determination that:

(a) MFT possesses a valid security interest on the Shares of stock formerly held by Debtor and now held by Defendant;

(b) MFT possesses a valid security interest in the proceeds from the Shares formerly held by Debtor and now held by Defendant;

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1

2

(c) Any recovery by YKF in this action represents proceeds of the Shares and should be paid directly to MFT pursuant to his secured interest in the Shares in an amount according to proof;

(d) Attorneys fees and costs incurred herein are collectable under the Note;

(e) MFT holds a valid proof of claim in the Debtor's estate; and

(f) MFT is entitled to recover in this Adversary Proceeding based upon his Proof of Claim in an amount according to proof.

2. For the payment of amounts recovered by YKF in this action to MFT pursuant to MFT's Note and Proof of Claim subject in an amount subject to proof;

3. For attorneys fees and costs of suit incurred herein in an amount subject to proof; and

4. For such other and further relief as the court may deem just and proper.

Dated: 11/14/07                  LAW OFFICES OF TRIANO & BYRNE

By: _____
    MARK D. BYRNE
    Attorney for Martin F. Triano
    dba Law Office of Martin F. Triano

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION
7

1    MARK D. BYRNE, ESQ., SBN 109628
     LAW OFFICES OF TRIANO & BYRNE
2    25 Jessie Street, 16th Floor
3    San Francisco, CA 94105-2749
     Telephone: (415) 371-8000
4    Facsimile: (415) 371-8001
5    Mailbox@martinftriano.com

6
                    UNITED STATES BANKRUPTCY COURT
7
                    NORTHERN DISTRICT OF CALIFORNIA
8
                       SAN FRANCISCO DIVISION
9

10                                        )
11   In re:                               )    Case No. 05-32929
                                          )
12   ALEXANDER POPOV,                     )    CHAPTER 7
              Debtor.                     )
13                                        )    Adv. Proc. No. 07-03104
14                                        )
                                          )
15   _____      )    **PROOF OF SERVICE**
                                          )
16                                        )
17   YUGEN KAISHA, Y.K.F.,                )
                                          )
18            Plaintiff,                  )
                                          )
     vs.                                  )
19                                        )
     STEPHANIE DODSON                     )
20                                        )
              Defendant                   )
21                                        )

22
23        I am citizen of the United States, and a resident of the County of San Francisco; I am over
24   the age of eighteen years, and not a party to the within action. My business address is 25 Jessie
25   Street, 16th Floor, San Francisco, California 94105-2749.  On November 15, 2007 I served the
     following documents:
26
27   ///
28   ///

Law Offices
MARTIN F. TRIANO
100 Bush Street, 25th Floor
San Francisco, CA 94104
Tel. 415-391-2300
Fax 415-391-1922

1

Case: 07-03104    Doc #: 12    Filed: 11/15/2007    Page 1 of 3

1     • *DECLARATION OF MARK D. BYRNE IN SUPPORT OF MOTION FOR*
2       *INTERVENTION BY MARTIN F. TRIANO DBA LAW OFFICES OF MARTIN F. TRIANO;*
3     • *NOTICE OF HEARING ON MOTION FOR INTERVENTION BY MARTIN F. TRIANO DBA LAW OFFICES OF MARTIN F. TRIANO;*
4     • *MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF*
5       *MOTION FOR INTERVENTION BY MARTIN F. TRIANO DBA LAW*
6       *OFFICES OF MARTIN F. TRIANO;*
   • *MOTION FOR INTERVENTION BY MARTIN F. TRIANO DBA LAW*
7       *OFFICES OF MARTIN F. TRIANO; AND*
8     • *PROOF OF SERVICE.*

9  On the parties listed, addressed as follows:

10  JOEL BELWAY, ESQ.                JAMES S. MONROE, ESQ.
235 MONTGOMERY STREET, SUITE 668    NIXON PEABODY LLP,
11  SAN FRANCISCO, CA 94104-2910       ONE EMBARCADERO CENTER, 18TH
12                                  FLOOR
SAN FRANCISCO, CA 94111
13

14        **First Class Mail:** I am "readily familiar" with the firm's practice of collection and
15  **XXX**   processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service to (List names) the same day with postage thereon fully prepaid
16        at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or
17        postage meter date is more one day after date of deposit for mailing an affidavit.
18
19        **Facsimile:** By transmitting a true and correct copy via facsimile electronic equipment transmission (fax) to (List names) at the fax number listed above.

20        **Personal Delivery:** By personally delivering the document(s) above to the person(s)
21        listed above at the address(es) on the date set forth above.

22        **Personal Delivery By Messenger:** By consigning the document(s) listed above to a messenger for personal delivery to the following person(s) at the address(es) on the date
23        set forth above.

24        **Overnight:** By placing the document(s) thereof into envelope(s) bearing the name(s) and address(es) of the person(s) to be served by Federal Express Delivery.
25        **STATE:** I declare under penalty of perjury under the laws of the State of California that
26        the foregoing is true and correct.

27  **XXX**    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under
28        the laws of the United States of America that the foregoing is true and correct.

Law Offices
MARTIN F. TRIANO
100 Bush Street, 35th Floor
San Francisco, CA 94104
Tel. 415-391-2300
Fax 415-391-1922

2

1    I declare under penalty of perjury under the laws of the United States of America, that the

2    foregoing is true and correct. Executed on November 15, 2007 in San Francisco, California.

3

4    _____

5    Rithy Keo

6    Legal Assistant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
MARTIN F. TRIANO
100 Bush Street, 25ᵗʰ Floor
San Francisco, CA 94104
Tel. 415-391-2300
Fax 415-391-1922

3

Case: 07-03104    Doc #: 12    Filed: 11/15/2007    Page 3 of 3

```
 1   JOEL K. BELWAY [60556]
     THE LAW OFFICE OF JOEL K. BELWAY
 2   Professional Corporation
     235 Montgomery Street, Suite 668
 3   San Francisco, California 94104
     Telephone:  415-788-1702
 4   Facsimile:   415-788-1517

 5   Attorney for Defendant
     and Counterclaimant
 6   STEPHANIE DODSON

 7

 8                UNITED STATES BANKRUPTCY COURT

 9              NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12
     In re:                       )Case No. 05-32929
13                                )
     ALEXANDER N. POPOV,          )Chapter 7
14                                )
                 Debtor.          )
15   _____)
                                  )A.P. No. 07-03104
16   YUGEN KAISAH, Y.K.F.         )
                                  )MOTION (1) TO AMEND ANSWER AND
17                                )(2) TO COMPEL PLAINTIFF TO
     STEPHANIE DODSON,            )FURNISH SECURITY FOR COSTS
18                                )
                 Defendant.       )
19                                )
     _____)Date: Dec. 21, 2007
20                                )Time: 9:30 a.m.
     STEPHANIE DODSON,            )Court: Judge Carlson
21               Counterclaimant, )
          vs.                     )
22                                )
     YUGEN KAISAH, Y.K.F.         )
23                                )
                 Claimant.        )
24   _____)
25
         COMES NOW defendant, STEPHANIE DODSON ("Defendant"), and
26
     upon motion (1) to amend her Answer to add the affirmative
27
     defenses of lack of capacity and collateral estoppel, and (2) to
28
```

1

compel plaintiff, YUGEN KAISHA, Y.K.F. ("Plaintiff"), to furnish security for costs (the "Motion"), respectfully represents as follows:

**AMEND ANSWER**

1. Defendant has filed an Answer ("Answer") to Plaintiff's Complaint the "Complaint") and a Counterclaim. The Answer alleges affirmative defenses but not collateral estoppel or lack of capacity by Plaintiff, and by this Motion Defendant seeks to add those two defenses.

**A. Collateral Estoppel.**

2. The basis for the collateral estoppel defense, although not yet directly asserted as an affirmative defense, is already alleged in paragraph 9 of the Answer, which states:

"9. Defendant denies the allegations of paragraph 9, and alleges that this Court found at trial in Triano v. Popov, A.P. No. 05-3485 (the "Triano Adversary Proceeding") that Debtor transferred his residual interest in the Shares to Defendant on April 18, 2004. The Court's findings in the Triano Adversary Proceeding are incorporated herein by reference."

3. Defendant wants to assert the Court's finding in the Triano Adversary Proceeding that the contract asserted by Plaintiff to have been a fraudulent conveyance was entered into more than one year before the petition herein. The 2005 Bankruptcy Code amendments did not expand the limitations period of Section 548 from one year to two years for cases filed before

2

April 20, 2006. Therefore the date of the contract in question, for the transfer to Defendant of Debtor's residual interest of the Debtor in the shares of stock of Smart Alec's Intelligent Foods, Inc. ("Smart Alec's"), is an essential part of Plaintiff's Section 548 claim and Defendant's defenses thereto.

**B. Lack of Capacity.**

4.  As to capacity, Defendant seeks to assert the incapacity of Plaintiff to bring this proceeding because it is not qualified to do business in California, and, potentially, it may not have capacity to sue under Japanese law. As set forth in the Declaration of Joel K. Belway ("Belway Declaration"), the California Secretary of State's online record of corporations does not show Plaintiff's name.

5.  Plaintiff has sued under Section 548, but also asserts state law claims for fraudulent conveyance. Even if the Section 548 claim could stand by itself, and even if Plaintiff's lack of qualification to do business in California did not affect Plaintiff's capacity to sue thereunder, Plaintiff would have to demonstrate capacity to bring its state law claims. Under California law, a foreign corporation not qualified to do business in California may not sue in California courts, Corporations Code Section 2203(c). Defendant submits that rule would also preclude Plaintiff's suing in this Court on state law claims.

6.  Defendant seeks leave to amend her Answer to add the lack of capacity and collateral estoppel defenses under Rule

3

15(a), FRCP, which is incorporated into Bankruptcy Rule 7015.
Rule 15 states that leave to amend a pleading "shall be freely
given when justice requires." In this case, no prejudice would
result from allowing Defendant to amend to add the two additional
defendants. There has been one status conference, and the case is
not at issue, with Plaintiff having moved to dismiss the
Counterclaim. Moreover, Martin Triano ("Triano"), the plaintiff
in the Triano Adversary Proceeding, has moved to intervene in
this proceeding, and the Court has not yet heard that motion.

**SECURITY FOR COSTS**

7.  Defendant also seeks an order that Plaintiff, which
alleges that it is a Japanese corporation, furnish security for
costs. Specifically, Plaintiff should be required to furnish
$25,000 in security, or such other sum as the Court deems
reasonable.

8.  This Court has the power to require Plaintiff to post
security under the federal courts' power to tax costs. *Anderson
v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir.
1993). Federal courts follow the forum state's practice with
regard to security for costs. *Simulnet East Assocs. v. Ramada
Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994).

9.  California law provides in CCP Section 1030 that a
defendant may file a motion for an order requiring a nonresident
or foreign corporation plaintiff to furnish an undertaking for
costs and attorney's fees.

<div align="center">4</div>

MOTION TO AMEND ANSWER AND FOR SECURITY FOR COSTS

1    10. Without knowing what discovery will have to be taken and

2  how cooperative Plaintiff will be in bringing witnesses from

3  Japan or North Carolina (where Plaintiff's agent, with whom

4  Defendant was dealing before she paid off the debts to Defendant

5  under the confidential settlement agreement attached as an

6  exhibit to Plaintiff's motion to dismiss the Counterclaim, was or

7  is located), Defendant could face significant costs, beyond her

8  attorney's fees, in defending this proceeding.  California CCP

9  Sec. 1033(a)(3) includes deposition transcripts and travel

10  expenses to attend depositions as allowable items of costs.

11  Accordingly, Defendant asks that Plaintiff furnish a $25,000

12  undertaking.

13

14                                    Respectfully submitted,

15  Dated: November 27, 2007          THE LAW OFFICE OF JOEL K. BELWAY
                                      Professional Corporation
16
                                      /s/ Joel K. Belway
17                                    JOEL K. BELWAY
                                      Attorney for Stephanie Dodson
18

19

20

21

22

23

24

25

26

27

28

5

1

## DECLARATION OF SERVICE

2      I am over the age of eighteen years and not a party to the

3  within action.  On November 27, 2007, I served the attached

4  **sMotion (1) to Amend Answer and (2) to Compel Plaintiff to**

5  **Furnish Security for Costs** on the interested parties in this

6  action by placing true copies thereof in sealed envelopes and

7  transmitting said envelopes to the following addresses by the

8  means indicated:

9

10          <u>Via First-Class U.S. Mail</u>

11          James S. Monroe, Esq.
           Gregory E. Schopf, Esq.
12          NIXON PEABODY LLP
           One Embarcadero Center, Suite 1800
13          San Francisco, CA 94111-3996

14          U.S. Trustee
           235 Pine Street, Suite 850
15          San Francisco, CA 94104

16          Mark D. Byrne, Esq.
           Triano & Byrne
17          25 Jessie Street
           16th Floor
18          San Francisco, CA 94105-2749

19

20      I declare under penalty of perjury that the foregoing is

21  true and correct.  Executed on November 27, 2007, at San

22  Francisco, California.

23

24                              \s\ Joel K. Belway

25

26

27

28

6

MOTION TO AMEND ANSWER AND FOR SECURITY FOR COSTS

1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery Street, Suite 668
3  San Francisco, California 94104
   Telephone:  415-788-1702
4  Facsimile:   415-788-1517

5  Attorney for Defendant
   and Counterclaimant
6  STEPHANIE DODSON

7

8              UNITED STATES BANKRUPTCY COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12
   In re:                      )Case No. 05-32929
13                             )
   ALEXANDER N. POPOV,         )Chapter 7
14                             )
                Debtor.        )
15                             )
   _____)
16                             )A.P. No. 07-03104
   YUGEN KAISAH, Y.K.F.        )
17                             )  **DECLARTION OF JOEL K. BELWAY RE**
                               )  **MOTION (1) TO AMEND ANSWER AND**
18 STEPHANIE DODSON,           )  **(2) TO COMPEL PLAINTIFF TO**
                               )  **FURNISH SECURITY FOR COSTS**
19              Defendant.     )
                               )Date: Dec. 21, 2007
20 _____)Time: 9:30 a.m.
   STEPHANIE DODSON,           )Court: Judge Carlson
21              Counterclaimant, )
      vs.                      )
22                             )
   YUGEN KAISAH, Y.K.F.        )
23                             )
                Claimant.      )
24 _____)
25
       I, Joel K. Belway, declare and state as follows:
26
       1. I have personal knowledge of the facts set forth in this
27
   Declaration and if required I could and would testify competently
28

                              1

1  thereto. I am the attorney of record for defendant, Stephanie

2  Dodson ("Defendant"), and make this Declaration in support of her

3  motion to amend her Answer to add affirmative defenses of

4  collateral estoppel and lack of capacity and for security for

5  costs (the "Motion").

