1
2
3
4
5

MARK D. BYRNE, S/B #109268
LAW OFFICES OF TRIANO & BYRNE
25 Jessie Street, 16th Floor
San Francisco, CA 94105
(415) 371-8000
(415) 371-8001 fax
Attorneys for Martin F. Triano

6

7

8         UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA

10        SAN FRANCISCO DIVISION

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| | Case No.: C-08-225-SC |
| YUGEN KAISHA, Y.K.F., | **MOTION FOR INTERVENTION** |
| | **BY MARTIN F. TRIANO** |
| Plaintiff, | **DBA LAW OFFICES OF** |
| v. | **MARTIN F. TRIANO** |
| STEPHANIE DODSON | |
| | **DATE:        April 25, 2008** |
| Defendant. | **TIME:        10:00 A.M.** |
| | **COURTROOM:   1** |

21        By this Motion for Intervention Martin F. Triano, dba Law Offices of Martin F. Triano

22   seeks to file a complaint to intervene in the adversary proceeding and for declaratory relief

23   regarding his rights and remedies in this adversary proceeding, based upon his secured interest in

24   the shares that are the subject of this adversary proceeding as evidenced by his Proof of Claim in

25   this bankruptcy action.

26        Martin F. Triano, dba Law Offices of Martin F. Triano seeks to protect its claim secured

27   by the same shares of stock which are the subject of this adversary proceeding. He should be

28   allowed to intervene in the present action to avoid the necessity of litigating his claims in an

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1    alternative forum, which could result in inconsistent rulings and which would not efficiently use
2    judicial resources. Therefore, this court should grant the application for intervention in the
3    present action.

4         This Motion for Intervention is based upon the Points and Authorities of the Declaration
5    of Mark D. Byrne, the Complaint submitted herewith, the Memorandum of Points and
6    Authorities served and filed herewith, together with such papers and records, and other evidence
7    as may presented at the Hearing on this matter.

8    Dated: 2/27/08                              LAW OFFICES OF TRIANO & BYRNE

9

10                                    By:   /s/  *Mark D. Byrne*
11                                          MARK D. BYRNE
12                                          Attorney for Martin F. Triano
                                            dba Law Office of Martin F. Triano

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

MOTION FOR INTERVENTION

1   MARK D. BYRNE, S/B #109268
    LAW OFFICES OF TRIANO & BYRNE
2   25 Jessie Street, 16th Floor
3   San Francisco, CA 94105
    (415) 371-8000
4   (415) 371-8001 fax
5   Attorneys for Martin F. Triano

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11                                    )    Case No.: C-08-225-SC
12                                    )
13  YUGEN KAISHA, Y.K.F.,             )    **NOTICE OF HEARING ON**
                                      )    **MOTION FOR INTERVENTION**
14          Plaintiff,                )    **BY MARTIN F. TRIANO**
                                      )    **DBA LAW OFFICES OF**
15  v.                                )    **MARTIN F. TRIANO**
                                      )
16  STEPHANIE DODSON,                 )
17                                    )    **DATE:          April 25, 2008**
            Defendant.                )    **TIME:          10:00 A.M.**
18                                    )    **COURTROOM:     1**
19  _____ )

20          NOTICE IS HEREBY GIVEN TO James Monroe, Esq. of Nixon Peabody LLP, counsel

21  for Yugen Kaisha (YKF), Joel Belway, counsel for Stephanie Dodson that the Law Offices of

22  Triano & Byrne, on behalf of Martin F. Triano dba Law Offices of Martin F. Triano will bring a

23  Motion for Intervention in the instant adversary proceeding by Yugen Kaisha (YKF) at the

24  Hearing on April 25, 2007 at 10:00 a.m. at the U.S. District Court, Northern District of

25  California, San Francisco Division, in Courtroom 1.

26          By this Motion for Intervention Martin F. Triano, dba Law Offices of Martin F. Triano

27  seeks to file a complaint to intervene in the adversary proceeding and for declaratory relief

28  regarding its rights and remedies in the instant action, based upon its secured interest in the

    shares that are the subject of this action based upon the Promissory Note it holds and the Proof of

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

NOTICE OF MOTION FOR INTERVENTION

1

1  Claim it filed in the bankruptcy action from which this case originates.

2     This Motion for Intervention is based upon the Points and Authorities of the Declaration

3  of Mark D. Byrne, the Complaint submitted herewith, the Memorandum of Points and

4  Authorities served and filed herewith, together with such papers and records, and other evidence

5  as may presented at the Hearing on this matter.

6

7  Dated: 2/27/08                    LAW OFFICES OF TRIANO & BYRNE

8

9                        By:    /s/   *Mark D. Byrne*

10                              MARK D. BYRNE
                                Attorney for Martin F. Triano
11                              dba Law Office of Martin F. Triano

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

NOTICE OF MOTION FOR INTERVENTION

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12                                    )    CASE No.: C-08-225-SC
   YUGEN KAISHA, Y.K.F.,              )
13                                    )    MEMORANDUM OF POINTS AND
         Plaintiff,                   )    AUTHORITIES IN SUPPORT OF
14 v.                                 )    MOTION FOR INTERVENTION
                                      )    BY MARTIN F. TRIANO DBA LAW
15                                    )    OFFICES OF MARTIN F. TRIANO
   STEPHANIE DODSON                   )
16                                    )
17       Defendant.                   )    DATE:          April 25, 2008
                                      )    TIME:          10:00 A.M.
18                                    )    COURTROOM:     1
                                      )
19 _____)

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1

# TABLE OF CONTENTS

2  TABLE OF CONTENTS ................................................................................................ ii

3  TABLE OF AUTHORITIES ........................................................................................ iv

4  I. INTRODUCTION ...................................................................................................... 1

5  II. STATEMENT OF FACTS ........................................................................................ 1

6  III. ARGUMENT ........................................................................................................... 3

7     A. LOMT Is Entitled To Intervention Of Right In This Action And Permissive Intervention,

8     Because He Holds A Secured Interest In The Subject Shares And A Secured Proof Of Claim

9     Based On That Security. ............................................................................................... 3

10    B. LOMT Is Entitled To Intervention Of Right In This Action, Because He Has An Interest

11    Relating To The Subject Property And The Subject Transaction And Disposition Of This

12    Action Will Impair His Interest If He Is Not Allowed to Intervene ............................................ 4

13       1. This intervention is timely because it is filed at the incipient stages of this action; therefore

14       intervention of right is warranted. ............................................................................... 4

15       2. LOMT has a significantly protectable interest that is related to this action, because he has a

16       valid Proof of Claim as a secured creditor of Debtor's estate and he has a perfected interest in

17       the Shares that are the subject of this action; therefore intervention of right is warranted. ....... 5

18       3. Disposition of this action will impair and impede LOMT's ability to collect upon interest

19       in the shares and their proceeds if he is not allowed to participate in the remedial scheme in

20       this case and forced to litigate is claim in another forum; therefore intervention of right is

21       warranted ................................................................................................................ 6

22          a. LOMT's clear interest in the remedial scheme in this action, because he has a valid Proof

23          of Claim for his secured interest in the shares that are the subject of this action; therefore

24          intervention of right is warranted. .......................................................................... 7

25          b. A decision in this case could impair and impede in a practical manner LOMT's ability to

26          pursue his claim in state courts, because of the jurisprudential weight of federal rulings in

27          state court; therefore intervention of right is warranted. ............................................ 8

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

4. The current parties do not adequately represent LOMT's interest in this action, because they are pursuing only their own personal interests; therefore intervention of right is warranted..............................................................................................................9

C. LOMT Is Entitled to Permissive Intervention, Because He Filed a Timely Motion For This Intervention, Independent Grounds For Jurisdiction Exist, And Interests Of Equity And Judicial Economy Weigh In Favor Of Allowing The Action................................................10

1. Equity and judicial economy weigh in favor of allowing LOMT's intervention, because otherwise LOMT would be forced to make a future record that would consist of facts and arguments that are already before this court; therefore permissive intervention warranted. .. 10

2. LOMT timely files this Motion for Intervention based upon his secured interest in the subject Shares and his secured Proof of Claim in the related Bankruptcy Case; therefore permissive intervention proper. ..............................................................................11

IV. CONCLUSION...............................................................................................13

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1

## TABLE OF AUTHORITIES

2

3

**Cases**

4

*Donaldson v. U.S.*, 400 U.S. 517 (1971).............................................................................. 5

5

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (1983) ................................ passim

6

*See In re Bernal*, 223 B.R. 542 (9th Cir. B.A.P., 1998).................................................... 4

7

*Sierra Club v. U.S. Environmental Protection Agency*, 995 F. 2d 1478 (1993)................... 4, 5, 12

8

*Stockton v. U.S.*, 493 F.2d 1021 (9th Cir. 1971) ....................................................... 9, 10

9

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ............................ 9

10

*U. S., ex. rel. v. McGough,* 967 F.2d 1391 (1992) ............................................................ 4

11

*U.S. v. Stringfellow*, 783 F.2d 821 (1986) vacated on other grounds, 480 U.S. 370 (1987) .. 6, 7, 8

12

*Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989)....................................... 9, 10, 11, 12

13

*Wood v. Motorola, Inc.*, 587 F. Supp. 531 (D.Haw. 1984.)......................................... 11

14

*Yniguez v. State of Arizona*, 939 F.2d 727 (9th Cir. 1991) ................................... 6, 8, 9

15

16

**Statutes**

17

Federal Rules of Civil Procedure, Rule 24 ............................................................. passim

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

# I. INTRODUCTION

By this Motion for Intervention Martin F. Triano, dba Law Offices of Martin F. Triano seeks to protect its claim secured by the same shares of stock which are the subject of the instant action. Martin F. Triano should be allowed to intervene in order to preserve his related claim and avoid the necessity of litigating such claim in an alternative forum, which could result in inconsistent rulings and which would not efficiently use judicial resources. Therefore, this court should grant this Motion for Intervention.

# II. STATEMENT OF FACTS

In this Motion for Intervention ("Motion") and its accompanying complaint, Martin F. Triano dba Law Offices of Martin F. Triano ("LOMT") seeks relief from this court relating to the adversary proceeding commenced by Yugen Kaisha, Y.K.F. ("YKF") on September 5, 2007 and referred to this Court pursuant to Local Rule 9015-2 on January 8, 2008 ("Action"). *See* Declaration of Mark D. Byrne in Support of Motion for Intervention ("Byrne Declaration"), ¶¶ 2, 3, Exhibits A, B. Like YKF's complaint in this Action, LOMT's Motion for Intervention is based upon the ownership of 3,744,000 shares ("Shares") of Smart Alec's Intelligent Foods, Inc. ("Smart Alec's") by Alexander Popov ("Debtor"), which were transferred to Stephanie Dodson ("Defendant" or "Dodson") for the sum of $12,500, pursuant to the Share Purchase Agreement dated April 18, 2004 ("Transfer"). *See* Byrne Declaration, ¶ 4, Exhibit C.

Debtor filed bankruptcy on September 6, 2005 ("Bankruptcy Case") and was subsequently discharged on April 9, 2006. *See* Byrne Declaration, ¶¶ 5-6, Exhibits D, E. LOMT timely presented a proof of claim secured by the Shares for payment of attorney's fees ("Proof of Claim"), which was not objected to by any creditors. *See* Byrne Declaration, ¶¶ 7-8, 10, Exhibit E. However, upon objection by the Trustee of the Debtor's estate, E. Lynn Schoenmann ("Trustee"), to a portion of the claim, but not that portion related to the secured interest in the Shares, the Proof of Claim was upheld by this bankruptcy court and the federal district court upon appeal. *See* Byrne Declaration, ¶¶ 9, 11-12, Exhibits F, G. On or about August 1, 2007, YKF purchased from the Trustee the right to bring this Action against Defendant on behalf of the Debtor's estate. *See* Byrne Declaration, ¶¶ 13, Exhibit I. But, that right was taken subject to LOMT's interest as a secured creditor, which

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1    limitation was acknowledged by YKF and the Trustee prior to the completion of the sale. *See* Byrne

2    Declaration, ¶¶ 14-22, Exhibits J-M.

3        On April 17, 2002, while Debtor owned the Shares and was President of Smart Alec's, he

4    executed a promissory note for payment he owed to LOMT for legal services, in an amount of

5    $45,648 along with "such additional sums which may accrue from the legal services being

6    provided" by LOMT ("Note"). *See* Byrne Declaration, ¶¶ 23, 26, Exhibit N. At the same time,

7    Debtor also pledged the Shares as collateral to secure payment of the Note, and executed a

8    guarantee by Smart Alec's for performance by Debtor under the Note. *See* Byrne Declaration,

9    ¶¶ 24, 26, Exhibit N. The Note also provided for the collection of attorneys fees and costs incurred

10   in the enforcement of its terms. *See* Byrne Declaration, ¶¶ 25, 26, Exhibit N. LOMT subsequently

11   perfected his interest in the Shares by filing a UCC-1 filing statement with the California Secretary

12   of State on May 10, 2002, which filing was amended on April 20, 2007 to reflect LOMT's

13   continuing interest in the shares subsequent to the Debtor's discharge in the Bankruptcy Case. *See*

14   Byrne Declaration, ¶¶ 27-28, Exhibit O. LOMT also mailed a copy of the Note to Defendant on

15   January 27, 2003, more than one year prior to the date of the Share Purchase Agreement, to provide

16   her with notice of LOMT's secured interest. *See* Byrne Declaration, ¶¶ 29-30, Exhibit P. LOMT has

17   not received full payment on the amount set forth in the Note and secured by the Shares. *See* Byrne

18   Declaration, ¶ 25. By the terms of the promissory note, the entire balance, including principal,

19   costs, and interest, was due on April 30, 2003. *See* Byrne Declaration, ¶¶ 25, 26, Exhibit N.

20        In order to collect upon the guarantor of the Note, LOMT filed an action in state court

21   against Smart Alec's and Dodson on July 17, 2007 ("State Action"). *See* Byrne Declaration, ¶¶ 31-

22   32, Exhibit Q. Additionally, LOMT alleges that Defendant purchased and subsequently

23   encumbered the Shares without notice to LOMT in violation of the Note, due to her belief that the

24   Note is not valid and enforceable. *See* Byrne Declaration, ¶¶ 31-32, Exhibit Q. The State Action

25   therefore requests a judicial determination that the Note gives LOMT a valid, enforceable security

26   interest in the Shares and that Dodson shall not further encumber LOMT's secured interest in the

27   Shares. *See* Byrne Declaration, ¶¶ 31-32, Exhibit Q. LOMT also prays for damages against Dodson

28   for Intentional Interference with Contractual Relations. *See* Byrne Declaration, ¶¶ 31-32, Exhibit Q.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

2

1       YKF contends that (1) the Transfer actually took place in the month prior to the Bankruptcy

2   Case filing, that (2) Defendant did not receive the Transfer in good faith and that (3) she did not pay

3   a reasonably equivalent value for the Shares. *See* Byrne Declaration, ¶ 2, Exhibit A. Thus, YKF

4   argues that the Transfer is subject to set aside and the Shares are property of the Debtor's estate. *See*

5   Byrne Declaration, ¶ 2, Exhibit A.  Accordingly, YKF seeks relief preventing Defendant from

6   transferring the Shares prior to judgment in this Action, seeks to set aside the Transfer and to

7   recover the Shares on behalf of the bankruptcy estate for its own benefit. *See* Byrne Declaration,

8   ¶ 2, Exhibit A.

9       The complaint submitted by LOMT along with this Motion requests relief related to

10  YKF's Action complaint that is similar to the relief requested in LOMT's State Action. *See*

11  Byrne Declaration, ¶ 33, Exhibit R. Namely, LOMT seeks declaratory relief from the court to

12  enforce and collect upon his secured interest in the Shares, in light of the Note and Proof of

13  Claim he holds, his filed UCC statement, the Transfer of the Shares without notice to LOMT and

14  Dodson's knowledge of the Note. Therefore, LOMT seeks a confirmation from this court that

15  (a) he holds a valid Proof of Claim in the Debtor's estate by which he is entitled to recover in this

16  Action; (b) he possesses a valid security interest on the Shares and the proceeds therefrom, and as

17  such any recovery by YKF in this Action should be paid directly to LOMT; and (c) attorneys fees

18  and costs incurred herein are collectable under the Note. *See* Byrne Declaration, ¶ 33, Exhibit R.

19                     **III. ARGUMENT**

20      **A. LOMT Is Entitled To Intervention Of Right In This Action And Permissive**

21  **Intervention, Because He Holds A Secured Interest In The Subject Shares And A Secured**

22  **Proof Of Claim Based On That Security.**

23      Federal Rules of Civil Procedure, Rule 24 ("Rule 24") allows for intervention of right and

24  permissive intervention and "traditionally has received a liberal construction in favor of applicants

25  for intervention." *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (1983).

26      Rule 24 requires that for intervention of right and for permissive intervention, the intervener

27  must show that he has a related interest. The party seeking to intervene must also show that its

28  related interest will be impeded by a resolution of the instant action or that judicial economy and

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1    equity weigh in favor of the intervention. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527

2    (9th Cir. 1983); *see also Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989). In this case, YKF

3    seeks to recover on behalf of the Debtor's estate and LOMT holds a valid proof of claim in

4    Debtor's estate secured by the subject Shares. Additionally, LOMT holds a secured interest in the

5    Shares and the proceeds realized therefrom, which are the subject of this Action. LOMT's

6    Intervention will allow all claims related to the Shares to be resolved in one forum and avoid

7    LOMT chasing additional defendants in future litigation for a debt that has been secured since April

8    2002. LOMT is, therefore, entitled to intervene and participate in the present action and its remedy.

9    **B. LOMT Is Entitled To Intervention Of Right In This Action, Because He Has An**

10    **Interest Relating To The Subject Property And The Subject Transaction And Disposition Of**

11    **This Action Will Impair His Interest If He Is Not Allowed to Intervene.**

12    The Ninth Circuit has set forth a 4 part test for Intervention of Right pursuant to Rule

13    24(a)(2)[1]: "(1) the applicant's motion must be timely; (2) the applicant must assert an interest

14    relating to the property or transaction which is the subject of the action; (3) the applicant must be so

15    situated that without intervention the disposition of the action may, as a practical matter, impair or

16    impede his ability to protect that interest; and (4) the applicant's interest must be inadequately

17    represented by the other parties." *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th

18    Cir. 1983); *see also In re Bernal*, 223 B.R. 542, 547 (9th Cir. B.A.P., 1998),  As discussed below,

19    LOMT clearly meets each prong of this test, and thus, he is entitled to intervene in the present

20    action.

21    **1. This intervention is timely because it is filed at the incipient stages of this**

22    **action; therefore intervention of right is warranted.**

23    Where the "application for intervention was made at the outset of the litigation," it is

24    accepted as timely submitted. *Sierra Club v. U.S. Environmental Protection Agency*, 995 F. 2d

25    1478, 1481 (1993) (motion for intervention made "before the EPA had even filed its answer" was

26    

27    _____

28    [1] Rule 24(a)(2) provides that "the court must permit anyone to intervene who . . . (2) claims
      an interest relating to the property or transaction that is the subject of the action, and is so

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1    timely.); *see also U. S., ex. rel. v. McGough*, 967 F.2d 1391, 1394 (1992) (three part test for

2    timeliness, includes "(1) the stage of the proceeding at which the applicant seeks to intervene; (2)

3    the prejudice to the other parties; and (3) the reason for and length of the delay."). LOMT timely

4    filed its Motion at the incipient stages of this proceeding, and therefore there was no delay that

5    would cause prejudice to other parties in this Action.

6         LOMT filed his Motion for Intervention on November 14, 2007, which was

7    contemporaneous with Defendant's answer. The Action and all pending Motions were then

8    referred to this Court on January 7, 2008. Subsequently this Motion was required to be refiled in

9    this Court. LOMT thus refiles its Motion contemporaneously with Dodson's Motion to Amend

10   Answer and Motion to Dismiss for Lack of Jurisdiction and YKF's Motion to Dismiss Dodson's

11   Counterclaim. Additionally no discovery has been conducted in this matter. As such, this Action

12   continues in its incipient stage, LOMT has not delayed in bringing this Motion and there is no

13   resulting prejudice to other parties. Therefore, LOMT's Motion is timely, and he meets the first

14   test for intervention of right.

15        **2. LOMT has a significantly protectable interest that is related to this action,**

16        **because he has a valid Proof of Claim as a secured creditor of Debtor's estate and he**

17        **has a perfected interest in the Shares that are the subject of this action; therefore**

18        **intervention of right is warranted.**

19        A movant must demonstrate a "significantly protectable interest" to justify intervention in

20   a matter. *See Donaldson v. U.S.*, 400 U.S. 517, 531 (1971). "It is generally enough that the

21   interest is protectable under some law, and that there is a relationship between the legally

22   protectable interest and the claims at issue." *Sierra Club v. U.S. Environmental Protection*

23   *Agency*, 995 F. 2d 1478, 1481 (1993) (interpreting *Donaldson*'s "significantly protectable

24   interest" requirement).

25        LOMT has a related significantly protectable interest in two ways. First, LOMT holds a

26   Proof of Claim in this Bankruptcy Case as a secured creditor. YKF seeks to recover such shares

27

28   situated the disposing of the action may as a practical matter impair or impede the movant's
     ability to protect its interest, unless existing parties adequately represent their interest."

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

5

1    or their value in this Action on behalf of Debtor's estate, and he purchased the right to this action

2    subject to secured creditors' interests in the estate. Second, LOMT holds a perfected interest in

3    the Shares that are the subject of this Action. Additionally, the Shares were transferred by Debtor

4    to Defendant in violation of the Note, without notice to LOMT and without payment of proceeds

5    to LOMT, during the Transfer that is the subject of this action. As a result, LOMT's interest in

6    the Debtor's estate and his secured interest in the Shares and any proceeds realized therefrom are

7    protectable under law.

8        Therefore, pursuant to LOMT's Proof of Claim and the Note he holds, LOMT has a

9    "significantly protectable interest" that is related to this action, and he has met the second

10    requirement for intervention of right.

