UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| YUGEN KAISHA, Y.K.F., | ) | No. C-08-0225 SC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION |
| v. | ) | FOR ABSTENTION OR |
| | ) | STAY AND GRANTING |
| | ) | TRIANO'S MOTION TO |
| STEPHANIE DODSON, | ) | INTERVENE |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

Plaintiff Yugen Kaisha, Y.K.F. ("Plaintiff" or "YKF") filed this action to set aside an allegedly fraudulent conveyance under 11 U.S.C. §§ 544(b) and 548. Defendant Stephanie Dodson ("Defendant" or "Dodson") moves the Court to abstain from hearing this action pursuant to 28 U.S.C. § 1334(c)(1), or in the alternative to stay the matter. See Docket No. 12 ("Abst. Mot."). Should the Court allow the matter to proceed, Dodson also requests that YKF be required to post a $25,000 security for costs. See id. YKF filed an Opposition and Dodson filed a Reply. Docket Nos. 15 ("Abst. Opp'n"), 18 ("Abst. Reply").

Also before the Court is a motion by Martin Triano, doing business as the Law Office of Martin F. Triano ("Triano"), to intervene in this dispute. See Docket No. 10 ("Int. Mot."). YKF filed an Opposition to Triano's motion and Triano replied. Docket

1  Nos. 14 ("Int. Opp'n"), 17 ("Int. Reply").  Dodson did not
2  participate in the briefing on Triano's motion.
3      Having thoroughly considered all of the parties' submissions,
4  the Court hereby DENIES Dodson's motion and GRANTS Triano's
5  motion.

## II. BACKGROUND

### A. YKF's Claim

On September 5, 2005, Alexander Popov ("Popov" or "Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of California. See In re: Popov, No. 05-32929 (Bankr. N.D. Cal. 2005).

In August of 2004, Popov transferred to Dodson 3,774,000 shares of common stock in Smart Alec's Intelligent Food, Inc, for a price of $12,500.[1]  YKF alleges that, at the time of this sale, the shares had been pledged to YKF as security for indebtedness of hundreds of thousands of dollars.  Compl., Adv. Docket No. 1, Ex. 3; Monroe Decl., Docket No. 16, ¶ 5, Ex. 2.[2]  YKF purchased from the Chapter 7 Trustee the rights, claims, causes of action, and remedies of the Trustee and of the Debtor's Estate to avoid and recover the transfer of stock from Debtor to Dodson under 11

---

[1] YKF alleges that Debtor actually transferred the shares to Defendant in August of 2005 and that Debtor and Defendant backdated the share purchase agreement to further their fraudulent conveyance.  Resolution of this issue is not necessary for the instant motion.

[2] Citations to documents from the underlying adversary proceeding, No. 07-3104 (Bankr. N.D. Cal), will appear in the form "Adv. Docket No. XX."

2

U.S.C. §§ 544(b), 548, and 550, and California Civil Code §§ 3439-3439.12.  Compl. ¶¶ 10-11, Ex. A.  The sale of the Trustee's right to pursue this action was approved by the Bankruptcy Court. Monroe Decl. ¶ 5, Ex. 2.

After purchasing the right to do so, YKF brought this action against Dodson, alleging that Debtor transferred the stock to Dodson with the intent to hinder, delay, or defraud the Debtor's creditors.  See Yugen Kaisha, Y.K.F. v. Dodson, Adversary Proceeding No. 07-3104 (Bankr. N.D. Cal.).  By transferring the stock to Dodson, YKF alleges, Debtor took the stock out of the bankruptcy estate so that he and Dodson could retain control of Smart Alec's.

Dodson filed a counterclaim against YKF, alleging breach of contract, on which she demanded a jury trial.  Adv. Docket No. 6. Dodson did not consent to have the jury trial before the Bankruptcy Court.  Pursuant to Bankruptcy Local Rule 9015-2(b), the Bankruptcy Court therefore certified that the reference should be withdrawn and the case should be transferred to this Court. Adv. Docket No. 24.

