1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7                                    )
                                     )
8   YUGEN KAISHA, Y.K.F.,            )   No. 08-0225 SC
                                     )
9                   Plaintiff,       )
                                     )   ORDER GRANTING IN
10        v.                         )   PART AND DENYING IN
                                     )   PART PLAINTIFF'S
11  STEPHANIE DODSON,                )   MOTION TO STRIKE, AND
                                     )   GRANTING PLAINTIFF'S
12                  Defendant.       )   MOTION FOR
                                     )   PRELIMINARY
13  _____)   INJUNCTION

14

15  I.   **INTRODUCTION**

16        Plaintiff Yugen Kaisha, Y.K.F. ("Plaintiff" or "YKF") filed

17  this action to set aside an allegedly fraudulent conveyance under

18  11 U.S.C. §§ 544(b) and 548, and California Civil Code §§ 3439-

19  3439.12.  Two motions are pending before this Court.  First, YKF

20  moves to strike Stephanie Dodson's ("Defendant" or "Dodson")

21  demand for a jury trial, or in the alternative, to bifurcate

22  proceedings.  Docket No. 37 ("Motion to Strike").  Dodson has

23  filed a memorandum in opposition.  Docket No. 48 ("Dodson

24  Opposition").  Attorney Martin F. Triano, dba Law Offices of

25  Martin F. Triano ("Triano") also filed a memorandum in opposition.

26  Docket No. 44 ("Triano MTS Opposition").  YKF filed a reply to

27  both memoranda of opposition.  Docket No. 52 ("YKF MTS Reply").

28        Second, YKF moves for a preliminary injunction.  Docket No.

United States District Court
For the Northern District of California

33 ("MPI").  Dodson has filed a Statement of Non-Opposition to this motion.  Docket No. 47 ("Dodson Non-Opposition").  Triano has filed a limited opposition.  Docket No. 40 ("Triano PI Opposition").  YKF filed a reply to the Triano PI Opposition. Docket No. 50 ("YKF PI Reply").  Having considered all of the parties' submissions, the Court hereby GRANTS IN PART AND DENIES IN PART YKF's Motion to Strike.  The Court GRANTS YKF's Motion for Preliminary Injunction.

## II.  **BACKGROUND**

### A.  **YKF's Fraudulent Conveyance Claims**

YKF originally filed an action for the fraudulent conveyance of stock in the Bankruptcy Court of the Northern District of California.  Yugen Kaisha, Y.K.F. v. Dodson, Adversary Docket No. 07-3104 (Bankr. N.D. Cal.).[1]  YKF's claims arise out of the transfer of 3,744,000 shares of common stock in Smart Alec's Intelligent Food, Inc. ("Smart Alec's") from Alexander Popov ("Popov") to his then-girlfriend, Dodson.  Adv. Docket No. 1 ("YKF Complaint") at 2.  Popov and Dodson are now married.  Id.  Popov filed for personal bankruptcy on September 5, 2005.  See In re: Popov, No. 05-32929 (Bankr. N.D. Cal. 2005).

The transfer of shares took place some time before Popov filed for bankruptcy, but the date of the transfer is in dispute. Dodson claims that the transaction took place in April of 2004.

---

[1] Citations to documents from the underlying adversary proceeding, Yugen Kaisha, Y.K.F. v. Dodson, Adversary Docket No. 07-3104 (Bankr. N.D. Cal.), will appear in the form "Adv. Docket No. XX."

2

United States District Court
For the Northern District of California

Adv. Docket No. 6 ("Dodson Answer") at 2.  YKF alleges that it took place in August of 2005, roughly a month before Popov filed for personal bankruptcy.  YKF Complaint at 2.  Dodson paid Popov $12,500 for the shares.  Id. at 3.  YKF alleges that this transfer was fraudulent, and motivated by an intent to hinder and defraud Popov's creditors.  Id.

