IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUGEN KAISHA, Y.K.F.,<br><br>    Plaintiff,<br><br>  v.<br><br>STEPHANIE DODSON,<br><br>    Defendant. | Case No. 08-0225 SC<br><br>ORDER DENYING PLAINTIFF INTERVENOR'S MOTION FOR ATTORNEY FEES |
| STEPHANIE DODSON,<br><br>    Counter-Claimant,<br><br>  v.<br><br>YUGEN KAISHA, Y.K.F.,<br><br>    Counter-Defendant. | |
| MARTIN F. TRIANO, d/b/a LAW OFFICES OF MARTIN F. TRIANO,<br><br>    Plaintiff Intervenor,<br><br>  v.<br><br>YUGEN KAISHA, Y.K.F., and STEPHANIE DODSON,<br><br>    Intervenor Defendants. | |

**I.   INTRODUCTION**

After a seven-day bench trial, the Court issued its Findings of Fact and Conclusions of Law and entered Judgment in this case on February 19, 2010. See Docket Nos. 111 ("FFCOL"), 112 ("Judgment"). Now before the Court is a Motion for Attorney Fees

filed by Plaintiff-Intervenor Martin F. Triano, d/b/a Law Offices of Martin Triano ("LOMT"). Docket No. 116 ("Mot."). Plaintiff Yugen Kaisha, Y.K.F. ("YKF"), and Defendant Stephanie Dodson ("Dodson"), oppose the Motion. Docket Nos. 121 ("YKF Opp'n"), 122 ("Dodson Opp'n"). LOMT filed a Reply. Docket No. 123 ("Reply"). For the reasons stated herein, the Motion is DENIED.

## II.  BACKGROUND

This action concerned shares in Smart Alec's Intelligent Food, Inc. ("Smart Alec's"), a fast-food restaurant located in Berkeley, California. YKF filed this action to set aside a fraudulent transfer of 3,744,000 shares of Smart Alec's ("the shares") from Alexander Popov ("Popov") to Dodson prior to Popov filing for bankruptcy in September 2005. This action began as an adversary proceeding in Bankruptcy Court. See Yugen Kaisha, Y.K.F. v. Dodson, Adversary Proceeding No. 07-3104 (Bankr. N.D. Cal.). The case was transferred to this Court after Dodson filed a counterclaim and would not consent to a jury trial in Bankruptcy Court. See Adv. Docket No. 24 ("Certificate for Withdrawal of Reference and Assignment to District Judge"). The Court permitted LOMT to intervene in this dispute. Docket No. 20 ("Aug. 18, 2008 Order").

After a seven-day bench trial, lasting from January 19, 2010, to January 27, 2010, this Court concluded that the transfer of shares between Popov and Dodson was fraudulent, that Dodson was not entitled to any relief under her counterclaim, and that the shares in Smart Alec's are subject to a lien established by a Promissory Note between LOMT and Popov. See Docket No. 111 ("FFCOL").

The Court entered Judgment for YKF and against Dodson with respect to YKF's first two causes of action for fraudulent transfer, thereby rendering void the transfer of the shares from Popov to Dodson. See Docket No. 112 ("Judgment"). The Court transferred all interest that Dodson possessed in the shares to YKF, and noted that YKF's interest in the shares is subordinate to the interest of LOMT and Summit Bank. See id. The Court entered Judgment in favor of YKF and against Dodson as to her counterclaim.

The Court also entered Judgment in favor of LOMT as to LOMT's claim for declaratory judgment. See id. The Court declared that LOMT has a valid lien on the shares, but that the value of this lien may not exceed the amount owed LOMT for the legal representation that LOMT provided Popov in connection with the Hayashi litigation. See id. This Court did not reach the issue of whether LOMT's lien is junior or senior to the lien held by Summit Bank. See id. It is also not clear to the Court whether LOMT will be able to enforce the lien in an action filed in Alameda County Superior Court prior to seeking intervention in this case. See FFCOL at 31-32.

LOMT now seeks attorney fees because the provisions of the Promissory Note and Guaranty, which created the lien, allow attorney fees to be awarded to the prevailing party in any action to enforce or interpret its provisions. Mot. at 2. LOMT claims to have incurred $171,163.50 in attorney fees. Id. at 3.

**III. LEGAL STANDARD**

The American rule, under which each party to a lawsuit must ordinarily pay his or her own attorney fees, does not apply when a

3

party sues under a contract that includes a fee award to the prevailing party. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-59 (1975) (noting that exceptions to American rule include requests for attorney fees based on statute or enforceable contract). Whether a creditor in federal bankruptcy proceedings is entitled to a contractual attorney fee award is a question governed by state law. In re Fobian, 951 F.2d 1149, 1153 (9th Cir. 1991) (overruled on other grounds by Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co., 549 U.S. 443, 452 (2007)). California law provides, in part, that:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a). Section 1717 further provides that the court "shall determine who is the party prevailing on the contract." Id. at § 1717(b)(1). "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section." Id.