6      2. The specific language of the affirmative defenses that

7  Defendant seeks to add is the following:

8                      "**SIXTH AFFIRMATIVE DEFENSE**

9

10          Plaintiff's claims under Section 548 of the Bankruptcy

11      Code are barred by the doctrine of collateral estoppel, in

12      that the Court found in the Triano Adversary Proceeding that

13      the Debtor transferred his residual interest in the Shares

14      to Defendant on April 18, 2004.

15                   **SEVENTH AFFIRMATIVE DEFENSE**

16          The Complaint is barred by Plaintiff's lack of capacity

17      to bring and maintain this proceeding."

18      3. Today, November 27, 2007, I performed an online search of

19  the "California Business Portal" website of the California

20  Secretary of State, seeking any information on file with the

21  Secretary of State regarding the Plaintiff, Yugen Kaisha, Y.K.F.

22  That search was negative, from which I infer that Plaintiff is

23  not qualified to do business in California.

24

25      4. I estimate that with expert witnesses, and if depositions

26  must be taken in this proceeding in Japan and North Carolina, the

27  costs herein, including court reporter's fees and travel

28  expenses, could be in the range of $25,000.

2
DECLARATION RE MOTION TO AMEND ANSWER AND FOR SECURITY FOR COSTS

1    I declare under penalty of perjury under the laws of the

2 State of California that the foregoing is true and correct.

3 Executed at San Francisco, California on November 27, 2007.

4

5                        /s/ Joel K. Belway
                         JOEL K. BELWAY
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SERVICE

I am over the age of eighteen years and not a party to the within action.  On November 27, 2007, I served the attached **Declaration of Joel K. Belway re Motion (1) to Amend Answer and (2) to Compel Plaintiff to Furnish Security for Costs** on the interested parties in this action by placing true copies thereof in sealed envelopes and transmitting said envelopes to the following addresses by the means indicated:

Via First-Class U.S. Mail

James S. Monroe, Esq.
Gregory E. Schopf, Esq.
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996

U.S. Trustee
235 Pine Street, Suite 850
San Francisco, CA 94104

Mark D. Byrne, Esq.
Triano & Byrne
25 Jessie Street
16th Floor
San Francisco, CA 94105-2749

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 27, 2007, at San Francisco, California.

\s\ Joel K. Belway

4
DECLARATION RE MOTION TO AMEND ANSWER AND FOR SECURITY FOR COSTS

1  James S. Monroe, Esq. (State Bar Number: 102328)
   Gregory E. Schopf (State Bar Number: 122862)
2  NIXON PEABODY LLP
   One Embarcadero Center, Suite 1800
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300
   E-mail:  jmonroe@nixonpeabody.com
5
   Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.
6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12 In re:                              Case No. 05-32929

13 ALEXANDER N. POPOV,                 Chapter 7

14                    Debtor.

15

16 YUGEN KAISHA, Y.K.F.,

17                    Plaintiff,       Adv. Pro. No.: 07-03104

                                       **OPPOSITION OF YUGEN KAISHA, Y.K.F.**
18      v.                             **TO MOTION FOR INTERVENTION BY**
                                       **MARTIN F. TRIANO**
19 STEPHANIE DODSON,
                                       **Hearing**
20                    Defendant.
                                       Date:    December 14, 2007
21                                     Time:    9:30 a.m.
                                       Place:   Courtroom 23
22                                     Judge:   Hon. Thomas E. Carlson

23              **INTRODUCTION AND STATEMENT OF FACTS**

24      Yugen Kaisha, Y.K.F. ("YKF"), plaintiff in the above-captioned action, hereby submits this

25 opposition to the motion of Martin F. Triano dba Law Offices of Martin F. Triano ("Triano") to file a

26 complaint in intervention in this action pursuant to Rule 7024 of the Federal Rules of Bankruptcy

27 Procedure and Rule 24 of the Federal Rules of Civil Procedure on the grounds that: (1) the

28 bankruptcy court does not have subject matter jurisdiction with respect to Triano's proposed

OPPOSITION TO MOTION FOR INTERVENTION
ADV. CASE NO.  07-03104                                              10821839.1

complaint since there is no independent jurisdictional basis for the complaint under §§28 U.S.C. §1334(b) 157(b) and it falls outside the court's supplemental jurisdiction under 28 U.S.C. §1367(a); and, alternatively, (2) even if the court were to have subject matter jurisdiction of Triano's proposed complaint, the requirements for intervention are not met and, accordingly, the motion should be denied.

YKF's complaint herein seeks to avoid and recover the debtor's prepetition transfer of 3,774,000 shares of common stock (the "Smart Alec's Shares") of Smart Alec's Intelligent Food, Inc., a California corporation ("Smart Alec's") to Dodson as a fraudulent conveyance. YKF has the right to pursue this avoidance action pursuant to an assignment agreement entered into with the Chapter 7 Trustee of the debtor's bankruptcy estate which was authorized and approved by order entered herein on July 31, 2007. YKF maintains that the Smart Alec's Shares were transferred to Dodson shortly before the September 6, 2005 petition date with the actual intent to hinder, delay or defraud the debtor's creditors by removing said shares from the bankruptcy estate and thereby retaining control of Smart Alec's to the exclusion of the debtor's creditors.

Triano's proposed complaint in intervention alleges a state law based contract claim related to a prepetition agreement allegedly entered into with the debtor regarding Triano's provision of various legal services to the debtor. As part of the contract, Triano contends that the debtor granted him a security interest for payment of sums due Triano under the fee agreement against certain assets, including the Smart Alec's Shares. Pursuant to his proposed complaint in intervention for declaratory relief against YKF and Dodson (which is in addition to his complaint against Dodson and Smart Alec's concerning this dispute which is presently pending in Alameda County Superior Court), Triano is essentially seeking to liquidate his attorney's fees claim for services allegedly provided to the debtor and establish the validity of his alleged security interest in the Smart Alec's Shares as collateral for the payment thereof. Since the debtor has received a discharge of any personal obligation to pay any amounts owing to Triano under the alleged fee agreement, the relief sought concerns the alleged collateral, not the debtor.

OPPOSITION TO MOTION FOR INTERVENTION          -2-
ADV.CASE NO. 07-03104

## ARGUMENT

**A.    The Court Does Not Have Subject Matter Jurisdiction With Respect to Triano's Proposed Complaint in Intervention.**

Rule 24 of the Federal Rules of Civil Procedure does not alter or displace subject matter jurisdiction requirements.  A bankruptcy court has subject matter jurisdiction to adjudicate a complaint in intervention only if there is an independent jurisdictional basis for the counterclaim as provided by 28 U.S.C. §§1334(b) and 157(b) or it falls within the court's supplemental jurisdiction under 28 U.S.C. §1367(a).

Pursuant to 28 U.S.C. §§1334(b) and 157(b), the bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Unlike YKF's complaint which asserts avoidance claims arising under the Bankruptcy Code (11 U.S.C. §§548, 550 & 544(b)), Triano's complaint does not fall within any of these categories since it is based solely upon state law, exists apart from the bankruptcy case, and does not involve or have any conceivable potential impact on the bankruptcy estate.  By his complaint, Triano seeks to liquidate his discharged claim for prepetition attorney's fees allegedly owing by the debtor, establish a junior security interest for this claim in the Smart Alec's Shares, and obtain certain relief against Dodson and YKF only.  Accordingly, his complaint is not within the statutory grant of bankruptcy jurisdiction.

Since the court does not have an independent basis for federal bankruptcy court jurisdiction with respect to Triano's complaint, permissive intervention under Rule 24(b) is precluded without further analysis.  Recent Ninth Circuit cases have reaffirmed that an applicant for permissive intervention must establish an independent basis for jurisdiction.  *Northwest Forest Products Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996); *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd*, 64 F.3d 1266 (9th Cir. 1995).

Likewise, Triano's proposed complaint in intervention is not within the bankruptcy court's supplemental jurisdiction under 28 U.S.C. §1367(a) (*See In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005), which precludes intervention as of right under Rule 24(a)(2).    Supplemental jurisdiction extends only to those claims that are "so related to the (plaintiff's) claims…that they form

1    part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C.

2    §1367(a) (emphasis and parentheses added). This embodies a requirement that all claims arise from a

3    "common nucleus of operative facts." *In re Pegasus Gold Corp., supra,* at 1195; *United Mine*

4    *Workers v. Gibbs,* 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966). Applying this

5    requirement here, it is clear that the aggregate of operative facts giving rise to Triano's complaint

6    (which seeks to liquidate and enforce certain contract rights under a prepetition contract for

7    attorney's fees) is entirely different from the facts supporting YKF's complaint (for avoidance of the

8    debtor's prepetition transfer of his shares of Smart Alec's to Dodson). YKF's complaint and Triano's

9    complaint bear no logical relation to each other and rest upon different documentary, testimonial and

10   other evidence. Under these circumstances, Triano's complaint is not within the bankruptcy court's

11   supplemental jurisdiction.

12       **B.    Even If The Court Were to Have Subject Matter Jurisdiction of The Proposed**
         **Complaint In Intervention, The Requirements For Intervention Under Rule 24 Are Not Met In**
13       **This Case.**

14       **(1) Triano is Not Entitled to Intervene As of Right Pursuant to Rule 24(a)(2)**

15       Intervention of right under Rule 24(a)(2) involves a four-part test, each of which must be

16   satisfied. (*See, Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). Triano's proposed

17   Complaint in Intervention fails to satisfy two of these requirements – that he have a significantly

18   protectable interest in the lawsuit to merit intervention and that the resolution of YKF's claims will

19   actually affect Triano. *Id.*

20       As discussed above, YKF's complaint seeks to avoid and recover the Smart Alec's shares

21   transferred by the debtor to Dodson as a fraudulent conveyance. By this action, YKF does not seek

22   any relief regarding Triano's claimed security interest in the shares and any such interest will be

23   unaffected by the fraudulent conveyance action; meaning that whatever enforceable security rights

24   that Triano has with respect to the Smart Alec's Shares will continue regardless of whether the

25   transfer to Dodson is avoided as a fraudulent conveyance.

26       Triano posits that he may be inconvenienced if YKF prevails on its complaint and Triano it

27   subsequently becomes necessary for Triano to enforce it alleged security interest directly against

28

1   YKF. However, this result is highly speculative and does not support intervention. The mere fact that

2   intervention may be convenient for Triano does not establish a right to intervene in YKF's lawsuit.

3       Triano also argues that he may have an interest in any funds that YKF may receive in

4   settlement of the fraudulent conveyance action as proceeds of his alleged collateral.  This is clearly

5   incorrect as any such settlement would be attributable to the avoidance action, not to a sale or

6   exchange of the Smart Alec's shares.

7       Since Triano has not and cannot establish any real impairment of a significant right that he

8   will suffer as a result of the fraudulent conveyance action, intervention as of right under Rule 24(a)(2)

9   is unavailable to him.

10      **(2)    Permissive Intervention By Triano Under Rule 24(b)(2) Inappropriate**

11      Under Rule 24(b)(2), permissive intervention may be appropriate where the original

12  complaint and the complaint in intervention share common questions of fact and law and where

13  permitting such intervention would not unduly delay or prejudice the original parties.  The purpose of

14  the rule is to prevent a multiplicity of suits where common questions of law or fact are involved.

15  *Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922

16  F.2d 92, 97 (2nd Cir. 1990).

17      Here, as discussed above, there are no significant common questions of law or fact shared by

18  YKF's complaint and Triano's proposed complaint in intervention.  In fact, the operative facts giving

19  rise to the respective complaints are entirely different.  Under these circumstances alone, the court

20  should deny permissive intervention.

21      However, the Court should also deny intervention by Triano due to the numerous collateral

22  and complex issues that Triano proposes to inject into this litigation which will make the litigation

23  much more expensive and protracted for YFK.  The nature of the action would be transformed from a

24  relatively straightforward avoidance action, to one involving what appears to be highly complex and

25  contentious contract and related disputes regarding the nature and amount of attorney's fees that

26  Triano may be entitled to recover.  Intervention cannot be used to so radically alter the scope of

27  YKF's suit, causing it delay and prejudice. *Id.*

28

OPPOSITION TO MOTION FOR INTERVENTION                    -5-
ADV.CASE  NO.  07-03104

## CONCLUSION

Based upon the foregoing authorities and argument, YKF respectfully requests that Triano's motion for intervention be denied and for such other relief as the court deems appropriate.

Dated:  November 30, 2007                    NIXON PEABODY LLP


By: /s/ James S. Monroe
James S. Monroe
Attorneys for Yugen Kaisha, Y.K.F.