11        **3. Disposition of this action will impair and impede LOMT's ability to collect**

12        **upon interest in the shares and their proceeds if he is not allowed to participate in the**

13        **remedial scheme in this case and forced to litigate is claim in another forum; therefore**

14        **intervention of right is warranted.**

15        The third test for intervention of right is whether the court's decision in the principle case

16    will result in *practical* impairment of the intervenor's interest. *See Yniguez v. State of Arizona*,

17    939 F.2d 727, 735 (9th Cir. 1991). The impairment of LOMT's interest is not tempered by his

18    ability to raise related claims in state court. *See U.S. v. Stringfellow*, 783 F.2d 821, 827 (1986)

19    vacated on other grounds, 480 U.S. 370 (1987). In the present action, there are two ways in

20    which LOMT's interest can be practically impaired. First, LOMT could be excluded from the

21    remedial scheme in this action, which would prevent him from collecting as a secured creditor of

22    Debtor estate and force him to chase yet another defendant to collect upon the Note he holds.

23    Second, a judgment that is adverse to LOMT's interests could be entered by this court, providing

24    persuasive authority against LOMT in any related action. As a result, LOMT's ability to protect

25    his interest in the Shares clearly could be impaired by disposition of the present action, and thus,

26    LOMT should be allowed to intervene to participate in applicable remedial scheme and in the

27    record upon which he may have to rely. *See Sagebrush Rebellion, Inc.*, 713 F.2d at 528; *see also*

28    *Stringfellow*, 783 F.2d at 827.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1    **a. LOMT's clear interest in the remedial scheme in this action, because**
2    **he has a valid Proof of Claim for his secured interest in the shares that are the**
3    **subject of this action; therefore intervention of right is warranted.**

4    In deciding whether intervention was proper, the *Stringfellow* court considered that "the
5    disposition of the present litigation will, as a practical matter, establish the applicable remedial
6    scheme," and that the applicant "has a palpable interest in that scheme." *See Stringfellow*,   783
7    F.2d at 827.  Finding that the applicant's interests could be impaired, the court held that:

8    [w]here as here, a prospective intervenor has demonstrated a clear
9    interest in the remedial scheme, and where the prospective intervenor
10    seeks to obtain remedies that differ from those sought by the original
11    plaintiffs, it is reasonable to conclude that disposition of the litigation
12    may impair the prospective intervenor's ability to protect its interests.

13    *See Stringfellow*, 783 F.2d at 827.

14    Here, YKF seeks relief based upon the fraudulent transfer of the Shares on behalf of the
15    Debtor's estate, including possession of the Shares and payment of the actual value of the Shares
16    at the time of the Transfer. LOMT has a perfected security in the very Shares and proceeds that
17    YKF seeks to recovery, and a secured Proof of Claim in the Debtor's estate on whose behalf
18    YKF seeks to collect. Due to his interest in the subject Shares, LOMT seeks to intervene to
19    participate in the remedial scheme and collect upon his secured Proof of Claim in Debtor's estate
20    and his security interest in the Shares and their proceeds.

21    LOMT's interest in the Shares could be impaired if he is not allowed to participate in any
22    distribution on behalf of Debtor's estate, because LOMT (1) will not be able to ensure his claim
23    is preserved as against YKF and (2) he may be required to chase yet another owner of his
24    collateral. Additionally, and most importantly, LOMT will be denied any distribution YKF
25    receives on behalf of Debtor's estate, despite recognition by YKF and the Trustee that this claim
26    is subject to his interest as a secured creditor.

27    The bankruptcy court is the proper forum for this action, which concerns distribution of
28    the Debtor's estate to creditors. LOMT is a secured creditor of Defendant and Debtor based upon

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1   the subject Shares, and there is no dispute by Plaintiff that his interest is collectable. *See* Byrne

2   Declaration, ¶¶ 14-22, Exhibits J-M. The possibility that LOMT may collect upon the Note in a

3   subsequent action against YKF for the Shares or the proceeds from the Shares is outweighed by

4   the sum of the burden of such litigation and LOMT's "palpable interest in the remedial scheme"

5   in the present action. *See Stringfellow*, 783 F.2d at 825. LOMT has a palpable interest in the

6   remedial scheme in this Action which concerns distribution of the Debtor's estate, and clearly

7   could effect LOMT's interest the Shares and their proceeds.

8           As discussed above, LOMT has a clear interest in the remedial scheme of this Action

9   pursuant to the secured Note and Proof of Claim he holds. Because LOMT seeks to obtain

10  remedies that differ from those sought by YKF, it is reasonable to conclude that disposition of

11  the litigation may impair his ability to protect his interests in the subject Shares and in the

12  Debtor's estate. Therefore, LOMT has met the third requirement for intervention of right.

13                  **b. A decision in this case could impair and impede in a practical**

14                  **manner LOMT's ability to pursue his claim in state courts, because of the**

15                  **jurisprudential weight of federal rulings in state court; therefore**

16                  **intervention of right is warranted.**

17          In *Yniguez,* the Ninth Circuit held that a decision in a federal action may impair the

18  applicants' interests in a related state action, regardless of the precedential weight of that

19  judgment in state court. *See Yniguez*, 939 F.2d at 737. The issue is thus not whether the federal

20  court decision is binding upon states actions, but whether it will impair the applicants' interest in

21  that action in a *practical* manner. *See Yniguez*, 939 F.2d at 735. The court held that:

22                      jurisprudential concerns might cause other courts to find the
                        reasoning of the district court more persuasive than they may
23                      otherwise find a similar argument to be and that they might choose
                        to accept the district court's reasoning to avoid confusion, lack of
24                      finality and disrespect for law.
25
26  *See Yniguez*, 939 F.2d at 737. Thus, the *Yniguez* court found that intervention was proper when

27  an adverse federal court decision "substantially weakened" the applicants' position, and "thereby

28  impaired the interest" of the applicants. *See Yniguez*, 939 F.2d at 737.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1    Similarly, the principal claim by YKF for fraudulent conveyance is directly related to the

2    claims raised by LOMT in his pending State Action against Dodson, namely LOMT's claim that

3    Dodson "Intentionally Interfered with Contractual Relations." Both YKF's claim and LOMT's

4    claim against Dodson concern the circumstances of the Transfer of the Shares. Because the

5    claims concern the same facts and similar allegations, the persuasive weight of the federal

6    decision in state court could "cast[] a cloud" over LOMT's ability to pursue his related claims

7    against Dodson in state court, due to and jurisprudential concerns for avoiding inconsistent

8    rulings. *See Yniguez*, 939 F.2d at 737.  Thus, disposition by the bankruptcy court could likely

9    impair LOMT's interest, and he has met the third requirement for intervention of right.

10       **4. The current parties do not adequately represent LOMT's interest in this**

11       **action, because they are pursuing only their own personal interests; therefore**

12       **intervention of right is warranted.**

13    "The requirement of [Rule 24] is satisfied if the applicant shows that representation of his

14    interest 'may be' inadequate; and the burden of making that showing should be treated as

15    minimal." *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972); *see*

16    *also Sagebrush Rebellion, Inc.*, 713 F.2d at 528. In general, "to determine whether an original

17    party to a private action will adequately represent the intervenor's interests, a court considers the

18    following three factors: (1) whether the interests of the present party are such that it will make all

19    of the arguments the intervenor would make; (2) whether the present party is capable of and

20    willing to make such arguments; and (3) whether the intervenor would offer a necessary element

21    to the proceedings that the other parties would neglect." *See Sagebrush Rebellion, Inc.*, 713

22    F.2d at 528.

23    Specifically, the Ninth Circuit has held that existing litigants do not adequately represent

24    the interests of a discharged attorney who seeks to intervene to recover his fee in a related action.

25    *See Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989); *see also Stockton v. U.S.*, 493 F.2d

26    1021, 1023 (9th Cir. 1971).  LOMT's interest in this Action is based upon collection of his

27    attorney's fees pursuant to his secured Proof of Claim and his perfected security interest in the

28    Shares. As the Ninth Circuit recognized in *Venegas*, LOMT's interest in collecting his attorneys

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1   fees is clearly not represented by the current parties who have no interest in seeking recovery of

2   fees on behalf of LOMT. *See Venegas*, 867 F.2d at 530; *see also Stockton*, 493 F.2d at 1023.

3       YKF purchased the rights to the present action from the Trustee and now seeks to recover

4   on behalf of the estate for its own personal benefit. YKF's complaint makes NO mention of a

5   distribution to secured creditors, despite its previous recognition that it purchased the fraudulent

6   conveyance claim subject to LOMT's secured Proof of Claim. Likewise, Defendant, who owns

7   the subject Shares, will not represent LOMT's interest in the present action, as she seeks to retain

8   the Shares for herself. Therefore, there is no basis to believe that YKF or the Defendant would

9   make the arguments that LOMT would make or that they are willing or even capable of to make

10   those arguments. *See Sagebrush Rebellion, Inc.*, 713 F.2d at 528.

11       As a result, LOMT would clearly offer a necessary element to the proceedings that the

12   current parties would neglect. *See Sagebrush Rebellion, Inc.*, 713 F.2d at 528. Accordingly,

13   LOMT has met the "minimal burden" of demonstrating that his interests are inadequately

14   represented by the present parties, and thus, intervention is proper.

15       **C. LOMT Is Entitled to Permissive Intervention, Because He Filed a Timely Motion**

16   **For This Intervention, Independent Grounds For Jurisdiction Exist, And Interests Of Equity**

17   **And Judicial Economy Weigh In Favor Of Allowing The Action.**

18       "Rule 24(b) necessarily vests 'discretion in the district court to determine the fairest and

19   most efficient method of handling a case." *Venegas*, 867 F.2d at 530. In *Venegas*, a discharged

20   attorney sought to intervene in order to recover his fees. The court held that it was an abuse of

21   discretion for the trial court to have not allowed permissive intervention, where judicial

22   economy, equity and the related interests of claims clearly weighed in favor of such intervention.

23   *See Venegas*, 867 F.2d at 530.

24       **1. Equity and judicial economy weigh in favor of allowing LOMT's**

25             **intervention, because otherwise LOMT would be forced to make a future**

26             **record that would consist of facts and arguments that are already before this**

27             **court; therefore permissive intervention warranted.**

28   The principals relied upon in *Venegas* support LOMT's permissive intervention in this

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1    matter; "[e]quity along with judicial economy dictate that this court employ its ancillary

2    jurisdiction to hear this motion." *See Venegas*, 867 F.2d at 531. Similarly to *Venegas*, this Court

3    is "well acquainted with the underlying litigation and the parties" to LOMT's claim, and "no

4    novel or difficult issues of state law" requiring a state court decision are raised in LOMT's claim.

5    *See Venegas*, 867 F.2d at 531.

6         The *Venegas* court determined that if it mandated litigation of the attorney's claim in state

7    court "[t]he parties would be required to make a record that would consist of **facts and**

8    **arguments** that are **already before this court**." *See Venegas*, 867 F.2d at 531, (*quoting Wood v.*

9    *Motorola, Inc.*, 587 F. Supp. 531, 532-33 (D.Haw. 1984)) (emphasis added). Similarly, this

10   Action seeks to establish facts that, as discussed above, directly relate to LOMT's claim for

11   collection on his Note against the Shares and the proceeds therefrom. Also, YKF's right to bring

12   this Action was taken subject LOMT's interest as a secured creditor of Debtors' estate. Finally,

13   in the related Bankruptcy Case, it was already determined that LOMT has a valid Proof of Claim

14   as a secured creditor of Debtor's Estate, based upon the Note LOMT holds and his perfected

15   interest in the subject Shares. Therefore, based upon the interests of equity and judicial economy,

16   LOMT should be permitted to intervene in the present action, pursuant to Rule 24(b)(2).

17         **2. LOMT timely files this Motion for Intervention based upon his secured**

18         **interest in the subject Shares and his secured Proof of Claim in the related**

19         **Bankruptcy Case; therefore permissive intervention proper.**

20         A court may grant permissive intervention pursuant to Rule 24(b)(2)[1] "if three conditions

21   are met: (1) the movant must show an independent grounds for jurisdiction; (2) the motion must

22   be timely; and (3) the movant's claim or defense and the main action must have a question or law

23   and fact in common." *See Venegas*, 867 F.2d at 529. As discussed above, LOMT's claim is

24   based upon a timely Motion, his related interest in the Shares as discussed above, and his Proof

25   of Claim that was upheld in the Bankruptcy Case.

26

27   ────────────

[1] Rule 24(b)(2) provides that "the court may permit anyone to intervene who: . . . (B) has a claim

28   or defense that shares with the main action a common question of law or fact . . . (3) *Delay or*

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

POINTS AND AUTHORITIES FOR INTERVENTION

1    First, as discussed above in paragraph B 1, LOMT is timely presenting his Motion for

2    Intervention at the incipient stages of this Action, and as such, his Intervention would not unduly

3    delay or prejudice the rights of the original parties. *See Sierra Club*, 995 F. 2d at 1481 (1993).

4    Second, as discussed in paragraph B 2 above, LOMT's claim has a question of law or fact in

5    common with the present Action, because both claims concern the ownership of the Shares and

6    the proceeds therefrom, and the Transfer of those Shares between Debtor and Defendant.

7    Third, LOMT has independent jurisdiction for this Intervention based upon the Proof of

8    Claim that he submitted during the Bankruptcy Case from which this Action stems. The Proof of

9    Claim is based upon the Note held by LOMT and secured by the Shares that are the subject of

10   this Action. *See* Byrne Declaration, ¶¶ 7-8, 10, Exhibit F. No creditors objected to LOMT's Proof

11   of Claim, and this court and the district court affirmed LOMT's Proof of Claim upon objection

12   and appeal by the Trustee. *See* Byrne Declaration, ¶¶ 8-9, 11-12, Exhibits G, H.  Additionally,

13   YKF purchased its right to pursue this fraudulent conveyance claim subject to the LOMT's claim

14   as a secured creditor of Debtor's estate. *See* Byrne Declaration, ¶¶ 14-22, Exhibits J-M.  Thus,

15   LOMT's secured Proof of Claim provides independent grounds for this Court's jurisdiction.

16   Accordingly, LOMT has provided sufficient evidence to show that he is entitled to

17   permissive intervention in this matter, pursuant to *Venegas*, 867 F.2d at 529.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16ᵗʰ Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

*Prejudice*. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

POINTS AND AUTHORITIES FOR INTERVENTION

12

1

### IV. CONCLUSION

2        LOMT is entitled to intervene in this Action under both theories of Intervention of Right

3  and Permissive Intervention.  LOMT's Motion for Intervention is supported by substantial case

4  authority that provides controlling authority in favor of LOMT's intervention. It is therefore clear

5  the LOMT has satisfied the requirements for intervention, especially since Rule 24 has

6  "traditionally has received a liberal construction in favor of applicants for intervention." *See*

7  *Sagebrush Rebellion, Inc.*, 713 F.2d at 527.  Accordingly, LOMT's Motion for Intervention

8  should be granted.

9  Dated: 2/27/08                    LAW OFFICES OF TRIANO & BYRNE

10

11                        By:   */s/  Mark D. Byrne*

12                           MARK D. BYRNE

13                           Attorney for Martin F. Triano
                              dba Law Office of Martin F. Triano

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1  MARK D. BYRNE, S/B #109268
2  LAW OFFICES OF TRIANO & BYRNE
   25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5
6  Attorneys for Martin F. Triano
7
8                    UNITED STATES DISTRICT COURT
9                  NORTHERN DISTRICT OF CALIFORNIA
10                      SAN FRANCISCO DIVISION
11                                        )
                                          )        CASE No.: C-08-225-SC
12  YUGEN KAISHA, Y.K.F.,                 )
                                          )        **DECLARATION OF MARK D.**
13         Plaintiff,                     )        **BYRNE, ESQ. IN SUPPORT OF**
                                          )        **MOTION FOR INTERVENTION**
14  v.                                    )        **BY MARTIN F. TRIANO DBA LAW**
                                          )        **OFFICES OF MARTIN F. TRIANO**
15  STEPHANIE DODSON                      )
16                                        )
           Defendant.                     )        **DATE:         April 25, 2008**
17                                        )        **TIME:         10:00 A.M.**
18                                        )        **COURTROOM:     1**
19  ────────────────────────────────────)
20         I, MARK D. BYRNE, ESQ., declare:
21         1.   I am an attorney duly licensed to practice before all the courts of the State of California,
22  and I am associated with the Law Office of Triano & Byrne, previously known as the Law Offices
23  of Martin F. Triano.
24         2.   A true and correct copy of the adversary proceeding commenced by Yugen Kaisha,
25  Y.K.F. ("YKF") on September 5, 2007 is attached hereto as Exhibit A.
26         3.   A true and correct copy of the Certification of Referral entered by Hon. Thomas Carlson
27  on January 8, 2008 is attached hereto as Exhibit B.
28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

1    4.   A true and correct copy of the Share Purchase Agreement entered into between

2   Stephanie Dodson and Alexander Popov, authenticated to me by Stephanie Dodson during her

3   deposition on February 22, 2007, is attached hereto as Exhibit C.

4    5.   A true and correct copy of the Petition for bankruptcy by Alexander Popov filed on

5   September 6, 2005 is attached hereto as Exhibit D.

6    6.   A true and correct copy of the Discharge from bankruptcy for Alexander Popov entered

7   on April 9, 2006 is attached hereto as Exhibit E.

8    7.   On or about  December 2, 2005, a Proof of Claim was timely presented by Martin F.

9   Triano dba Law Offices of Martin F. Triano ("LOMT") in the bankruptcy action from which this

10   action originated. The Proof of Claim is for payment owed by Mr. Popov for of LOMT fees for

11   legal services, and is secured by 3,744,000 shares ("Shares") of Smart Alec's Intelligent Foods, Inc.

12   ("Smart Alec's) currently owned by Stephanie Dodson.

13    8.   LOMT's Proof of Claim was not objected to by any creditors.

14    9.   A portion of LOMT's Proof of Claim, which was not related to LOMT's secured

15   interest in the Shares was objected to by the Trustee of the Debtor's estate, E. Lynn Schoenmann

16   ("Trustee"). LOMT's Proof of Claim was upheld by the bankruptcy court and by the District Court

17   upon appeal.

18    10.  A true and correct copy of the attachment to LOMT's Proof of Claim, which evidences

19   the filing of LOMT's Proof of Claim on December 2, 2005, is attached hereto as Exhibit F.

20    11.  A true and correct copy of the Bankruptcy Court ruling upholding LOMT's Proof of

21   Claim is attached hereto as Exhibit G.

22    12.  A true and correct copy of the Federal District Court ruling upholding LOMT's Proof

23   of Claim is attached hereto as Exhibit H.

24    13.  A true and correct copy of the Agreement entered into between YKF and the

25   Bankruptcy Trustee ("Agreement"), whereby YKF purchased from the Trustee the right to bring a

26   fraudulent conveyance claim against Stephanie Dodson on behalf of the bankruptcy estate of

27   Alexander Popov and the Order of the Court approving such Agreement are hereto as Exhibit I.

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF  MOTION FOR INTERVENTION
2

14.  On or about July 2, 2007, I sent a letter to James Monroe, counsel for YKF, in order to clarify that YKF did not intend that the Agreement for purchase of the fraudulent conveyance claim would allow YKF to recover on behalf of the estate free and clear of LOMT's security interest.

15.  A true and correct copy my correspondence to Mr. Monroe dated July 5, 2007, is attached hereto as Exhibit J.

16.  On or about July 5, 2007, Mr. Monroe confirmed by facsimile correspondence that the Agreement had no impact on any rights LOMT had in the Shares that are the subject of the Agreement. Mr. Monroe also confirmed that the Agreement did not allow YKF to recover on behalf of the estate of Mr. Popov free and clear of liens.

17.  A true and correct copy Mr. Monroe's facsimile correspondence dated July 5, 2007, is attached hereto as Exhibit K.

18.  On or about July 10, 2007, I sent a letter to Dennis Davis, counsel for the Trustee, in order to clarify that the Trustee did not intend that the Agreement for Purchase of the fraudulent conveyance claim would allow YKF to recover on behalf of the estate free and clear of LOMT's security interest.

19.  A true and correct copy my correspondence to Mr. Davis dated July 10, 2007, is attached hereto as Exhibit L.

20.  On or about, July 11, 2007, I spoke with Mr. Davis and confirmed with him that the Agreement for the purchase of the fraudulent conveyance claim does not transfer the fraudulent conveyance claim free and clear of liens, and the claim would be taken subject to LOMT's interest in the subject Shares.

21.  Then on July 12, 2007, I wrote a letter to Mr. Davis confirming our telephone conversation. I received no objection to such correspondence from counsel for the Trustee.

22.  A true and correct copy my correspondence to Mr. Davis dated July 12, 2007, is attached hereto as Exhibit M.

23.  On April 17, 2002, while Mr. Popov owned the 3,744,000 Shares of Smart Alec's and was President of Smart Alec's, he executed a promissory note for payment of legal services

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF  MOTION FOR INTERVENTION
3

1   performed by LOMT, in an amount of $45,648 along with "such additional sums which may accrue

2   from the legal services being provided" ("Note").

3       24.  On April 17, 2002, Mr. Popov pledged the 3,744,000 Shares of Smart Alec's that he

4   then owned as collateral to secure payment of the Note, and he executed a Guarantee by Smart

5   Alec's for performance under the Note.

6       25.  The Note provided for the collection of attorneys fees and costs incurred in the

7   enforcement of its terms. By the terms of the promissory note, the entire balance, including

8   principal, costs, and interest, was due on April 30, 2003. LOMT has not received full payment on

9   the amount set forth in the Note and secured by the Shares.

10      26.  A true and correct copy of the Promissory Note and the Guarantee entered into by Mr.

11  Popov is attached hereto as Exhibit N.

12      27.  LOMT's interest in the Shares was subsequently perfected by filing a UCC-1 filing

13  statement with the California Secretary of State on May 10, 2002, which filing was amended on

14  April 20, 2007 to reflect LOMT's continuing interest in the Shares subsequent to the Debtor's

15  discharge in the Bankruptcy Action.

16      28.  A true and correct copy of the UCC Statements I filed with California Secretary of

17  State is attached hereto as Exhibit O.

18      29.  A copy of the Note to was mailed to Ms. Dodson on January 27, 2003 to provide notice

19  of LOMT's secured interest.

20      30.  A true and correct copy of the letter that was sent to Dodson enclosing the Note is

21  attached hereto as Exhibit P.

22      31.  LOMT filed an action in state court against Dodson and Smart Alec's on July 17, 2007

23  ("State Action") based upon the Guarantee by Smart Alec's and the Note executed by Mr. Popov on

24  April 17, 2002.

25      32.  A true and correct copy of the Complaint in the State Action is attached hereto as

26  Exhibit Q.

27      33.  A true and correct copy of the Complaint that I intend to file on behalf of LOMT

28  requesting declaratory relief in this matter is attached hereto as Exhibit R.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF MOTION FOR INTERVENTION
4

1   The foregoing is within my personal knowledge and if called to testify, I would relate the

2   same information. I declare under penalty of perjury under the laws of the State of California that

3   the foregoing is true and correct.