**B.    Triano's Claim**

Triano moves to intervene in this action on the basis that he has a secured interest against the same 3,774,000 shares of stock in Smart Alec's that form the basis of YKF's claim against Dodson. In April 2002, prior to transferring the stock to Dodson, Debtor executed a promissory note in the amount of $45,648 plus "such additional sums which may accrue from the legal services being

3

1  provided by" Triano. See Byrne Decl., Docket No. 10-4, Ex. N.[3]
2  This note also provides for collection of attorney's fees and
3  costs incurred in enforcement of its terms. See id. Debtor also
4  pledged his shares of Smart Alec's as collateral to secure payment
5  of the promissory note. Id. Under the terms of the promissory
6  note, the entire balance, including principal, costs, and interest
7  was due on April 30, 2003. Id. Triano claims he perfected his
8  interest in the stock by filing a statement with the California
9  Secretary of State in 2002, which he amended in April 2007 to
10 reflect the continued interest after Debtor's discharge from
11 bankruptcy. Id. Ex. O.

12   Triano sued Dodson in California state court, alleging that
13 Defendant purchased and encumbered the stock in question without
14 notice to Triano, in violation of the promissory note. Id. Ex. Q.
15 Triano sought a judicial determination that the promissory note
16 gives him a valid and enforceable security interest in the stock,
17 and damages for intentional interference with contractual
18 relations. Id.

19   In the bankruptcy proceeding, Triano timely presented his
20 Proof of Claim secured by the stock disputed in this matter, which

---

[3] The Declaration of Mark D. Byrne, counsel for Triano, purports to include 18 exhibits, labeled A-R. However, the document identified in the text of Byrne's declaration as Exhibit B, a copy of the Bankruptcy Court's certification to withdraw the reference, was not actually attached to the declaration. The result of this is that in the version of the declaration filed with the Court, the Exhibits labeled B-P correspond with those identified in Byrne's declaration as C-R. As the Court has access to the certification, Adv. Docket No. 24, the Court will refer to the remaining exhibits as though they had been correctly labeled to correspond with the text of Byrne's declaration.

was not objected to by any of the estate's creditors. See id. Ex. F. The Trustee objected in part, however. The bankruptcy court upheld the Proof of Claim over the Trustee's objection, and the district court affirmed that ruling on appeal. See id. Exs. G, H.

Triano asserts that when YKF purchased the right to bring this suit from the Trustee, it did so subject to Triano's interest as a secured creditor, and that both YKF and the Trustee acknowledged that interest. See id. Exs. J-M. In the new complaint Triano wishes to file here, if the Court allows him to intervene, Triano seeks declaratory relief from the Court affirming that he holds a valid Proof of Claim in the Debtor's estate, that he holds a valid security interest in the disputed shares of Smart Alec's and the proceeds therefrom, and attorney's fees and costs recoverable under the terms of his promissory note from Debtor. See id. Ex. R.

### III. ABSTENTION MOTION

#### A. Legal Standard

Dodson moves the Court to abstain from hearing this matter. The Bankruptcy Code vests the Court with the discretion to abstain under certain circumstances:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1134(c)(1). The Ninth Circuit has identified a number

of factors that the Court may consider in deciding whether or not to abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Christensen v. Tuscon Estates, Inc. (In re Tuscon Estates, Inc.), 912 F.2d 1162, 1167 (9th Cir. 1990) (quoting Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.), 81 B.R. 422, 429 (Bankr. S.D. Tex. 1986))(modification in original).

**B. Discussion**

1. Abstention Is Inappropriate

None of Defendant's arguments in favor of abstention is compelling. First, Defendant argues that neither of the parties here was a debtor or trustee in the underlying bankruptcy. Abst. Mot. at 5. This is misleading. YKF lawfully purchased, with the Bankruptcy Court's approval and without objection from any party,

6

1  the Trustee's rights in this action.  YKF therefore stands in the
2  place of the Trustee in this suit.  See Duckor Spradling & Metzger
3  v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 782-83 (9th
4  Cir. 1999) (chapter 7 trustee may authorize a creditor to exercise
5  the power to bring avoidance claims); see also Simantob v. Claims
6  Prosecutor, L.L.C. (In re Lahijani), 325 B.R. 282, 288 (B.A.P. 9th
7  Cir. 2005); Religious Tech. Ctr. v. Lucas (In re Henson), No.
8  03-5131, 2006 Bankr. LEXIS 3722, at *26-27 (Bankr. N.D. Cal. Apr.
9  21, 2006) (collecting authority).  Defendant concedes this point
10 in her Reply brief, claiming it has no bearing on the abstention
11 issue, despite the fact that she repeated the argument that
12 neither she nor YKF is a trustee only one paragraph earlier.  See
13 Abst. Reply at 3; see also Abst. Mot. at 5.