On August 1, 2007, YKF purchased from the Chapter 7 Trustee the rights, claims, causes of action, and remedies of the Trustee and the Debtor's Estate to avoid and recover the transfer of stock to Dodson under 11 U.S.C. §§ 544(b), 548, and 550, and California Civil Code §§ 3439-3439.12.  Id. Ex. A ("Assignment Agreement").  YKF then brought suit against Dodson.

**B.  Dodson's Counterclaim**

While Popov's personal bankruptcy proceedings were ongoing, Dodson and YKF entered arrangements to repay debts that Smart Alec's and Popov owed to YKF.  Dodson Answer at 7-8.  These arrangements culminated in a Closing Agreement, dated March 12, 2007, involving a redemption of shares held by YKF, in consideration for the payment of obligations of Smart Alec's and Popov to YKF.  Id.

Upon filing her answer to YKF's complaint for fraudulent conveyance, Dodson asserted a contract-based counterclaim against YKF.  Id.  She alleges that YKF delayed the closing of the Closing Agreement in bad faith, thereby causing her to pay approximately $90,000 more than she would have paid if YKF had acted in good faith.  Id.  Dodson demanded a jury trial, and did not consent to a jury before the Bankruptcy Court.  Adv. Docket No. 24

3

("Certification for Withdrawal").  The case was thereafter transferred to this Court.  Id.

### C.  **Triano's Intervention**

Triano had previously provided legal services for Popov, and also claims a security interest in the shares that are disputed in YKF's fraudulent conveyance claim.  Adv. Docket No. 12 ("Motion to Intervene").  Triano alleges an agreement between Popov and Triano from 2002 providing him with a derivative interest in the shares. Id. at 2.  On August 11, 2008, this Court granted Triano's Motion to Intervene.  See Docket No. 20.

## III.  **LEGAL STANDARD**

### A.  **Motion to Strike Dodson's Jury Demand**

The Seventh Amendment protects a party's right to a trial by jury.  Parties are entitled to a trial by jury for issues that are legal in nature, but not for issues that are equitable in nature. See Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 347-48 (1998).  The Court may strike a jury demand if it finds that on some or all of the issues there is no federal right to a jury trial.  See Fed. R. Civ. P. 12(f), 39(a)(2).

### B.  **Alternative Motion to Bifurcate**

Under Rule 42(b) of the Federal Rules of Civil Procedure, the Court may, "for convenience, to avoid prejudice, or expedite and economize, . . . order a separate trial of one or more separate issues [or] counterclaims . . . ."  Fed. R. Civ. P. 42(b).

### C.  **Motion for Preliminary Injunction**

To be entitled to a preliminary injunction, the plaintiff

4

1    "must establish that he is likely to succeed on the merits, that

2    he is likely to suffer irreparable harm in the absence of

3    preliminary relief, that the balance of equities tips in his

4    favor, and that an injunction is in the public interest." <u>Winter</u>

5    <u>v. Natural Res. Def. Council, Inc.</u>, 129 S. Ct. 365, 374 (2008).

6

7    **IV.   DISCUSSION**

8          **A.   Motion to Strike**

9          YKF moves to strike Dodson's demand for a jury trial of both

10   YKF's claims for fraudulent conveyance and Dodson's contract-based

11   counterclaim.  Dodson opposes the Motion to Strike, including

12   YKF's alternative motion to bifurcate.  Dodson Opp'n at 1.  Triano

13   does not oppose the motion to strike, but opposes the motion to

14   bifurcate.  Triano MTS Opp'n at 1.

15               1.   <u>YKF's Fraudulent Conveyance Claims</u>

16          YKF is seeking recovery under 11 U.S.C. §§ 544(b) and 548,

17   and California Civil Code §§ 3439-3439.12.  Specifically, YKF is

18   seeking to recover the shares in Smart Alec's that were

19   transferred from Popov to Dodson in the allegedly-fraudulent

20   conveyance.