**IV. DISCUSSION**

    **A.    The Promissory Note**

Starting in 2001, LOMT represented Popov in a number of different lawsuits, including a suit concerning ownership of a

4

1  record-breaking baseball ("the Hayashi litigation"), an action
2  involving Popov's business venture, Man.com ("the Man.com
3  litigation"), and a lawsuit brought by YKF against Popov, Dodson,
4  and Smart Alec's ("the YKF litigation").  Due to concern about
5  Popov's ability to pay accumulating attorney fees, LOMT provided
6  Popov with a copy of a Promissory Note on April 15, 2002.  PI Ex.
7  304 ("Promissory Note").[1]  Popov signed the Promissory Note on
8  April 17, 2002.  Id. at 2, 3.

9      The Promissory Note states that it is for $45,648.54,
10 "together with such additional sums which may accrue from legal
11 services being provided by the Martin F. Triano dba Law Offices of
12 Martin Triano."  Id. at 1.  The Note is secured by "[a]ll shares
13 held in Smart Alecs Restaurant [sic]."  Id.  The Promissory Note
14 states that "[in] the event that the Law Offices of Martin Triano
15 needs to bring any action to enforce (including foreclosure) or
16 interpret the provisions of this note, the prevailing party shall
17 be entitled to attorney's fees."  Id. at 2.

18     In August of 2002, Popov fully paid LOMT the legal fees due
19 for work performed in connection with the Man.com litigation.
20 Def.'s Ex. 518 ("Man.com August Bill") at 1.  When Popov discharged
21 LOMT in May of 2003, Popov still owed LOMT a substantial amount of
22 money for the Hayashi Litigation (bills issued by LOMT stated the
23 amount as $473,402.65).  See PI Ex. 306 ("Proof of Claim") Ex. C
24 ("Hayashi Bills") at 157.  When Popov filed for bankruptcy in
25 September of 2005, he still owed LOMT the same amount.  Id. Ex. A
26 ("Statement of Claim") at 2.  In the bankruptcy proceeding, a total

---

[1] This Order will use the prefix "PI" (for "Plaintiff-Intervenor") to designate exhibits presented by LOMT during trial.

of $238,192.75 was paid to Martin F. Triano as a secured creditor.[2] See Pl.'s Ex. 131 ("Trustee's Report of Distribution") at 2.

This Court determined that the Promissory Note gave LOMT a valid lien on the Smart Alec's shares that Popov possessed in April 2002, but that the value of the lien may not exceed the amount owed LOMT in connection with the Hayashi litigation. FFCOL at 36-37. LOMT now seeks attorney fees of $171,163.50 based on the attorney fee provision in the Promissory Note. Mot. at 9-10.

### B. LOMT Is Not Entitled to Recover Attorney Fees

LOMT claims entitlement to attorney fees against YKF and Dodson because LOMT was a prevailing party in this action. Mot. at 9-10. The Court does not need to decide the question of whether LOMT was a prevailing party. Assuming, arguendo, that LOMT was a prevailing party, the Court finds that LOMT is not entitled to recover attorney fees for work performed by the Law Offices of Triano & Byrne. LOMT claims to have incurred $171,163.50 in attorney fees "[f]rom the time the Law Offices of TRIANO & Byrne received the Notice of the Assignment of the Personal Property to YKF from the POPOV Bankruptcy estate on June 26, 2007 to the present." Byrne Decl. ¶ 2.[3]

YKF contends that LOMT and the Law Offices of Triano & Byrne are the same firm, and that LOMT simply changed its name when Byrne obtained partnership status. Opp'n at 11. In Trope v. Katz, the

---

[2] The Trustee's Report indicates the distribution was made to Martin F. Triano, rather than to the Law Offices of Martin F. Triano.

[3] Mark D. Byrne ("Byrne"), the attorney of record for Martin F. Triano d/b/a Law Offices of Martin F. Triano, submitted a Declaration in Support of the Motion for Attorney Fees. Docket No. 116-2.

California Supreme Court held that "an attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration in exchange for legal representation" cannot recover attorney fees under section 1717. 11 Cal. 4th 274, 292 (1995). Trope concerned a law firm's attempt to recover under a contractual fee provision after obtaining a jury verdict awarding the firm unpaid attorney fees. Id. at 277-78. Since the law firm represented itself, it did not incur attorney fees, and was not entitled to such an award. Id. at 278-82. YKF contends that since LOMT and the Law Offices of Triano & Byrne are the same firm, Trope bars LOMT from recovering attorney fees in this case. Opp'n at 11.

LOMT responds that the Law Offices of Triano & Byrne is not the same as LOMT because Byrne "will share in a portion of a recovery of the fees recovered herein." Reply at 11; Supplemental Byrne Decl. ¶ 3.[4] This statement does not establish that LOMT and the Law Offices of Triano & Byrne are distinct law firms. Indeed, the evidence presented to the Court during this litigation indicates otherwise. Byrne worked at LOMT, he discussed the Promissory Note with Popov, and he represented Popov during the Hayashi litigation, the Man.com litigation, and the YKF litigation. FFCOL at 15 n.9, 16. The time sheets submitted in support of this Motion show that LOMT and the Law Offices of Triano & Byrne have the same mailing address. See Byrne Decl. Ex. A ("Time Sheets"). The names of the two law firms indicate that Martin F. Triano is a member of both.