OPPOSITION TO MOTION FOR INTERVENTION
ADV.CASE NO. 07-03104                    -6-

1

**CERTIFICATE OF SERVICE**

2     CASE NAME:          IN RE ALEXANDER N., POPOV, Debtor;
      ADV. PROCEEDING:    YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON
3     COURT:              U.S. Bankruptcy Court, Northern District of California
                          (San Francisco)
4     CASE NO.:           05-32929-TC; Adv. Pro. No.: 07-03104-TC
      FILE:               031405.000006

5          I, the undersigned, certify that I am employed in the City and County of San Francisco,
6     California; that I am over the age of eighteen years and not a party to the within action; and that my
      business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this
7     date, I served the following document(s):

8     **OPPOSITION OF YUGEN KAISHA, Y.K.F. TO MOTION FOR INTERVENTION BY
      MARTIN F. TRIANO**

9     on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below
10    by the following means of service:

11      X  : B y First-Class Mail — I am readily familiar with the firm's practice for collection and
      processing of correspondence for mailing. Under that practice, the correspondence is deposited with
12    the United States Postal Service on the same day as collected, with first-class postage thereon fully
      prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary
13    business practices.

14         : By Certified Mail Service — I am readily familiar with the firm's practice for collection and
      processing of correspondence for Certified Mailing. Under that practice, the correspondence is
15    deposited with the United States Postal Service on the same day as collected, with Certified Mail
      postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee
16    following ordinary business practices.

      Addressee
17
      Joel K. Belway                              United States Trustee
18    THE LAW OFFICE OF JOEL K. BELWAY            San Francisco Division
      Professional Corporation                    235 Pine Street, Suite 700
19    235 Montgomery Street, Suite 668            San Francisco, CA 94104
      San Francisco, California 94104
20
      Mark D. Byrne
21    Law Offices of Triano and Byrne
      25 Jessie Street, 16th Floor
22    San Francisco, CA 94105

23         I declare under penalty of perjury that the foregoing is true and correct. Executed on
24    November 30, 2007, at San Francisco, California.

25                                               _____
                                                 Carol S. Hardy
26

27

28

OPPOSITION TO MOTION FOR INTERVENTION                -7-
ADV.CASE NO. 07-03104

1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery Street, Suite 668
3  San Francisco, California 94104
   Telephone:  415-788-1702
4  Facsimile:  415-788-1517

5  Attorney for Defendant
   and Counterclaimant
6  STEPHANIE DODSON

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                 **SAN FRANCISCO DIVISION**

11

12
   In re:                        )Case No. 05-32929
13                               )
   ALEXANDER N. POPOV,           )Chapter 7
14                               )
              Debtor.            )
15  _____)
                                 )A.P. No. 07-03104
16                               )
   YUGEN KAISAH, Y.K.F.          )
17                               )**STATEMENT OF NON-OPPOSITION TO**
                                 )**MOTION TO INTERVENE**
18  STEPHANIE DODSON,            )
                                 )
19              Defendant.       )
    _____)Date: Dec. 14, 2007
20                               )Time: 9:30 a.m.
   STEPHANIE DODSON,             )Court: Judge Carlson
21              Counterclaimant, )
       vs.                       )
22                               )
   YUGEN KAISAH, Y.K.F.          )
23                               )
              Claimant.          )
24  _____)
25
        Defendant, STEPHANIE DODSON, hereby states her non-
26
   opposition to the motion of Martin F. Triano to intervene in this
27
   proceeding.
28

                              1

1    Dated: December 1, 2007          THE LAW OFFICE OF JOEL K. BELWAY
                                      Professional Corporation
2

3                                     /s/ Joel K. Belway
                                      JOEL K. BELWAY
4                                     Attorney for Stephanie Dodson

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

STATEMENT OF NON-OPPOSITION

1

**<u>DECLARATION OF SERVICE</u>**

2

    I am over the age of eighteen years and not a party to the

3

within action.  On December 1, 2007, I served the attached

4

**Statement of Non-Opposition to Motion to Intervene** on the

5

interested parties in this action by placing true copies thereof

6

in sealed envelopes and transmitting said envelopes to the

7

following addresses by the means indicated:

8

        <u>Via First-Class U.S. Mail</u>

9

10

        James S. Monroe, Esq.
        Gregory E. Schopf, Esq.

11

        NIXON PEABODY LLP
        One Embarcadero Center, Suite 1800

12

        San Francisco, CA 94111-3996

13

        U.S. Trustee
        235 Pine Street, Suite 850

14

        San Francisco, CA 94104

15

        Mark D. Byrne, Esq.
        Triano & Byrne

16

        25 Jessie Street
        16th Floor

17

        San Francisco, CA 94105-2749

18

19

    I declare under penalty of perjury that the foregoing is

20

true and correct.  Executed on December 1, 2007, at San

21

Francisco, California.

22

23

                <u>\s\ Joel K. Belway</u>

24

25

26

27

28

3

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  In re:                          )
                                    )   Case No.  05-32929
13  ALEXANDER N. POPOV,             )
                                    )   Chapter 7
14        Debtor.                   )
                                    )
15  _____ )
                                    )   Adv. Pro. No.: 07-03104
16  YUGEN KAISHA, Y.K.F.,           )
                                    )   **REPLY TO YUGEN KAISHA, Y.K.F.'S**
17                                  )   **OPPOSITION TO MOTION FOR**
          Plaintiff,                )   **INTERVENTION BY MARTIN F.**
18  v.                              )   **TRIANO DBA LAW OFFICES OF**
                                    )   **MARTIN F. TRIANO**
19  STEPHANIE DODSON                )
                                    )
20                                  )
          Defendant.                )   DATE:        DECEMBER 14, 2007
21                                  )   TIME:        9:30 A.M.
                                    )   ROOM.:       23
22                                  )
23  _____ )

24                    **I. INTRODUCTION**

25        Martin F. Triano, dba Law Offices of Martin F. Triano has properly and clearly

26  demonstrated the basis for his intervention in this adversary proceeding, which is to protect his

27  lien and security interest in the shares of stock that Yugen Kaisha, Y.K.F. seeks to recover.

28  Yugen Kaisha, Y.K.F. has mischaracterized the arguments of Martin F. Triano and incorrectly

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION

1  construed the requirements for intervention. It has presented only sweeping generalizations that
2  are unsupported by facts and which rely only upon the generally applicable law. Martin F. Triano
3  however has specifically set forth law and facts supporting his Motion for Intervention and
4  demonstrating that he should be allowed to intervene.

5  ## II. STATEMENT OF FACTS

6       As previously set forth in the Points & Authorities in Support of the Motion for Intervention
7  by and its accompanying complaint ("Motion for Intervention"), Martin F. Triano dba Law Offices
8  of Martin F. Triano ("MFT") seeks relief from this court relating to the adversary proceeding
9  commenced by Yugen Kaisha, Y.K.F. ("YKF") on September 5, 2007 ("Adversary Proceeding").
10 Like YKF's complaint in the Adversary Proceeding, MFT's application for intervention is based
11 upon the ownership of 3,744,000 shares ("Shares") of Smart Alec's Intelligent Foods, Inc. ("Smart
12 Alec's") by Alexander Popov ("Debtor"), which were transferred to Stephanie Dodson
13 ("Defendant" or "Dodson") for the sum of $12,500, pursuant to the Share Purchase Agreement
14 dated April 18, 2004 ("Transfer").

15      MFT holds a Promissory Note secured by the Shares, which was signed by Debtor on April
16 17, 2002 for payment of attorneys fees owed by Debtor to MFT, which security interest MFT
17 subsequently perfected. MFT timely presented a proof of claim secured by the Shares for payment
18 of attorney's fees ("Proof of Claim"), which was not objected to by any creditors. On or about
19 August 1, 2007, YKF purchased from the Trustee the right to bring this Adversary Proceeding
20 against Defendant on behalf of the Debtor's estate. But, that right was taken subject to MFT's
21 interest as a secured creditor, which limitation was acknowledged by YKF and the Trustee prior to
22 the completion of the sale. *See* Declaration of Mark D. Byrne in Support of Motion for Intervention,
23 ¶¶ 13-21, Exhibits I-L.

24      MFT has also filed an action in state court against Smart Alec's and Dodson alleging that
25 Defendant purchased and subsequently encumbered the Shares without notice to MFT in violation
26 of the Note. The State Action requests a judicial determination that the Note gives MFT a valid,
27 enforceable security interest in the Shares and prays for damages against Defendant for Intentional
28 Interference with Contractual Relations.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

### III. ARGUMENT

**A. MFT Has Demonstrated That His Is Entitled to Intervention of Right in this Action and Permissive Intervention, Because He Holds a Secured Interest In the Shares that Are the Subject of this Action and a Valid Proof of Claim Based on that Security.**

MFT is entitled to intervene in the present action pursuant to Rule 7024 of the Federal Rules of Bankruptcy Procedure, and Federal Rules of Civil Procedure, Rule 24 ("Rule 24"), which "traditionally has received a liberal construction in favor of applicants for intervention." *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (1983).

**1. MFT is entitled to intervention of right in this action; he has a significantly protectable interest relating to the property or transaction that is the subject of this action and disposition of this action will impair his interest if he is not allowed to intervene.**

The Ninth Circuit has set forth a 4 part test for Intervention of Right pursuant to Rule 24(a)(2): "(1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the other parties." *See In re Bernal*, 223 B.R. 542, 547 (9th Cir. B.A.P., 1998), *citing Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983). YKF has mistakenly contended, without any supporting authority or facts, that MFT has not met the second and third tests for Intervention. The evidence overwhelmingly demonstrates that these tests have been met.

**a. MFT has a significantly protectable interest that is related to this action, because he has a legally protectable interest in the claims at issue.**

YKF has unconvincingly argued without any legal support, that because it did not specifically seek relief regarding MFT's claim, these proceedings will not be affected MFT's claim. However, there is no requirement that YKF specifically mention MFT's claim for the claim to be related to and affected by the Adversary Proceeding. Instead, a movant demonstrates that they have a "significantly protectable interest" to justify their intervention in the matter by

---

REPLY TO YKF OPPOSITION TO INTERVENTION

1    showing that "the interest is protectable under some law, and that there is a relationship between

2    the legally protectable interest and the claims at issue. *See  Sierra Club v. U.S. Environmental*

3    *Protection Agency*, 995 F. 2d 1478, 1481 (1993).

4          MFT has shown that his interest in this matter is legally protectable, because MFT has a

5    secured interest in the Shares and any proceeds therefrom, due to (1) his perfected interest in the

6    shares established by the Note he holds, and (2) his lien on the shares which was established by

7    his Proof of Claim in this Bankruptcy Action, **which lien, due to the transfer of the Shares to**

8    **Dodoson, survives the discharge of Debtor. In fact, as shown in MFT's Motion for**

9    **Intervention, YKF did not object to MFT's Proof of Claim and agreed that its interest in**

10   **this Adversary Proceeding was taken subject to MFT's interest as a secured creditor.**

11   Therefore, because of MFT's secured interest in the Shares and their proceeds, and MFT's Proof

12   of Claim and corresponding lien on the Shares, MFT's interest is legally protectable. Obviously

13   MFT's interest in the Shares and their proceeds is related to this Adversary Proceeding, which is

14   based upon recovery of the very same Shares and their fair market value at the Transfer.

15          **b. Disposition of this action will impair and impede MFT's interest in**

16          **the Shares if he is not allowed to intervene to participate in the record and the**

17          **remedial scheme in this case, and forced to litigate his claim in another forum.**

18          The third test for intervention of right, which has been met despite YKF's erroneous

19   contention to the contrary, is whether the court's decision in the principle case will result in

20   *practical* impairment of the intervenor's interest. *See Yniguez v. State of Arizona*, 939 F.2d 727,

21   735 (9th Cir. 1991).  In the present action, there are two ways in which MFT's interest can be

22   practically impaired. First, MFT could be excluded from the remedial scheme in this action and

23   thus, forced to chase yet another defendant to collect upon the Note he holds. *See U.S. v.*

24   *Stringfellow*, 783 F.2d 821, 827 (1986) vacated on other grounds, 480 U.S. 370 (1987). (where a

25   prospective intervenor has demonstrated a clear interest in the remedial scheme, it is reasonable

26   to conclude that disposition of the litigation may impair the prospective intervenor's ability to

27   protect its interests.)  Second, a judgment that is adverse to MFT's interests could be entered by

28   this court, providing persuasive authority against MFT in any related action. *See Yniguez v. State*

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION

1    *of Arizona*, 939 F.2d 727, 737 (9th Cir. 1991) (intervention is proper where an adverse federal

2    court decision will substantially weaken the applicants' position, and thereby impair the interest

3    of the applicants). Accordingly, MFT's ability to protect his interest in the Shares will clearly be

4    impaired by disposition of the present action, and thus, MFT seeks to intervene to fully

5    participate in the record upon which he may have to rely, and to participate in formulation of the

6    applicable remedial scheme in the Adversary Proceeding. *See Sagebrush Rebellion, Inc.*, 713

7    F.2d at 528; *see also Stringfellow*, 783 F.2d at 827.  This impairment is not tempered by his

8    ability to raise related claims in state court.  *See Stringfellow*, 783 F.2d at 827.

9           **c. YKF has not demonstrated any reason MFT should not be allowed to**

10          **intervene in this action.**

11          YKF has not provided any rational argument or evidentiary support for its sweeping and

12   mistaken refutation of the impact of the Adversary Proceeding on MFT's interest in the Shares.

13   Despite In fact, YKF's challenges to MFT's interest in the Shares and their proceeds only serve

14   to demonstrate that this Adversary Proceeding could practically impair or impede MFT's interest

15   in the Shares and confirm the importance of MFT's intervention in this matter.