4   Dated: 2/27/08                    LAW OFFICES OF TRIANO & BYRNE

5

6                          By:   /s/  *Mark D. Byrne*

7                                MARK D. BYRNE
                                 Attorney for Martin F. Triano
8                                dba Law Office of Martin F. Triano

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

BYRNE DECLARATION IN SUPPORT OF  MOTION FOR INTERVENTION
5

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE (415) 371-8001

# Exhibit A

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Yugen Kaisha, Y.K.F. | DEFENDANTS<br><br>Stephanie Dodson |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>James S. Monroe (State Bar No. 102328)<br>Nixon Peabody LLP, One Embarcadero Center, 18th Floor<br>San Francisco, CA 94111; Telephone: (415) 984-8200 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   ☑ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor   □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor   ☑ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**Complaint to avoid and recover fraudulent transfer of corporate stock by debtor to defendant and injunctive relief. 11 U.S.C. §§ 544(b)(1), 548 & 550.**

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- □ 11-Recovery of money/property – §542 turnover of property
- □ 12-Recovery of money/property – §547 preference
- ☑ 13-Recovery of money/property – §548 fraudulent transfer
- ☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- □ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- □ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- □ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- □ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- □ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- □ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- □ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- □ 61-Dischargeability - §523(a)(5), domestic support
- □ 68-Dischargeability - §523(a)(6), willful and malicious injury
- □ 63-Dischargeability - §523(a)(8), student loan
- □ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- □ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- □ 71-Injunctive relief – imposition of stay
- ☑ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- □ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- □ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- □ 01-Determination of removed claim or cause

**Other**
- □ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- □ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ **According to proof** |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR    Alexander N. Popov | BANKRUPTCY CASE NO.    **05-32929** | |
| DISTRICT IN WHICH CASE IS PENDING<br>**Northern District of California** | DIVISION OFFICE<br>**San Francisco** | NAME OF JUDGE<br>**Thomas E. Carlson** |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)    **Nixon Peabody LLP**<br><br>**By:  /s/ James S. Monroe** | | |
| DATE    **September 5, 2007** | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>**James S. Monroe** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B 250B (CANB)

# UNITED STATES BANKRUPTCY COURT

NORTHERN     DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re ALEXANDER N. POPOV | | Bankruptcy Case No. |
| | Debtor | 05-32929 |
| YUGEN KAISHA, Y.K.F. | | |
| | | Adversary Proceeding No. |
| STEPHANIE DODSON | Plaintiff | |
| | Defendant | |

## SUMMONS AND NOTICE OF STATUS CONFERENCE
### IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

> Address of Clerk
> United States Bankruptcy Court
> 235 Pine Street
> San Francisco, CA 94104-2701

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> Name and Address of Plaintiff's Attorney
> James S. Monroe Esq. (SBN 102328)
> Nixon Peabody LLP
> One Embarcadero Center, Suite 1800
> San Francisco, CA 94120

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a status conference of the proceeding commenced by the filing of the complaint will be held at the following time and place.

| Address | Room |
|---|---|
| United States Bankruptcy Court | 23 |
| Honorable Judge Thomas E. Carlson | |
| 235 Pine Street | Date and Time |
| San Francisco, CA 94120 | |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT. PLAINTIFF SHALL PROMPTLY SERVE A COPY OF THE BANKRUPTCY DISPUTE RESOLUTION PROGRAM INFORMATION SHEET ON ALL PARTIES. A COPY OF THE INFORMATION SHEET IS AVAILABLE ON THE COURT'S WEB SITE AT WWW.CANB.USCOURTS.GOV, AND THE CLERK'S OFFICE.**

_____
_Clerk of the Bankruptcy Court_

_____     By: _____
_Date_                              _Deputy Clerk_

B250B

## CERTIFICATE OF SERVICE

I, _____ , certify that I am, and at all times during the service
          (name)

of process was, not less than 18 years of age and not a party to the matter concerning which service of
process was made.  I further certify that the service of this summons and a copy of the complaint was made

_____ by:
          (date)

___ Mail Service:  Regular, first-class United States mail, postage fully pre-paid, addressed to:



___ Personal Service:  By leaving the process with defendant or with an officer or agent of defendant at:



___ Residence Service:  By leaving the process with the following adult at:



___ Publication:  The defendant was served as follows: [Describe briefly]:



___ State Law:  The defendant was served pursuant to the laws of the State of _____ ,
as follows: [Describe briefly]                                                      (name of state)



Under penalty of perjury, I declare that the foregoing is true and correct.

_____          _____
          Date                                          Signature

| Print Name | | |
|---|---|---|
| Business Address | | |
| City | State | Zip |

1  James S. Monroe, Esq. (State Bar Number: 102328)
   Gregory E. Schopf (State Bar Number: 122862)
2  NIXON PEABODY LLP
   One Embarcadero Center, Suite 1800
3  San Francisco, CA 94111-3996
   Telephone: (415) 984-8200
4  Facsimile: (415) 984-8300
   E-mail: jmonroe@nixonpeabody.com
5
6  Attorneys for Plaintiff, Yugen Kaisha, Y.K.F.

7

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12 In re:                              Case No. 05-32929

13 ALEXANDER N. POPOV,                 Chapter 7

14                    Debtor.

15

16 YUGEN KAISHA, Y.K.F.,               Adv. Pro. No.:

17                    Plaintiff,

18         v.                          **COMPLAINT TO AVOID AND RECOVER
                                       FRAUDULENT TRANSFER AND FOR
19 STEPHANIE DODSON,                   INJUNCTIVE RELIEF**

20                    Defendant.

21

22     YUGEN KAISHA, Y.K.F., a Japanese corporation (the "Plaintiff"), alleges that:

23                        **JURISDICTION AND VENUE**

24     1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

25     2.     This adversary proceeding is brought pursuant to Rule 7001, *et seq.* of the Federal

26 Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544(b)(1), 548 and 550.

27

28
   COMPLAINT TO AVOID AND RECOVER FRAUDULENT
   TRANSFER AND FOR INJUNCTIVE RELIEF;                              10714326.1
   CASE NO. 05-32929

3.     Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with the above-captioned case under 11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code"), which is pending in this District.

4.     This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(H).

## PARTIES AND BACKGROUND FACTS

5.     On September 6, 2005 (the "Petition Date") Alexander N. Popov (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

6.     Thereafter, E. Lynn Schoenmann (the "Trustee") became the duly appointed Chapter 7 Trustee to administer the Debtor's bankruptcy estate (the "Estate").

7.     Prior to the filing of the Bankruptcy Case, the Debtor was the owner of record of 3,744,000 shares of common stock (the "Shares") of Smart Alec's Intelligent Food, Inc., a California corporation ("Smart Alec's").

8.     Plaintiff is informed and believes and thereon alleges that defendant Stephanie Dodson, an individual (the "Defendant"), is the spouse of the Debtor and resides at 2032 Donald Drive, Moraga, California 94556.

9.     Plaintiff is informed and believes and thereon alleges that in or about August 2005, the Debtor transferred all right, title and interest in the Shares to the Defendant.

10.    On or about August 1, 2007, Plaintiff and the Trustee entered into an Assignment Agreement, pursuant to an Order Authorizing and Approving Assignment of Personal Property to Yugen Kaisha, Y.K.F. (the "Approval Order"), entered in the Bankruptcy Case on or about July 31, 2007, whereby the Trustee sold, transferred, assigned, granted and conveyed to Plaintiff, in exchange for Plaintiff's payment of $30,000 to the Trustee and the Estate, all rights, claims, causes of action and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's purported transfer of the Shares to Defendant and/or any subsequent transferee thereof as a fraudulent transfer under any applicable law, including without limitation, Bankruptcy Code §§ 544(b), 548 and 550, and California Civil Code §§ 3439-3439.12, inclusive, and any and all right, title and interest of

COMPLAINT TO AVOID AND RECOVER FRAUDULENT      -2-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

1    the Estate in and to the Shares (the "Assigned Claims and Causes of Action"). True and correct

2    copies of the Assignment Agreement and the Approval Order are attached hereto, respectively, as

3    Exhibits 1 and 2 and incorporated herein.

4        11.    Pursuant to the Assignment Agreement and Approval Order, Plaintiff has the right,

5    *inter alia*, to enforce, sue on, settle and compromise the Assigned Claims and Causes of Action,

6    including claims under §§ 544(b)(1), 548 and 550 of the Bankruptcy Code.

7                            **CLAIMS FOR RELIEF**

8                          **FIRST CAUSE OF ACTION**
     **(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code § 548(a)(1)(A))**
9

10       12.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in

11   paragraphs 1 through 11 of this Complaint as though fully set forth herein.

12       13.    Plaintiff is informed and believes and thereon alleges that in or about August 2005 the

13   Debtor transferred all of his right, title and interest in and to the Shares to the Defendant for no

14   consideration or nominal consideration of no more than $12,500 (the "Transfer").

15       14.    Plaintiff is informed and believes and thereon alleges that the Debtor made the

16   Transfer with the actual intent to hinder, delay, or defraud all of the Debtor's then and future creditors

17   by wrongfully removing the Shares as an asset of the Debtor's Estate shortly before the Petition Date

18   to enable the Debtor and the Defendant to retain control of Smart Alec's, a valuable and profitable

19   restaurant, to the exclusion of the Debtor's unsecured creditors.

20       15.    Plaintiff is informed and believes and thereon alleges that the Defendant received the

21   Transfer with knowledge that the Debtor intended to hinder, delay, or defraud all of his then and

22   future creditors and actively participated and colluded with the Debtor in structuring and effecting the

23   Transfer with the purpose of removing the Shares from the Estate and to thereby retain control of

24   Smart Alec's to the exclusion of the Debtor's unsecured creditors.

25       16.    Plaintiff is informed and believes and thereon alleges that in furtherance of the

26   foregoing, the Debtor and the Defendant executed a Share Purchase Agreement for the Shares in or

27   about August 2005 which they backdated to April 18, 2004 to make the Transfer appear less

28   COMPLAINT TO AVOID AND RECOVER FRAUDULENT        -3-
     TRANSFER AND FOR INJUNCTIVE RELIEF;
     CASE NO. 05-32929

1    fraudulent and to establish consideration for the Transfer based upon certain prior cash transfers from

2    Defendant to the Debtor totaling $12,500 which were originally made for an unrelated purpose.  A

3    true and correct copy of the Share Purchase Agreement is attached hereto as Exhibit 3 and

4    incorporated herein by this reference.

5        17.    Defendant did not receive the Transfer in good faith and did not pay reasonably

6    equivalent value for the Transfer.

7        18.    As reflected in the Debtor's bankruptcy schedules filed in the Bankruptcy Case, there

8    are numerous general unsecured creditors of the Debtor who have allowable claims against him

9    which claims were in existence at the time of the Transfer (the "Unsecured Creditors") .

10       19.    As a proximate result of the wrongful acts of the Debtor and the Defendant, the

11   Transfer was fraudulent and must be declared null and void and set aside.

12       20.    The Transfer, to the extent it is avoided pursuant to § 548 of the Bankruptcy Code,

13   may be recovered by Plaintiff pursuant to § 550(a)(1) of the Bankruptcy Code.

14                          **SECOND CAUSE OF ACTION**
          **(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §544(b)(1)**
15                    **and California Civil Code §3439.04(a)(1))**

16       21.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in

17   paragraphs 1 through 20 of this Complaint as though fully set forth herein.

18       22.    Based upon the foregoing, the Transfer is voidable by the Unsecured Creditors under

19   California Civil Code §3439.04(a)(1) and is voidable by Plaintiff as assignee of the Trustee pursuant

20   to Bankruptcy Code §544(b)(1).

21                          **THIRD CAUSE OF ACTION**
          **(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code §548(a)(1)(B))**
22

23       23.    Pleading in the alternative, Plaintiff repeats, realleges and incorporates by reference

24   the allegations contained in paragraphs 1 through 13, 17, 18 and 20 of this Complaint as though fully

25   set forth herein.

26       24.    The Transfer was to or for the benefit of the Defendant.

27

28   COMPLAINT TO AVOID AND RECOVER FRAUDULENT          -4-
     TRANSFER AND FOR INJUNCTIVE RELIEF;
     CASE NO. 05-32929

25.    Plaintiff is informed and believes and thereon alleges that the Debtor received less than reasonably equivalent value in exchange for the Transfer.

26.    Plaintiff is informed and believes and thereon alleges that Debtor was: (1) insolvent on the date of the Transfer, or became insolvent as a result of the Transfer; and/or (ii) engaged in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital at the time of, or as a result of the Transfer.

**FOURTH CAUSE OF ACTION**
**(Avoidance and Recovery of Fraudulent Transfer under Bankruptcy Code § 544(b)(1)**
**and California Civil Code § 3439.05)**

27.    Pleading in the alternative, Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 13, 17, 18, 20 and 24 through 26 of this Complaint as though fully set forth herein.

28.    Plaintiff is informed and believes and thereon alleges that at the time of the Transfer, the Debtor was insolvent or in the alternative such Transfer rendered the Debtor insolvent.

29.    Based upon the foregoing, the Transfer is voidable by the Unsecured Creditors under California Civil Code § 3439.05 and is voidable by Plaintiff as assignee of the Trustee pursuant to Bankruptcy Code § 544(b)(1).

**FIFTH CAUSE OF ACTION**
**(Injunctive Relief under Rule 7065 of the Federal Rules of Bankruptcy Procedure and**
**California Civil Code § 3439.07)**

30.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31.    At present there is nothing to prevent the Defendant from transferring some or all of the Shares and/or interests therein to third parties and/or from secreting or dissipating any proceeds from a sale or other disposition of the Shares.

32.    Such acts, unless enjoined, will cause Plaintiff great or irreparable injury for which it has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    That the Transfer of the Shares to Defendant be set aside and declared null and void;

COMPLAINT TO AVOID AND RECOVER FRAUDULENT          -5-
TRANSFER AND FOR INJUNCTIVE RELIEF;
CASE NO. 05-32929

2. That the Defendant be required to transfer and deliver up the Shares to Plaintiff;

3. That Defendant and her representatives, attorneys, and agents be enjoined and restrained from selling, transferring, conveying, or otherwise disposing of any of the Shares or of any interest therein until Plaintiff's rights to the Shares have been fully adjudicated and that a temporary restraining order and preliminary injunction be granted to Plaintiff herein;

4. That the judgment herein be declared a lien on the Shares;

5. That an order be made declaring that the Defendant holds the Shares in trust for the Plaintiff;

6. That Defendant be required to account to Plaintiff for all profits and proceeds earned from or taken in exchange for the Shares and/or attributable to her equity interest in Smart Alec's based upon the Shares;

7. That if the Defendant has disposed of any of the Shares or any interest therein, that she be required to account to Plaintiff for the proceeds;

8. For compensatory damages according to proof;

9. For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem proper.

Dated: September 5, 2007     NIXON PEABODY LLP


           By: _/s/ James S. Monroe_
           James S. Monroe
           Attorneys for Yugen Kaisha, Y.K.F.

**EXHIBIT 1**

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (this "Agreement") is made by and between E. Lynn Schoenmann, trustee (the "Trustee") of the Chapter 7 bankruptcy estate of Alexander N. Popov, bankruptcy case number 05-32929, and Yugen Kaisha, Y.K.F., a Japanese corporation ("YKF").

## W I T N E S S E T H

WHEREAS, on September 6, 2005, Alexander N. Popov (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Bankruptcy Court") and the Trustee was thereafter duly appointed to administer the Debtor's Chapter 7 bankruptcy estate (the "Estate");

WHEREAS, prior to the filing of the Bankruptcy Case, (a) the Debtor was the owner of record of 3,744,000 shares of common stock of Smart Alec's Intelligent Food, Inc., a California corporation, (the "Shares"), and (b) the Debtor purportedly sold all of his right, title, and interest in the Shares to Stephanie Dodson ("Dodson") for $12,500; and

WHEREAS, the Trustee desires to sell to YKF, and YKF desires to purchase from the Trustee, the Assigned Property (as defined herein);

NOW, THEREFORE, in consideration of the recitals, mutual covenants and conditions contained herein, the parties agree as follows:

1.      Definitions.  The following capitalized terms shall have the meanings as set forth below:

"Assigned Property" means any and all rights, claims, causes of action and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's purported transfer of the Shares to Dodson and/or any subsequent transferee thereof as a fraudulent transfer under any applicable law, including, without limitation, Bankruptcy Code §§ 544(b), 548 and 550, and California Civil Code §§ 3439-3439.12, inclusive; and any and all right, title and interest of the Estate in and to the Shares.

"Proceeds" means whatever is recovered, collected, acquired, received, distributed or otherwise obtained on account of or with respect to the Assigned Property.

"Purchase Price" means $30,000.00.

2.      Effective Date.  This Agreement shall become effective when (a) each of the parties hereto and their counsel shall have duly executed and delivered this Agreement, and (b) the Bankruptcy Court shall have entered an order approving this Agreement  The first business day on which all of the foregoing conditions have been satisfied shall be referred to herein as the "Effective Date."

3.      Bankruptcy Court Approval.  The Trustee shall have the obligation to file and serve an appropriate motion requesting Bankruptcy Court approval of this Agreement (the "Approval Order").  The parties shall cooperate as reasonably required in seeking the Approval Order.  This Agreement is contingent upon entry of the Approval Order and, in the absence thereof, this Agreement is null and void.  In the event an appeal is taken from the Approval Order, (a) YKF shall have the sole and complete responsibility to assume any defense of the appeal and shall bear any and all attorneys' fees, costs, expenses, losses, obligations, liabilities and damages that may be incurred in connection therewith, (b) the Trustee shall have no

1

obligation to defend such appeal, and (c) this Agreement shall nonetheless become effective and bind the parties as provided in paragraph 2 hereof.

4.    Assignment and Purchase. Subject to the terms and conditions of this Agreement, the Trustee hereby agrees to sell, transfer, assign, grant and convey the Assigned Property to YKF, its successors and assigns, YKF agrees to purchase the Assigned Property from the Trustee, and YKF shall be solely entitled to exercise and enforce all rights with respect to the Assigned Property and to collect and receive any and all Proceeds.

5.    Payment. In consideration of the sale and assignment of the Assigned Property, YKF shall pay the Purchase Price to the Trustee within 2 business days after the Effective Date in immediately available funds by wire transfer to an account specified in writing by the Trustee.

6.    Representations and Warranties of Trustee. The Trustee represents and warrants that it has made no prior assignment of the Assigned Property or of any interest therein and that the Trustee is the sole owner thereof and has good title thereto, free and clear of all liens, claims and encumbrances of any kind and will transfer to YKF such title, free and clear of any liens or encumbrances of any kind.

7.    YKF's Acknowledgements. YKF acknowledges to the Trustee that except as expressly set forth in this Agreement, the Trustee does not make, and hereby disclaims any and all, representation or warranties regarding the Assigned Property. YKF acknowledges and agrees that the Assigned Property is acquired by YKF for its own account and risk and that the sale of the Assigned Property to YKF is a sale without recourse against the Trustee and/or the Estate and without obligation of the Trustee and/or the Estate to repurchase the Assigned Property under any circumstances.

8.    No Reliance; Independent Investigation. The undersigned agree that each party hereto in entering into this Agreement relies upon its own investigation and judgment in regard to all matters herein contained and that they have not relied on any representations made by the other parties, that this Agreement is made and entered into by each of the parties of its own volition, and each of the parties hereto warrants that this Agreement was made and entered into free of any duress, coercion, or undue influence from any source whatsoever.

9.    Merger. It is expressly understood and agreed that this Agreement constitutes the complete and final agreement among the parties regarding the matters herein addressed. Any and all prior negotiations, representations, understandings or agreements, whether written or oral, among the parties, relating to the subject matter of this Agreement and the facts as set forth in the recitals hereto are terminated and shall be of no further force or effect.

10.    Amendments. No amendment, modification, termination, or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by all parties hereto.

11.    Authority. Each of the parties to this Agreement has full authority and power to enter into this Agreement and this Agreement is the legal, valid and binding obligation thereof.

12.    Drafting of Agreement. The undersigned agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to any interpretation of this Agreement.

13.    Successors and Assigns. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

14.    Governing Law.  This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California, as well as any applicable United States bankruptcy law.  The Bankruptcy Court shall retain jurisdiction over any disputes regarding this Agreement or enforcement of this Agreement.

15.    Attorneys' Fees.  In the event that any legal proceeding, of any kind or nature, is brought by any party concerning the enforcement or interpretation of this Agreement, or any rights and duties hereunder, the prevailing party shall be entitled to recover its attorneys' fees and costs incurred in said proceedings.

16.    Counterparts.  This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.  Any of the parties hereto may execute this Agreement by signing any such counterparts.  Photocopies or facsimiles of executed copies of this Agreement may be treated as originals.

17.    Further Assurances.  The parties and their counsel shall execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the provisions of this Agreement.

18.    Captions.  The captions appearing at the commencement of the paragraphs hereof are descriptive only and for convenience of reference.  Should there be any conflict, or apparent conflict, between any such caption and any paragraph at the head of which it appears, the content of the paragraph shall govern the construction of this Agreement.

19.    Partial Invalidity.  If any provision of this Agreement is found to be invalid by any court, the invalidity of such provision shall not affect the validity of the remaining provisions hereof.

20.    Survival of Representations and Warranties.  The representations and warranties made by the parties herein shall survive the performance of this Agreement.

21.    Notice.  Any notice, request, demand, or other communication required or permitted hereunder will be given in writing by first-class mail, postage prepaid, to the party(ies) to be notified.  All communications will be deemed given when received.  The addresses of the parties for the purposes of such communication are:

Trustee:             E. Lynn Schoenmann
                     c/o Dennis D. Davis, Esq.
                     Goldberg, Stinnett, Meyers & Davis
                     44 Montgomery Street, Suite 2900
                     San Francisco, CA 94104

YKF:                 Yugen Kaisha, Y.K.F.
                     c/o James S. Monroe, Esq.
                     Nixon Peabody LLP
                     One Embarcadero Center
                     San Francisco, CA 94111

A party may change his or her address for purposes of notice hereunder only upon written notice to the other party as provided hereinabove.

*[Signature Page Follows]*

3

02/20/2003  18:49    9096590320                    SCHOENMANN                         PAGE  01/01

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be duly executed on the date appearing opposite their names hereinbelow.

Dated: _August 1, 2007_

E. Lynn Schoenmann, Trustee of the Chapter 7 Bankruptcy Estate of Alexander N. Popov

By: _____
    E. Lynn Schoenmann

Dated: _June 8, 2007_

YUGEN KAISHA, Y.K.F.

By: _____

Its: _President_

APPROVED AS TO FORM AND CONTENT:

Nixon Peabody LLP

By: _____
James S. Monroe, Esq.
Attorneys for Yugen Kaisha, Y.K.F.