14      Defendant next argues that the Court should abstain because
15 YKF included both Bankruptcy Code and California Code of Civil
16 Procedure provisions in the Complaint.  Abst. Mot. at 5.  While
17 the Court may be called upon to answer questions of California
18 law, it is clear that the bankruptcy issues are dominant.  The
19 First and Third Causes of Action arise solely under 11 U.S.C. §
20 548.  Section 548(a)(1)(A) allows the trustee to avoid a transfer
21 of the debtor's interest in any property or obligation that
22 occurred up to two years prior to filing the bankruptcy petition,
23 where it can be shown that the debtor "made such transfer or
24 incurred such obligation with actual intent to hinder, delay, or
25 defraud any" creditor.  The remedy provided, avoidance of the
26 transfer, is explicitly created by the federal statute, without
27 any reference to state law.  The same is true with regard to

7

section 548(a)(1)(B)(i), which allows the trustee to avoid a transfer made in the same two year period for which the debtor "received less than a reasonably equivalent value." These are solely questions of bankruptcy law. See Lahijani, 325 B.R. at 288 ("While there is some disagreement among courts about the exercise by others of the trustee's bankruptcy-specific avoiding power causes of action, the Ninth Circuit permits such actions to be sold or transferred." (emphasis added)). While YKF's claims under 11 U.S.C. § 544(b)(1) may require reference to California law for resolution, the rights asserted are created by federal law and also require resolution of other bankruptcy issues for their enforcement.

Defendant's final argument for abstention is that YKF is forum shopping, because it could have brought this action in the Alameda County Superior Court. See Abst. Mot. at 5-6. Bringing claims which arise under the Bankruptcy Code in the Bankruptcy Court, as YKF did, can hardly be considered forum shopping. The mere existence of an alternative forum is not a basis for abstention, particularly where the dispute raises questions of bankruptcy law and falls under this Court's original jurisdiction. See 11 U.S.C. §§ 544, 548; 28 U.S.C. § 1334.

Even if it were not clear that YKF is asserting bankruptcy claims and invoking this Court's jurisdiction under the bankruptcy law, the Court would still have jurisdiction. YKF is a Japanese corporation with its primary place of business in Japan. Defendant is a California resident. The amount in controversy exceeds $75,000. As such, the matter properly falls within the

8

1  Court's diversity jurisdiction.  See 28 U.S.C. § 1332(a)(2).
2  Though unnecessary, the existence of a second basis for the
3  Court's jurisdiction further supports the Court's conclusion.
4      For each of the reasons identified above, the Court concludes
5  that abstention in this matter is inappropriate.  Defendant did
6  not address the majority of the judicially-recognized reasons for
7  abstaining, and failed to persuade the Court that the reasons she
8  did address were actually applicable here.  The Court therefore
9  DENIES Defendant's motion to abstain.

10      2.   No Basis Exists For Staying This Action
11      Defendant moves in the alternative for a stay of this action.
12  According to Defendant, YKF is not qualified to do business in
13  California, and therefore, it may not maintain an action in the
14  California courts.  See Abst. Mot. at 6; Cal Corp. Code § 2203(c).
15  This argument is without merit.  Because YKF's claim arises under
16  the federal bankruptcy laws and the Court has jurisdiction under
17  those laws, as discussed above, the state licensing requirements
18  cannot prevent YKF from suing in federal court.  See Harms, Inc.
19  v. Tops Music Enters., Inc., 160 F. Supp. 77, 80-81 (S.D. Cal.
20  1958); see also Lone Star Steakhouse & Saloon v. Alpha of Va.,
21  Inc., 43 F.3d 922, 929 n.9 (4th Cir. 1995).
22      Even if the sole basis for jurisdiction were diversity,
23  however, Defendant's argument would still fail.  Defendant's claim
24  that YKF could not sue in California state court significantly
25  contradicts the assertions in her abstention argument that if the
26  Court were to abstain, YKF would simply bring suit in California
27  court.  What's more, Defendant acknowledges that YKF previously

9

sued her in state court. Abst. Mot. at 5-6. In fact, Defendant's counterclaim alleges that YKF breached the settlement agreement arising from the prior suit YKF brought against her in the state court. See id. at 3-4. Nothing in Defendant's brief or supporting papers gives the Court any factual basis for concluding that YKF's eligibility to sue her in state court has changed.