21          For suits brought to enforce statutory rights, the Seventh

22   Amendment protects the right to trial by jury to the extent that

23   the action is "analogous to common-law causes of action ordinarily

24   decided in English law courts in the late 18th century, as opposed

25   to those customarily heard by courts of equity or admiralty."

26   <u>Granfinanciera, S. A. v. Nordberg</u>, 492 U.S. 33, 42 (1989)

27   (citations omitted).  The Court must apply a three-step analysis

28
                                      5

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

to determine whether a statutory cause of action requires a jury trial.  Id.  First, the Court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  Id.  Second, the Court must "examine the remedy sought and determine whether it is legal or equitable in nature."  Id.  If these two factors "indicate that a party is entitled to a jury trial," then the Court will "decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder."  Id.

Under the first step, the Court examines the nature of YKF's claims for the fraudulent conveyance of shares.  YKF contends that its claims are equitable, and Dodson does not challenge this characterization.  Mot. to Strike at 6; Dodson Opp'n.  Courts have concluded that claims for fraudulent conveyance of property other than money, such as real property or intangibles, are equitable in nature.[2]  See In re Babcock & Wilcox Co., No. 01-1467, 2001 U.S. Dist. LEXIS 9660, at *16-17 (E.D. La. June 25, 2001) (finding fraudulent conveyance action to be equitable because its subject matter was shares).  The Court concludes that YKF's claim is

---

[2] The Supreme Court considered the nature of a claim for fraudulent conveyance of money (rather than stock) in Granfinanciera, and it concluded that the claim was legal.  Id. at 36.  The Court predicated this conclusion on the fact that "the present action [is] for *monetary* relief," and because the Trustee "sought the recovery of a fixed sum of money."  Id. at 42, 45 (emphasis in original).  Later courts have concluded that this ruling was limited to fraudulent conveyance of money and does not apply to other subject matter.  See, e.g., United States v. Combs, No. 96-5050, 1996 U.S. Dist. LEXIS 17187, *3-4 (E.D. Cal. Oct. 28, 1996).

**United States District Court**
For the Northern District of California

1   equitable in nature.

2       The Court next considers the nature of YKF's requested

3   relief.  YKF requests that the transfer be set aside, that a

4   constructive trust be declared, and the shares be transferred to

5   YKF.  YKF Complaint at 6.  An action to set aside a fraudulent

6   conveyance is traditionally equitable.  <u>See</u>, <u>e.g.</u>, <u>Hyde Properties</u>

7   <u>v. McCoy</u>, 507 F.2d 301, 305 (6th Cir. 1974).  However, Dodson

8   contends that YKF's request "[f]or compensatory damages according

9   to proof" renders YKF's request for relief equitable, rather than

10  legal.  Dodson Opp'n at 3.  This alternative prayer does not

11  convert YKF's requested relief into a legal request.  <u>Whitlock v.</u>

12  <u>Hause</u>, 694 F.2d 861, 865 (1st Cir. 1982) (rejecting demand for

13  jury trial based on "catch all" prayer, where "damages request was

14  intended to take effect only if the earlier requested equitable

15  relief of reconveyance was unavailable"); <u>Babcock & Wilcox Co.</u>,

16  2001 U.S. Dist. LEXIS 9660, at *18 (request "for alternative

17  monetary relief in an amount equal to the value of the assets does

18  not convert the claim to one at law").  The Court concludes that

19  the relief sought by YKF is equitable in nature.  Because the

20  Court concludes that YKF's claims, as well as the relief it seeks,

21  are equitable in nature, it need not consider the third factor in

22  <u>Granfinanciera</u>.  492 U.S. at 42.