---

[4] Byrne, the attorney of record for Martin F. Triano d/b/a Law Offices of Martin F. Triano, submitted a Supplemental Declaration in Support of the Motion for Attorney Fees. Docket No. 124.

7

LOMT states that the only fees being sought are those incurred by attorneys other than Martin F. Triano ("Triano"), Reply at 11, but this statement is false. The time sheet entries dated July 5, 2007, July 11, 2007, September 20, 2007, October 10, 2007, October 17, 2007, December 3, 2007, December 5, 2007, December 6, 2007, January 4, 2008, January 7, 2008, and August 27, 2008, show that the Law Offices of Triano & Byrne is seeking reimbursement for work performed by Triano. See Time Sheets. Putting all of this together, the Court finds that LOMT and the Law Offices of Triano & Byrne are the same law firm with a different name.[5]

LOMT relies on Gilbert v. Master Washer & Stamping Co., 87 Cal. App. 4th 212, 214 (Ct. App. 2001), where the California Court of Appeal held that "a lawyer represented by other members of his law firm is entitled to recover reasonable attorney fees where the representation involved the lawyer's personal interests and not those of the firm." See Reply at 8-12. The case is distinguishable. Here, LOMT intervened to vindicate its lien based on a Promissory Note. Byrne worked on the cases that led to the Promissory Note, see FFCOL at 15 n.9, 16, and the time sheets submitted in support of this Motion seek reimbursement for work performed by Triano, see Time Sheets. LOMT, therefore, has not established a clear distinction between its interests, and those of

---

[5] YKF also points out that the website http://trianobyrne.com states that "The Law Offices of Martin F. Triano" has become "The Law Offices of Triano & Byrne." YKF did not request the Court to take judicial notice of this website, and even if YKF had, the Court doubts it would have done so, because the statement on the website is exactly what is in dispute. Even without considering the website, the evidence is sufficient for the Court to conclude that LOMT and the Law Offices of Triano & Byrne are the same firm with a different name.

the Law Offices of Triano & Byrne. LOMT has presented no evidence of a retainer agreement between LOMT and the Law Offices of Triano & Byrne, and there is no evidence of a true attorney-client relationship between these two entities, especially given that the Law Offices of Triano & Byrne is billing for work performed by the supposed client.

This case is simply not one where an attorney is represented by members of his own law firm concerning a personal matter unrelated to the firm's interests. Instead, it is clear that LOMT and the Law Offices of Triano & Byrne are the same firm with a different name, and so LOMT represented itself in this action. Hence, LOMT cannot recover fees for work performed by the Law Offices of Triano & Byrne. See Witte v. Kaufman, 141 Cal. App. 4th 1201, 1211-12 (Ct. App. 2006) (finding that law firm could not recover fees where firm's own attorneys represented it, and where, in doing so, they were representing their own interests).

The other cases cited by LOMT can also be distinguished. In PLCM Group, Inc. v. Drexler, 22 Cal. 4th 1084 (2000), the California Supreme Court allowed a corporation represented by in-house counsel to recover attorney fees. In Farmers Insurance Exchange v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1238 (9th Cir. 2001), the Ninth Circuit, interpreting California law, determined that two law firms that had jointly represented a client, and who subsequently hired each other to recover the contingent fee due under the initial client retainer agreement, were entitled to attorney fees. In Mix v. Tumanjan Development Corp., 102 Cal. App. 4th 1318, 1324-25 (Ct. App. 2002), the court allowed for recovery of attorney fees where the attorney actively

9

participated in the proceedings but was not an attorney of record. In Moran v. Oso Valley Greenbelt Association, 117 Cal. App. 4th 1029, 1035-36 (Ct. App. 2004), the court allowed a litigant who worked as a paralegal for attorneys who represented her pro bono to recover attorney fees.

In each of these cases, there existed an attorney-client relationship, with distinct interests between the attorney and the client. See PLCM Group, 22 Cal. 4th at 1093; Farmers Ins. Exchange, 250 F.3d at 1238-39; Mix, 102 Cal. App. 4th at 1324-25; Moran, 117 Cal. App. 4th at 1036. In this case, where Byrne worked for LOMT, and where the Law Offices of Triano & Byrne submitted bills that include work performed by Triano, there is no clear attorney-client relationship, and there are overlapping interests such that LOMT is not entitled to an award of fees for the work performed by the Law Offices of Triano & Byrne.[6]

///
///
///
///
///
///
///
///
///

---

[6] Based on the foregoing, there is no need for the Court to reach LOMT's argument that YKF is liable as the successor-in-interest to the ownership of the shares, or the argument that YKF is liable as the alter ego of Smart Alec's.

10

**V.   CONCLUSION**

The Court finds that Plaintiff-Intervenor Martin F. Triano, d/b/a Law Offices of Martin Triano, is not entitled to recover attorney fees from YKF or Dodson for work performed by the Law Offices of Triano & Byrne.  Therefore, the Court DENIES the Motion for Attorney Fees.

IT IS SO ORDERED.

Dated:   June 9, 2010    
                         UNITED STATES DISTRICT JUDGE