16          YKF's attempt to play both sides of this matter to its advantage is evinced by its

17   contradictory assertions that (1) MFT's interest in the Shares will continue regardless of the

18   Adversary Proceeding, (2) the contractual basis for the claim is "highly contentious," and (3)

19   MFT's ability to recover against YKF is "highly speculative."   YKF has continuously played

20   these same games with MFT by at once insisting that MFT's lien will be preserved and at the

21   same time offering a fight as to MFT's ability to recover on such lien. There is no reason MFT

22   should be forced to wait through this entire litigation only to discover who the owner of the

23   Shares and proceeds are and face yet another litigation in order to collect upon his claim. In fact,

24   MFT's claim is neither contentious nor speculative, and has been upheld by this court previously,

25   as evidence by MFT's lien on the Shares pursuant to his Proof of Claim which no creditors,

26   including YKF, objected to. Also, YKF acknowledged that it took the rights to this Adversary

27   Proceeding subject to MFT's lien upon the Shares and its current challenge to participate in this

28   proceeding are unfounded in law or fact.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION

1        YKF has also misconstrues the law providing for intervention in its argument that MFT's

2   claim is based in state law and thus is not proper in bankruptcy court. There is no requirement

3   that the claim be based in Bankruptcy law in order for MFT to intervene in this action. *See In re*

4   *Bernal*, 223 B.R. at 547. Nevertheless, as discussed above, MFT's interest in the shares is based

5   upon Note and his lien on the shares created by his Proof of Claim, which lien was not

6   discharged as the Shares were transferred to Defendant. As such, this claim is based in

7   bankruptcy law as well as state law.

8        Additionally, YKF has incorrectly drawn an arbitrary line, unsupported by law, in an

9   attempt to distinguish the relief it seeks in its avoidance action from the sale or exchange of the

10  Shares. YKF's Adversary Proceeding is based upon the sale and exchange of the Shares, and

11  YKF specifically seeks recovery of the fair market value of that sale or exchange of the Shares.

12  YKF has offered no reason to designate the "action" from its purpose, recovering the value of the

13  sale or exchange of the Shares. In fact, this very argument by YKF demonstrates the importance

14  of allowing MFT to intervene to determine his rights to the Shares and to any recovery by YKF

15  that may be proceeds from the Shares. If MFT is not allowed to intervene, he will be forced to

16  track down the illusive proceeds, which are easily disposable, from yet another defendant.

17       Finally, YKF has mistakenly argued that determination of MFT's rights will necessitate a

18  liquidation of his claim, which will delay this Adversary Proceeding and prejudice YKF. First,

19  the lien created by the Proof of Claim establishes MFT's claim to the Shares, and thus provides

20  for the value of that claim. *See Siegel v. Federal Home Loan Mortgage Corporation*, 143 F.3d

21  525 (9th Cir. 1998) (under 11 U.S.C. § 502(a) any party in interest can raise objections and

22  litigate them if they see something wrong with a Proof of Claim, but if they do not the claim has

23  been determined on the merits and attacks upon it that could have been asserted cannot be raised

24  in later proceedings); *see also Nathanson v. Hecker*, 99 Cal. App. 4th 1158, 1162 (2002) (a

25  bankruptcy court's allowance of a claim is a final judgment and binding and conclusive on all

26  parties and their privies); *see also* 11 U.S.C. § 502(a) (a claim that is not objected to is deemed to

27  be allowed). Second, MFT seeks to intervene to establish, pursuant to any transfer to YKF, his

28  rights to the Shares and to any proceeds of the Shares. If the Shares or their proceeds are awarded

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION

1   to YKF, and it is determined that MFT has rights to theses Shares and their proceeds, then

2   determination of the amount of MFT's secured will be inevitable, as the time for default on the

3   Note has long passed. MFT's ability to participate in the remedial scheme is supported by law,

4   and there is no reason that such participation would delay or prejudice YKF's recovery if it is

5   first determined that MFT has an interest in such recovery. In fact, this would avoid taking the

6   matter to a new forum and creating a new record in order to enforce MFT's interest against YKF,

7   which would cause delay in resolution of this matter and require additional costs for all parties.

8           **2.  MFT's request for intervention is supported by case law that allows**

9           **intervention for attorney's fees claims based upon the principles of equity and judicial**

10          **economy.**

11          "Rule 24(b) necessarily vests 'discretion in the district court to determine the fairest and

12  most efficient method of handling a case *See Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir.

13  1989).  In *Venegas*, a discharged attorney sought to intervene in order to recover his fees.  The

14  court held that it was an abuse of discretion for the trial court to have not allowed permissive

15  intervention, where judicial economy, equity and the related interests of claims clearly weighed

16  in favor of such intervention.  *See Venegas*, 867 F.2d at 530. The *Venegas* court determined that

17  if it mandated litigation of the attorney's claim in state court "[t]he parties would be required to

18  make a record that would consist of **facts and arguments that are already before this court**,"

19  and additionally, "the parties would be forced to litigate before a judge who lacks **the long**

20  **experience with this case**, and with these parties, that this court has had." (emphasis added) *See*

21  *Venegas*, 867 F.2d at 531, (*quoting Wood v. Motorola, Inc.*, 587 F. Supp. 531, 532-33 (D.Haw.

22  1984.))   As in *Venegas*, this court is "well acquainted with the underlying litigation and the

23  parties" to MFT's claim, and "no novel or difficult issues of state law" requiring a state court

24  decision are raised in MFT's claim. *See Venegas*, 867 F.2d at 531.  This Adversary Proceeding is

25  only a small part of the Bankruptcy Action, and during the course of the Debtor's Bankruptcy,

26  this court has already determined the validity of MFT's interest in the Shares and the value of

27  that interest in the course of upholding MFT's secured Proof of Claim in this matter, which has

28  now become a lien on the Shares, which MFT hereby seeks to enforce.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION
7

1    YKF has argued without support that MFT seeks to inject numerous collateral and

2    complex issues, and that these issues are not related by law or fact. Yet, clearly MFT has alleged

3    an interest in the Shares that are the sole subject of this proceeding, and that is clearly a

4    significant related issue of fact. Additionally, MFT seeks to participate in the remedy of this

5    Adversary Proceeding, including the determination of ownership of the Shares and the proceeds

6    of those Shares, which is a significantly related issue of law and fact. Finally, the issues raised by

7    MFT regarding his interest in the Shares are not complex issues of state law as the *Venegas* court

8    has held, and involve concrete evidence including a lien that was created by the Proof of Claim in

9    this Bankruptcy Matter. Therefore, based upon the interests of equity and judicial economy

10   formulated in *Venegas*, MFT should be permitted to intervene in the present action, pursuant to

11   Rule 24(b)(2).

12       **3.  MFT has shown independent grounds for jurisdiction for permissive intervention.**

13       A court may grant permissive intervention pursuant to Rule 24(b)(2) "if three conditions

14   are met: (1) the movant must show an independent grounds for jurisdiction; (2) the motion must

15   be timely; and (3) the movant's claim or defense and the main action must have a question or law

16   and fact in common." *See Venegas*, 867 F.2d at 529.  As discussed above, MFT's claim is based

17   upon a timely application, his related interest in the Shares as discussed above, and his Proof of

18   Claim that was upheld in the Bankruptcy Action.

19       MFT's Application is based upon the Proof of Claim that he submitted during the

20   Bankruptcy Action from which this Adversary Proceeding stems. YKF has not addressed this

21   argument and has merely made a sweeping and incorrect contention that independent grounds are

22   not available.  However, MFT has shown that his Motion for Intervention is based upon the

23   Proof of Claim he holds, which provides him with a lien upon the shares that cannot be

24   discharged and which corresponds to the Note he holds that is secured by the Shares that are the

25   subject of this Adversary Proceeding. No creditors, including YKF, objected to MFT's Proof of

26   Claim, and this court and the district court affirmed MFT's Proof of Claim upon objection and

27   appeal by the Trustee. Additionally, YKF agreed prior to purchasing its right to pursue this

28   fraudulent conveyance claim, that it was buying the action from the Trustee subject to the MFT's

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION

claim as a secured creditor of Debtor's estate.  Thus, based upon his valid Proof of Claim, MFT

has independent grounds for jurisdiction by this court, and MFT has provided sufficient evidence

to show that he is entitled to permissive intervention in this matter. *See Venegas*, 867 F.2d at 529.

### IV. CONCLUSION

MFT has demonstrated that he is entitled to intervene in this Adversary Proceeding under

both theories of Intervention of Right and Permissive Intervention.  MFT's application for

intervention is supported by substantial case authority that provides controlling authority in favor

of MFT's intervention. It is therefore clear the MFT has satisfied the requirements for

intervention, especially since Rule 24 has "traditionally has received a liberal construction in

favor of applicants for intervention."  *See Sagebrush Rebellion, Inc.*, 713 F.2d at 527.

Accordingly, MFT's application for intervention should be granted.


Respectfully Submitted,

                               Mark D. Byrne, Esq.
                               Law Offices of Triano &Byrne
                               25 Jessie Street, 16th Floor
                               San Francisco, CA 94105

Dated: December 6, 2007


                                   /s/ Mark D. Byrne
                                 MARK D. BYRNE

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

REPLY TO YKF OPPOSITION TO INTERVENTION

1  MARK D. BYRNE, ESQ., SBN 109628
2  LAW OFFICES OF TRIANO & BYRNE
3  25 Jessie Street, 16th Floor
    San Francisco, CA 94105-2749
4  Telephone: (415) 371-8000
    Facsimile: (415) 371-8001
5  Mailbox@martinftriano.com

6

7            UNITED STATES BANKRUPTCY COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9              SAN FRANCISCO DIVISION

10

| | |
|---|---|
| In re: | Case No. 05-32929 |
| ALEXANDER POPOV, | CHAPTER 7 |
| Debtor. | |
| | Adv. Proc. No. 07-03104 |
| | **CERTIFICATE OF SERVICE** |
| YUGEN KAISHA, Y.K.F., | |
| Plaintiff, | |
| vs. | |
| STEPHANIE DODSON | |
| Defendant | |

22

23        I am citizen of the United States, and a resident of the County of San Francisco; I am over the age of eighteen years, and not a party to the within action. My business address is 25 Jessie Street, 16th Floor, San Francisco, California 94105-2749. On December 7, 2007 I served the following documents:

26  ///

27  ///

28

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

1

Case: 07-03104    Doc #: 17    Filed: 12/07/2007    Page 1 of 3

1
2
3

- ***REPLY TO YUGEN KAISHA, Y.K.F.'S OPPOSITION TO MOTION FOR INTERVENTION BY MARTIN F. TRIANO DBA LAW OFFICES OF MARTIN F. TRIANO; AND***
- ***PROOF OF SERVICE.***

4

On the parties listed, addressed as follows:

5
6
7
8

JOEL BELWAY, ESQ.
235 MONTGOMERY STREET, SUITE 668
SAN FRANCISCO, CA 94104-2910

JAMES S. MONROE, ESQ.
NIXON PEABODY LLP,
ONE EMBARCADERO CENTER, 18TH
FLOOR
SAN FRANCISCO, CA 94111

9
10
11
12
13

**XXX**

**First Class Mail:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service to **JOEL BELWAY, ESQ**. and **JAMES S. MONROE, ESQ.** the same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more one day after date of deposit for mailing an affidavit.

14
15

**Facsimile:** By transmitting a true and correct copy via facsimile electronic equipment transmission (fax) to (List names) at the fax number listed above.

16
17

**Personal Delivery:** By personally delivering the document(s) above to the person(s) listed above at the address(es) on the date set forth above.

18
19

**Personal Delivery By Messenger:** By consigning the document(s) listed above to a messenger for personal delivery to the following person(s) at the address(es) on the date set forth above.

20

**Overnight:** By placing the document(s) thereof into envelope(s) bearing the name(s) and address(es) of the person(s) to be served by Federal Express Delivery.

21
22

**STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

23
24

**XXX**

**FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25   //
26   //
27   //
28   //

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

2

1    I declare under penalty of perjury under the laws of the United States of America, that the

2    foregoing is true and correct. Executed on December 7, 2007 in San Francisco, California.

3

4    Respectfully Submitted,

                          Rithy Keo
5                         Law Offices of Triano & Byrne
                          25 Jessie Street, 16th Floor
6                         San Francisco, CA 94105

7    Dated: December 7, 2007

8                         _____/s/_____

9                         RITHY KEO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

3

Case: 07-03104     Doc #: 17     Filed: 12/07/2007     Page 3 of 3

1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery Street, Suite 668
3  San Francisco, California 94104
   Telephone:  415-788-1702
4  Facsimile:  415-788-1517

5  Attorney for Defendant
   and Counterclaimant
6  STEPHANIE DODSON

7

8              UNITED STATES BANKRUPTCY COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12
   In re:                        ) Case No. 05-32929
13                               )
   ALEXANDER N. POPOV,           ) Chapter 7
14                               )
              Debtor.            )
15  _____ )
                                 ) A.P. No. 07-03104
16  YUGEN KAISHA, Y.K.F., Plaintiff )
17                               ) **MEMORANDUM IN OPPOSITION TO**
        v.                       ) **MOTION TO DISMISS COUNTERCLAIM**
18  STEPHANIE DODSON,            )
                                 )
19            Defendant.         )
   _____ ) Date: Dec. 21, 2007
20                               ) Time: 9:30 a.m.
   STEPHANIE DODSON,             ) Court: Judge Carlson
21            Counterclaimant,   )
      vs.                        )
22                               )
   YUGEN KAISHA, Y.K.F.          )
23                               )
              Counterdefendant.  )
24  _____ )
25      Defendant and counterclaimant, STEPHANIE DODSON ("Dodson"),

26  submits this Memorandum in opposition to the motion of

27  counterdefendant, YUGEN KAISHA, Y.K.F. ("YKF"), to dismiss
28

                                    1
                    **MEMO P&A IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM**

Dodson's counterclaim (the "Counterclaim") against YKF (the "YKF Motion").