Goldberg, Stinnett, Meyers & Davis

By: _____
Dennis D. Davis, Esq.
Attorneys for E. Lynn Schoenmann, Trustee

4

10333089.1

# EXHIBIT 2

**Entered on Docket**
**July 31, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA  94104
   Telephone: (415) 362-5045
4  Facsimile:  (415) 362-2392
   Email:  ddavis@gsmdllaw.com
5
   Attorneys for E. Lynn Schoenmann, Trustee
6

**Signed and Filed: July 30, 2007**

THOMAS E. CARLSON
U.S. Bankruptcy Judge

7

8          IN THE UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12  In re:                              Case No. 05-32929

13  ALEXANDER POPOV,                    Chapter 7

14

15               Debtor.

16

17

18          **ORDER AUTHORIZING AND APPROVING ASSIGNMENT**
            **OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.**

19        Upon the Application for Entry of Order by Default Authorizing Sale of Personal Property to

20  Yugen Kaisha, Y.K.F. for an order authorizing and approving the Trustee's assignment of personal

21  property to Yugen Kaisha, Y.K.F., as more fully set forth in the Notice of Trustee's Assignment of

22  Personal Property to Yugen Kaisha, Y.K.F. filed herein June 26, 2007, and the Declaration of Dennis D.

23  Davis filed in support of said application, submitted, no objections or requests having been filed or

24  served, following date and adequate notice on appropriate parties, and

25        GOOD CAUSE APPEARING THEREFOR,

26        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

27        1.    The Trustee's application is granted in its entirety.

28        2.    On the terms set forth in the notice, this Court hereby authorizes and approves the

                                   -1-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

1  Trustee's assignment of personal property to Yugen Kaisha, Y.K.F., pursuant to the terms of the

2  Assignment Agreement, a copy of which is attached as Exhibit "B" to the Declaration of Dennis Davis

3  filed in support of the application.

4      3.    The Trustee is authorized to take any and all reasonably necessary steps to effectuate the

5  terms of this order.

6

7

8  **END OF ORDER**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

**COURT SERVICE LIST**

Dennis D. Davis, Esq.
Goldberg, Stinnett, Meyers & Davis
44 Montgomery Street, Suite 2900
San Francisco, CA 94104

Office of the U.S. Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104-3401

E. Lynn Schoenmann
800 Powell Street
San Francisco, CA 94108

James S. Monroe, Esq.
Nixon Peabody LLP
Two Embarcadero Center, Suite 2700
San Francisco, CA 94111-3996

10206/113282.DOC

**EXHIBIT 3**

Aug 31 05 12:28p    Alexander Popov                        415-474-4554              p.1

# Share Purchase Agreement

**THIS SHARE PURCHASE AGREEMENT** (the "Agreement") made and entered into this 18th day of April, 2004 (the "Execution Date"),

**BETWEEN**

Alex Popov of 2015 Laguna Street #8, San Francisco, CA 94115
(the "Seller")

and

Stephanie Dodson of 5728 Owens Dr. 206  Pleasanton, CA 94588
(the "Purchaser")

**BACKGROUND**

A. The Seller is the owner of record of an aggregate of 3,744,000 common shares (the "Shares") of Smart Alec's Intelligent Food, Inc. (the "Corporation").

B. The Seller desires to sell the Shares to the Purchaser and the Purchaser desires to purchase the Shares from the Seller.

**IN CONSIDERATION OF** and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Agreement agree as follows:

Purchase and Sale

1. The Seller agrees to sell and the Purchaser agrees to purchase all the residual rights, title, interest, and property of the Seller in the Shares for an aggregate purchase price of Twelve Thousand Five Hundred Dollars ($12,500) (the "Purchase Price").

2. Payments by the Purchaser shall be as follows:

    a. $5,000 payable at the signing of this Agreement.

    b. $5,000 payable before December 31st, 2004

    c. $2,500 payable before March 31st, 2005

*Share Purchase Agreement*                                        *Page 1/3*



Representations and Warranties of the Seller

3. The Seller warrants and represents to the Purchaser as follows:
   a. The Shares are currently pledged as collateral for repayment of $775,000 to the YKF Corporation.
   b. The Purchaser is purchasing the residual value of the rights, title, and interest in the Shares after YKF is repaid a total of $775,000 by December 31st, 2008.
   c. The repayment of $775,000 must occur before December 31st, 2008 or YKF may foreclose on the Shares.
   d. Upon repayment to YKF, Purchaser shall become the rightful owner of the Shares and take immediate possession of the Shares.
   e. Upon repayment to YKF, Purchaser shall be sole shareholder of the Corporation.
   f. Except as provided in the incorporating documents of the Corporation or as indicated on the face of the certificates for the Shares, the Purchaser would not be prevented or restricted in any way from re-selling the Shares in the future.

Miscellaneous.

(a) The parties agree to cooperate with each other in executing and delivering all further documents necessary to effect the purchase and sale of the Shares, and both parties agree to cooperate with the other for purposes of effecting the other terms of this Agreement.

(b) All representations, warranties, covenants, and obligations in this Agreement will survive the Closing.

(c) The parties agree that the terms of this Agreement, and the discussion relating to this Agreement, are and shall remain privileged and confidential as between the parties.

(d) This Agreement contains the entire agreement of the parties hereto with respect to the purchase of the Shares and the other transactions contemplated herein, and supersedes all prior understandings and agreements of the parties with respect to the subject matters hereof.

(e) All notices, requests, consents and other communications required or permitted hereunder shall be in writing and shall be hand delivered or mailed postage prepaid by registered or certified mail or transmitted by facsimile transmission (with immediate telephonic confirmation thereafter),

*Share Purchase Agreement*                                              *Page 2/3*

IN WITNESS WHEREOF, each of the undersigned has duly executed, or caused its authorized officer to duly execute, this Agreement as of the date first set forth above.

_____            4-18-04
Alex Popov                                  Date:
2015 Laguna Street #8
San Francisco, CA 94115


_____            4-18-04
Stephanie Dodson                            Date:
5728 Owens Dr. 206
Pleasanton, CA 94588

*Share Purchase Agreement*                          *Page 3/3*



LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET, 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit B

# Share Purchase Agreement

**THIS SHARE PURCHASE AGREEMENT** (the "Agreement") made and entered into this 18th day of April, 2004 (the "Execution Date"),

**BETWEEN**

Alex Popov of 2015 Laguna Street #8, San Francisco, CA 94115
(the "Seller")

and

Stephanie Dodson of 5728 Owens Dr. 206 Pleasanton, CA 94588
(the "Purchaser")

**BACKGROUND**

    A. The Seller is the owner of record of an aggregate of 3,744,000 common shares (the "Shares") of Smart Alec's Intelligent Food, Inc. (the "Corporation").

    B. The Seller desires to sell the Shares to the Purchaser and the Purchaser desires to purchase the Shares from the Seller.

**IN CONSIDERATION OF** and as a condition of the parties entering into this Agreement and other valuable consideration, the receipt and sufficiency of which consideration is acknowledged, the parties to this Agreement agree as follows:

Purchase and Sale

1. The Seller agrees to sell and the Purchaser agrees to purchase all the residual rights, title, interest, and property of the Seller in the Shares for an aggregate purchase price of Twelve Thousand Five Hundred Dollars ($12,500) (the "Purchase Price").

2. Payments by the Purchaser shall be as follows:

    a. $5,000 payable at the signing of this Agreement.

    b. $5,000 payable before December 31st, 2004

    c. $2,500 payable before March 31st, 2005

*Share Purchase Agreement*



*Page 1/3*

Representations and Warranties of the Seller

3. The Seller warrants and represents to the Purchaser as follows:
   a. The Shares are currently pledged as collateral for repayment of $775,000 to the YKF Corporation.
   b. The Purchaser is purchasing the residual value of the rights, title, and interest in the Shares after YKF is repaid a total of $775,000 by December 31st, 2008.
   c. The repayment of $775,000 must occur before December 31st, 2008 or YKF may foreclose on the Shares.
   d. Upon repayment to YKF, Purchaser shall become the rightful owner of the Shares and take immediate possession of the Shares.
   e. Upon repayment to YKF, Purchaser shall be sole shareholder of the Corporation.
   f. Except as provided in the incorporating documents of the Corporation or as indicated on the face of the certificates for the Shares, the Purchaser would not be prevented or restricted in any way from re-selling the Shares in the future.

Miscellaneous.

(a) The parties agree to cooperate with each other in executing and delivering all further documents necessary to effect the purchase and sale of the Shares, and both parties agree to cooperate with the other for purposes of effecting the other terms of this Agreement.

(b) All representations, warranties, covenants, and obligations in this Agreement will survive the Closing.

(c) The parties agree that the terms of this Agreement, and the discussion relating to this Agreement, are and shall remain privileged and confidential as between the parties.

(d) This Agreement contains the entire agreement of the parties hereto with respect to the purchase of the Shares and the other transactions contemplated herein, and supersedes all prior understandings and agreements of the parties with respect to the subject matters hereof.

(e) All notices, requests, consents and other communications required or permitted hereunder shall be in writing and shall be hand delivered or mailed postage prepaid by registered or certified mail or transmitted by facsimile transmission (with immediate telephonic confirmation thereafter),

*Share Purchase Agreement*                                      *Page 2/3*

IN WITNESS WHEREOF, each of the undersigned has duly executed, or caused its authorized officer to duly execute, this Agreement as of the date first set forth above.


_____                    4-18-04
Alex Popov                                          Date:
2015 Laguna Street #8
San Francisco, CA 94115



_____                    4·18·04
Stephanie Dodson                                    Date:
5728 Owens Dr. 206
Pleasanton, CA 94588

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16™ FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit C

(Official Form 1) (12/03)

**Voluntary Petition**
*(This page must be completed and filed in every case)*

FORM B1, Page 2

Name of Debtor(s):

**Popov, Alexander N.**

**Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet)

Location
Where Filed: **None**

| Case Number: | Date Filed: |
|---|---|

**Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet)

Name of Debtor:
**None**

District:

| Case Number: | Date Filed: |
|---|---|
| Relationship: | Judge: |

# Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under Chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United State Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Alexander N. Popov**
Signature of Debtor          **Alexander N. Popov**

X
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

**September 6, 2005**
Date

**Signature of Attorney**

X **/s/ Joan M. Chipser**
Signature of Attorney for Debtor(s)

**Joan M. Chipser 83192**
Printed Name of Attorney for Debtor(s)

**Joan M. Chipser Attorney-At-Law**
Firm Name

**1 Green Hills Court**
Address

**Millbrae, CA 94030**

**(650) 697-1564**
Telephone Number

**September 6, 2005**
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X
Signature of Authorized Individual

Printed Name of Authorized Individual

Title of Authorized Individual

Date

**Exhibit A**
(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

Exhibit A is attached and made a part of this petition.

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X **/s/ Joan M. Chipser**                 **9/06/05**
Signature of Attorney for Debtor(s)          Date

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.
✓ No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

Printed Name of Bankruptcy Petition Preparer

Social Security Number (Required by 11 U.S.C. § 110(c).)

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X
Signature of Bankruptcy Petition Preparer

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156.

© 1993-2005 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**VOLUNTARY PETITION**

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16ᵗʰ FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit D

Form CAodsc7

**UNITED STATES BANKRUPTCY COURT**
**Northern District of California (San Francisco)**

| | |
|---|---|
| In re:<br>　Alexander N. Popov<br>　aka  Alex Popov<br>　2015 Laguna Street<br>　Apt 8<br>　San Francisco, CA 94115 | **Case Number: 05-32929 TEC 7**<br>**Chapter:  7** |
| 　　　　　　　Debtor(s) | |
| **Debtor/Joint Debtor Social Security Number(s):**<br>　xxx-xx-0001 | |

## DISCHARGE OF DEBTOR

　　It appearing that the debtor(s) is/are entitled to a discharge, **IT IS ORDERED** :
The debtor(s) is/are granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

Dated: 3/29/07　　　　　　　　By the Court:


　　　　　　　　　　　　　　　Thomas E. Carlson
　　　　　　　　　　　　　　　United States Bankruptcy Judge


**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

Doc # 53

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit E

1  MARK D. BYRNE, ESQ., SBN 109268
   LAW OFFICES OF MARTIN F. TRIANO
2  25 Ecker Square, 16th Floor
3  San Francisco, CA 94105
   Telephone: (415) 371-8000
4  Facsimile: (415) 371-8001
5  Mailbox@martinftriano.com

6  Attorney for Creditor Martin F. Triano

7
8              UNITED STATES BANKRUPTCY COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10                  SAN FRANCISCO DIVISION
11
12                                    )        Case Number: 05-32929
                                      )
13  IN RE                             )    **CHAPTER 7**
                                      )
14                                    )    **PROOF OF CLAIM ATTACHMENT**
15  ALEXANDER POPOV,                  )
                                      )
16          Debtor.                   )
17                                    )
                                      )
18                                    )
                                      )
19                                    )
                                      )
20  _____ )  _____

COMES NOW MARTIN F. TRIANO and makes the following proof of claim:

21      1.      The basis of the claim regards the following:

22          a.   The basis of the claim is set forth in the Statement of Claim which was filed in
23               arbitration before JAMS in San Francisco. A true and correct copy of such
24               arbitration statement is attached as Exhibit A. In addition, please review the
25               following information and attached documentation.
26          b.   Claimant was first retained by Debtor pursuant to an Attorney Client Fee Contract
27               and Arbitration Agreement, which was signed and returned by the Debtor on
28               October 12, 2001. A true and correct copy of the Attorney Client Fee Contract

MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 2004 FOR EXAMINATION OF DEBTOR AND PRODUCTION OF
DOCUMENTS

1    and Arbitration Agreement is attached as Exhibit B.  The nature and extent of

2    legal services provided in the Popov v. Hayashi matter is further set forth in

3    Exhibit C, which more particularly sets forth the work completed, the date work

4    was completed, and the attorney accomplishing the task.  As set forth in Exhibit

5    A, the matter proceeded through a 17 day trial, after a judgment was entered in

6    Popov's favor, providing him one half of the value of the baseball.  At the time of

7    the trial, the previous record breaking homerun baseball sold for approximately

8    $3,000,000.  The baseball subsequently sold at auction, conducted in a manner

9    against the legal advice of counsel, for the sum of only $450,000.  The total

10   amount of Attorney's fees and costs sought in representing the Debtor on this

11   matter is .

12   c.   On August 14, 2002, Claimant was again retained by the Debtor, on an emergency

13        basis, in the matter of YKF v. Popov et. al., wherein the debtor was sued for

14        fraud, among other causes of action.  The Plaintiff was seeking injunctive orders,

15        including the appointment of a receiver on the Debtor's business on an ex parte

16        basis.  An Attorney Client Fee Contract and Arbitration Agreement was

17        subsequently entered on December 31, 2002. A true and correct copy of the

18        Attorney Client Fee Contract and Arbitration Agreement is attached as Exhibit D.

19        The nature and extent of legal services provided in the YKF v. Popov et. al.,

20        matter is further set forth in Exhibit E, which more particularly sets forth the work

21        completed, the date work was completed, and the attorney accomplishing the task.

22        The total amount of Attorney's fees and costs sought in representing the Debtor

23        on this matter is $18,864.57, together with interest.

24   d.   Under the terms of the Attorney Client Fee Contract and Arbitration Agreement in

25        both of the above matters include a provision allowing the recovery of attorneys.

26        In pursuit of the claims owed, Mr. Popov had demanded mediation before BASF,

27        which was subsequently determined to be waived by the Debtor's conduct in

28        filing an action for affirmative relief.  After multiple motions and three different

1    appeals by the Debtor (which were all dismissed or rejected), the matter was
2    finally scheduled for arbitration proceedings before the Honorable Richard Patsey
3    (ret) at JAMS San Francisco. The nature and extent of attorneys fees, totaling
4    $31,350.00, earned by Jonathan Arons on behalf of the claimant is more
5    particularly set forth in Exhibit F. The nature and extent of attorneys fees earned
6    by the associates in the Law Offices of Martin F, Triano on behalf of the claimant
7    is more particularly set forth in Exhibit G. The total amount sought in this proof
8    of claim for the collection of this debt prior to the filing of the bankruptcy is
9    $_____

10    2.    The Debt was incurred beginning October 12, 2001 up until the filing of the
11    Bankruptcy. See above.

12    3.    No judgment has been obtained on any amount sought in this proof of claim.
13    Claimant did obtain a judgment for attorney's fee as costs incurred on one of the affirmative
14    actions brought by the Debtor. Such Judgment was satisfied by the Debtor prior to filing
15    Bankruptcy. No amount contained in the previous judgment has been included in this claim.

16    4.    The total value of this secured claim is $_____, which includes $_____ in
17    attorney fees and $_____ in costs, as well as $134,744.67 in additional interest accumulated at
18    the rate of 10 percent per annum from and after payment was not made on the attorneys' fees,
19    until the date of filing.

20    5.    The portion of this claim represented by the fees incurred in representing the
21    Debtor in the matter of Popov v. Hayashi is secured by one-half of the proceeds of the sale of the
22    Baseball, which were obtained as a result of the claims and causes of action brought by Claimant
23    on behalf of Mr. Popov prior to filing of Bankruptcy. Under the terms of the Attorney Client Fee
24    Contract and Arbitration Agreement attached as Exhibit B, a contractual lien exists on such
25    proceeds. At the time of the filing of the Bankruptcy, such funds were held at the Bank of
26    America. Claimant understands that the Chapter 7 Trustee presently has possession of these
27    funds.

28

a.  The entire amount of this claim, including the amount of fees incurred in representing the debtor in Popov v. Hayashi and YKF v. Popov et. al., as well as the attorney's fees and costs incurred in collecting on these matters, are all secured by the Debtor's 3,744,000 shares of stock in Smart Alecs Intelligent Foods. A copy of the promissory note and UCC-1 filing is attached hereto as Exhibit H. Please note that a portion of the promissory note was subsequently redacted so as to represent the Claimant's waiver of certain rights regarding the operation of Smart Alecs Intelligent Foods.

b.  At all times herein relevant, claimant has complied with the provisions of the Rules of Professional Responsibility 3-300, including allowing the debtor sufficient time to obtain independent legal advice prior to the execution of any agreement containing a provision of security for the claimants. Upon request, the claimant can provide written documentation and oral testimony attesting to such compliance.

c.  Please note that although the Debtor contends he has sold the shares, he admitted during his bankruptcy rule 2004 examination that the share certificates themselves are held by YKF; therefore, he has been unable to deliver the share certificates to the alleged purchaser. Please further note that claimant has filed a Complaint to Object to the Discharge of the Debtor, on the basis that the Debtor fraudulently concealed an interest in such shares

Respectfully Submitted,
Mark D. Byrne, Esq.
Law Offices of Martin F. Triano
25 Ecker Square, 16th Floor
San Francisco, CA 94105

Dated: December 2, 2005


_____/s/ Mark D. Byrne_____
MARK D. BYRNE

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET... 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE (415) 371-8001

# Exhibit F

1  MARK D. BYRNE, ESQ., SBN 109628
   LAW OFFICES OF MARTIN F. TRIANO
2  25 Ecker Square, 16th Floor
3  San Francisco, CA 94105
   Telephone: (415) 371-8000
4  Facsimile: (415) 371-8001
5  mailbox@martinftriano.com

6

7  Attorney for Creditor Martin F. Triano

8

9          IN THE UNITED STATES BANKRUPTCY COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13 | In re:                          )    Case No. 05-32929
   |                                 )    Chapter 7
14 | ALEXANDER POPOV,                )
15 |        Debtor.                  )    Date:  March 31, 2006
   |                                 )    Time:  9:30 A.M.
16 |                                 )    Place: U.S. Bankruptcy Court
17 |                                 )           235 Pine St., Courtroom 23
   |                                 )           San Francisco, CA.
18 |_____ )    Judge: Hon. Thomas E. Carlson

19

20     **ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING**
21                **TRUSTEE'S OBJECTION TO CLAIM**

22         The above-entitled matter came on regularly for Hearing on March 31, 2006 at 9:30 A.M.

23 in Department 23 before the Honorable Judge Thomas E. Carlson. Dennis Davis, Esq., appeared

24 on behalf of the Chapter 7 Trustee, E. Lynn Schoenmann, as the moving party. Mark D. Byrne,

25 Esq. appeared on behalf of the responding party, the Law Offices of Martin F. Triano. The

26 Debtor did not appear or file any response.

27

28

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING TRUSTEE'S OBJECTION
TO CLAIM

1

04/04/2006 07:51 FAX  415 362⁵⁹92        Goldberg Stinnett Meyer                      ☎001/001

1      Upon review of the pleadings, affidavits and evidence submitted by the parties, having

2   heard oral argument of the parties during the hearing as well as good cause having been

3   otherwise shown; and the Court having made its finding of fact and conclusions of law on the

4   record:

5   IT IS HEREBY ORDERED:

6          1.    The Trustee's Motion for Summary Judgment is denied.

7          2.    The Trustee's objection to Martin F. Triano dba Law Offices of Martin F. Triano's

8   claim is overruled.

9          3.    Martin F. Triano dba Law Offices of Martin F. Triano has a valid and enforceable

10  security interest in the proceeds of the Debtor's share from the sale of the baseball.

11         APPROVED AS TO FORM AND CONTENT

12  Dated:  Apr 4, 2006

13

14

15

16  Dennis Davis, Esq.
    Attorney for Chapter 7 Trustee, E. Lynn Schoenmann

17

18                          **END OF ORDER**

19

20

21

22

23

24

25

26

27

28

---

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING TRUSTEE'S OBJECTION
TO CLAIM

2

1                 <u>**COURT SERVICE LIST**</u>

2

3    <u>Attorney for Plaintiff</u>

4    Mark D. Byrne, Esq.
      Law Office of Martin F. Triano

5    25 Jessie Street
      at Ecker Square, 16th Floor

6    San Francisco, California 94105

7

8    <u>Attorney for Defendant</u>
      Joel K. Belway, Esq.

9    Law Offices of Joel K. Belway, P.C.
      235 Montgomery St. #668

10   San Francisco, California 94104

11

12   <u>Trustee</u>
      E. Lynn Schoenmann, Trustee

13   800 Powell Street
      San Francisco, California 94108

14

15   <u>Attorney for the Trustee</u>

16   Dennis D. Davis, Esq.
      Goldberg, Stinnett, Meyers & Davis

17   44 Montgomery Street, Ste. 2900
      San Francisco, California 94104

18

19   <u>U.S. Trustee</u>
      U.S. Trustee

20   235 Pine Street, Ste 850

21   San Francisco, California 94104

22

23   <u>Request for Special Notice</u>
      <u>Attorney for Y.K.F.</u>

24   James S. Monroe, Esq.
      Nixon Peabody LLP

25   Two Embarcadero Center, 27th Floor
      San Francisco, California 94111-3996

26

27

28

ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND OVERRULING TRUSTEE'S OBJECTION
TO CLAIM

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit G

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | No. C-06-2696 MMC |
| ALEXANDER POPOV, | **DECISION AFFIRMING ORDER OF BANKRUPTCY COURT** |
| Debtor | |

Before the Court is appellant Trustee E. Lynn Schoenmann's ("Trustee") appeal from the bankruptcy court's order of April 6, 2006, overruling the Trustee's objection to appellee Martin F. Triano's ("Triano") claim against the bankruptcy estate of Alexander Popov ("Popov"). Having reviewed the briefs filed by the parties, the Court rules as follows.