Finally, Defendant has not established that YKF is conducting "intrastate business" as that term is defined in the California Corporations Code. See Cal. Corp. Code §§ 2105, 2203(c). The burden of proving that YKF was transacting intrastate business and that this action arises out of that business is on Defendant. See United Med. Mgmt. v. Gatto, 49 Cal. App. 4th 1732, 1740 (Ct. App. 1996). Under section 191(a) of the Corporations Code, "'transact intrastate business' means entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce." There is no evidence that YKF has entered into repeated and successive transactions in California. Defendant points to YKF's original investment in Smart Alec's (which gave rise to YKF's lien against the disputed stock), and the series of legal disputes following that investment. However, merely being a shareholder of a domestic corporation does not qualify as transacting intrastate business. Cal. Corp. Code § 191(b)(1). Nor does bringing a lawsuit or settling a lawsuit or dispute. Id. § 191(c)(1). As Defendant has not carried her burden, the Court DENIES the motion to stay.

   3. Defendant's Request For Security Is Not Justified

Defendant also moves the Court to require YKF to furnish a

10

$25,000 security for costs. Abst. Mot. at 8. Federal courts have the inherent power to require a plaintiff to post such a security, and often look to the law of the forum state in determining whether to do so. See Simulnet E. Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574 (9th Cir. 1994). The California Civil Procedure Code allows a defendant to move for an undertaking of costs:

> The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding. The motion shall be accompanied by an affidavit in support of the grounds for the motion and by a memorandum of points and authorities. The affidavit shall set forth the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action or special proceeding.

Cal. Civ. Proc. Code § 1030(b). While there is no dispute that YKF is a foreign corporation, Defendant has not satisfied the other statutory requirements. Defendant does not address the merits of the case at all, let alone prove that "there is a reasonable possibility" that she will obtain judgment. Id. The Court therefore DENIES Defendant's motion for a security for costs. See A. Farber & Partners, Inc. v. Garber, 417 F. Supp. 2d 1143, 1167-47 (C.D. Cal. 2006).

**IV. INTERVENTION MOTION**

    **A. Legal Standard**

Rule 24 of the Federal Rules of Civil Procedure governs both intervention as a right and permissive intervention. See Fed. R.

11

Civ. P. 24(a), (b). Rule 24 is broadly construed in favor of applicants for intervention. United States v. Stringfellow, 873 F.2d 821, 826 (9th Cir. 1986), vacated on other grounds sub nom., Stringfellow v. Concerned Neighbors In Action, 480 U.S. 370 (1987). Intervention as a right, under Rule 24(a)(2), is governed by a four-part test:

> (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the other parties.

Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 535, 527 (9th Cir. 1983). Application of this test is guided by practical concerns. Stringfellow, 873 F.2d at 826. Where the party seeking to intervene cannot satisfy the requirements of Rule 24(a), he may still be entitled to permissive intervention under Rule 24(b)(1)(B) if he can satisfy three conditions: "(1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common." Venegas v. Skaggs, 867 F.2d 527, 529 (9th Cir. 1989).

**B.  Discussion**

Triano asserts that he may intervene as a matter of right under Rule 24(a)(2). In the alternative, if the Court finds no right, Triano argues that the Court should grant him permission to intervene under Rule 24(b)(1)(B). The Court agrees with Triano in

12

1 the first instance, and does not reach the question of permissive
2 intervention.