23      Dodson contends that she is entitled to a trial by jury

24  because she did not submit a claim for relief with the Bankruptcy

25  Court.  Dodson Opp'n at 3.  This argument misapprehends the basis

26  for YKF's Motion to Strike.  YKF is not arguing that Dodson has,

27  by submitting a claim or by seeking the res of the bankruptcy

28                                  7

United States District Court
For the Northern District of California

1   estate, waived her right to a jury.  Instead, YKF's Motion to

2   Strike rests primarily on the equitable nature of the claims in

3   its complaint and the relief that it is seeking.  This Court finds

4   that the nature of YKF's complaint is equitable, and GRANTS YKF's

5   motion to strike Dodson's jury request as to the complaint.

6          2.  Dodson's Counterclaim

7        Dodson has raised a contract-based counterclaim and is

8   seeking damages against YKF.  Contract claims for damages are a

9   traditional example of suits at law that entitle the parties to

10  jury trials.  See e.g., Atlas Roofing Co. v. Occupational Safety &

11  Health Review Comm'n, 430 U.S. 442, 458 (1977) ("[S]uits for

12  damages for breach of contract, for example, were suits at common

13  law with the issues of the making of the contract and its breach

14  to be decided by a jury.").

15       YKF contends that Dodson effectively waived her right to a

16  jury trial by raising a permissive counterclaim in response to a

17  complaint that sounds in equity.  YKF cites Horowitz v. New York

18  Life Ins. Co., 80 F.2d 295, 301 (9th Cir. 1935) for the

19  proposition that raising a permissive counterclaim waives a

20  counterclaimant's right to a jury trial.  However, Horowitz

21  predates the Federal Rules of Civil Procedure, and this rule has

22  not survived the merger of law and equity.  See, e.g., Beacon

23  Theaters, Inc. v. Westover, 359 U.S. 500, 505-07 (1959) (rejecting

24  rule because "[u]nder the Federal Rules the same court may try

25  both legal and equitable causes in the same action"); Morrison-

26  Knudsen Co., Inc. v. Wiggins, 13 F.R.D. 304, 305 (D. Alaska 1952)

27  ("Since the adoption of the Federal Rules of Civil Procedure, . .

28
                                    8

United States District Court
For the Northern District of California

1   . the Federal Courts have held in a number of instances that trial

2   of legal issues so raised by the defendant should be tried by

3   jury." (citations omitted)); <u>see also Cache, Inc. v. Scitech Med.</u>

4   <u>Prods., Inc.</u>, No. 89-4028, 1990 U.S. Dist. LEXIS 3830, at *5-6 (D.

5   Kan. Mar. 19, 1990) (rejecting rule).

6       YKF cites several cases to imply that the modern rule is that

7   only a counterclaimant who raises a compulsory counterclaim does

8   not waive his or her right to a jury.  <u>See e.g.</u>, <u>In re Lloyd's</u>

9   <u>Secs., Inc.</u>, 156 B.R. 750, 754 (E.D. Penn. 1993); <u>In re Allied</u>

10  <u>Cos., Inc.</u>, 137 B.R. 919, 924 (S.D. Ind. 1991).  These cases

11  suggest, at most, that a counterclaim raised against a debtor or a

12  bankrupt estate may, in some circumstances, be interpreted as a

13  waiver of a jury trial because of the equitable nature of the

14  bankruptcy process.  However, Dodson is not counterclaiming

15  against the bankruptcy estate; she is raising a contract-based

16  counterclaim against YKF, which arose before YKF had even

17  purchased the right to bring a separate suit on behalf of the

18  Trustee.  Dodson's counterclaim is therefore not against YKF as a

19  trustee, and this case law is not relevant.