## I.  Introduction.

YKF has sued Dodson in its complaint herein (the "Complaint") for an alleged fraudulent transfer to Dodson by debtor, Alexander Popov ("Debtor"), of Debtor's interest in certain shares of corporate stock of Smart Alec's Intelligent Foods, Inc., a California corporation ("Smart Alec's"). As she testified at the trial in this Court in an objection to discharge proceeding, *Triano v. Popov*, A.P. No. 05-3485 (the "Triano AP"), Dodson purchased, under a share purchase agreement dated April 18, 2004 (the "Share Purchase Agreement"), for a price of $12,500, Debtor's residual interest in 3,744,000 Smart Alec's shares (the "Shares"), which were, as of April 2004, pledged to YKF as security for hundreds of thousands of dollars of indebtedness.

The Share Purchase Agreement is attached as Exhibit 3 to the Complaint. Exhibit 1 to the YKF Motion is a copy of the confidential settlement agreement and release among YKF, Smart Alec's, Debtor and Dodson dated February 6, 2004 (the "Settlement Agreement"); at page 2, paragraph 2.b, of that agreement, Debtor agreed to pledge the Shares to YKF. Thus, at the time of the transfer that is the subject of its Complaint, which YKF alleges was intended to hinder, delay or defraud creditors, YKF had physical possession of the Shares.

Martin F. Triano ("Triano"), the plaintiff in the Triano AP, has now sued Dodson (and Smart Alec's) in the Alameda County Superior Court, in *Triano v. Dodson, et al.*, No. RG-07-322877 (the "Alameda SCT Action"), alleging that he, Triano, has a first lien on the Shares. Triano has also filed a motion to intervene in this proceeding (the "Intervention Motion"), contending that because ownership of the Shares is being litigated herein, he has an interest, as a lien claimaint, in protecting himself.

While Dodson disputes all claims against her (and against Smart Alec's and the Chapter 7 estate) by Triano, she agrees that intervention herein by Triano is appropriate and necessary, so that her interests, too, can be determined in a single forum at a single time. As she testified at the Triano AP trial, Dodson caused the Shares to be redeemed from the pledge to YKF, which also had a UCC-1 lien on the assets of Smart Alec's, borrowing thousands of dollars from Summit Bank to redeem the Shares and to acquire YKF's own shares in Smart Alec's. Whoever has a claim to the Shares or a lien thereon should once and for all be decided.

**II.   Argument.**

**A. The Complaint.**

The Complaint alleges that the transfer to Dodson by Debtor under the Share Purchase Agreement was intended to hinder, delay or defraud creditors or, alternatively, was constructively fraudulent (the "Transfer"). The Transfer was of Debtor's residual interest in the Shares, and the Share Purchase Agreement explicitly refers to the pledge of the Shares to YKF and recites

the $775,000 of indebtedness that had to be repaid to YKF to free the Shares from YKF's possessory lien.

## B. The Counterclaim.

The Counterclaim alleges that, in delaying Dodson's final payoff of the balance of indebtedness to YKF (the same $775,000 indebtedness, secured by the Shares and assets of Smart Alec's, that is the subject of the Settlement Agreement), YKF extracted from Dodson the sum of approximately $90,000 in increased fees and charges by delaying, in bad faith, the payoff.

Demonstrating, through the legal and business maneuver that led to this proceeding, that avarice made it into the 21st Century, YKF, after its final extraction from Dodson under the Settlement Agreement, came to the Trustee herein and acquired, for $30,000, the estate's avoidance rights. YKF then sued Dodson, saying, in effect, that, after receiving $775,000 plus interest and attorney's fees plus the approximately $90,000 that is the subject of the Counterclaim, "We want more."

## C. The nexus between the Complaint and Counterclaim.

Ownership and transfer of the corporate shares of Smart Alec's provide the factual and legal nexus among the Claim, the Counterclaim and the Intervention Motion. The Transfer, challenged by YKF in the Complaint, followed the pledge of the shares to YKF by Debtor, and preceded the redemption of the Shares and YKF's owns shares in Smart Alec's, in the course of which YKF's bad faith foot-dragging took place, giving rise to

the Counterclaim. By denying the YKF Motion and granting the Intervention Motion, at the end of the day, the judge and jury in this proceeding will be presented and can decide all issues regarding the Transfer, ownership of the Shares, what was the correct amount that should have been paid to redeem the Shares and YKF's shares in Smart Alec's, whether Triano has a lien on the Shares, and whether Triano has allowable claims for attorney's fees, secured or otherwise.

**C. This Court has jurisdiction over the Counterclaim.**

While Dodson would concede for purposes of the YKF Motion, that she could not have, as a plaintiff jurisdictionally opened the door to this Court, walked in and sued YKF for the $90,000 that is the subject of the Counterclaim, the fact is that she did not open that door. YKF opened the door when it sued Dodson.

In addressing the Complaint and her response thereto, Dodson first had to consider the compulsory counterclaim rule under FRCP 13, incorporated by Bankruptcy Rule 7013. (Because Dodson has not been sued by a bankruptcy trustee or debtor in possession, the relief from compulsory counterclaims of Rule 7013 does not apply.) Rule 13(a)(1), FRCP, requires a defendant to bring a counterclaim against the plaintiff if the counterclaim arises out of the same transaction or occurrence of the complaint. Here, the transaction or occurrence of the Counterclaim is part of the same factual chain starting with the Settlement Agreement and the pledge of the Shares, leading to the Transfer, to the redemption

1  from YKF and to Dodson's forced overpayment to YKF. Thus, Dodson
2  could only withhold filing the Counterclaim at her peril.

3       Second, YKF, having started this litigation, which does not
4  impact the bankruptcy estate regardless of its outcome, should
5  not be heard to protest exercise of the supplemental jurisdiction
6  of this Court under 28 U.S.C. §1367(a). Such jurisdiction,
7  formerly known as pendent jurisdiction, allows this Court to
8  adjudicate a state law claim, as that raised by Dodson's
9  Counterclaim, if it is sufficiently related to a federal claim
10  properly before it.

11
12       The history of Smart Alec's shares of corporate stock
13  contains the names of the Debtor, YKF, Dodson and Triano. While
14  the Debtor has received a discharge, over Triano's unsuccessful
15  objection, his name is still being taken in vain by YKF and
16  Triano. What Dodson paid to Debtor on the front-end of this
17  history and whether that was too little, and what Dodson paid to
18  YKF on the back-end and whether that was too much, and whether
19  Triano's lien claim affects either YKF or Dodson or neither, are
20  the parts of the history Smart Alec's shares that should be
21  decided by this Court. Keeping all parts of the dispute and all
22  three of the disputants together lies within this Court's
23  discretionary exercise of supplemental jurisdiction.
24
25       YKF cites a Ninth Circuit case, *In re Pegasus Gold Corp.*,
26  394 F.3d 1189, 1195 (9th Cir. 2005), for the unremarkable
27  proposition that supplemental jurisdiction extends to claims that
28

6

1    are part of the same "common nucleus of operative facts."  Dodson

2    and YKF agree on the law, but disagree on its application to the

3    facts. Dodson submits that the part of the history of the Smart

4    Alec's shares presented by the Counterclaims fits into, if on one

5    side, of the common nucleus of facts presented by the Complaint,

6    Counterclaim and Intervention Motion. And even if the Court were

7    to deny the latter, it would have, and should exercise,

8    supplemental jurisdiction over the Counterclaim.

9        **III. Conclusion.**

10       Based upon the foregoing, the Court should deny the YKF

11   Motion.

12

13

14                               Respectfully submitted,

15   Dated: December 7, 2007    THE LAW OFFICE OF JOEL K. BELWAY
                                 Professional Corporation
16
                                 /s/ Joel K. Belway
17                               JOEL K. BELWAY
                                 Attorney for Stephanie Dodson
18

19

20

21

22

23

24

25

26

27

28

7

1

## DECLARATION OF SERVICE

2

3      I am over the age of eighteen years and not a party to the

4   within action.  On December 7, 2007, I served the attached

5   **Memorandum in Opposition to Motion to Dismiss Counterclaim** on the

6   interested parties in this action by placing true copies thereof

7   in sealed envelopes and transmitting said envelopes to the

8   following addresses by the means indicated:

9          Via First-Class U.S. Mail

10
        James S. Monroe, Esq.
11      Gregory E. Schopf, Esq.
        NIXON PEABODY LLP
12      One Embarcadero Center, Suite 1800
        San Francisco, CA 94111-3996
13
        U.S. Trustee
14      235 Pine Street, Suite 850
        San Francisco, CA 94104
15
        Mark D. Byrne, Esq.
16      Triano & Byrne
        25 Jessie Street
17      16th Floor
        San Francisco, CA 94105-2749
18

19      I declare under penalty of perjury that the foregoing is

20   true and correct.  Executed on December 7, 2007, at San

21   Francisco, California.

22

23
                          \s\ Joel K. Belway
24

25

26

27

28

8
**MEMO P&A IN OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM**

1  James S. Monroe, Esq. (State Bar Number: 102328)
   Gregory E. Schopf (State Bar Number: 122862)
2  NIXON PEABODY LLP
   One Embarcadero Center, Suite 1800
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300
   E-mail: jmonroe@nixonpeabody.com
5
6  Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

7

8                  UNITED STATES BANKRUPTCY COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  In re:                          | Case No. 05-32929
                                    |
13  ALEXANDER N. POPOV,             | Chapter 7
                                    |
14                      Debtor.     |
                                    |
15  _____ |
                                    |
16  YUGEN KAISHA, Y.K.F.,           | Adv. Pro. No.: 07-03104
                                    |
17                      Plaintiff,  | **YUGEN KAISHA, Y.K.F.'S OPPOSITION
                                    | TO DEFENDANT'S MOTION TO COMPEL
18         v.                       | PLAINTIFF TO FURNISH SECURITY FOR
                                    | COSTS, AND RESPONSE TO MOTION TO
19  STEPHANIE DODSON,               | AMEND ANSWER**
                                    |
20                      Defendant.  | **Hearing**
21                                  |
                                    | Date:     December 21, 2007
22                                  | Time:     9:30 a.m.
                                    | Place:    Courtroom 23
23                                  | Judge:    Hon. Thomas E. Carlson

24         Yugen Kaisha, Y.K.F. ("YKF"), plaintiff in the above-captioned action, hereby submits this

25  (i) opposition to the motion of Stephanie Dodson ("Dodson") to compel YKF to furnish security for

26  costs on the grounds that the requirements for imposition of a bond under California Code of Civil

27  procedure §1030 are not established, and (ii) response to Dodson's motion to amend her answer to

28  the complaint.

OPPOSITION TO MOTION TO COMPEL PLAINTIFF TO
FURNISH SECURITY FOR COSTS; ADV. CASE NO. 07-03104                    10836225.1

## RESPONSE TO MOTION TO AMEND ANSWER

Dodson requests leave of court to amend her answer to the complaint to allege two new affirmative defenses – collateral estoppel and lack of capacity. As discussed below, neither of these proposed defenses has any conceivable applicability to this case.

**Collateral Estoppel.** YKF alleges in its complaint against Dodson that Alexander Popov ("Popov") transferred his shares of stock in Smart Alec's Intelligent Food, Inc. ("Smart Alec's") to Dodson shortly before the September 6, 2005 filing date of Popov's bankruptcy petition with the actual intent to hinder, delay or defraud his creditors. Dodson seeks to allege as an affirmative defense that YKF is precluded from establishing that the shares were transferred shortly before Popov's bankruptcy based upon an alleged determination by this court that the share transfer occurred on April 18, 2004 (the stated date of the share transfer agreement) in connection with the trial of Martin F. Triano's ("Triano") complaint objecting to Popov's discharge based upon fraudulent concealment of assets. Collateral estoppel is clearly inapplicable to YKF on these facts since neither YKF nor the Chapter 7 Trustee was a party or in privity with a party to the Triano action. Moreover, the share transfer date was not even litigated in the Triano action and was instead stipulated to by Triano and Popov. Collateral estoppel is inapplicable in any event to issues that were not actually and necessarily litigated in the prior action.

**Lack of Capacity.** Dodson also seeks to add as an affirmative defense that YKF lacks the capacity to sue herein based on California Corporations Code §2203(c) which precludes a foreign corporation from maintaining an action in California state court in connection with intrastate business unless it qualifies to do business in California. However, even if §2203(c) were applicable to this action in principle, it clearly has no applicability to the transaction in this case since the mere purchase of an avoidance action from the bankruptcy trustee by YKF, a foreign corporation with no California presence, does not amount to the conduct of intrastate business within the meaning of §2203. A foreign corporation's mere purchase of an asset from a resident of California is business done in interstate commerce, not intrastate commerce. *Charlton Silk Company v. Jones* (1923) 190 Cal. 341.

1    Notwithstanding the foregoing, YKF does not oppose Dodson's motion to amend her answer.

2   However, YKF does request that the court require Dodson to file an amended pleading which is

3   complete in itself as required by Bankruptcy Local Rule 1001-2(a)(26) and District Court Local Rule

4   10-1.

5   ## OPPOSITION TO MOTION TO REQUIRE SECURITY FOR COSTS

6    Dodson's motion for an order requiring YKF to furnish a $25,000 undertaking for costs

7   should be denied. Even assuming, *arguendo*, that California Code of Civil Procedure §1030 is

8   applicable as Dodson contends, the requirements for imposition of a bond under this statute are not

9   established.

10    It is undisputed that YKF is a foreign corporation with no U.S. presence. Thus, the first

11   requirement of §1030(b) is satisfied.