## BACKGROUND

### A. Proceedings in State Court

On October 7, 2001, professional baseball player Barry Bonds hit a record-setting home run. The ownership of the baseball was disputed between Popov and Patrick Hayashi ("Hayashi"). On October 12, 2001, Popov and Triano signed an Attorney-Client Fee Contract and Arbitration Agreement ("Fee Contract"), whereby Popov retained Triano to represent him in a civil action against Hayashi. The Fee Contract contains the following lien provision: "Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of Attorney's representation under this Contract. Attorney's lien

1  will be for any sums due and owing to Attorney at the conclusion of Attorney's services."

2  (Record on Appeal ("ROA") Tab 5, Ex. C at 2.)

3       On October 24, 2001, Triano filed a complaint on behalf of Popov against Hayashi in

4  the Superior Court of California, County of San Francisco, asserting various causes of

5  action and seeking recovery of the baseball. Triano represented Popov in said action until

6  May 14, 2003, after which time Popov represented himself. On June 25, 2003, the

7  baseball was sold at auction for $450,000; Popov's share was $225,000.[1]

8       After the baseball was sold, Triano filed an action to compel arbitration as to his

9  dispute with Popov over the amount of fees due Triano, and "obtained a preliminary

10  injunction prohibiting Popov from transferring or encumbering the proceeds of the sale until

11  the fee dispute is resolved." See Triano v. Popov, 2005 WL 1230766, *1 (Cal. Ct. App.

12  2005). Additionally, the state court granted Triano's motion to compel arbitration of the

13  parties' fee dispute.

14  **B. Proceedings in Bankruptcy Court**

15       On September 6, 2005, Popov filed a petition for bankruptcy pursuant to Chapter 7

16  of the Bankruptcy Code, (see ROA Tab 8 at 1), thereby automatically staying the court-

17  ordered arbitration as to the fee dispute. On December 2, 2005, Triano filed a claim

18  against the bankruptcy estate, asserting $777,356.89 as a secured claim. (See ROA Tab

19  8, Ex H at 1.) Of the total amount, Triano alleged that $473,402.65 constituted attorneys'

20  fees and costs owed in connection with Popov's action against Hayashi, and that such fees

21  and costs were, by reason of the lien provision in the Fee Contract, secured by the

22  proceeds of the baseball sale. (See id. at 4.)

23       On December 9, 2005, the Trustee filed an objection to Triano's claim, (see ROA

24  Tab 1), and, on March 2, 2006, filed a motion for summary judgment in support of the

25  objection, (see ROA Tab 6). In its motion, the Trustee argued that Triano's lien was

26

27  [1]On December 18, 2002, the state court issued a Statement of Decision, finding
   Popov and Hayashi each had "an equal and undivided interest in the ball," and ordered that
28  the ball be sold, with the proceeds to be divided equally. See Popov v. Hayashi, 2002 WL
   31833731, *8 (Cal. Superior 2002)

1 | avoidable on the ground Triano had failed to fully disclose in writing to Popov sufficient

2 | information concerning the nature and extent of the lien, and, as such, had violated Rule 3-

3 | 300 of the California State Bar Rules of Professional Conduct.[2] In his opposition to the

4 | Trustee's motion for summary judgment, Triano argued, inter alia, that the Fee Contract

5 | complied with the requirements of Rule 3-300. (See ROA Tab 4 at 11-14.)

6 | On March 31, 2006, the Bankruptcy Court conducted a hearing, and found that

7 | Triano had complied with Rule 3-300(A). (See ROA Tab 22 at 10.) Thereafter, on April 6,

8 | 2006, the Bankruptcy Court filed an order denying the Trustee's motion for summary

9 | judgment, overruling the Trustee's objection to Triano's claim, and finding "Triano has a

10 | valid and enforceable security interest in the proceeds of [Popov's] share from the sale of

11 | the baseball." (See ROA Tab 18 at 2.)[3] On April 7, 2006, the Trustee filed a timely notice

12 | of appeal. (See ROA Tab 19.)

13 | **LEGAL STANDARD**

14 | A final order of a bankruptcy court is appealable to a district court, see 28 U.S.C.

15 | § 158(a)(1); a bankruptcy court's order overruling a trustee's objection to a claim is a final

16 | order, see Siegel v. Federal Home Loan Mortg. Corp., 143 F. 3d 525, 529 (9th Cir. 1998)

17 | (holding order "allowing or disallowing" claim is "in the nature of a final judgment"). In

18 | reviewing a final order of a bankruptcy court, a district court reviews the bankruptcy court's

19 |

20 | [2]Rule 3-300 provides as follows:

21 | A member shall not . . . knowingly acquire [a] . . . security . . . interest . . .
adverse to a client, unless each of the following requirements has been

22 | satisfied:
(A) The transaction or acquisition and its terms are fair and reasonable to the

23 | client and are fully disclosed and transmitted in writing to the client in a
manner which should reasonably have been understood by the client; and

24 | (B) The client is advised in writing that the client may seek the advice of an
independent lawyer of the client's choice and is given a reasonable

25 | opportunity to seek that advice; and
(C) The client thereafter consents in writing to the terms of the transaction or

26 | the terms of the acquisition.

27 | See Cal. Rules of Prof'l Conduct 3-300.

28 | [3]The Bankruptcy Court, in effect, granted summary judgment sua sponte in favor of
Triano on the Trustee's objection. The Trustee has not challenged such procedure.

3

1 | factual findings for clear error and its conclusions of law de novo. See Diamant v.

2 | Kasparian (In re Southern Cal. Plastics, Inc.), 165 F.3d 1243, 1245 (9th Cir. 1999).

3 | ## DISCUSSION

4 |       Rule 3-300 provides that an attorney may not "acquire an ownership, possessory,

5 | security, or other pecuniary interest adverse to a client, unless," inter alia, "the transaction

6 | or acquisition and its terms" are "fully disclosed and transmitted in writing to the client in a

7 | manner which should reasonably have been understood by the client." See Cal. R. Prof.

8 | Conduct 3-300. The California Supreme Court has held that a "charging lien" is "an

9 | adverse interest within the meaning of [R]ule 3-300 and thus requires the client's informed

10 | written consent." See Fletcher v. Davis, 33 Cal. 4th 61, 69 (2004). Consequently, an

11 | attorney seeking to secure payment of hourly fees and costs by obtaining a "charging lien

12 | against a client's future judgment or recovery" must comply with the requirements of Rule

13 | 3-300. See id. at 71. If the attorney has not complied with Rule 3-300, the lien agreement

14 | is unenforceable. See id. at 72.[4]

15 |       As noted, the lien provision here at issue consists of the following language:

16 | **LIEN.** Client hereby grants Attorney a lien on any and all claims or
causes of action that are the subject of Attorney's representation under
17 | this Contract. Attorney's lien will be for any sums due and owing to
Attorney at the conclusion of Attorney's services.
18 |

19 | (See ROA Tab 5, Ex. C at 2.) The Trustee argues such language is deficient, under Rule

20 | 3-300, for three reasons: (1) Popov was not advised in the lien agreement that if the

21 | amount of the lien was later disputed, any recovery Popov obtained on his claims could be

22 | delayed pending resolution of such dispute, either by arbitration or litigation; (2) the Fee

23 | Contract does not specifically define "lien"; and (3) the lien agreement is "buried" in the Fee

24 | Contract.

25 |       As to the first argument raised by Popov, Fletcher does not address what language

26 |

27 |     [4]As noted, Popov and Triano entered into the Fee Contract in October 2001, and
Triano provided services thereunder until May 2003. Fletcher was decided in June 2004.
28 | Because Triano does not argue the holding in Fletcher is not retroactive, the Court
assumes the holding is retroactive.

4

1    in a lien agreement would satisfy the full disclosure requirement of Rule 3-300, and neither

2    of the parties has cited, nor has the Court found, any case that directly addresses the

3    issue.[5] The plain language of the Rule, however, refers to an attorney's having to fully

4    disclose the "transaction or acquisition and its terms." The information that the Trustee

5    argues should have been disclosed is not a "term" of the security interest, but, rather,

6    pertains to how the security interest might, in the future, impact the client. The concerns

7    expressed by the Trustee, specifically, how the lien agreement might impact the client in

8    the future, are addressed by subsection (B) of Rule 3-300, which requires that the attorney

9    advise the client to seek the advice of independent counsel, i.e., one who is not adverse to

10   the client with respect to creation of the charging lien, and that the attorney provide the

11   client a reasonable opportunity to seek such advice. See Rule 3-300(B).[6]

12        With respect to a definition of "lien," the Fee Contract does not, as Popov observes,

13   define such term in a glossary or otherwise. "Lien" is, however, a commonly-used term,

14   and the Trustee cites no authority that common terms must be expressly defined as a

15   predicate to enforceability under Rule 3-300, either as a general matter or under the

16   circumstances presented.[7]

17        Finally, although the Trustee describes the lien agreement as being "buried" in the

18   Fee Contract, the Trustee's characterization is not accurate. The words of the lien

19   provision are included on the second page of a four-page agreement, and are set forth in

20

---

21       [5]The lien agreement at issue in <u>Fletcher</u> was oral, <u>see</u> <u>id</u>. at 64, and, consequently,
the California Supreme Court had no occasion to consider what specific written language
22   would comply with the full disclosure requirement set forth in Rule 3-300.

23       [6]The Trustee did not contend before the Bankruptcy Court, or before this Court, that
Triano failed to comply with section (B) of Rule 3-300.

24       [7]Indeed, in an agreement Popov entered before executing the Fee Contract, by
25   which Popov borrowed money from his parents to pay for "upcoming legal expenses,"
Popov included language granting his parents a "lien" in the baseball: "Security: Borrower
26   grants Lenders a lien on Barry Bonds 73rd Home Run Baseball as security for any and all
money borrowed." (See ROA Tab 12, Ex. A to Ex. H.) Similarly, in another agreement
27   Popov entered before signing the Fee Agreement, by which Popov borrowed money from a
corporation of which he was president, Popov included language granting a "lien," as
28   follows: "Security: Borrower grants Lender a lien on any proceeds from marketing,
endorsements or sale of the 73rd Home Run Baseball." (See ROA Tab 12, Ex. B to Ex. H.)

1  the same font size as the other provisions.  Moreover, it is undisputed that Popov had

2  actual notice of the lien provision before he agreed to enter into the Fee Contract; in

3  particular, Popov discussed the provision with Triano's associate prior to agreeing to

4  execute the Fee Contract.  (See ROA Tab 12 ¶ 6.)

5                                    **CONCLUSION**

6       For the reasons stated, the order of the Bankruptcy Court overruling the Trustee's

7  objection to Triano's claim is hereby AFFIRMED.

8       **IT IS SO ORDERED.**

9

10  Dated: July 3, 2007

11                                              MAXINE M. CHESNEY
                                                United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16ᵀᴴ FLOOR
SAN FRANCISCO. CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit H

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (this "Agreement") is made by and between E. Lynn Schoenmann, trustee (the "Trustee") of the Chapter 7 bankruptcy estate of Alexander N. Popov, bankruptcy case number 05-32929, and Yugen Kaisha, Y.K.F., a Japanese corporation ("YKF").

## W I T N E S S E T H

WHEREAS, on September 6, 2005, Alexander N. Popov (the "Debtor") filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case") in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Bankruptcy Court") and the Trustee was thereafter duly appointed to administer the Debtor's Chapter 7 bankruptcy estate (the "Estate");

WHEREAS, prior to the filing of the Bankruptcy Case, (a) the Debtor was the owner of record of 3,744,000 shares of common stock of Smart Alec's Intelligent Food, Inc., a California corporation, (the "Shares"), and (b) the Debtor purportedly sold all of his right, title, and interest in the Shares to Stephanie Dodson ("Dodson") for $12,500; and

WHEREAS, the Trustee desires to sell to YKF, and YKF desires to purchase from the Trustee, the Assigned Property (as defined herein);

NOW, THEREFORE, in consideration of the recitals, mutual covenants and conditions contained herein, the parties agree as follows:

1.    Definitions.  The following capitalized terms shall have the meanings as set forth below:

"Assigned Property" means any and all rights, claims, causes of action and remedies of the Trustee and the Estate, or assertable thereby, to avoid and recover the Debtor's purported transfer of the Shares to Dodson and/or any subsequent transferee thereof as a fraudulent transfer under any applicable law, including, without limitation, Bankruptcy Code §§ 544(b), 548 and 550, and California Civil Code §§ 3439-3439.12, inclusive; and any and all right, title and interest of the Estate in and to the Shares.

"Proceeds" means whatever is recovered, collected, acquired, received, distributed or otherwise obtained on account of or with respect to the Assigned Property.

"Purchase Price" means $30,000.00.

2.    Effective Date.  This Agreement shall become effective when (a) each of the parties hereto and their counsel shall have duly executed and delivered this Agreement, and (b) the Bankruptcy Court shall have entered an order approving this Agreement  The first business day on which all of the foregoing conditions have been satisfied shall be referred to herein as the "Effective Date."

3.    Bankruptcy Court Approval.  The Trustee shall have the obligation to file and serve an appropriate motion requesting Bankruptcy Court approval of this Agreement (the "Approval Order").  The parties shall cooperate as reasonably required in seeking the Approval Order.  This Agreement is contingent upon entry of the Approval Order and, in the absence thereof, this Agreement is null and void.  In the event an appeal is taken from the Approval Order, (a) YKF shall have the sole and complete responsibility to assume any defense of the appeal and shall bear any and all attorneys' fees, costs, expenses, losses, obligations, liabilities and damages that may be incurred in connection therewith, (b) the Trustee shall have no

1

obligation to defend such appeal, and (c) this Agreement shall nonetheless become effective and bind the parties as provided in paragraph 2 hereof.

4. <u>Assignment and Purchase.</u> Subject to the terms and conditions of this Agreement, the Trustee hereby agrees to sell, transfer, assign, grant and convey the Assigned Property to YKF, its successors and assigns, YKF agrees to purchase the Assigned Property from the Trustee, and YKF shall be solely entitled to exercise and enforce all rights with respect to the Assigned Property and to collect and receive any and all Proceeds.

5. <u>Payment.</u> In consideration of the sale and assignment of the Assigned Property, YKF shall pay the Purchase Price to the Trustee within 2 business days after the Effective Date in immediately available funds by wire transfer to an account specified in writing by the Trustee.

6. <u>Representations and Warranties of Trustee</u>. The Trustee represents and warrants that it has made no prior assignment of the Assigned Property or of any interest therein and that the Trustee is the sole owner thereof and has good title thereto, free and clear of all liens, claims and encumbrances of any kind and will transfer to YKF such title, free and clear of any liens or encumbrances of any kind.

7. <u>YKF's Acknowledgements</u>. YKF acknowledges to the Trustee that except as expressly set forth in this Agreement, the Trustee does not make, and hereby disclaims any and all, representation or warranties regarding the Assigned Property. YKF acknowledges and agrees that the Assigned Property is acquired by YKF for its own account and risk and that the sale of the Assigned Property to YKF is a sale without recourse against the Trustee and/or the Estate and without obligation of the Trustee and/or the Estate to repurchase the Assigned Property under any circumstances.

8. <u>No Reliance; Independent Investigation</u>. The undersigned agree that each party hereto in entering into this Agreement relies upon its own investigation and judgment in regard to all matters herein contained and that they have not relied on any representations made by the other parties, that this Agreement is made and entered into by each of the parties of its own volition, and each of the parties hereto warrants that this Agreement was made and entered into free of any duress, coercion, or undue influence from any source whatsoever.

9. <u>Merger.</u> It is expressly understood and agreed that this Agreement constitutes the complete and final agreement among the parties regarding the matters herein addressed. Any and all prior negotiations, representations, understandings or agreements, whether written or oral, among the parties, relating to the subject matter of this Agreement and the facts as set forth in the recitals hereto are terminated and shall be of no further force or effect.

10. <u>Amendments.</u> No amendment, modification, termination, or waiver of any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by all parties hereto.

11. <u>Authority.</u> Each of the parties to this Agreement has full authority and power to enter into this Agreement and this Agreement is the legal, valid and binding obligation thereof.

12. <u>Drafting of Agreement</u>. The undersigned agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to any interpretation of this Agreement.

13. <u>Successors and Assigns.</u> This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

14.    <u>Governing Law.</u> This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California applicable to agreements made and to be performed wholly within the State of California, as well as any applicable United States bankruptcy law. The Bankruptcy Court shall retain jurisdiction over any disputes regarding this Agreement or enforcement of this Agreement.

15.    <u>Attorneys' Fees.</u> In the event that any legal proceeding, of any kind or nature, is brought by any party concerning the enforcement or interpretation of this Agreement, or any rights and duties hereunder, the prevailing party shall be entitled to recover its attorneys' fees and costs incurred in said proceedings.

16.    <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument. Any of the parties hereto may execute this Agreement by signing any such counterparts. Photocopies or facsimiles of executed copies of this Agreement may be treated as originals.

17.    <u>Further Assurances.</u> The parties and their counsel shall execute and deliver all documents and perform all further acts that may be reasonably necessary to effectuate the provisions of this Agreement.

18.    <u>Captions.</u> The captions appearing at the commencement of the paragraphs hereof are descriptive only and for convenience of reference. Should there be any conflict, or apparent conflict, between any such caption and any paragraph at the head of which it appears, the content of the paragraph shall govern the construction of this Agreement.

19.    <u>Partial Invalidity.</u> If any provision of this Agreement is found to be invalid by any court, the invalidity of such provision shall not affect the validity of the remaining provisions hereof.

20.    <u>Survival of Representations and Warranties.</u> The representations and warranties made by the parties herein shall survive the performance of this Agreement.

21.    <u>Notice.</u> Any notice, request, demand, or other communication required or permitted hereunder will be given in writing by first-class mail, postage prepaid, to the party(ies) to be notified. All communications will be deemed given when received. The addresses of the parties for the purposes of such communication are:

Trustee:                E. Lynn Schoenmann
                        c/o Dennis D. Davis, Esq.
                        Goldberg, Stinnett, Meyers & Davis
                        44 Montgomery Street, Suite 2900
                        San Francisco, CA 94104

YKF:                    Yugen Kaisha, Y.K.F.
                        c/o James S. Monroe, Esq.
                        Nixon Peabody LLP
                        One Embarcadero Center
                        San Francisco, CA 94111

A party may change his or her address for purposes of notice hereunder only upon written notice to the other party as provided hereinabove.

*[Signature Page Follows]*

3

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be duly executed on the date appearing opposite their names hereinbelow.

Dated: _Aug 1, 2007_

E. Lynn Schoenmann, Trustee of the Chapter 7 Bankruptcy Estate of Alexander N. Popov

By: _____
    E. Lynn Schoenmann

Dated: _June 8, 2007_

YUGEN KAISHA, Y.K.F.

By: _____

Its: President

APPROVED AS TO FORM AND CONTENT:

Nixon Peabody LLP

By: _____
    James S. Monroe, Esq.
    Attorneys for Yugen Kaisha, Y.K.F.

Goldberg, Stinnett, Meyers & Davis

By: _____
    Dennis D. Davis, Esq.
    Attorneys for E. Lynn Schoenmann, Trustee

4

10333089.1

Entered on Docket
July 31, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA 94104
   Telephone: (415) 362-5045
4  Facsimile: (415) 362-2392
   Email: ddavis@gsmdllaw.com
5
   Attorneys for E. Lynn Schoenmann, Trustee
6

Signed and Filed: July 30, 2007

THOMAS E. CARLSON
U.S. Bankruptcy Judge

7

8        IN THE UNITED STATES BANKRUPTCY COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  In re:                          Case No. 05-32929

13  ALEXANDER POPOV,                Chapter 7

14

15              Debtor.

16

17

18        ORDER AUTHORIZING AND APPROVING ASSIGNMENT
          OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
19  Upon the Application for Entry of Order by Default Authorizing Sale of Personal Property to

20  Yugen Kaisha, Y.K.F. for an order authorizing and approving the Trustee's assignment of personal

21  property to Yugen Kaisha, Y.K.F., as more fully set forth in the Notice of Trustee's Assignment of

22  Personal Property to Yugen Kaisha, Y.K.F. filed herein June 26, 2007, and the Declaration of Dennis D.

23  Davis filed in support of said application, submitted, no objections or requests having been filed or

24  served, following date and adequate notice on appropriate parties, and

25        GOOD CAUSE APPEARING THEREFOR,

26        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

27        1.    The Trustee's application is granted in its entirety.

28        2.    On the terms set forth in the notice, this Court hereby authorizes and approves the

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC
                          -1-

1    Trustee's assignment of personal property to Yugen Kaisha, Y.K.F., pursuant to the terms of the

2    Assignment Agreement, a copy of which is attached as Exhibit "B" to the Declaration of Dennis Davis

3    filed in support of the application.

4         3.      The Trustee is authorized to take any and all reasonably necessary steps to effectuate the

5    terms of this order.

6

7

8                              **END OF ORDER**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

ORDER AUTHORIZING AND APPROVING ASSIGNMENT
OF PERSONAL PROPERTY TO YUGEN KAISHA, Y.K.F.
113282.DOC

1

2

**COURT SERVICE LIST**

3

4   Dennis D. Davis, Esq.
    Goldberg, Stinnett, Meyers & Davis
    44 Montgomery Street, Suite 2900
5   San Francisco, CA  94104

6

7   Office of the U.S. Trustee
    235 Pine Street, Suite 700
    San Francisco, CA  94104-3401
8

9   E. Lynn Schoenmann
    800 Powell Street
10  San Francisco, CA  94108

11

12  James S. Monroe, Esq.
    Nixon Peabody LLP
13  Two Embarcadero Center, Suite 2700
    San Francisco, CA  94111-3996
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10206/113282.DOC

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit I

MARTIN F. TRIANO
MARK D. BYRNE
CAROLYN N. PETTIFER
Attorneys at Law

LAW OFFICES

# TRIANO & BYRNE

25 JESSIE STREET, 16TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2749

ALAN H. DAVIDSON (1931-1999)

www.martinftriano.com
mailbox@martinftriano.com

TELEPHONE (415) 371-8000

FACSIMILE (415) 371-8001

Our File No.: 1929

July 2, 2007

## VIA FACSIMILE AND U.S. MAIL

James Monroe, Esq.
Nixon Peabody, LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3996

> **Re:**   *In re Alexander Popov, Debtor*
> *Chapter 7 Case Number: 05-32929*

Dear Mr. Monroe:

I am writing this letter to you with the understanding that you continue to represent YKF, as initially noted in your Request for Special Notice and YKF's Proof of Claim. This letter will follow receipt of a Notice of Trustee's Assignment of Personal Property to Yugen Kaisha, Y.K.F.