3 Of the four factors Triano must establish to prove he has the
4 right to intervene, two are not in dispute. First, Triano filed
5 his motion to intervene in a timely manner. Before the Bankruptcy
6 Court, Triano filed his motion shortly after Dodson filed her
7 Answer. See Adv. Docket Nos. 6, 12. Triano then re-filed his
8 motion promptly in this Court after the reference was withdrawn.
9 See Int. Mot.; Sierra Club v. U.S. Envtl. Prot. Agency, 995 F.2d
10 1478, 1481 (9th Cir. 1993) (motion to intervene timely if filed at
11 the outset of the litigation). The fourth factor is also
12 undisputed, as it is clear that Triano's interests are adverse to
13 both Dodson and YKF. However, YKF does contest the second and
14 third factors.[4] See Int. Opp'n at 3-4.

15 The second factor in the test for intervention is whether the
16 prospective intervenor "assert[s] an interest relating to the
17 property or transaction which is the subject of the action."
18 Sagebrush Rebellion, 713 F.2d at 527. This interest must also be
19 protectable. See Sierra Club, 995 F.2d at 1484 ("It is generally
20 enough that the interest is protectable under some law, and that
21 there is a relationship between the legally protected interest and
22 the claims at issue."). Triano asserts that Debtor unlawfully
23 transferred 3,744,000 shares of Smart Alec's stock to Dodson, that
24 he has a secured lien against those shares, and that his lien

---

[4] Before the Bankruptcy Court withdrew the reference, Triano moved to intervene in that proceeding, and Dodson did not oppose intervention. See Adv. Docket Nos. 12, 16.

13

1  should be superior to any claim YKF has against the same shares.
2  Triano's interests stem both from his previously-upheld Proof of
3  Claim in the underlying Bankruptcy case, as well as his direct
4  claim of a secured interest in the stock.  These interests are
5  both protectable by law and related to the property or transaction
6  which is the subject of YKF's action against Dodson.  Triano has
7  therefore satisfied the second Sagebrush Rebellion requirement.
8       YKF also argues that Triano hasn't satisfied the third
9  requirement.  Int. Opp'n at 4.  The Court disagrees.  Triano's
10 ability to protect the interests described above may be severely
11 impaired by outcomes possible in the present action.  YKF suggests
12 that, as long as Triano can bring a claim against whoever owns the
13 stock at the end of this suit, his ability to protect his interest
14 is not affected.  The issue is not so simple.  For example, a
15 ruling in this action that the transfer of stock to Dodson was not
16 fraudulent would likely be persuasive to the state court
17 considering the nearly-identical issue in Triano's action against
18 Dodson.  Even though the ruling here would not be binding on the
19 state court, the potential effect still warrants intervention
20 here:

> Furthermore, even if we assume that the district court's ruling has no binding effect on the Arizona courts, we cannot wholly overlook the fact that jurisprudential concerns might cause those courts to find the reasoning of the district court more persuasive than they might otherwise find a similar argument to be, and that they might choose to accept the district court's reasoning to avoid confusion, lack of finality, and disrespect for law.

27 Yniguez v. Arizona, 939 F.2d 727, 737 (9th Cir. 1991), vacated on

14

other grounds sub nom., Arizonans for Official English v. Arizona, 520 U.S. 43 (1997); see also Stringfellow, 873 F.2d at 826.

As a practical matter, the outcome of this litigation will determine the "remedial scheme" for the disposition of the disputed Smart Alec's shares. See Stringfellow, 873 F.2d at 827. Excluding Triano from that remedial scheme is also sufficient basis for allowing him to intervene here:

> Where, as here, a prospective intervenor has demonstrated a clear interest in the remedial scheme, and where the prospective intervenor seeks to obtain remedies that differ from those sought by the original plaintiffs, it is reasonable to conclude that disposition of the litigation may impair the prospective intervenor's ability to protect its interests. That the remedy established in the present litigation may be challenged in a subsequent action does not detract from our conclusion.

Id. Given the liberal scope of Rule 24 favoring intervention, the Court finds that Triano has established all four of the Sagebrush Rebellion factors, and therefore GRANTS Triano's motion.

## V.   CONCLUSION

For the reasons set forth above, the Court DENIES Dodson's motion in its entirety and GRANTS Triano's motion. Triano shall be allowed to file his proposed Complaint for Intervention, attached as Exhibit R to the Byrne Declaration.

IT IS SO ORDERED.

Dated: August 11, 2008

_____
UNITED STATES DISTRICT JUDGE

15