20      YKF's argument that Dodson's counterclaim is permissive,

21  rather than compulsory, is not persuasive.  YKF has cited no case

22  that suggests that this distinction is a basis for denying a jury

23  trial under the modern judicial system.  Cases that reject the

24  waiver rule generally do not premise their conclusion on whether

25  the counterclaim is permissive or compulsory.  <u>See e.g.</u>, <u>Beacon</u>

26  <u>Theaters</u>, 359 U.S. at 505-07.  This distinction is inconsistent

27  with the merger of law and equity, and has been rejected by the

28

9

weight of legal scholarship.  See, e.g., 8 James Wm. Moore et al.,

Moore's Federal Practice ¶ 38.43 at 38-206 (3d ed. 2009) ("[N]o

waiver of jury trial results from the interposition of a 'legal'

counterclaim whether compulsory or permissive, in a civil action

which is essentially equitable."); 9 Charles Alan Wright & Arthur

R. Miller, Federal Practice and Procedure 2305 at 70 (2nd ed.

1994) ("The same result should be and is reached for any

counterclaim, whether compulsory or permissive.").  The Court

therefore concludes that Dodson did not waive her right to a jury

trial by asserting a legal counterclaim in an equitable action.

The Court DENIES YKF's motion to strike Dodson's jury demand with

respect to her counterclaim.

### B.  Alternative Motion to Bifurcate

YKF moves to bifurcate so as to separate the proceedings

related to its fraudulent conveyance claims from the proceedings

related to Dodson's counterclaim.  Mot. to Strike at 2.  YKF

argues that bifurcation will lead to two advantages.  Id. at 10.

First, it will be more efficient, because YKF's equitable claim

can be tried separately.  Id.  Second, because there is little

factual overlap between YKF's claims and Dodson's counterclaim,

trying these two issues together could confuse a jury.  Id.

Rule 42(b) of the Federal Rules of Civil Procedure "merely

allows, but does not require, a trial court to bifurcate cases 'in

furtherance of convenience or to avoid prejudice.'"  Hangarter v.

Provident Life & Accident Ins. Co., 373 F.3d 998, 1021 (9th Cir.

2004) (citations omitted).  The Court finds that there is no

compelling reason to bifurcate.  The parties to both claims are

United States District Court
For the Northern District of California

the same, and the Court finds that these matters will be most
efficiently dealt with before a single court in a single action.
The Court DENIES YKF's alternative motion to bifurcate.

### C.   **PRELIMINARY INJUNCTION**

YKF moves to enjoin Dodson from transferring her interest in
the shares at issue.  MPI at 1.  YKF also requests that Dodson be
required to notify Summit Bank of the pendency of this action.
MPI at 6.  This is because Summit Bank "allegedly has a security
interest in the Shares and Smart Alec's assets," which it acquired
after Dodson guaranteed a loan from Summit Bank.  Id.[3]

Dodson is not opposed to the injunction, but denies that YKF
is likely to prevail on the merits.  Dodson Non-Opp'n at 1.
Triano objects only insofar as the injunction would require a
finding that YKF is likely to succeed not only as to Dodson, but
also over Triano's claim to the shares.  Triano PI Opp'n at 1.
Because it is not necessary to weigh Triano's claim at this time,
the preliminary injunction is effectively unopposed.

To be entitled to a preliminary injunction, YKF must first
show a likelihood of success on the merits, or that it has at
least "a fair chance of success."  Republic of the Philippines v.
Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc).  YKF

---

[3] YKF has also filed a Request for Judicial Notice, Docket No.
35 ("RJN").  These documents consist of filings and proceedings
before the Bankruptcy Court of the Northern District of California.
The Court may take judicial notice of proceedings and filings in
other courts.  See United States ex rel. Robinson Racheria Citizens
Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  The
Court GRANTS YKF's request for judicial notice.  Dodson suggested
that Summit Bank may have a security interest during trial in the
bankruptcy proceedings.  RJN, Ex. 3, at 104:9-105:4, 110:19-111:9.

11

**United States District Court**
For the Northern District of California

contends that Popov's transfer of shares to Dodson was fraudulent. Whether YKF can establish this claim will depend on Popov's state of mind, i.e., whether he had an actual intent to hinder, delay, or defraud a creditor.  See e.g., In re Cohen, 199 B.R. 709, 716 (B.A.P. 9th Cir. 1996).