12    The second element of §1030(b) requires Dodson to present evidence to establish a

13   "reasonable possibility" that she will obtain judgment on YKF's complaint. Here, Dodson's burden

14   to prove a reasonable possibility that she will obtain judgment has not been satisfied and, in fact,

15   Dodson has offered absolutely no evidence whatsoever to refute YKF's claims. Accordingly and on

16   this basis alone, the motion should be denied. *A. Farber & Ptnrs., Inc. v. Garber,* 417 F.Supp.2d

17   1143 (C.D. Cal., 2006).

18    Section 1030(b) also requires that the defendant submit an affidavit which sets forth the

19   nature and amount of the costs defendant has incurred and expects to incur. Here, the declaration of

20   Dodson's counsel merely states in very general terms that defendant may incur costs for expert

21   witnesses, possible travel expenses for depositions in Japan and North Carolina, and court reporter

22   fees, and then provides a guess that these expenses could be as much as $25,000. This is an

23   insufficient showing of the nature and amount of costs actually expected to be incurred as required by

24   §1030(b). Moreover, Dodson's counsel provides no explanation regarding how the taking of

25   depositions of unspecified persons in North Carolina and/or Japan would have any conceivable

26   relevance to YKF's fraudulent transfer complaint.

27

28

OPPOSITION TO MOTION TO COMPEL PLAINTIFF TO             -3-
FURNISH SECURITY FOR COSTS; ADV. CASE NO. 07-03104

1    Based upon the foregoing, YKF respectfully requests that Dodson's motion to compel YKF to

2  furnish security for costs be denied and for such other relief as the court deems appropriate.

3                                                        Respectfully submitted,

4

5  Dated:  December 11, 2007                  NIXON PEABODY LLP

6

7

8                                                   By: /s/ James S. Monroe
                                                         James S. Monroe
9                                                  Attorneys for Yugen Kaisha, Y.K.F.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO COMPEL PLAINTIFF TO          -4-
FURNISH SECURITY FOR COSTS; ADV. CASE  NO.  07-03104

**CERTIFICATE OF SERVICE**

| | |
|---|---|
| **CASE NAME:** | **IN RE ALEXANDER N., POPOV, Debtor;** |
| **ADV. PROCEEDING:** | **YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON** |
| **COURT:** | **U.S. Bankruptcy Court, Northern District of California (San Francisco)** |
| **CASE NO.:** | **05-32929-TC; Adv. Pro. No.: 07-03104-TC** |
| **FILE:** | **031405.000006** |

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this date, I served the following document(s):

**YUGEN KAISHA, Y.K.F.'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO FURNISH SECURITY FOR COSTS, AND RESPONSE TO MOTION TO AMEND ANSWER**

on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

__X__: B y First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

_____: By Certified Mail Service — I am readily familiar with the firm's practice for collection and processing of correspondence for Certified Mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with Certified Mail postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

Addressee

Joel K. Belway
THE LAW OFFICE OF JOEL K. BELWAY
Professional Corporation
235 Montgomery Street, Suite 668
San Francisco, California 94104

United States Trustee
San Francisco Division
235 Pine Street, Suite 700
San Francisco, CA 94104

Mark D. Byrne
Law Offices of Triano and Byrne
25 Jessie Street, 16th Floor
San Francisco, CA 94105

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 11, 2007, at San Francisco, California.

Carol S. Hardy

OPPOSITION TO MOTION TO COMPEL PLAINTIFF TO
FURNISH SECURITY FOR COSTS; ADV. CASE NO. 07-03104

-5-

James S. Monroe, Esq. (State Bar Number: 102328)
Gregory E. Schopf (State Bar Number: 122862)
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996
Telephone: (415) 984-8200
Facsimile: (415) 984-8300
E-mail: jmonroe@nixonpeabody.com

Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 05-32929 |
| ALEXANDER N. POPOV, | Chapter 7 |
| Debtor. | |
| | |
| YUGEN KAISHA, Y.K.F., | Adv. Pro. No.: 07-03104 |
| Plaintiff, | **REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| STEPHANIE DODSON, | **Hearing** |
| Defendant. | Date:    December 18, 2007 |
| | Time:    9:30 a.m. |
| | Place:    Courtroom 23 |
| | Judge:    Hon. Thomas E. Carlson |

Yugen Kaisha, Y.K.F. ("YKF"), hereby submits this reply to defendant Stephanie Dodson's

("Dodson") opposition to YKF's motion to dismiss her counterclaim filed herein for lack of subject

matter jurisdiction on the grounds that there is no independent jurisdictional basis for the

counterclaim under 28 U.S.C. §1334(b) and it falls outside the court's supplemental jurisdiction

under 28 U.S.C. §1367(a).

REPLY TO OPPOSITION TO MOTION TO DISMISS
COUNTERCLAIM; ADV. CASE NO. 07-03104

10841389.1

1      In her opposition, Dodson tries mightily to obscure the issues in a vain effort to argue that the

2    complaint and counterclaim involve a common core of operative facts.  However, a simple review of

3    the respective claims establishes that they involve neither the same facts nor the same applicable law.

4      YKF's complaint seeks to avoid and recover the debtor's prepetition transfer of 3,774,000

5    shares of common stock (the "Debtor's Shares") of Smart Alec's Intelligent Food, Inc., a California

6    corporation ("Smart Alec's") to Dodson as a fraudulent conveyance.  YKF maintains that the

7    Debtor's Shares were transferred to Dodson shortly before the September 6, 2005 petition date with

8    the actual intent to hinder, delay or defraud the debtor's creditors by removing said shares from the

9    bankruptcy estate and thereby retaining control of Smart Alec's to the exclusion of the debtor's

10   creditors.

11      Dodson's counterclaim alleges a state law based contract claim regarding a Stock Redemption

12   Agreement, dated February 6, 2004, between Smart Alec's and YKF, whereby Smart Alec's agreed

13   to repurchase YKF's 1,440,000 shares of common stock of Smart Alec's (the "YKF Shares") for

14   $775,000 as provided therein.  On March 12, 2007, the balance due under the Stock Redemption

15   Agreement was paid to YKF and the YKF Shares were transferred to Smart Alec's.  By her

16   counterclaim herein, Dodson alleges that YKF in some unexplained way delayed the payoff of the

17   amount due from Smart Alec's under the Stock Redemption Agreement, causing additional amounts

18   to have to be paid at the closing, and based thereon, seeks money damages from YKF.

19      Even if the counterclaim were properly maintainable by Dodson (which it is not since Dodson

20   is not even a party to the Stock Redemption Agreement upon which the counterclaim is based), the

21   counterclaim is clearly outside the bankruptcy court's supplemental jurisdiction under 28 U.S.C.

22   §1367(a) since the respective claims asserted in the complaint and counterclaim do not arise from a

23   "common nucleus of operative facts."  *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1195 (9th Cir.

24   2005); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed. 2d 218 (1966).

25   The facts giving rise to Dodson's counterclaim (for breach of contract regarding YKF's post-petition

26   sale of its shares of Smart Alec's to Smart Alec's) are entirely different from the facts supporting

27   YKF's complaint (for avoidance of the debtor's prepetition transfer of his shares of Smart Alec's to

28

REPLY TO OPPOSITION TO MOTION TO DISMISS       -2-
COUNTERCLAIM; ADV. CASE  NO.  07-03104

1   Dodson).   The complaint and counterclaim bear no logical relation to each other and rest upon
2   different evidence and legal rights.   Under these circumstances, the counterclaim is not within the
3   bankruptcy court's supplemental jurisdiction.

4        In her opposition, Dodson further attempts to obscure the issues by arguing that YKF's
5   purchase of the bankruptcy avoidance action which is the subject of the complaint is somehow
6   improper.  However, Ninth Circuit decisions and case law clearly validate the bankruptcy trustee's
7   sale of avoidance actions and recognize that such a sale may often, as here, provide the greatest
8   benefit to the creditors of the bankruptcy estate.  *Ducker Spradling & Metzger v. Baum Trust (In re*
9   *P.R.T.C., Inc.)*, 177 F.3d 774, 781 (9th Cir. 1999); *Briggs v. Kent (In re Prof'l Inv. Props. Of Am.)*,
10  955 F.2d 623, 625-626 (9th Cir. 1992); *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325
11  B.R. 282, 288 (9th Cir. BAP 2005).

12       Based upon the foregoing, YKF respectfully requests that its motion to dismiss Dodson's
13  counterclaim be granted and for such other relief as the court deems appropriate.

14                                          Respectfully submitted,

15  Dated:  December 14, 2007              NIXON PEABODY LLP

16

17

18                                         By: */s/ James S. Monroe*
                                               James S. Monroe
19                                         Attorneys for Yugen Kaisha, Y.K.F.

20

21

22

23

24

25

26

27

28

REPLY TO OPPOSITION TO MOTION TO DISMISS              -3-
COUNTERCLAIM; ADV. CASE NO.  07-03104

**CERTIFICATE OF SERVICE**

**CASE NAME:**    **IN RE ALEXANDER N., POPOV, Debtor;**
**ADV. PROCEEDING:**    **YUGEN KAISHA, Y.K.F. v. STEPHANIE DODSON**
**COURT:**    **U.S. Bankruptcy Court, Northern District of California (San Francisco)**
**CASE NO.:**    **05-32929-TC; Adv. Pro. No.:  07-03104-TC**
**FILE:**    **031405.000006**

      I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, Suite 1800, San Francisco, CA 94111-3996. On this date, I served the following document(s):

**REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**

on the party stated below, placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

  _X_ : B y First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

  ____ : By Certified Mail Service — I am readily familiar with the firm's practice for collection and processing of correspondence for Certified Mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with Certified Mail postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

Addressee

Joel K. Belway                    United States Trustee
THE LAW OFFICE OF JOEL K. BELWAY      San Francisco Division
Professional Corporation             235 Pine Street, Suite 700
235 Montgomery Street, Suite 668       San Francisco, CA 94104
San Francisco, California 94104

Mark D. Byrne
Law Offices of Triano and Byrne
25 Jessie Street, 16th Floor
San Francisco, CA 94105

      I declare under penalty of perjury that the foregoing is true and correct. Executed on December 14, 2007, at San Francisco, California.

*Carol S. Hardy*

Carol S. Hardy

1   JOEL K. BELWAY [60556]
    THE LAW OFFICE OF JOEL K. BELWAY
2   Professional Corporation
    235 Montgomery Street, Suite 668
3   San Francisco, California 94104
    Telephone:  415-788-1702
4   Facsimile:  415-788-1517

5   Attorney for Defendant
    and Counterclaimant
6   STEPHANIE DODSON

7

8                   UNITED STATES BANKRUPTCY COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12
    In re:                        )Case No. 05-32929
13                                )
    ALEXANDER N. POPOV,           )Chapter 7
14                                )
                  Debtor.         )
15  _____ )
                                  )A.P. No. 07-03104
16  YUGEN KAISHA, Y.K.F., Plaintiff,)
17                                ) **REPLY TO OPPOSITION TO MOTION**
         vs.                      ) **TO AMEND ANSWER AND TO COMPEL**
18                                ) **PLAINTIFF TO FURNISH SECURITY**
    STEPHANIE DODSON,             ) **FOR COSTS**
19                Defendant.      )
                                  ) Date: Dec. 18, 2007
20  _____ ) Time: 9:30 a.m.
    STEPHANIE DODSON,             ) Court: Judge Carlson
21                Counterclaimant, )
22       vs.                      )
                                  )
23  YUGEN KAISHA, Y.K.F.          )
24                Counterdefendant.)
    _____ )
25
         Defendant and counterclaimant, STEPHANIE DODSON ("Dodson"),
26
    submits this reply to the opposition of plaintiff and
27
    counterdefendant, YUGEN KAISHA, Y.K.F. ("YKF"), to Dodson's
28

                                  1

motion (1) to amend her Answer to add the affirmative defenses of lack of capacity and collateral estoppel, and (2) to compel YKF to furnish security for costs (the "Motion").

**A. Motion to amend Answer.**

YKF's opposition first contends that, as to the defense of a lack of capacity for failure to qualify to do business in California, it is not doing business in California, but ultimately states its non-opposition to the proposed amendment of Dodson's answer (also to allege collateral estoppel), so long as Dodson files an amended answer that is complete in itself. Dodson will do so promptly.

Along the way to its non-opposition to the additional affirmative defenses, YKF describes itself as a foreign corporation with no California presence. Lest such an assertion, important to the capacity issue, go unchallenged, let it be said that if the following action's by YKF, disclosed upon the record of this case already, do not constitute a California presence (aside from anything else YKF may be doing or may have done in California, subject to discovery), then perhaps YKF's position will ultimately be upheld:

(1) investing $720,000 in California in shares of Smart Alec's Intelligent Foods, Inc. ("Smart Alec's"), a California corporation that operates a single restaurant in on Telegraph Avenue in Berkeley, California; then

(2) suing in the Alameda County Superior Court over that investment through the same attorney's who represent it in opposing the Motion; then

(3) settling that suit in February 2004 by a written settlement agreement (Exhibit 1 to YKF's motion to dismiss the counterclaim herein) (a) entered into in California, secured  (b) by a pledge in California of Smart Alec's shares and (c) by a UCC-1 filing in Sacramento, California for Smart Alec's assets and specifying California as the source of law for any disputes; and then

(4) entering into a closing agreement with Dodson in March 2007 in California (Exhibit 2 to YKF's motion to dismiss the counterclaim), specifying California law and calling for payment by Dodson to YKF to the trust account of YKF's attorneys in San Francisco (who represent YKF herein); then

(5) purchasing the avoidance rights sued upon herein from a bankruptcy trustee in San Francisco, under an agreement entered into in San Francisco and approved by this Court, sitting in San Francisco; and then

(6) suing on the avoidance rights in a federal court in San Francisco.