According to the Notice provided by Dennis Davis, as Trustee for the above debtor, YKF is purchasing "all of the estate's rights, claims, causes of action and remedies to avoid and recover the debtor's purported transfer of shares of common stock of Smart Alec's Intelligent Food, Inc. to Stephanie Dodson and any subsequent transferee…" The notice further provides that the Trustee in not pursuing the fraudulent transfer action, and is selling the right to such actions to YKF for $30,000, as a business decision because the shares are subject to a pre-petition lien in favor of YKF.

In light of the foregoing information, I request clarification from YKF in regard to two matters. First, as you know, the Law Offices of Martin Triano also possesses a security interest in the same shares of stock. Conceivably, one of the remedies sought by YKF in "the estate's rights, claims, causes of action and remedies" may include the recovery of the shares of stock in Smart Alec's Intelligent Foods. Notably, the Trustee's Notice does not include any notice that such property is being sold "free and clear of liens." As a result, I am presuming that, in the event that that YKF should acquire the shares, such shares would remain subject to our lien. Please clarify if you agree with this understanding.

Secondly, I am puzzled in regard to the Trustee's statement that the sale of the shares to YKF represented a business decision because of YKF's pre-bankruptcy filing lien in such stock. According to the testimony of Stephanie Dodson during the objection to discharge proceedings against Mr. Popov, YKF commenced foreclosure proceedings

Letter to James Monroe, Esq.
July 2, 2007
Page 2 of 2

earlier this year which resulted in YKF's lien being paid off in its entirety. Is this correct? Assuming this is correct, in view of YKF no longer possessing any lien on such shares, do you know why the Trustee made the business decision noted above to sell such actions for only $30,000 to YKF?   Moreover, after receiving payment in full for its debt, does YKF continue to have any interest in Smart Alecs?  Was YKF obligated to make such purchase as part of an agreement for settlement with Smart Alec's and Stephanie Dodson?  Do you intend to pursue a fraudulent transfer action assuming the Bankruptcy Court approves the transfer from the Trustee?

        In view of our required deadline to object if necessary to the proposed action, please respond no later than July 6, 2007. If you have any questions, or wish to discuss this matter, please do not hesitate to telephone.

                            Very truly yours,
                            **LAW OFFICES OF TRIANO & BYRNE**


                            MARK D. BYRNE, ESQ.

Cc:    Jonathan Arons, Esq.
       Dan Hager, Esq.
       Robert Roth, Esq.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit J

## Nixon Peabody LLP

Attorneys at Law

One Embarcadero Center
Suite 1800
San Francisco, California 94111-3996
(415) 984-8200

Fax: (415) 984-8300

**PRIVILEGE AND CONFIDENTIALITY NOTICE**
The information in this fax is intended for the named recipients only. It contains privileged and confidential matter. If you have received this fax in error, please notify us immediately by a collect telephone call to (415) 984-8200 and return the original to the sender by mail. We will reimburse you for postage. Do not disclose the contents to anyone. Thank you.

# FAX

| To: | Company: | Fax #: | Telephone #: |
|---|---|---|---|
| 1) Mark D. Bryne, Esq. | Law Offices of Martin F. Triano | (415) 371-8001 | (415) 371-8000 |
| 2) | | | |
| 3) | | | |
| 4) | | | |
| 5) | | | |

INTERNATIONAL PHONE NUMBERS MUST INCLUDE COUNTRY & CITY CODE. SEE LOCAL WHITE PAGES FOR CODES NEEDED

| From: James S. Monroe | Date: July 5, 2007 | No. of Pages: 1 (including this page) | |
|---|---|---|---|

Comments:

Re:  Chapter 7 of Alexander Popov , Case No. 05-32929

In response to your letter of July 2nd:

1. We agree that the proposed sale to YKF has no impact on any lien rights that your firm may have against the shares and does not purport to be "free and clear of liens";

2. You are correct that YKF's lien has now been paid off. However, as I understand it, the majority of the payoff was funded by a loan from Summit Bank which took a replacement 1st lien in the shares;

3. YKF has no present interest in Smart Alec's;

4. YKF was not obligated to make the purchase offer to the Trustee; and

5. YKF intends to pursue the fraudulent conveyance action if the sale is approved.

| o First Class Mail | o Overnight Mail | Original of the transmitted document will be sent by:<br>o Hand Delivery | o This transmission will be the only form of delivery of this document |
|---|---|---|---|

**IF YOU DO NOT RECEIVE ALL OF THESE PAGES, PLEASE CONTACT THE FAX ADMINISTRATOR AS SOON AS POSSIBLE AT: (415) 984-8200.  THANK YOU.**

CONFIRMATION: DATE SENT _____ TIME _____ BY _____

| INTEROFFICE TO: | o Albany | o Boston | o Buffalo | o Hartford | o Long Island | o Los Angeles |
|---|---|---|---|---|---|---|
| | o Manchester | o New York City | o Northern Virginia | o Palm Beach Gardens | o Philadelphia | o Providence |
| | o Rochester | o San Francisco | o Washington | | | |

| To: | Company: | Fax #: | Telephone #: |
|---|---|---|---|
| 1) Mark D. Bryne, Esq. | Law Offices of Martin F. Triano | (415) 371-8001 | (415) 371-8000 |

INTERNATIONAL PHONE NUMBERS MUST INCLUDE COUNTRY & CITY CODE. SEE LOCAL WHITE PAGES FOR CODES NEEDED

| From: James S. Monroe | Date: | No. of Pages: 1 (including this page) | Client/Matter: 031405/6 |
|---|---|---|---|
| User #: 4628 | Ext: 8227 | Disbursement Amount: $ | |

10260136 1

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2739
TELEPHONE (415) 371-8800
FACSIMILE: (415) 371-8801

# Exhibit K

**Subject:** Re: In re Alexander Popov, Debtor
**From:** "Law Offices of Martin F. Triano" <reception@martinftriano.com>
**Date:** Tue, 10 Jul 2007 14:21:32 -0700
**To:** ddavis@gsmdlaw.com

Dear Mr. Davis,

    Per the request of Mark D. Byrne, attached please find a copy of his correspondence from July 5, 2007.  A hard copy will not follow.

    If you have any questions, or have difficulties opening the attachment, please do not hesitate to call this office at (415) 371-8000.

Very truly yours,
LAW OFFICES OF TRIANO & BYRNE


Jose M. Lagniton
Legal Assistant


**L-Dennis Davis re adequate protection.rtf**    **Content-Type:**     application/msword
                                              **Content-Encoding:** base64

MARTIN F. TRIANO
MARK D. BYRNE
CAROLYN N. PETTIFER
Attorneys at Law
—————

LAW OFFICES

**TRIANO & BYRNE**

25 JESSIE STREET, 16TH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2749

TELEPHONE (415) 371-8000

FACSIMILE (415) 371-8001

ALAN H. DAVIDSON (1931-1999)

Our File No.: 1929

www.martinftriano.com
mailbox@martinftriano.com

July 5, 2007

<u>**VIA E-MAIL AND U.S. MAIL**</u>

Dennis Davis, Esq.
Goldberg, Stinnett, Meyers & Davis
44 Montgomery St., Suite 2900
San Francisco, CA 94104

  *Re:*    *In re Alexander Popov, Debtor*
           *Chapter 7 Case Number: 05-32929*

Dear Mr. Davis:

     This letter will follow our June 27, 2007 telephone conversation and receipt of the proposed agreement subject to court approval between the Trustee and YKF. After reviewing this matter with my client, there are several issues I wish to raise with you, which I suspect may be easily resolved.

     First, according to the assignment agreement, the Trustee is assigning various actions/remedies available for a fraudulent transfer under both state and federal law, as well as "any and all right title and interest of the Estate in and to the Shares." The Shares are defined as 3,744,00 shares of common stock of Smart Alec's Intelligent Foods. Furthermore, according to Paragraph 6, the Trustee warrants that, "…the Trustee is the sole owner thereof and has good title thereto, free and clear of all liens, claims and encumbrances of any kind and will transfer to YKF such title free and clear of any liens and encumbrances of any kind." We are greatly troubled by this language in view of the fact that my client has filed a proof of claim evidencing a security arrangement in regard to such shares, which became second in priority to YKF's later lien. Therefore, if necessary, we would seek adequate protection of our lien, based upon the possible impact of the provisions of paragraph 6. Indeed, as you know, adequate protection is mandatory in an 11 USC §363 proceeding upon request by a lienholder.

     Nevertheless, because you did not procedurally seek to transfer the shares "free and clear," as required by the local rules, I am presuming that the provisions of paragraph 6 were "boiler plate" and not intended to result in a transfer "free and clear of liens," as a result of the proposed assignment. Please note that I have also confirmed with counsel for YKF that they understand that the shares remain subject to our lien and that they do not understand that the proposed sale would result in the transfer of the shares of stock "free

and clear" of our lien. As a result, I request that the agreement be modified to reflect that the warranty by the Trustee was not meant to affect the existence/priority of my client's lien upon such shares of stock.

Secondly, I am also confused as to Trustee's rationale for assigning the fraudulent transfer actions and shares of stock for only $30,000 to YKF. According to the Notice,

"Prepetition, the debtor was involved in the Smart Alec's business, which was subject to a security interest in favor of Yugen Kaisha, Y.K.F. Because of the security interest, the trustee made the business decision that pursuing the fraudulent transfer claims was not in the best interests of the estate."

Based upon testimony of Stephanie Dodson and the representations of counsel for YKF, YKF's lien has now been paid off in its entirety. Moreover, both Ms. Dodson and YKF follow up such statement by noting that Summit Bank now holds a lien, first in priority upon such shares. Therefore, I suspect that your reference to a lien in favor of YKF, as being the basis for seeking only $30,000, was made in error. Please confirm.

In view of the fact that we must file an objection to the Notice of Assignment within a very short time, I would appreciate a response no later than July 9, 2007. Your courtesy and cooperation are greatly appreciated. If you have any questions, or wish to discuss this matter, please do not hesitate to telephone.

Very truly yours,
**LAW OFFICES OF MARTIN F. TRIANO**

//S//

MARK D. BYRNE, ESQ.

Cc:     Jonathan Arons, Esq.
        Dan Hager, Esq.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit L

LAW OFFICES

**MARTIN F. TRIANO**
**MARK D. BYRNE**
**CAROLYN N. PETTIFER**
**Attorneys at Law**

# TRIANO & BYRNE

ALAN H. DAVIDSON (1931-1999)

25 JESSIE STREET, 16TH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2749

TELEPHONE (415) 371-8000

www.martinftriano.com
mailbox@martinftriano.com

FACSIMILE (415) 371-8001

Our File No.: 1929

July 12, 2007

**VIA E-MAIL AND U.S. MAIL**

Dennis Davis, Esq.
Goldberg, Stinnett, Meyers & Davis
44 Montgomery St., Suite 2900
San Francisco, CA 94104

> Re:    *In re Alexander Popov, Debtor*
>        *Chapter 7 Case Number:  05-32929*

Dear Mr. Davis:

This letter will follow our July 11, 2007 telephone conversation in regard to the June 26, 2007 Notice of Assignment to YKF concerning the assignment of various actions/remedies available for a fraudulent transfer under both state and federal law, as well as "any and all right title and interest of the Estate in and to the Shares."

Based upon our telephone conversation, this letter will confirm the following:

- The Notice Of Trustee's Assignment Of Personal Property To Yugen Kaisha, Y.K.F. does **not** result in the transfer of the shares of stock in Smart Alecs free and clear of all liens. The Trustee has not followed the necessary procedural requirements to request a court order that the shares are being transferred free and clear of all liens.
- The agreement prepared and executed by YKF is inaccurate when it states that the Trustee is warranting that it is transferring the assets free and clear of liens.
- The Trustee is only able to transfer what it possesses, which may or may be any interest in the shares. To the extent that the Estate does have an interest in such shares, such shares are subject to the security of the Law Offices of Martin F. Triano, as noted in our December 5, 2005 Proof of Claim.
- You have also spoken to James Monroe and requested a copy of his July 5, 2007 facsimile to this office, where he notes his agreement that, "the proposed sale to YKF has no impact on any lien rights that your firm may have against the shares and does not purport to be free and clear of liens."

Letter to Dennis Davis, Esq.
July 12, 2007
Page 2 of 2

       Please review the foregoing and advise if it is incorrect in any way. As you know, we must file an objection no later than Monday, July 16, 2007; therefore, I would appreciate a response no later than Friday, July 13, 2007. If you have any questions, or wish to discuss this matter, please do not hesitate to telephone.

                            Very truly yours,
                            **LAW OFFICES OF MARTIN F. TRIANO**

                            MARK D. BYRNE, ESQ.

cc:     Jonathan Arons, Esq.
        Dan Hager, Esq.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET, 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit M

$45,648.54                    San Francisco, CA                    April 17, 2002

For value received Alex Popov promises to pay Martin F. Triano dba Law Offices of Martin F. Triano the principal sum of Forty Five Thousand six hundred forty eight and 54/100 ($45,648.54)[1], together with such additional sums which may accrue from legal services being provided by the Martin F. Triano dba Law Offices of Martin Triano. All amounts due and owing under this promissory note, together with any credit for payments, shall be reflected in a statement provided to Alex Popov on a monthly basis. The initial principal sum of $45,648.54 shall accrue interest from May 1, 2002. Any future principal amounts, which will be reflected in the monthly statements, shall accrue interest from the date of the first statement to contain the additional principal charges. All interest on any unpaid principal amount shall accrue at the rate of 10 percent per annum. Alex Popov further agrees to make principal and interest payments in installments of $ (as required by Martin F. Triano) per month, beginning on May 1, 2002 and continuing on the first of each month thereafter until April 30, 2003, when the entire amount of unpaid principal and interest shall become fully due and payable

This note is secured by the following:

      All shares held in Smart Alecs Restaurant

Such security is protected by a UCC-1 Financing Statement.

In consideration for this promissory note, Alex Popov shall exercise his voting privileges in the shares held in Smart Alecs to elect Martin F. Triano to the Board of Directors of Smart Alecs. Alex Popov shall keep Martin F. Triano dba Law Offices of Martin Triano apprised at all times of significant business developments, including but not limited to the status of any negotiations, contractual agreements, or an escrow regarding the possible encumbrance, hypothecation, or other transfer of any property belonging to Smart Alecs Restaurant. Beginning on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter thereafter, Alex Popov shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano, financial statements for Smart Alecs Restaurant, with regard to the previous quarter. Such financial statements shall include a balance statement, income statement and expense statement of any business operated by Alex Popov. It is expressly understood that Martin F. Triano will be relying on all information and documents provided by Alex Popov

Any encumbrance, hypothecation, or other transfer of the above property being offered as security without the consent of the Martin F. Triano dba Law Offices of Martin F. Triano shall constitute a default under the terms of this note. Any failure to timely provide information and documents required under this note shall constitute a default. Any failure to keep Martin F. Triano dba Law Offices of Martin F. Triano apprised of any significant business developments shall constitute a default. Any failure to make any timely payment of principal and/or interest shall constitute a default.

---

[1] This amount does not include work in progress between 4/1/02 and 4/17/02

EXHIBIT

In the event of a default, Martin F. Triano dba Law Offices of Martin F. Triano may pursue all available remedies, including but not limited to foreclose upon the above security under the provisions of the California Commercial Code. In the event that the Law Offices of Martin Triano needs to bring any action to enforce (including foreclosure) or interpret the provisions of this note, the prevailing party shall be entitled to attorney's fees.

This promissory note has been drafted by the Martin F. Triano dba Law Offices of Martin Triano, who has advised Alex Popov that he may seek independent legal advice regarding the terms of this note or any UCC-1 Financing Statement. By his signature below, Alex Popov acknowledges that he has had a reasonable opportunity to seek independent legal advice and is entering this promissory note freely and voluntarily.

Date: 4/17/02

Alex Popov

## Guarantee of Promissory Note

Smart Alecs Restaurant, Inc. guarantees the full performance of Alex Popov under the provisions of the above note. In the event of any default of the provisions of this note, and the pursuit of any remedies under this note, Martin F. Triano dba Law Offices of Martin F. Triano may pursue his remedies against the Alex Popov and/or against the Guarantor (jointly or severally), at the sole election of Martin F. Triano dba Law Offices of Martin F. Triano. Except as otherwise provided below, Martin F. Triano dba Law Offices of Martin F. Triano shall not be required to provide any advance notice to the Guarantor prior to seeking relief under this guarantee, nor shall Martin F. Triano dba Law Offices of Martin F. Triano be required to obtain any judgment against Alex Popov prior to pursuing any remedies against the Guarantor.

~~Smart Alecs Restaurant, Inc. shall keep the Martin F. Triano dba Law Offices of Martin F. Triano~~ apprised of any significant business developments. Beginning on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter thereafter, Smart Alecs Restaurant, Inc. shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano, financial statements for Smart Alecs Restaurant, with regard to the previous quarter. Such financial statements shall include a balance statement, income statement and expense statement of any business operated by Smart Alecs Restaurant, Inc. It is expressly understood that Martin F. ~~Triano will be relying on all information and documents provided by Smart Alecs Restaurant.~~

Any encumbrance, hypothecation, or other transfer of the above property being offered as security without the consent of Martin F. Triano dba the Law Offices of Martin F. Triano shall constitute a default under the terms of the above note or this guarantee of such note. Any failure to timely provide information and documents required under this guarantee shall constitute a default. Any failure to keep Martin F. Triano dba Law Offices of Martin F. Triano apprised of any significant business developments shall constitute a default. Any failure by Alex Popov, as

obligor, or Smart Alecs Restaurant Inc., as guarantor, to make any timely payment of principal and/or interest shall constitute a default.

In the event of a default, Martin F. Triano dba Law Offices of Martin F. Triano may pursue all available remedies, including but not limited to foreclose upon the above security under the provisions of the California Commercial Code. In the event that the Law Offices of Martin Triano needs to bring any action to enforce (including foreclosure) or interpret the provisions of this guarantee or the above note, the prevailing party shall be entitled to attorney's fees.

This Guarantee has been drafted by the Law Offices of Martin Triano, who has advised Smart Alecs Restaurant, Inc. that it may seek independent legal advice regarding the terms of this Guarantee or any UCC-1 Financing Statement. By its signature below, Smart Alecs Restaurant, Inc. acknowledges that it has had a reasonable opportunity to seek independent legal advice and is entering this guarantee of the above promissory note freely and voluntarily.

Date: 4/17/02

Alex Popov, President of Smart Alecs Restaurant, Inc.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit N

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Martin F. Triano (415)-371-8000

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Martin F. Triano
Law Offices of Martin F. Triano
25 Jessie Street, 16th Floor
San Francisco, CA 94105

**07-71110373**
**04/20/2007  17:00**

**FILED**
SOS
CALIFORNIA
SECRETARY OF STATE

12376870004  UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
0213360005

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor  or ☒ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☒ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Triano | Martin | Francis | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME  Law Offices of Martin F. Triano | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Triano | Martin | Francis | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 25 Jessie Street, 16th Floor | San Francisco | CA | 94105 | US |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted  or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| Triano | Martin | Francis | |

**10. OPTIONAL FILER REFERENCE DATA**

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| 12a. ORGANIZATION'S NAME | | |
|---|---|---|
| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
| Triano | Martin | Francis |

13. Use this space for additional information

12376670004

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

The debtor filed Chapter 7 Bankruptcy on September 6, 2005 and was granted a discharge on April 9, 2007. This continuation concerns the secured interest held by the Secured Party of Interest. The original filing statement lists all of the shares of stock in Smart Alec's Intelligent Foods Inc. owned by debtor Alexander Popov. In April of 2004, prior to his filing for bankruptcy, Alexander Popov sold all of his shares of stock in Smart Alec's Intelligent Foods Inc. to Stephanie Dodson. Martin F. Triano continues to hold a lien against the shares sold to Stephanie Dodson.



SECRETARY OF STATE

STATE OF CALIFORNIA

## UCC Amendment Acknowledgement

04/20/2007

Page 1 of 1

LAW OFFICES OF TRIANO & BYRNE
25 JESSIE ST., 16TH FLOOR
SAN FRANCISCO CA 94105

| Filing Fee: | $20.00 |
|---|---|
| Total Fee: | $20.00 |

The California Secretary of State's Office has received and filed your document. The information stated below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

**Amendment Type: Continuation, Amendment**     File Date: 04/20/2007     File Time: 17:00

Amendment Filing #: 07-71110373

Original Filing Number: 02-13360005     Lapse Date: 05/10/2012

<u>Secured Party(ies):</u>
ORGANIZATION          **LAW OFFICES OF MARTIN F. TRIANO
                      25 JESSIE STREET, 16TH FLOOR SAN FRANCISCO CA
                      USA 94105**

**Not all data indexed** : This filing included Secured Party information that was either illegible or incomplete.

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC ARTICLE 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-1515 · HTTP://UCCCONNECT.SS.CA.GOV

PROGRAMS ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit O

LAW OFFICES

MARTIN F. TRIANO
MARK D. BYRNE
JUDY J. MOON+
EVAN C. KAY
Attorneys at Law

BRUCE W. CARTER
Law Clerk

+ Also admitted in New York
and New Jersey

# LAW OFFICES

# MARTIN F. TRIANO

25TH FLOOR, SHELL BUILDING

100 BUSH STREET

SAN FRANCISCO, CALIFORNIA 94104-3927

TELEPHONE (415) 391-2300

FACSIMILE (415) 391-1922

ALAN H. DAVIDSON (1931-1999)
ELVIRA J. ORLY
ROBERT A. ROTH*
Of Counsel

* Certified Appellate Specialist
State Bar of California
Board of Specialization

Our File No.: 1902

January 27, 2003

**VIA FACSIMILE & U.S. MAIL**

Alex Popov
2015 Laguna Street, #8
San Francisco, CA 94115

**VIA FACSIMILE & U.S. MAIL**

Alex Popov, President
Stephanie Dodson, Vice President
Smart Alec's Intelligent Foods
2355 Telegraph Avenue
Berkeley, CA 94704

**VIA FACSIMILE & U.S. MAIL**

Stephanie Dodson
5728 Owens Drive, Apt. #206
Pleasanton, CA 94588

**Re: Promissory Note by Alex Popov and Security thereon**

Dear Alex and Stephanie:

Pursuant to Alex's January 24, 2003 request for a copy of the Promissory Note and Guarantee he executed arising out of the Man.Com and Popov vs. Hayashi cases, please find enclosed herewith a true and correct copy of the Promissory Note and Guarantee executed by Alex, as well as the UCC-1 perfecting the security interest in the shares.