YKF points to several facts that could establish Popov's fraudulent intent.  YKF alleges that Popov and Dodson concealed the transfer of stock from the President and Board member of Smart Alec's for over a year (assuming that the transfer took place in April of 2004), or that they backdated the transfer (assuming that it took place in August of 2005).  MPI at 9-10.  Popov had allegedly incurred significant debts to both YKF and Triano.  Id. at 10-11.  Finally, the transfer was made to someone with whom Popov shared a close relationship (i.e., his then-girlfriend Dodson), and Popov allegedly remained active in the business after it was transferred (again, assuming a transfer in April of 2004). Id. at 9.  Read together, these factors suggest that YKF can establish a plausible claim of fraudulent transfer.  See Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800, 806 (9th Cir. 1994) (listing "unmanageable indebtedness," and a "special relationship between the debtor and the transferee," and retention of the property transferred, as potential badges of fraud).  The Court concludes that YKF has established that it has a sufficient likelihood of success for the purposes of its motion for

United States District Court
For the Northern District of California

preliminary injunction.[4]

YKF must next establish that irreparable injury is likely in the absence of an injunction. <u>See</u> <u>Winter</u>, 129 S. Ct. at 374. YKF is seeking to recover shares. YKF could suffer irreparable harm if Dodson were to transfer the shares to a bona fide third party. <u>See</u> <u>DLJ Mortg. Capital, Inc. v. Kontogiannis</u>, 594 F. Supp. 2d 308 (E.D.N.Y. 2009) (finding irreparable harm where defendant could convey properties in dispute to a bona fide purchaser). Recovery of these shares could not be replaced by a monetary reward, because these shares are not easily fungible and are difficult to monetize. Furthermore, there is evidence on the record that at least one entity that is not a party to this litigation, Summit Bank, may possess a security interest in the claim. RJN Ex. 3 at 104:9-105:4, 110:19-111:9. The Court finds this to be a sufficient basis for establishing a likelihood of irreparable harm.

Under the third prong, the Court weighs the balance of equities between the parties. Given the unopposed nature of YKF's motion for preliminary injunction to preserve the status quo, the Court finds that the balance of hardships tips in favor of YKF. YKF risks losing access to the shares in the absence of an injunction, and Dodson has presented no countervailing interest. Finally, the Court notes that the preliminary injunction does not burden the public interest. The Court GRANTS YKS's Motion for

---

[4] In doing so, the Court offers no opinion regarding the respective claims to the contested shares as between Triano and YKF.

1    Preliminary Injunction.

2

3    **V.    <u>CONCLUSION</u>**

4         For the reasons discussed above, this Court hereby:

5    1.   GRANTS YKF's motion to strike Dodson's jury demand with

6         respect to the claims brought by YKF in its complaint;

7    2.   DENIES YKF's motion to strike Dodson's jury demand with

8         respect to the counterclaim raised by Dodson;

9    3.   DENIES YKF's alternative motion to bifurcate; and

10   4.   GRANTS YKF's motion for preliminary injunction.

11   The Court hereby orders, during the pendency of this action,

12   Dodson, her employees, agents, and representatives, and all

13   persons acting with her or on her behalf must not sell, transfer,

14   or encumber the shares that she received pursuant to the Share

15   Purchase Agreement between Popov and Dodson dated April 18, 2004,

16   or any interest therein, or any assets of Smart Alec's outside the

17   ordinary course of business.  The Court further orders Dodson to

18   notify Summit Bank of the pendency of this action and the issuance

19   of this injunction.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28
                                        14

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

The parties are also ordered to participate in a mandatory settlement conference before a Magistrate Judge.  Counsel will be advised of the date, time, and place of the conference by notice from the assigned Magistrate Judge.  A Further Status Conference will be held on September 9, 2009, at 10:00 a.m. in Courtroom #1.

IT IS SO ORDERED.

April 21, 2009

_____

UNITED STATES DISTRICT JUDGE