B. **Security for costs.**

(1) **Reasonable possibility of Dodson's prevailing.**

YKF opposes Dodson's request for security for costs on two grounds. First, it argues that Dodson has not presented evidence to establish a "reasonable possibility" that she will obtain judgment on YKF's complaint. Dodson requests that the Court, in making its assessment of whether she can show a reasonable possibility, which notably is less than either the "reasonable probability" required for injunctive relief or the "probable validity" for an attachment, take judicial notice of its own findings of fact and conclusions of law announced on the record at the end of the trial on March 27, 2007, in Triano v. Popov, A.P. No. 05-3485 (the "Findings"), which are attached hereto for the convenience of the Court.

The Findings, which are also incorporated into Dodson's Answer herein at paragraph 9 thereof, turn on the testimony of Debtor, Alexander Popov, and Dodson. That testimony, referred to in the Findings, dealt with the motives and background for the transfer of Debtor's residual interest in Smart Alec's shares that had been pledged to YKF. It is the same transfer that YKF in the complaint in this proceeding challenges as actually or constructively fraudulent. Dodson submits that the Findings reflect an existing judicial determination that she has a "reasonable possibility" of prevailing on YKF's complaint.

## (2) Nature and amount of costs.

YKF next argues that the Motion has not sufficiently demonstrated the nature and amount of costs defendant has incurred and expects to incur. To date no costs have been incurred, but if this matter goes forward, substantial costs may be incurred.

First are expert witness fees, for either a court-appointed expert or as part of discovery, see *Trepel v. Roadway Express, Inc.*, 266 F.3d 418, 427 (6th Cir. 2001), for the valuation of the Smart Alec's shares transferred and for the insolvency issue. Such fees can, in the Court's own experience, be thousands of dollars. Second, deposition transcripts and travel expenses will run to thousands of more dollars if YKF refuses to make witnesses available in San Francisco and Dodson is forced to fly counsel to Japan or North Carolina or both. (YKF can solve that problem simply: stipulate as part of a resolution of the Motion that witnesses from Japan and North Carolina will be made available deposition in San Francisco.)

YKF asks what conceivable relevance could the taking of depositions of YKF's agents from Japan or North Carolina have to a fraudulent conveyance complaint. If there were no other relevance, the defense of YKF's lack of capacity, under California Corporation's Code Section 2203, which is one of the affirmative defenses the addition of which YKF has stated its non-opposition, will require testimony and documentary evidence from YKF, to show that it is and was doing business in California

and has not qualified in the State. Again, YKF can avoid the

1  travel expenses for those depositions costs by agreeing to

2  produce witnesses and documents in San Francisco, where its

3  attorneys work and where the court in which it chose to sue

4  Dodson is located.

5                                    Respectfully submitted,

6
   Dated: December 16, 2007       THE LAW OFFICE OF JOEL K. BELWAY
7                                  Professional Corporation

8                                  /s/ Joel K. Belway
                                   JOEL K. BELWAY
9                                  Attorney for Stephanie Dodson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### DECLARATION OF SERVICE

2

3      I am over the age of eighteen years and not a party to the

4    within action.  On December 16, 2007, I served the attached **Reply**

5    **to Opposition to Amend Answer and to Compel Plaintiff to Furnish**

6    **Security for Costs** on the interested parties in this action by

7    placing true copies thereof in sealed envelopes and transmitting

8    said envelopes to the following addresses by the means indicated:

9            Via First-Class U.S. Mail

10

11           James S. Monroe, Esq.
           Gregory E. Schopf, Esq.
12           NIXON PEABODY LLP
           One Embarcadero Center, Suite 1800
13           San Francisco, CA 94111-3996
           (also via email to jmonroe@nixonpeabody.com
14            and by fax to (415)984-8300)

15           U.S. Trustee
           235 Pine Street, Suite 850
16           San Francisco, CA 94104

17           Mark D. Byrne, Esq.
           Triano & Byrne
18           25 Jessie Street
           16th Floor
19           San Francisco, CA 94105-2749
           (also by email to mailbox@martinftriano.com
20            And fax to (415)371-8001)

21      I declare under penalty of perjury that the foregoing is

22    true and correct.  Executed on December 16, 2007, at San

23    Francisco, California.

24

25                     \s\ Joel K. Belway

26

27

28

7

**REPLY TO OPPOSITION TO MOTION TO AMEND ANSWER AND FOR SECURITY FOR COSTS**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS E. CARLSON, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 05-32929-TEC-7 |
| | ) |
| ALEXANDER POPOV, | ) |
| | ) |
| Debtor. | ) |
| ——————————————— | ) |
| | ) |
| TRIANO, | ) Adv. 05-3485 |
| | ) |
| Defendant, | ) (Portion of proceedings:) |
| | ) <u>TRIAL:  FINDINGS of FACT</u> |
| v. | ) <u>and CONCLUSIONS of LAW</u> |
| | ) |
| POPOV, | ) |
| | ) |
| Plaintiff. | ) Tuesday, March 27, 2007 |
| ——————————————— | ) San Francisco, California |

<u>Appearances</u>:

For the Plaintiff:      Mark D. Byrne, Esq.
                        Law Offices of Martin F. Triano
                        25 Jessie Street, 16th Floor
                        San Francisco, California  94105
                        (415) 371-8000

For the Defendant:      Joel K. Belway, Esq.
                        Law Offices of Joel K. Belway
                        235 Montgomery Street, Suite 668
                        San Francisco, California  94104
                        (415) 788-1702

Digital Court           United States Bankruptcy Court
Recorder:               Clerk of the Court
                        Jane L. Galvani
                        235 Pine Street, 23rd Floor (94104)
                        Post Office Box 7341
                        San Francisco, California  94120-7341
                        (415) 268-2366

Certified Electronic    Palmer Reporting Services
Transcriber:            P. O. Box 30727
                        Stockton, California  95213-0727

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

Trial:  Findings of Fact and Conclusions of Law                                    2

1    Tuesday, March 27, 2007                          3:16 o'clock p.m.

2                        P R O C E E D I N G S

3              THE COURT:  Okay.  I'm going to make a finding on one

4    issue here.  I find on the basis of the evidence presented and

5    the plaintiff's offer of proof, taking that into account as it

6    established regarding the appraised value, which I think you

7    said in your brief, was 168,000 —

8              MR. [SPEAKER]:  Correct.

9              THE COURT:  — of the original interest?

10             On the basis of the facts that I've heard, the

11   plaintiff having stated that there's no further evidence to be

12   offered regarding the question of concealment or retention of an

13   interest, that the debtor did not retain an interest in this

14   property after the transfer.

15             First of all, I find that the transfer was effective

16   in April of 2004, April 18th, 2004.  Although the purchase price

17   needed to be paid, the defendant, if there was, you know, a

18   fraudulent conveyance for too little money, et cetera, it was —

19   the die was cast then, because all that — all Ms. Dodson had to

20   do was pay that, the remainder of that limited sum of money.

21   And she had beneficial interest at that point or at least the

22   ability to get it at that price.

23             Second, and this is the most important, I find that

24   the debtor did not act as if he owned the property in any manner

25   after that date.

Trial:  Findings of Fact and Conclusions of Law                    3

1        First of all, there's this — been some evidence that

2    he did — had some activities at the restaurant.  I find that he

3    had no real role in the restaurant.  He did not manage the

4    restaurant.  He do not decide what the menu was.  He didn't say

5    what the hour was.  He was hired; he was fired, et cetera.  He

6    had been relieved of that — all those duties.  And there was a

7    replacement in that role, namely Ms. Dodson.

8        He helped on a couple occasions in very limited

9    circumstances.  He did so in part because of his friendship with

10   Ms. Dodson, which was quite evidently very real throughout this

11   whole time.

12       He also, although he didn't retain an interest in

13   ownership in the property, he did have an interest in its

14   success, because the restaurant's successful operation would —

15   was a means that he could — use to retire his guaranty

16   liability, his personal liability.

17       He never got any payment of money from the restaurant

18   either as a distribution as an owner, as an employee, anything

19   else like that.  He did borrow against its value.  There's just

20   no evidence that he acted as if he was the owner of the

21   restaurant.

22       That the debtor and Ms. Dodson were married some two

23   and a half years later doesn't change anything.  They were quite

24   clearly friends during this period, but the fact that they had

25   dated before and were friends throughout and got married two and

Trial: Findings of Fact and Conclusions of Law                4

1  a half years later is not by itself or even in conjunction with

2  everything else here enough evidence that there was a plan.

3        Most important here, I believe that the debtor's

4  explanation of why he transferred the property and that he

5  really did transfer the property is, is more credible, more

6  believable than the inference that he retained secretly an

7  interest in the property.

8        Why did he part with — why would he really part with

9  the property for this price to this person at this time?

10        First of all, because of his pledge which happened

11  shortly before, the restaurant, even if it had some real value,

12  didn't have any easily realizable value to him at that time,

13  because of the pledge and the need, the fact that all the cash

14  proceeds were going to be sucked out of this property for quite

15  some time. He couldn't use that value soon.

16        The shares- — these shares of — subject to this kind

17  of pledge in that kind of restaurant wouldn't be readily

18  salable. He needed money. He — he had lost his job a couple

19  months earlier by virtue of this settlement. He brought money

20  later from the — from Ms. Dodson. He needed some money.

21        Helping her was — was not — helping her succeed in the

22  restaurant was helpful to him. Giving her an incentive to work

23  hard was helpful to him. And — and doing something good for her

24  was not — didn't — he was very close friends with her. He had a

25  good relationship with her. And he would naturally want to help

Trial:  Findings of Fact and Conclusions of Law                    5

1   her, even if he couldn't get something back later.

2           Now I am troubled to some extent by the fact that they

3   didn't disclose this transfer.  I don't think that the failure

4   to disclose the transfer is a concealment of an interest, but it

5   is evidence that could be part of a plan to retain an interest

6   in the sense that if they never disclosed the transfer and

7   nobody ever caught them on anything, they could more easily

8   disavow it later.

9           But I think that that's not an overwhelming factor,

10  and I think is undercut by the fact that the evidence shows here

11  that they didn't disclose the transfer to YKF before the

12  bankruptcy was filed.  And I think that that kind of behavior

13  would be inexplicable if they were trying to keep this transfer

14  a secret to just sort of ignore later.

15          The other thing that is at issue here is I don't think

16  this transfer makes sense as a secret transfer intended to stop

17  these creditors.  It didn't stop the debtor's creditors in the

18  sense that his — as I understand from what I've heard in this —

19  in this trial here, the two major creditors who are Mr. Triano

20  and YKF.

21          YKF already had a superior interest in the shares.

22  Mr. Triano was again going after Ms. Dodson as well as Mr.

23  Triano.  And she wasn't the most likely target to transfer any —

24  any interest in to get it away from Mr. Triano.

25          So it's not — it just doesn't look like a likely

Trial:  Findings of Fact and Conclusions of Law                6

1    scheme to keep this as a — as a method to keep this away from

2    creditors.  But the key thing here is that this really doesn't

3    look like a retained interest.  There was an activity that was —

4    that happened later that showed that the debtor really not only

5    nominally got rid of the interest, inexplicably got rid of the

6    interest, and then acted like he was an owner later.

7         I think, though, the last point to know that is, is

8    that to the extent they are married now is, is possibly relevant

9    only in one way.  And that is it shows that, you know, that

10   their relationship turn into something that was very, very

11   close, indeed, over time.  That may or may not have been in the

12   cards in 2004.  Nothing certain in matters like that.

13        And the fact that they were married down the road is,

14   you know, in — in the context of all these other facts doesn't

15   show that that there was secret intent here.  And the fact that

16   the debtor may, over time get some sort of a community-property

17   interest in this property by virtue of her efforts doesn't prove

18   anything, because those aren't conditions that existed during

19   the — the year prior to the filing.  And, of course, she's

20   getting a community property interest in anything he earns, too.

21   That's the way marriage is.

22        Now without — without a finding that there's a secret

23   interest here, there can't be a concealment of an interest.  He

24   doesn't have an interest.  He didn't have an interest.  The only

25   interest he has is what he may be earning as a result of, you

1  know, these completely new events of marriage in which he's also

2  contributing his own labors to the community.

3          And if there is no retained interest, there isn't any

4  failure to — there isn't any concealment of it.  And I have to

5  find for the — for the debtor.

6          I'm not so sure, going to the other question, that

7  there's a concealment anyway, because — I mean this whole

8  concept is very hard to apply where there's no disclosure and

9  nothing is done to sort of throw creditors off the trail.  But I

10 don't want to rely on it, because I think if there was — I think

11 if there really was a secret transfer of property to somebody, a

12 legal transfer of property — let's take the case of — what was

13 the name of your case again, *Hughes*?

14         MR. BYRNE:   *Hughes* and *Lawson*.

15         THE COURT:  Yeah.  If — if the debtor there had been

16 able, without recording, to give the mother a security interest

17 that would be superior to the judgment lien — of course, she had

18 to record there to — to get priority.

19         But if there had been some sort of transfer and then

20 she hadn't really meant it, I think it would still be a

21 concealment of an interest that was intended to throw the

22 creditors off, because even if they found it then they'd have to

23 sue the third party.

24         So I'm really not going to rely on the — on whether

25 there's a concealment here are not.  I think that's kind of a

Trial:  Findings of Fact and Conclusions of Law                    8

1   difficult concept to apply.  This case isn't exactly like

2   Hughes, but I think that that isn't the difference.  The real

3   problem here is, unlike Hughes, there was no activity that

4   evinced a retained interest in the property.  That was present

5   in *Hughes*, and it's just not present here.  I think he really

6   did get rid of it.  Okay?