Upon review of the Promissory Note and Guarantee, we have realized Alex was required to exercise his voting privileges to elect Marty to the Board of Directors of Smart Alec's restaurant. Based upon our recollection and now review the corporate minute book which we were provided at the commencement of the *YKF* lawsuit, such election never occurred. Moreover, according to the Promissory Note and Guarantee, monthly financial statements were to be sent from Smart Alec's Intelligent Foods, Inc. beginning May 10, 2002; but, never occurred. This letter will confirm that we have never been provided with such financial statements prior to the onset of the *YKF* lawsuit. Subsequent to the commencement of the *YKF* lawsuit, we have received financial statements as required by the Stipulation and Order entered with counsel for *YKF,* for the sole purpose of satisfying the Stipulation and Order only. Therefore, this letter will confirm that this office has not received any financial statements nor obtained a seat upon the Board of Directors of Smart Alec's Restaurants as set forth in the Promissory Note and Guarantee.

Please note that this letter will confirm that Martin F. Triano dba Law Offices of Martin

**PRIVILEGED AND CONFIDENTIAL**

Letter to Alex Popov, Stephanie Dodson, and Smart Alec's Intelligent Food, Inc.
January 25, 2003, Page 2 of 3

F. Triano has previously and again hereby waives the following provisions of the Promissory Note dated April 17 2002:

> "In consideration for this promissory note Alex Popov, shall exercise his voting privileges in the shares held in Smart Alec's to elect Martin F. Triano to the Board of Directors of Smart Alec's. Alex Popov shall keep Martin F. Triano dba Law Offices of Martin Triano apprised at all times of significant business developments, including but not limited to the status of any negotiations, contractual agreements, or an escrow regarding the possible encumbrance, hypothecation, or other transfer of any property belonging to Smart Alec's Restaurant. Beginning on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter thereafter, Alex Popov shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano, financial statements for Smart Alec's Restaurant, with regard to the previous quarter. Such financial statements shall include a balance statement, income statement and expense statement of any business operated by Alex Popov. It is expressly understood that Martin F. Triano will be relying on all information and documents provided by Alex Popov." *(Please note that this language has not been redacted in the original and your photocopy.)*

In addition, the Martin F. Triano dba Law Offices of Martin F. Triano has previously and again hereby waives any right to declare a default arising out of the above language.

Furthermore, the law offices of Martin Triano has previously and again waives the provision of the guarantee dated April 7, 2002, and regard to the following language:

> "Smart Alec's Restaurant, Inc. shall keep the Martin F. Triano dba Law Offices of Martin F. Triano apprised of any significant business developments. Beginning on or about May 10, 2002, and continuing on the 20th day of the month after the end of a quarter thereafter, Smart Alec's Restaurant, Inc. shall deliver to Martin F. Triano dba Law Offices of Martin F. Triano, financial statements for Smart Alec's Restaurant, with regard to the previous quarter. Such financial statements shall include a balance statement, income statement and expense statement of any business operated by Smart Alec's Restaurant, Inc. It is expressly understood that Martin F. Triano will be relying on all information and documents provided by Smart Alec's Restaurant. *(Please note that this language has not been redacted in the original and your photocopy.)*

In addition, the Martin F. Triano dba Law Offices of Martin F. Triano hereby waives any right to declare a default arising out of the above language.

We request that the corporate minute book record minutes of the following: that neither Alex nor Smart Alec's Restaurant exercised its obligations described in the Promissory Note and Guarantee; that Mr. Triano never received any notice of having been elected to the Board of Directors; and that the Martin F. Triano dba Law Offices of Martin F. Triano is forever waving the rights specifically set forth above in the Promissory Note and Guarantee. I have enclosed for your review, some proposed language which may be appropriate for the Board of Directors to address at the next regularly scheduled or special meeting of the Board of Directors.

Letter to Alex Popov, Stephanie Dodson, and Smart Alec's Intelligent Food, Inc.
January 25, 2003, Page 3 of 3

Nevertheless, please note that the Law Offices of Martin Triano still considers the Promissory Note and Guarantee to be fully enforceable with the exception of the language set forth above being waived

If you have any questions or wish to discuss this matter, please do not hesitate to telephone

Very truly yours,
THE LAW OFFICES OF MARTIN F. TRIANO

MARK D. BYRNE, ESQ.

RESOLVED:

1.  WHEREFORE President Alex Popov, on or about April 17, 2002, executed a Guarantee for Smart Alec's Intelligent Foods, Inc. (aka Smart Alec's Restaurant, Inc.) to guarantee a Promissory Note that was executed by Alex Popov for a personal obligation owing to Martin F. Triano dba Law Offices of Martin F. Triano;

2.  WHEREFORE neither Alex Popov nor Smart Alec's Intelligent Foods, Inc. (aka Smart Alec's Restaurant, Inc.) never fulfilled the requirements set forth in the Promissory Note and Guarantee, to wit: the election of Martin F. Triano to the Board of Directors of Smart Alec's Restaurant, Inc.or the delivery of monthly financial statements to Martin F. Triano dba Law Offices of Martin F. Triano starting May 10, 2002;

3.  WHEREFORE Martin F. Triano was never otherwise elected or appointed to the Board of Directors of Smart Alec's Restaurant;

4.  WHEREFORE Neither Martin F. Triano nor the Law Offices of Martin F. Triano ever received any notice that Mr. Triano was elected to the Board of Directors nor did they ever believe that such election had taken place;

5.  WHEREFORE Martin F. Triano never held himself out as, nor ever acted in the capacity of, a director of Smart Alec's Restaurant, Inc.;

6.  WHEREFORE Martin F. Triano and / or the Law Offices of Martin F. Triano has never exercised any of their rights as set forth in the Promissory Note and Guarantee, in regard to the election of Martin F. Triano to the Board of Directors of Smart Alec's Restaurant, Inc. or the delivery of monthly financial statements to Martin F. Triano dba Law Offices of Martin F. Triano starting May 10, 2002;

7.  WHEREFORE pursuant to the January 25, 2003 correspondence from the Law Offices of Martin F. Triano, Martin F. Triano and / or the Law Offices of Martin F. Triano, now and forever waives all rights provided by the Promissory Note and Guarantee in regard to the election of Martin F. Triano to the Board of Directors of Smart Alec's Restaurant, Inc. and the delivery of monthly financial statements to Martin F. Triano dba Law Offices of Martin F. Triano starting May 10, 2002.

8.  WHEREFORE, all other provisions of the Promissory Note and Guarantee remain in effect.

NOW THEREFORE, based upon a vote of the Directors then present, the foregoing is ratified and accepted.

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET., 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE (415) 371-8000
FACSIMILE: (415) 371-8001

# Exhibit P



1  MARK D. BYRNE, ESQ., SBN 109268
2  LAW OFFICES OF MARTIN F. TRIANO
   25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   Telephone: (415) 391-2300
4  Facsimile: (415) 391-1922
5
6  Attorney for Plaintiff Martin F. Triano
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9           IN AND FOR THE CITY AND COUNTY OF ALAMEDA
10  MARTIN F. TRIANO, dba LAW          )        Case Number: RG-07-322877
11  OFFICES OF MARTIN F. TRIANO        )
                                       )
12  Plaintiff,                         )    **MARTIN F. TRIANO'S FIRST**
                                       )    **AMENDED COMPLAINT FOR:**
13  v.                                 )
                                       )    1) **BREACH OF WRITTEN**
14                                     )       **CONTRACT**
15  STEPHANIE DODSON, SMART            )    2) **ACCOUNT STATED**
    ALEC's INTELLIGENT FOODS INC, a    )    3) **DECLARATORY RELIEF**
16  California Corporation; DOES 1-20  )    4) **INTENTIONAL**
                                       )       **INTERFERENCE WITH**
17  Defendant.                         )       **CONTRACTUAL RELATIONS**
18                                     )    5) **REFORMATION**
                                       )
19  _____)
20
21  COMES NOW PLAINTIFF MARTIN F. TRIANO (hereinafter "TRIANO") who alleges as
22  follows:
23                      **GENERAL ALLEGATIONS**
24      1.      MARTIN F. TRIANO (hereinafter "TRIANO") dba THE LAW OFFICES OF
25  MARTIN F. TRIANO (hereinafter "TRIANO") is and at all times mentioned herein a law firm
26  with its principal place of business located in the City and County of San Francisco.
27  //
28

---

2.      TRIANO is informed and believes and thereon alleges that SMART ALEC'S

INTELLIGENT FOOD INC. (hereinafter "SMART ALEC's") is corporation duly organized an

existing under the laws of the State of California with its principal place of business located in the

City of Berkeley and County of Alameda.

3.      TRIANO is ignorant of the true names and capacities of Defendants sued herein as

DOES 1 through 20, inclusive, and therefore sue these Defendants by such fictitious names.

TRIANO will amend this Complaint to allege their true names and capacities when ascertained.

TRIANO is informed and believes and thereon alleges that each of the fictitiously-named

Defendants are responsible for the occurrences herein alleged, and that TRIANO's damages as

herein alleged were proximately caused by such Defendants.

4.      TRIANO is informed and believes and thereon alleges that STEPHANIE DODSON

(herinafter "DODSON") is SMART ALEC's president and sole stockholder.

5.      TRIANO is informed and believes and thereon alleges that ALEXANDER POPOV

(hereinafter "POPOV") was, until April of 2004, the majority shareholder in SMART ALEC's and

until February of 2004, acting president of SMART ALEC's.

6.      TRIANO began representing ALEXANDER POPOV in October of 2001 in the

case of Popov v. Hayashi. POPOV hired TRIANO for his case against Hayashi to recover Barry

Bonds' 73rd homerun baseball. Thereafter TRIANO represented POPOV in the cases of Bantry

Bay v. Popov and Yugen Kaisha (YKF) v. Popov.

7.      On April 17, 2002, POPOV owed TRIANO $45,648 for legal services rendered in

the case of Popov v. Hayashi.

8.      On April 17, 2002, POPOV granted TRIANO a written Promissory Note

(hereinafter "NOTE") for the $45,648 he owed together with "such additional sums which may

accrue from legal services being provided" by TRIANO.  A true and correct copy of the

Promissory Note is attached hereto as Exhibit A. POPOV secured his promissory note by pledging

---

**MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION.**

his 3,744,000 shares of stock in SMART ALEC's as collateral. On May 10, 2002 TRIANO executed a UCC-1 filing statement with the California Secretary of State.  On April 20, 2007, the UCC-1 filing statement was amended and is due to lapse on May 10, 2012. A true and correct copy of the amended UCC-1 filing statement is attached hereto as Exhibit B.

9.    Additionally, on April 17, 2002, POPOV, as acting president of SMART ALEC's, signed and executed a written Guarantee of Promissory Note (hereinafter "GUARANTEE") by SMART ALEC's for the full performance of POPOV under the provisions of the above mentioned promissory note.  The agreement was executed by POPOV as the President of Smart Alecs Restaurant, Smart Alecs Intelligent Foods, Inc in error. At all times, the parties to the agreement considered the security to be provided by Smart Alecs Intelligent Foods Inc, which operates a restaurant called Smart Alecs Intelligent Fast Food.  See Exhibit A.

10.    The GUARANTEE executed by SMART ALEC's stated that in the event of default, TRIANO could pursue any claims in connection with POPOV's legal fees against either POPOV or SMART ALEC's either jointly or severally. The note further stated that TRIANO need not obtain a judgment against POPOV in the event of breach in order to recover from SMART ALEC's.

11.    On or about December 18, 2002 the Judge in Popov v. Hayashi ordered the parties to auction off the baseball and split the proceeds. When POPOV retained TRIANO the baseball was expected to sell for over one million dollars. The baseball actually sold for $450,000, leaving POPOV with $225,000, an amount far less than he expected. POPOV did not make a single complaint about the legal fees he owed TRIANO until after announcement of the decision.

12.    TRIANO continued to represent POPOV in the Popov v. Hayashi matter until he was discharged on May 14, 2003. Since TRIANO's discharge, neither POPOV as the obligor of the NOTE, or SMART ALEC's as its guarantor has made the payments as required by the NOTE.

---

**MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION.**

13.    TRIANO is informed and believes and thereon alleges that POPOV entered into a settlement agreement with Yugen Kaisha (hereinafter YKF) in February of 2004 whereby SMART ALEC's granted YKF a promissory note for $772,000 secured by POPOV's shares in SMART ALEC's and POPOV's personal guarantee for the payment of $280,000.

14.    Unbeknownst to TRIANO and in violation of the NOTE, POPOV in accordance with the settlement agreement with YKF, granted YKF superior lien interest in his 3,744,000 shares of stock in SMART ALEC's. As a result of POPOV's breach, TRIANO's lien against the shares of SMART ALEC's was subordinated to YKF's lien and he was unable to foreclose and collect on the full value of those shares.

15.    In April of 2004 POPOV, without any notice to TRIANO and in violation of the NOTE he granted TRIANO, sold his shares of stock in SMART ALEC's to Stephanie Dodson (hereinafter "DODSON"). A true and correct copy of DODSON's agreement to buy POPOV's shares of stock in SMART ALEC's is hereto attached as Exhibit C.

16.    On September 6, 2005 POPOV filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. POPOV was granted a discharge on April 9, 2006. Despite the Bankruptcy Court grant of discharge for POPOV, TRIANO continues to possess an In Rem action against the shares in SMART ALEC's now owned by DODSON, as TRIANO still possesses a secured interest in those shares.

17.    TRIANO was not informed of either YKF's lien against POPOV's shares in SMART ALEC's or DODSON's purchase of those shares until October of 2005.

18.    Neither POPOV nor SMART ALEC's has made a single payment to TRIANO since January of 2003.

19.    By the terms of the promissory note, the entire balance, including principal, costs and interest, was due on April 30, 2003.

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION.

20.     In April 1, 2007 the balance owed to TRIANO for legal services rendered, costs and interest accrued as a result of TRIANO's representation in the Popov v. Hayshi and Yugen Kaisha (YKF) v. Popov matters is $696,629.63. The balance owed to TRIANO continues to accrue interest at a rate of 10% per year.

21.     Prior to the filing of this lawsuit Plaintiff has complied with the provisions of Business and Professions Code § 6200 et. seq. and provided written notice to SMART ALEC's of its right to arbitration.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract as to SMART ALEC's Only)

22.     TRIANO re-alleges and incorporates herein paragraphs 1 to 21 as set forth above.

23.     TRIANO continued to provide and POPOV continued to receive legal services and incur legal fees and costs under the NOTE executed on or about April 17, 2002 until May 14, 2003 when TRIANO was discharged.

24.     At all times hereon alleged, TRIANO has performed all terms, conditions and covenants as required under the terms of the NOTE.

25.     Pursuant to its GUARANTEE, SMART ALEC's is liable to TRIANO for POPOV's failure to pay for his legal fees as provided in the GUARANTEE.

26.     As a direct and proximate result of SMART ALEC's breach of contract, TRIANO has incurred damages represented by the money owed to TRIANO for legal services rendered to POPOV, in the amount of $696,629.63, together with interest at 10% per annum on the principal amount from and after April 1, 2007.

27.     Additionally, TRIANO seeks payment of reasonable attorney's fees and costs associated with the collection of POPOV's debt to TRIANO, as provided in the NOTE, in an amount subject to proof.

WHEREFORE, Plaintiff prays for Judgment as hereinafter alleged.

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION.

## SECOND CAUSE OF ACTION

### (Account Stated as to SMART ALEC's)

28.    TRIANO re-alleges and incorporates herein paragraphs 1 to 27 as set forth above.

29.    The NOTE signed by POPOV states that as of April 1, 2002 POPOV owed TRIANO $45,648.54.

30.    Starting on May 1, 2002 TRIANO mailed invoices to POPOV, DODSON and SMART ALEC's on a monthly basis. The invoices contained the description of and fee for the legal services provided to POPOV in the previous month. Additionally, the invoices provided to POPOV, DODSON and SMART ALEC's contained a notice of the balance owed to TRIANO for legal services rendered, costs and interest.

31.    The following table represents the monthly balance listed on each invoice that was mailed to POPOV, DODSON and SMART ALEC's as well all payments made by POPOV or on POPOV's behalf for legal fees, costs and interest for services rendered from April 17, 2002-May 14, 2003:

| Date Invoice Mailed | Balance | Date Payment Made | Amount of Payment |
|---|---|---|---|
| May 1, 2002 | $31,824.13 | May 22, 2002 | $28,000 |
| June 1, 2002 | $20,953.13 | No Payment in June | N/A |
| July 1, 2002 | $38,748.27 | No Payment in July | N/A |
| August 1, 2002 | $57,658 | August 15, 2002. | $1,500 |
| September 1, 2002 | $91,393.85 | September 1, 2002 | $16,076.20 |
| October 1, 2002 | $176,315.21 | October 9, 2002 | $4,750 |
| November 1, 2002 | $340,662.98 | November 14, 2002 | $150 |
| December 1, 2002 | $416,389.64 | December 6, 2002 | $720 |
| January 2, 2003 | $428,070.01 | January 2, 2003 | $1050 |

| Date Invoice Mailed | Balance | Date Payment Made | Amount of Payment |
|---|---|---|---|
| February 1, 2003 | $439,622.63 | No Payment in February | N/A |
| On March 1, 2003 | $452,872.16 | No Payment in March | N/A |
| April 1, 2003 | $463,967.95 | No Payment in April | N/A |
| May 1, 2003 | $468,355.15 | No Payment in May | N/A |
| June 1, 2003 | $473,530.32 | No Payment in June | N/A |

32.    After receipt of the invoices and an opportunity to review them, Smart Alec's paid the invoices without objection which evidenced the corporation's agreement to discharge its debt to TRIANO. For example, before the Note and Guarantee were executed, Smart Alec's made payments to TRIANO including on February 11, 2002, (Check #4542) in the amount of $24,860.15 and, on March 14, 2002, (Check #4600) in the amount of $15,715.22.  On the date of execution of the Note and Guarantee, namely April 17, 2002, Smart Alec's made payment (check # 4678) in the amount of $11,215.65 to TRIANO. After the Note and Guarantee were executed, Smart Alec's made payment to TRIANO on May 21, 2002 (check #4739) in the amount of $28,000.

33.    POPOV continued to receive legal services from TRIANO and incur legal fees until May 14, 2003 when TRIANO was discharged. At no time prior to December 18, 2002 when the judge ruled that POPOV and Hayashi sell the baseball and split the proceeds did POPOV or Smart Alec's object to his legal fees.

34.    From July 1, 2003-September 1, 2005 TRIANO continued to mail POPOV, DODSON and SMART ALEC's invoices on a monthly basis. While no new legal fees or costs have been charged since May 14, 2003, the interest on his balance continues to accrue.

35.    An account was stated by and between TRIANO and SMART ALEC'S by mutual agreement of the amount owing under the personal Guarantee which is presently in the amount of

$696,629.63, together with interest at 10% per annum on the principal amount from and after April 1, 2007.

WHEREFORE, Plaintiff prays for Judgment as hereinafter alleged.

### THIRD CAUSE OF ACTION

#### (Declaratory Relief as to DODSON and SMART ALEC's)

36.    TRIANO re-alleges and incorporates herein paragraphs 1 to 38 as set forth above.

37.    On or about April 17, 2002 POPOV granted TRIANO a NOTE for the balance he owed TRIANO for legal services rendered, costs and interest as well as all future legal services performed on behalf of POPOV.

38.    POPOV's legal fees were secured by all of POPOV's stock in SMART ALEC's and a GUARANTEE by SMART ALEC's. The GUARANTEE was signed by POPOV as the President of SMART ALEC's.

39.    On or about April 18, 2004, POPOV, in violation of his agreement with TRIANO, sold all of his shares of stock in SMART ALEC's to DODSON.

40.    TRIANO was not made aware of the sale until October of 2005.

41.    On or about February 22, 2007, during a deposition held at the Law Offices of Martin F. Triano, DODSON testified that she did not believe that TRIANO had a lien against the shares of stock in SMART ALEC's that she purchased from POPOV. She testified that she believes the lien is invalid due to statements made to her by POPOV as well as statements made by the attorneys for YKF during settlement negotiations.

42.    TRIANO is informed and believes and thereon alleges that DODSON continues to maintain that TRIANO does not hold a valid lien against the shares of stock in SMART ALEC's that she purchased from POPOV.

43.    TRIANO is informed and believes and thereon alleges that DODSON took out a loan to pay off the debt owed by SMART ALEC's to YKF. As a result of the payment, YKF no longer has any interest in the shares of stock in SMART ALEC's.

44.    TRIANO is informed and believes and thereon alleges that DODSON used the shares of stock in SMART ALEC's as security for the loan she took out to pay off the debt owed to YKF.

45.    TRIANO is informed and believes and thereon alleges that as a result of DODSON's actions, TRIANO's lien against the stock has again been subordinated.

46.    TRIANO contends that he still holds a valid lien against DODSON's shares of stock in SMART ALEC's.

47.    An actual and present controversy exists between TRIANO, DODSON and SMART ALEC's concerning their respective rights and duties in regard to the NOTE, the GUARANTEE, and the security provided to TRIANO on or about April 17, 2002.

48.    TRIANO desires a judicial determination of the respective rights and duties of TRIANO, DODSON and SMART ALEC's as to:

(a) Whether TRIANO possesses a valid security interest on the shares of stock formerly held by POPOV and now held by DODSON.

(b) The ability of DODSON to grant any additional security interests to other parties that render TRIANO's security into an inferior or junior position.

WHEREFORE, Plaintiff prays for Judgment as hereinafter alleged.

## FOURTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations as to DODSON Only)

49.    TRIANO re-alleges and incorporates herein paragraphs 1 to 51 as set forth above.

50.    On or about January 27, 2003, TRIANO faxed and mailed copies of the NOTE and GUARANTEE to DODSON.

51.     TRIANO is informed and believes and thereon alleges that on or about April 18, 2004 DODSON purchased all of POPOV's shares of stock in SMART ALEC's.

52.     TRIANO is informed and believes and thereon alleges that DODSON knew about his lien against POPOV's shares when she purchased them.

53.     TRIANO is informed and believes and thereon alleges that DODSON knew that her purchase of POPOV's shares of stock was in direct violation of the NOTE signed by POPOV.

54.     TRIANO informed and believes and thereon alleges that DODSON used her shares of stock in SMART ALEC's to secure a bank loan in order to pay the debt owed to YKF.