7           Mr. Belway, I'll do the — I'll do the form of

8   judgment.  It's pretty simple to do.  Okay?

9           MR. BYRNE:  Thank you, Your Honor.

10          MR. BELWAY:  Your Honor, thank you.

11          MR. BYRNE:  Your Honor?  For purposes of — I'll not

12  say we're going to do anything, but just for purposes of the

13  record, can we say that all the exhibits were entered in the

14  record or into the evidence?

15          THE COURT:  Well, I certainly — I overruled the

16  objection on — the part of 16.  I don't recall that there was

17  any — anything else that was objected to besides the one I dealt

18  with.  I think they're all in.

19          Mr. Belway, am I missing something?

20          MR. BELWAY:  16 was the only one, I think, that didn't

21  get —

22          THE COURT:  It was the first page of — the second

23  page —

24          MR. BELWAY:  — the second page was 16.

25          THE COURT:  — was 16.  And I overruled your objection

Trial:  Findings of Fact and Conclusions of Law                    9

1  on that.  I think I overruled your objection on another thing.

2  The foundation for everything else was pretty obvious except the

3  second page of 16.  And I'm letting that in because of the way

4  in which you've represented that you got it from the corporation

5  and their failure to bring the witness here.  Okay?

6            [COUNSEL]:  Thank you, Your Honor.

7            THE COURT:  All right.

8            THE CLERK:  All rise.

9       (Proceedings were concluded at 3:28 p.m.)

10                          —o0o—

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

State of California            )
                              )     SS.
County of San Joaquin         )


        I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

        I further certify that I am not a party to nor in any way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate No. 00124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


                              Susan Palmer
                              Palmer Reporting Services

                              Dated April 14, 2007

1  MARK D. BYRNE, ESQ., SBN 109628
2  CAROLYN N. PETTIFER, ESQ. SBN: 245810
   LAW OFFICES OF TRIANO & BYRNE
3  25 Jessie Street, 16th Floor
   San Francisco, CA 94105-2749
4  Telephone: (415) 371-8000
5  Facsimile: (415) 371-8001
   Mailbox@martinftriano.com
6
7  Attorney for Creditor Martin F. Triano

8              IN THE UNITED STATES BANKRUPTCY COURT
9
10          FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                  SAN FRANCISCO DIVISION

12  In re:                          )    Case No. 05-32929
13                                  )
    ALEXANDER POPOV,                )
14                                  )
           Debtor                   )    Chapter 7
15                                  )
16  _____)    Adv. Proc. No. 07-03104
17                                  )
    YUGEN KAISHA, Y.K.F.            )
18                                  )
           Plaintiff                )    **NOTICE OF CONTINUED HEARING**
19                                  )
                                    )    **DATE**
20         vs.                      )
    STEPHANIE DODSON,               )
21                                  )
           Defendant.               )
22                                  )    Date:  January 7, 2008
23  _____)    Time:  9.30 a.m.
                                    )    Court: Judge Carlson
24  STEPHANIE DODSON                )
                                    )
25         Counterclaimant          )
                                    )
26         vs                       )
                                    )
27  YUGEN KAISHA, Y.K.F.            )
                                    )
28         Counterdefendant         )
    _____)

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

NOTICE OF CONTINUED HEARING DATE
                                    1

1        NOTICE is hereby given that the hearing date in the above matter has been continued

2   From December 21, 2007 until January 7, 2008 at 9.30 a.m., Courtroom 23.

3

4   DATED:                                        **LAW OFFICES OF TRIANO & BYRNE**

5

6

7

8           By:___/s/___*Carolyn N. Pettifer*_____

9                 CAROLYN N. PETTIFER, ESQ.
                  Attorney for MARTIN F. TRIANO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

NOTICE OF CONTINUED HEARING DATE

2

1  MARK D. BYRNE, ESQ., SBN 109628
2  LAW OFFICES OF TRIANO & BYRNE
   25 Jessie Street, 16th Floor
3  San Francisco, CA 94105-2749
   Telephone: (415) 371-8000
4  Facsimile: (415) 371-8001
5  Mailbox@martinftriano.com

6
7                    UNITED STATES BANKRUPTCY COURT
8                    NORTHERN DISTRICT OF CALIFORNIA
9                        SAN FRANCISCO DIVISION

10
11  In re:                          )    Case No. 05-32929
                                    )
12  ALEXANDER POPOV,                )    CHAPTER 7
            Debtor.                 )
13                                  )    Adv. Proc. No. 07-03104
14                                  )
15  _____        )    **CERTIFICATE OF SERVICE**
                                    )
16                                  )
    YUGEN KAISHA, Y.K.F.,           )
17                                  )
            Plaintiff,              )
18                                  )
         vs.                        )
19                                  )
    STEPHANIE DODSON                )
20                                  )
            Defendant               )
21                                  )

22
23      I am citizen of the United States, and a resident of the County of San Francisco; I am over
24  the age of eighteen years, and not a party to the within action. My business address is 25 Jessie
    Street, 16th Floor, San Francisco, California 94105-2749.  On December 7, 2007 I served the
25  following documents:
26  ///
27  ///
28

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

                                    1

1
2
3

- ***REPLY TO YUGEN KAISHA, Y.K.F.'S OPPOSITION TO MOTION FOR INTERVENTION BY MARTIN F. TRIANO DBA LAW OFFICES OF MARTIN F. TRIANO; AND***
- ***PROOF OF SERVICE.***

4

On the parties listed, addressed as follows:

5
6
7
8

JOEL BELWAY, ESQ.
235 MONTGOMERY STREET, SUITE 668
SAN FRANCISCO, CA 94104-2910

JAMES S. MONROE, ESQ.
NIXON PEABODY LLP,
ONE EMBARCADERO CENTER, 18TH
FLOOR
SAN FRANCISCO, CA 94111

9
10      **XXX**
11
12
13

**First Class Mail:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service to **JOEL BELWAY, ESQ**. and **JAMES S. MONROE, ESQ.** the same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more one day after date of deposit for mailing an affidavit.

14
15

**Facsimile:** By transmitting a true and correct copy via facsimile electronic equipment transmission (fax) to (List names) at the fax number listed above.

16
17

**Personal Delivery:** By personally delivering the document(s) above to the person(s) listed above at the address(es) on the date set forth above.

18
19

**Personal Delivery By Messenger:** By consigning the document(s) listed above to a messenger for personal delivery to the following person(s) at the address(es) on the date set forth above.

20

**Overnight:** By placing the document(s) thereof into envelope(s) bearing the name(s) and address(es) of the person(s) to be served by Federal Express Delivery.

21
22

**STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

23      **XXX**
24

**FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25    //
26    //
27    //
28    //

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

2

1    I declare under penalty of perjury under the laws of the United States of America, that the

2    foregoing is true and correct. Executed on December 7, 2007 in San Francisco, California.

3

4    Respectfully Submitted,

                          Rithy Keo
5                         Law Offices of Triano & Byrne
                          25 Jessie Street, 16th Floor
6                         San Francisco, CA 94105

7    Dated: December 7, 2007

8                           /s/      Stacey Arriola
9                          STACEY ARRIOLA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

3

Entered on Docket
January 04, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: January 04, 2008**

_____

**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | ) Case No. 05-32929 TEC |
| | ) |
| ALEXANDER N. POPOV, | ) |
| | ) Chapter 7 |
| | ) |
|             Debtor. | ) |
| | ) |
| YUGEN KAISHA Y.K.F., | ) |
| | ) |
|             Plaintiff, | ) |
| | ) |
|    vs. | ) Adv. Proc. No. 07-3104 TC |
| | ) |
| STEPHANIE DODSON, | ) |
| | ) |
|             Defendants. | ) |
| | ) |
| STEPHANIE DODSON, | ) |
| | ) |
|           Counter-Claimant, | ) |
| | ) |
| vs. | ) |
| | ) |
| YUGEN KAISHA Y.K.F., | ) |
| | ) |
|          Counter-Defendant. | ) |

**TENTATIVE RULING REGARDING (1) YUGEN KAISHA, Y.K.F.'S MOTION TO DISMISS COUNTERCLAIM AND (2) MARTIN TRIANO'S MOTION TO INTERVENE**

The court is inclined to abstain in this action under 28 U.S.C. § 1334(c)(1) on condition that Defendant stipulate not to assert a statute-of-limitations defense to a state-court action

**TENTATIVE RULING**

-1-

1  filed on or before April 17, 2008 that raises identical claims.
2  The court believes discretionary abstention is in the interest of
3  justice because: (1) judicial economy favors the trial of YKF's
4  claim, Dodson's counterclaim, and Triano's claim in intervention in
5  a single forum; (2) YKF asserts that this court does not have
6  subject-matter jurisdiction over Dodson's counterclaim or Triano's
7  claim in intervention; (3) Dodson asserts a right to jury trial on
8  her counterclaim and this court will be unable to conduct a jury
9  trial without the consent of all parties; (4) abstention will not
10 delay the prompt administration of the bankruptcy estate because
11 the estate has no interest in the outcome of the claim asserted by
12 YKF; and (5) the YKF claim involves issues of state law as well as
13 federal law, and the counterclaim and claim in intervention involve
14 primarily, if not exclusively, state-law issues.
15                        **END OF TENTATIVE RULING**
16
17
18
19
20
21
22
23
24
25
26
27
28

**TENTATIVE RULING**

1                            **<u>Court Service List</u>**

2

3   James S. Monroe, Esq.
    Law Offices of Nixon Peabody
4   1 Embarcadero Center #1800
    San Francisco, CA 94111-3996
5
    Joel K. Belway, Esq.
6   Law Offices of Joel K. Belway
    235 Montgomery St. #668
7   San Francisco, CA 94104

8   Mark D. Byrne, Esq.
    Law Offices of Martin F. Triano
9   25 Jessie St. 16th Fl.
    San Francisco, CA 94105
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Entered on Docket
January 08, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed and Filed: January 07, 2008**

_____

**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

_____

1

2

3

4

5

6

7

8                        **UNITED STATES BANKRUPTCY COURT**

9                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | In re                              ) | Case No. 05-32929 TEC |
| 12 | ALEXANDER N. POPOV,                ) | |
| | | ) | Chapter 7 |
| 13 | | ) | |
| | Debtor.              ) | |
| 14 | _____ ) | |
| 15 | YUGEN KAISHA Y.K.F.,               ) | |
| | | ) | |
| 16 | Plaintiff,          ) | |
| | | ) | |
| 17 | vs.                          ) | Adv. Proc. No. 07-3104 TC |
| 18 | STEPHANIE DODSON,                  ) | |
| | | ) | |
| 19 | Defendant.         ) | |
| | _____ ) | |
| 20 | STEPHANIE DODSON,                  ) | |
| | | ) | |
| 21 | Counter-Claimant,   ) | |
| | vs.                          ) | |
| 22 | | ) | |
| | YUGEN KAISHA Y.K.F.,               ) | |
| 23 | | ) | |
| | Counter-Defendant. ) | |
| 24 | _____ ) | |

25           **CERTIFICATION FOR WITHDRAWAL OF REFERENCE AND ASSIGNMENT TO**
              **DISTRICT JUDGE (BANKRUPTCY LOCAL RULE 9015(2)(b))**

26

27           Plaintiff filed an action to set aside a fraudulent conveyance

under 11 U.S.C. §§ 544(b) and 548.  Defendant filed a counterclaim

28

asserting a breach of contract on which she properly demanded trial

**CERTIFICATION FOR WITHDRAWAL**
**OF REFERENCE**

-1-

1   by jury.  Defendant does not consent to trial by jury before the
2   bankruptcy court.  It appears that this court has subject-matter
3   jurisdiction over the counterclaim, and that the counterclaim
4   should not be dismissed.  It appears further that the claim and
5   counterclaim will involve consideration and proof regarding many of
6   the same facts, and that judicial economy would be furthered by
7   trying them in a single action.

8        The court therefore certifies that the reference should be
9   withdrawn and the action assigned to a District Judge pursuant to
10  Bankruptcy Local Rule 9015-2(b).

11       The court does not address whether the motion to intervene by
12  Martin Triano should be granted.

13                        **END OF CERTIFICATION**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION FOR WITHDRAWAL**
**OF REFERENCE**

-2-

1
**<u>Court Service List</u>**

2

3  James S. Monroe, Esq.
   Law Offices of Nixon Peabody
4  1 Embarcadero Center #1800
   San Francisco, CA 94111-3996
5
   Joel K. Belway, Esq.
6  Law Offices of Joel K. Belway
   235 Montgomery St. #668
7  San Francisco, CA 94104

8  Mark D. Byrne, Esq.
   Law Offices of Martin F. Triano
9  25 Jessie St. 16th Fl.
   San Francisco, CA 94105
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

Gloria L. Franklin          San Francisco Bankruptcy Court          (415) 268-2300
Clerk of Court                      235 Pine St.
                                     P.O. Box 7341
                              San Francisco, CA 94120-7341

**FILED**

JAN - 8 2008

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

Richard W. Wieking, Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

Adversary Proceeding                    Re:   Yugen Kaisha Y.K.F.  vs Dodson
07-3104 TC    Thomas E. Carlson


Dear Mr. Wieking:

[X] Enclosed please find a copy of the Order Certification For Withdrawal of Reference and Assignment To District Judge (Bankruptcy Local Rule 9015(2)(b). Included is a certified copy of the docket sheet and documents regarding subject matter counterclaim.


Please acknowledge receipt of this appeal by stamping the district court case number on a copy of this letter and return it to *United States Bankruptcy Court, San Francisco Division.*


Gloria L. Franklin, Clerk
United States Bankruptcy Court


Dated:  January 8, 2008            By: _Anna Cho-Wong_
                                       Deputy Clerk  Anna Cho-Wong