55.     TRIANO is informed and believes and thereon alleges that DODSON subordinated TRIANO's lien without his knowledge or consent, to secure a bank loan. DODSON's use of the shares of stock in SMART ALEC's was in violation of the terms of the NOTE signed by POPOV.

56.     As a direct result of DODSON's actions, TRIANO is forced to take legal action in order to protect his interest in the shares of stock in SMART ALEC's.

57.     As a direct result of DODSON's actions TRIANO's ability to collect legal fee's owed to him in the amount of $696,629.63 together with interest at 10% per annum from and after April 1, 2007 on the principal amount, has been hindered and delayed for an undetermined amount of time.

58.     As a further direct and proximate result of DODSON's intentional interference, TRIANO has incurred damages represented by the cost of reasonable attorney's fees associated with defending and determining his rights as to the shares of stock in SMART ALEC's in an amount subject to proof.

## FIFTH CAUSE OF ACTION

### (Reformation as to Smart Alec's Only)

59.     TRIANO re-alleges and incorporates herein paragraphs 1 to 62 as set forth above.

60.    On April 17, 2002, and as described above, in consideration of valuable services, POPOV granted TRIANO a written Promissory Note under which POPOV promised to pay TRIANO the sum of $45,648.54, together with "such additional sums which may accrue from legal services being provided" by TRAINO.

61.    This Promissory Note was secured by a Guarantee of all shares held in Smart Alec's Restaurant and, was signed by POPOV as acting President of Smart Alec's Restaurant, Inc.

62.    At the time of preparing the Note and Guarantee, POPOV represented, in error, that the name of the corporation was Smart Alec's Restaurant, Inc.

63.    As described above, the Guarantee was executed by POPOV as the President of Smart Alec's Restaurant, Inc., instead of Smart Alec's Intelligent Foods, Inc., in error. At all times, the parties to the agreement considered the security to be provided by Smart Alec's Intelligent Foods Inc, rather than Smart Alec's Restaurant, Inc.

64.    Because of the mutual mistake of the parties, the Guarantee did not reflect the true name of POPOV's corporation. If both parties had not been mistaken at the time of preparing and executing the Guarantee, the corporation would have been correctly named.

65.    With the exception of the misnomer, the Promissory Note and Guarantee truly expresses the intention of the parties.

////

////

////

////

////

////

////

////

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION.

WHEREFORE, Plaintiff TRIANO prays for judgment against DODSON and SMART ALEC's as follows:

As to DODSON Only:

    1.    TRIANO desires a judicial determination that:

        (a) TRIANO possesses a valid security interest on the shares of stock formerly held by POPOV and now held by DODSON;

        (b) DODSON shall not to grant any additional security interests to other parties that render TRIANO's security into an inferior or junior position;

    2.    For damages in an amount subject to proof;

    3.    For reasonable Attorney's fees incurred in defending and determining TRIANO's rights as to DODSON's shares of stock in SMART ALEC's in an amount subject to proof;.

As to SMART ALEC's Only:

    1.    TRIANO desires a judicial determination that:

        (a) TRIANO possesses a valid security interest on the shares of stock formerly held by POPOV and now held by DODSON;

        (b) DODSON shall not to grant any additional security interests to other parties that render TRIANO's security into an inferior or junior position;

    2.    TRIANO desires a judicial determination that:

        (a) the Note and Guarantee be reformed to reflect the mutual intent of the parties at the time of execution, to wit, the document was signed by POPOV for Smart Alec's Intelligent Foods, Inc., instead of Smart Alec's Restaurant, Inc.

    3.    For damages represented by the money owed to TRIANO in an amount subject to proof;

    4.    For reasonable Attorney's fees in an amount subject to proof;

1

As to all Defendants:

2

    1.    For costs of suit incurred herein in an amount subject to proof;

3

    2.    For such other and further relief as the court may deem just and proper.

4

5

Dated: 7/13/07

6

                          Respectfully submitted,

7

                          **LAW OFFICES OF MARTIN F. TRIANO**

8

9

10

                          By: _____

                            MARK D. BYRNE, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR BREACH OF WRITTEN CONTRACT, ACCOUNT STATED, DECLARATORY RELIEF, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND REFORMATION.

1    I declare:

2    I am employed in the County of San Francisco, State of California. My business address is

3    25 Jessie Street, 16th Floor, San Francisco, CA 94105. I am over the age of eighteen years, and I am

4    not a party to the within action. On July 13, 2007 I served the following documents:

5    • *MARTIN F. TRIANO'S FIRST AMENDED COMPLAINT FOR: 1) BREACH*

6    *OF WRITTEN CONTRACT 2) ACCOUNT STATED 3) DECLARATORY*
     *RELIEF 4) INTENTIONAL INTEFERENCE WITH CONTRACTUAL*

7    *RELATIONS 5) REFORMATION.*

8    Upon the parties listed below, addressed as follows:

9    **Lawrence K. Rockwell, Esq.**

10   **300 Lakeside Drive, Suite 1900**

11   **Oakland, CA 94612-2979**

12

13   **XXX**    **First Class Mail:** By depositing a sealed envelope in the United States mail at San
                 Francisco, California, with postage fully prepaid.

14

15           **Facsimile:** By transmitted a true and correct copy via facsimile electronic equipment
             transmission (fax) to the office(s) of the addressee(s) at the fax number(s) listed above.

16

17           **Personal Delivery:** By personally delivering the document(s) listed above to the
             person(s) at the address(es) on the date set forth above.

18           **Overnight:** By placing the document(s) thereof into envelope(s) bearing the name(s)
             and address(es) of the person(s) to be served by Federal Express delivery.

19

20   I declare under penalty of perjury under the laws of the State of California that the foregoing

21   is true and correct. Executed on July 13, 2007 at San Francisco, California.

22

23

24   By: _____

25       Jose M. Lagniton
         Legal Assistant

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

PROOF OF SERVICE

LAW OFFICES
**TRIANO & BYRNE**
25 JESSIE STREET, 16TH FLOOR
SAN FRANCISCO, CA 94105-2749
TELEPHONE: (415) 371-8001
FACSIMILE: (415) 371-8001

# Exhibit Q

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  In re:                          )
                                    )   Case No.  05-32929
13  ALEXANDER N. POPOV,             )
                                    )   Chapter 7
14       Debtor.                    )
                                    )
15                                  )
                                    )
16  _____  )
                                    )
17  YUGEN KAISHA, Y.K.F.,           )   Adv. Pro. No.: 07-03104
                                    )
18       Plaintiff,                 )   **COMPLAINT FOR**
                                    )   **DECLARATORY RELIEF IN**
19  v.                              )   **INTERVENTION BY MARTIN F.**
                                    )   **TRIANO DBA LAW OFFICES OF**
20                                  )   **MARTIN F. TRIANO**
21  STEPHANIE DODSON                )
                                    )
22       Defendants.                )
23  _____  )

24  COMES NOW PLAINTIFF MARTIN F. TRIANO (hereinafter "MFT") who alleges as follows:

25                     **JURISDICTION AND VENUE**

26      1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

27      2. This adversary proceeding is brought pursuant to Rule 7001, et seq. of the Federal

28  Rules of Bankruptcy Procedure and 11 U.S.C. §§ 544(b)(1), 548 and 550.

3.  This intervention in the adversary proceeding is brought pursuant to Rule 7024 of the Federal Rules of Bankruptcy Procedure.

4.  Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this intervention is for the adversary proceeding that arises under and in connection with the above-captioned case under 11 U.S.C. § 101, et seq (the "Bankruptcy Code"), which is pending in this District.

5.  The adversary proceeding, under which this intervention arises, is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(H).

<u>**PARTIES AND BACKGROUND FACTS**</u>

6.  On September 6, 2005 (the "Petition Date") Alexander N. Popov ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy (the "Bankruptcy Action").

7.  Thereafter, E. Lynn Schoenmann ("Trustee") became the duly appointed Chapter 7 Trustee to administer the Debtor's bankruptcy estate (the "Estate").

8.  On or about August 1, 2007, Yugen Kaisha, Y.K.F. ("YKF") purchased from the Trustee the right to bring the instant adversary proceeding pursuant to the Assignment Agreement and Order entered in the Bankruptcy Action on July 31, 2007.

9.  Prior to filing the Bankruptcy Action, Debtor was the owner of record or 3,744,000 shares of common stock (the "Shares") of Smart Alec's Intelligent Food, Inc., a California corporation ("Smart Alec's").

10.  Martin F. Triano dba Law Offices of Martin F. Triano (hereinafter "MFT") is, and at all times mentioned herein was, a law firm with its principal place of business located in the City and County of San Francisco.

11.  MFT began representing Debtor in October of 2001 in the case of Popov v. Hayashi. Debtor hired MFT for his case against Hayashi to recover Barry Bonds' 73rd homerun baseball. Thereafter MFT represented POPOV in the cases of Bantry Bay v. Popov and Yugen Kaisha (YKF) v. Popov.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

12. MFT is informed and believes and thereon alleges that Debtor was, until April of 2004, the majority shareholder in Smart Alec's and until February of 2004, the acting president of Smart Alec's.

13. On April 17, 2002, Debtor granted to MFT a promissory note ("Note") for the $45,648 owed by Debtor to MFT together with "such additional sums which may accrue from legal services being provided" by MFT. Debtor secured his promissory note by pledging his 3,744,000 Shares of stock in SMART ALEC's as collateral. See Exhibit A. The Note contains a provision for the payment of attorney fees and costs incurred in the enforcement in the Note.

14. On April 17, 2002, same day Debtor, as acting president of Smart Alec's, also signed and executed a written Guarantee of Promissory Note by Smart Alec's for the full performance of Debtor under the provisions of the Note ("Guarantee"). See Exhibit A.

15. On May 10, 2002 MFT executed a UCC-1 filing statement with the California Secretary of State. On April 20, 2007, the UCC-1 filing statement was amended and is due to lapse on May 10, 2012. A true and correct copy of the amended UCC-1 filing statement is attached hereto as Exhibit B.

16. MFT represented Debtor until he was Debtor discharged MFT on May 14, 2003.

17. MFT is informed and believes and thereon alleges that defendant Stephanie Dodson, an individual (the "Defendant"), is the spouse of Debtor and resides at 2032 Donald Drive, Moraga, California 94556.

18. On or about January 27, 2003, MFT faxed and mailed copies of the Note and Guarantee to Defendant.

19. MFT is informed and believes and thereon alleges that Debtor transferred all right, title and interest in the Shares to Defendant pursuant to the Share Purchase Agreement dated April 18, 2004 for the sum of $12,500 (the "Transfer"), which transfer was in violation of the Note's terms and constituted a default of the Note. See Exhibit C. MFT did not have notice of the Transfer until in or about October, 2005.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION

3

1

2

20. MFT is informed and believes and thereon alleges that Defendant is Smart Alec's president, and as a result of the Transfer, is Smart Alec's sole stockholder.

3

4

5

6

7

21. On September 6, 2005 Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("Bankruptcy Action"). Debtor was granted a discharge on April 9, 2006. Despite the Bankruptcy Court grant of discharge, MFT continues to possess a secured interest in the Shares now owned by Defendant.

8

9

10

22. MFT has not received a single payment on the amount set forth in the Note and secured by the Shares since January of 2003. By the terms of the promissory note, the entire balance, including principal, costs and interest, was due on April 30, 2003.

11

12

13

23. MFT timely presented a proof of claim in the Bankruptcy Action for his interest in the Shares ("Proof of Claim"), which claim was not objected to by any creditors and was upheld by this court and the district court upon objection and appeal by the Trustee.

14

15

16

17

18

24. MFT is informed and believes and thereon alleges that Defendant has taken out a loan to pay off the debt owed by Smart Alec's to YKF, which was incurred pursuant to a settlement agreement entered into between Debtor and YKF on or about February 6, 2004. MFT is informed and believes and thereon alleges that as a result of Defendant's actions, MFT's lien against the stock has been subordinated.

19

20

21

25. In April 1, 2007 the balance owed to MFT for legal services rendered, costs and interest accrued as a result of MFT's representation of Debtor is $696,629.63. The balance owed to MFT continues to accrue interest at a rate of 10% per year.

22

23

24

26. MFT filed an action in state court on July 13, 2007 for against Smart Alec's and Defendant for determination of his rights pursuant to the Note, which is currently pending before the San Francisco Superior Court and remains in the initial stage of proceedings.

25

26

27

27. On or about September 5, 2007, YKF filed the instant action alleging that Debtor and Defendant backdated the Share Purchase Agreement for the Transfer of the Shares and it from August, 2005 to April 18, 2004 with the actual intent to hinder and defraud Debtor's creditors by

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

wrongfully removing the Shares as an asset of the Debtor's Estate shortly before the Petition Date in order to retain control of Smart Alec's.

## FIRST CAUSE OF ACTION

### (Declaratory Relief as to DODSON and YKF)

28.  MFT re-alleges and incorporates herein paragraphs 1 to 27 as set forth above.

29.  MFT holds a Note that provides for his secured interest in the Shares and this interest was perfected by MFT. The Note provides for the collection of attorneys fees and costs incurred to enforce the Note.

30.  MFT is informed and believes and on that basis alleges that Defendant is not a protected purchaser because she had notice of the terms of the Note and of MFT's security interest in the Shares, and she did not receive the Transfer in good faith and did not pay reasonably equivalent value for the Transfer.

31.  MFT is informed and believes and on that basis alleges that pursuant to California Commercial Code Sections 9312(a) and 9315(a), he holds a valid and perfected security interest in the Shares, and in any proceeds from the Shares.

32.  On or about February 22, 2007, during a deposition held at the Law Offices of Martin F. Triano, Defendant testified that she did not believe that MFT had a lien against the Shares that she purchased from Debtor. She testified that she believes the lien is invalid due to statements made to her by Debtor as well as statements made by the attorneys for YKF during settlement negotiations. MFT is informed and believes and thereon alleges that Defendant continues to maintain that MFT does not hold a valid lien against the Shares she purchased from Debtor.

33.  An actual and present controversy exists between MFT and Defendant concerning their respective rights and duties in regard to the Note that granted MFT a security interest in the Shares on or about April 17, 2002.

34.  MFT is a secured creditor of Debtor's estate pursuant to his Proof of Claim. YKF purchased his right to bring the Adversary Proceeding subject to the interest of secured creditors of Debtor's estate.

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION

35. YKF has not sought recovery in this Adversary Proceeding for the secured credito of Debtor's estate. YKF has only requested that the court award relief to YKF personally.

36. An actual and present controversy exists between MFT and YKF concerning thei respective rights and duties in regard to the right to recover from Debtor's estate, pursuant to YKF's purchase of the right to bring this Adversary Proceeding and MFT's Proof of Claim in Bankruptcy Action.

37. MFT desires a judicial determination, as to respective rights and duties of MFT, and Defendant, such that:

> (a) MFT possesses a valid security interest on the Shares of stock formerly hel Debtor and now held by Defendant;
>
> (b) MFT possesses a valid security interest in the proceeds from the Shares formerly held by Debtor and now held by Defendant;
>
> (c) Any recovery by YKF in this action represents proceeds of the Shares and should be paid directly to MFT pursuant to his secured interest in the Shares i amount according to proof;
>
> (d) Attorneys fees and costs incurred herein are collectable under the Note;
>
> (e) MFT holds a valid proof of claim in the Debtor's estate; and
>
> (f) MFT is entitled to recover in this Adversary Proceeding based upon his Pr of Claim in an amount according to proof.

WHEREFORE, Plaintiff MFT prays for judgment against Defendant as follows:

1. A judicial determination that:

> (a) MFT possesses a valid security interest on the Shares of stock formerly he Debtor and now held by Defendant;
>
> (b) MFT possesses a valid security interest in the proceeds from the Shares formerly held by Debtor and now held by Defendant;

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel 415-371-8000
Fax 415-371-0001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION
6

(c) Any recovery by YKF in this action represents proceeds of the Shares and should be paid directly to MFT pursuant to his secured interest in the Shares in an amount according to proof;

(d) Attorneys fees and costs incurred herein are collectable under the Note;

(e) MFT holds a valid proof of claim in the Debtor's estate; and

(f) MFT is entitled to recover in this Adversary Proceeding based upon his Proof of Claim in an amount according to proof.

2.  For the payment of amounts recovered by YKF in this action to MFT pursuant to MFT's Note and Proof of Claim subject in an amount subject to proof;

3.  For attorneys fees and costs of suit incurred herein in an amount subject to proof; and

4.  For such other and further relief as the court may deem just and proper.

Dated: 11/14/07

LAW OFFICES OF TRIANO & BYRNE

By: _____

MARK D. BYRNE
Attorney for Martin F. Triano
dba Law Office of Martin F. Triano

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

TRIANO COMPLAINT FOR DECLARATORY RELIEF IN INTERVENTION

7

1  MARK D. BYRNE, ESQ., SBN 109628
2  LAW OFFICES OF TRIANO & BYRNE
3  25 Jessie Street, 16th Floor
   San Francisco, CA 94105-2749
4  Telephone: (415) 371-8000
   Facsimile: (415) 371-8001
5  mailbox@martinftriano.com

6

7                UNITED STATES DISTRICT COURT

8                NORTHERN DISTRICT OF CALIFORNIA

9                  SAN FRANCISCO DIVISION

10 YUGEN KAISHA, Y.K.F.,              )        Case No.: C-08-225-SC
11              Plaintiff,            )
                                      )        **CERTIFICATE OF SERVICE**
12        vs.                         )
                                      )
13 STEPHANIE DODSON                   )
                                      )
14              Defendant             )
                                      )
15                                    )
                                      )
16

17        I am citizen of the United States, and a resident of the County of San Francisco; I am over

18 the age of eighteen years, and not a party to the within action. My business address is 25 Jessie

19 Street, 16th Floor, San Francisco, California 94105-2749.  On February 28, 2008 served the

20 following documents:

21       • *NOTICE OF HEARING ON MOTION FOR INTERVENTION BY MARTIN F.*
22         *TRIANO DBA LAW OFFICES OF MARTIN F. TRIANO;*
         • *MOTION FOR INTERVENTION BY MARTIN F. TRIANO DBA LAW*
23         *OFFICES OF MARTIN F. TRIANO;*
         • *{PROPOSED} ORDER FOR INTERVENTION BY MARTIN F. TRIANO DBA*
24         *LAW OFFICES OF MARTIN F. TRIANO;*
25       • *MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF*
26         *MOTION FOR INTERVENTION BY MARTIN F. TRIANO DBA LAW*
           *OFFICES OF MARTIN F. TRIANO;*
27       • *DECLARATION OF MARK D. BYRNE IN SUPPORT OF MOTION FOR*
28         *INTERVENTION BY MARTIN F. TRIANO DBA LAW OFFICES OF MARTIN*
           *F. TRIANO; AND*
         • *PROOF OF SERVICE.*
   On the parties listed, addressed as follows:

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

CERTIFICATE OF SERVICE

1

| | |
|---|---|
| **JOEL BELWAY, ESQ.** | **JAMES S. MONROE, ESQ.** |
| **235 MONTGOMERY STREET, SUITE 668** | **NIXON PEABODY LLP,** |
| **SAN FRANCISCO, CA 94104-2910** | **ONE EMBARCADERO CENTER, 18TH FL.** |
| | **SAN FRANCISCO, CA 94111** |

**XXX**   **First Class Mail:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service to (List names) the same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more one day after date of deposit for mailing an affidavit.

**Facsimile:** By transmitting a true and correct copy via facsimile electronic equipment transmission (fax) to (List names) at the fax number listed above.

**Personal Delivery:** By personally delivering the document(s) above to the person(s) listed above at the address(es) on the date set forth above.

**Personal Delivery By Messenger:** By consigning the document(s) listed above to a messenger for personal delivery to the following person(s) at the address(es) on the date set forth above.

**Overnight:** By placing the document(s) thereof into envelope(s) bearing the name(s) and address(es) of the person(s) to be served by Federal Express Delivery.

**STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**XXX**   **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
        I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on February 28, 2008 in San Francisco, California.

Respectfully Submitted,

Stacey Arriola
Law Offices of Triano & Byrne
25 Jessie Street, 16th Floor
San Francisco, CA 94105

Dated: February 28, 2008

/s/      *Stacey Arriola*
STACEY ARRIOLA

Law Offices
**TRIANO & BYRNE**
25 Jessie Street, 16th Floor
San Francisco, CA 94105-2749
Tel. (415) 371-8000
Fax (415) 371-8001

CERTIFICATE OF SERVICE

2

1  MARK D. BYRNE, S/B #109268
   LAW OFFICES OF TRIANO & BYRNE
2  25 Jessie Street, 16th Floor
3  San Francisco, CA 94105
   (415) 371-8000
4  (415) 371-8001 fax
5  Attorneys for Martin F. Triano

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12 YUGEN KAISHA, Y.K.F.,          )    CASE No.: C-08-225-SC
                                  )
13                                )    **[PROPOSED] ORDER FOR**
          Plaintiff,              )    **INTERVENTION  BY MARTIN**
14 v.                             )    **F. TRIANO DBA LAW OFFICES**
                                  )    **OF MARTIN F. TRIANO**
15                                )
   STEPHANIE DODSON               )
16                                )    **DATE:         April 25, 2008**
                                  )    **TIME:         10:00 A.M.**
17        Defendant.              )    **COURTROOM:    1**
                                  )
18 _____ )

19

20        The above-entitled matter came on regularly for hearing before the Honorable Samuel

21 Conti, on this Friday, April 25, 2008 at 10:00 a.m. in Courtroom 1.  Mark D. Byrne, Esq.

22 appeared on behalf of Martin F. Triano dba Law Offices of Martin F. Triano,  James Monroe

23 appeared on behalf of Yugen Kaisha, Y.K.F. and Joel Belway appeared on behalf of Stephanie

24 Dodson.

25        Upon review of the pleadings submitted by the parties, hearing argument from both sides,

26 and good cause having been otherwise shown;

27 ///

28 ///

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

ORDER FOR INTERVENTION BY MARTIN F. TRIANO          1

1    IT IS HEREBY ORDERED that:

2    1.    Martin F. Triano dba Law Office of Martin F. Triano shall be allowed to Intervene

3  in the above entitled action by Yugen Kaisha, Y.K.F. against Stephanie Dodson;

4    2.    Martin F. Triano dba Law Office of Martin F. Triano shall be allowed to file a

5  Complaint for Intervention in the above entitled action.

6

7

8  Date: _____

9                HON. SAMUEL CONTI

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
TRIANO & BYRNE
25 Jessie Street 16th Floor
San Francisco, CA 94105
Tel. 415-371-8000
Fax 415-371-8001

ORDER FOR INTERVENTION BY MARTIN F. TRIANO

2